## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## TEXARKANA DIVISION

| | |
|---|---|
| **LUXPRO CORPORATION, a Taiwanese corporation,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 4:08-CV-04092-HFB** |
| **vs.** ) | |
| ) | |
| **APPLE, INC. f/k/a Apple Computer, Inc.,** ) | |
| ) | |
| **Defendant.** ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE AND BRIEF IN SUPPORT THEREOF

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES…………………………………………………………....……ii

I.    SUMMARY OF THE RESPONSE…..………………………...………………1

II.   JURISDICTION AND VENUE ARE PROPER IN THIS COURT…………..…4

III.  THE PARTIES AND BACKGROUND OF THE LAWSUIT……………………4

      A.    Luxpro's MP3 Products Find Early Success in the Global Market……….4

      B.    In an Effort to Obtain a Monopoly, Apple Targets Luxpro
            and Attempts to Destroy Its MP3 Business………………………………6

            1.    Apple Engages in a Pattern of Sham Litigation
                  Against Luxpro……………………………………………………7

            2.    Apple Intimidates and Tortiously Interferes with
                  Luxpro Customers and Prospective Customers…………...………9

IV.   THE LOCATION OF PARTY WITNESSES, NON-PARTY
      WITNESSES AND SOURCES OF PROOF………………………………...…..11

V.    APPLE'S CHOICE OF FORUM FOR LITIGATION DISPUTES……………..15

VI.   ARGUMENT AND AUTHORITIES……………………………………………16

      A.    The Applicable Standard for Transfer of Venue is Discretionary……….16

      B.    Apple Has Failed to Show a Strong Balance of Inconvenience
            For the Parties and the Witnesses………………………………………..17

            1.    The Convenience of the Party Witnesses Favors Keeping
                  this Case in the Western District of Arkansas…………………...18

            2.    Because No Venue is More Convenient for the Relevant
                  Witnesses (Including Non-Parties), This Case Should
                  Remain in the Western District of Arkansas……………………20

            3.    Sources of Proof are Located in the Western District
                  of Arkansas, in the Northern District of California, Taiwan,
                  and Around the World; No Venue is More Convenient…………21

4.      No Convenient Venue Exists for the Place of the
                Alleged Wrong……………………..……………………………22

C.      The Interests of Justice Favor Maintaining this Case in the
        Western District of Arkansas……………………………………………23

        1.      A Speedy Trial is Crucial to Luxpro and Should be
                Outcome Determinative of the Venue Dispute;
                Transferring the Case Will Substantially Prejudice Luxpro……..24

        2.      Luxpro's Choice of Forum is Entitled to Deference……………..25

        3.      The Balance of the Interest of Justice Factors are Neutral
                or Favor Venue in the Western District of Arkansas……………26

VII.    CONCLUSION

# TABLE OF AUTHORITIES

**Pages**

## CASES

*Alden Corp. v. Eazypower Corp.*
        294 F. Supp. 2d 233, 238 (D. Conn. 2003)…………………………………….……..……19

*Apple Computer v. Creative Technology, Ltd., et. al.*
        Case No. 9:06-cv-114, Federal District Court, Eastern District of Texas ………....7, 8, 15

*Apple Computer Inc. v. Burst.com, Inc.*
        3:06-cv-00019-MHP, Federal District Court, Northern District of California……......…7

*Arkansas Right to Life v. Butler*
        972 F. Supp. 1187, 1194 (W.D. Ark. 1997)……………………………………...16, 23, 25

*Arkansas Trophy Hunters Assoc. Inc. v. Texas Trophy Hunters Assoc.*
        Civ. No. 06-5067, 2006 WL 3742239, at *1 (W.D. Ark. Dec. 18, 2006)……………....21

*B&G Equip. Co., Inc. v. J.T. Eaton & Co., Inc.*,
        No. WMN-06-1363, 2006 WL 2813886, at *3 (D. Md. Sept. 27, 2006)……………..…26

*Bradley Waddell v. Apple, Inc.*
        (Ontario Superior Court of Justice, Court File No. 05-CV-200513CP)……………...……6

*Caudill v. J.C. Penney Corp., Inc.*
        No. 06-3003, 2006 WL 1582089, *2 (W.D. Ark. 2006)………………………...……27

*Coffey v. Van Dorn Iron Works*
        796 F.2d 217, 220 (7th Cir. 1986)……………………………………….……………..23, 24

*Doolittle v. Structured Invs. Co., LLC*
        No. CV 07-356-S-EJL-CWD, 2008 WL 5121591 (D. Idaho Dec. 4, 2008)…………..…22

*FUL Inc. v. Unified Sch. Dist. No. 204*
        839 F. Supp. 1307, 1311-12 (N.D. Ill. 1993)……………………………………………18

*Household Fin. Servs. v. N. Trade Mortgage Corp.*
        No. 99 C 2840, 1999 WL 782072, at *5 (N.D. Ill. Sept. 27, 1999)……………………..21

*In re Nat'l Presto Indus., Inc.*
        347 F.3d 662, 663-64 (7th Cir. 2003)……………………………………………………16

*In re Nine Mile Ltd.,* 692 F.2d 56, 61 (8th Cir. 1982) *overruled on other grounds,*
        *Mo. Hous. Dev. Com'n v. Brice,* 919 F.2d 1306, 1311 (8th Cir. 1990).............................16

*In re Triton Ltd. Sec. Litig.*
    70 F. Supp. 2d 678, 689 (E.D. Tex. 1999)…………………………………....……..25

*Ines Lenzi v. Apple, Inc.*,
    (500-06-000296-059 Superior Court, District of Montreal;
    500-09-016463-069 Quebec Court of Appeal, District of Montreal)………....................6

*Ivax Corp. v. B. Braun of Am., Inc.*
    No. 00-4909-CIV-KING, 2001 WL 253253, (S.D. Fla. Feb. 28, 2001)…………….…..22

*Jean-François Carpentier v. Apple, Inc.*,
    (500-06-000315-057 Superior Court of Quebec, District of Montreal)…………....…...6

*Melanie Tucker, et al. v. Apple, Inc.*,
    Case No. 5:05-cv-00037-JW ("The Apple iPod iTunes Anti-Trust Litigation"),
    Federal District Court, Northern District of California ...............………………………..7

*MHL Tek, LLC v. Nissan Motor Co.*,
    No. 2:07-CV-289, 2009 WL 440627 (E.D. Tex. Feb. 23, 2009)………………………...20

*Miller v. R.K.A. Mgmt. Corp.*
    99 Cal. App. 3d 460, 468 (Cal. Ct. App. 1979)…………………………………………26

*Nelson v. Soo Line R. Co.*
    58 F. Supp. 2d 1023, 1027 (D. Minn. 1999)……………………………………………20

*Norwood v. Kirkpatrick*
    349 U.S. 29, 32 (1955)………………………………………………………………...17

*Piper Aircraft Co. v Reyno*
    454 U.S. 235, 255-56 (1981)…………………………………………………………….26

*Price Indus. Inc. v. Fulghum Indus. Inc.*
    No. 97-1148, 2002 WL 31681806, 64 U.S.P.Q. 2d 1669, 1675
    (W.D. Ark. 2002)………………………………………………………....…17, 20, 21

*PRG-Schultz USA, Inc. v. Gottschalks, Inc.*
    No. C 05-2811 MMC, 2005 WL 2649206 (N.D. Cal. Oct. 17, 2005)……………..…….22

*RBC Mortgage Co. v. Couch*
    274 F. Supp. 2d 965, 971 (N.D. Ill. 2003)……………………………………………21

*R &R Packaging, Inc. v. GAP Roofing, Inc.*
    No. 06-5175, 2007 WL 162730, at *3 (W.D. Ark. January 18, 2007)………16, 20, 21, 23

*Shutte v. Armco Steel Corp.*
        431 F.2d 22, 25 (3d Cir. 1970)…………………………………………………...…16

*Terra Int'l, Inc. v. Miss. Chem. Corp.*
        119 F.3d 688, 691 (8th Cir. 1997)………………………………………………17, 18, 23

*Vanusen v. J.C. Penney Co.*
        207 F. Supp. 529, 534-35 (W.D. Ark. 1962)………………………………………..17, 23

*Windt v. Qwest Commc'ns Int'l., Inc.*
        529 F.3d 183, 190 (3d Cir. 2008), *pet. for cert. filed* (Oct. 31, 2008)............................26

**STATUTES**

Ark, Code Ann. § 16-4-101(B) (Repl. 1999)………………………………………...……4

28 U.S.C. § 1391(a)(1)………………………………………………….………………...4

28 U.S.C. § 1391(c)……………………………………………………………………4

28 U.S.C. § 1404……………………………………………………………1, 16, 23, 27

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| **LUXPRO CORPORATION, a Taiwanese corporation,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 4:08-CV-04092-HFB** |
| **vs.** ) | |
| ) | |
| **APPLE, INC. f/k/a Apple Computer, Inc.,** ) | |
| ) | |
| **Defendant.** ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE AND BRIEF IN SUPPORT THEREOF**

Plaintiff Luxpro Corporation ("Luxpro") files its response to defendant Apple, Inc. f/k/a Apple Computer, Inc.'s ("Apple's") motion to transfer venue to the Northern District of California, pursuant to 28 U.S.C. § 1404(a).  For the reasons stated below, Luxpro respectfully requests that the Court deny Apple's motion in its entirety.

## I.   SUMMARY OF THE RESPONSE

Apple urges this Court to grant its motion to transfer because the Northern District of California is the more convenient forum in which to litigate this dispute.[1]  Specifically, Apple contends that the Northern District of California is the more convenient forum because:  (1) Apple is headquartered there; (2) Apple's relevant witnesses and documents are located there; (3) it is the district court that is more convenient for non-party witnesses; (4) it is the district court that has subpoena power over non-party witnesses; and (5) it is the more convenient venue

---

[1] Brief in Support of Motion to Transfer ("Transfer Brief"), Dkt. 26 at 1.

for Luxpro.[2]   In addition, Apple claims that Luxpro's choice of forum is entitled to no deference.[3]

Apple is wrong for several reasons and cannot satisfy the heavy burden it bears to demonstrate that transfer is warranted here.  First, Apple's claim that the Northern District of California is the more convenient forum is belied by its own actions and voluntary choice to file significant litigation in other venues across the United States, including just over the border in the Eastern District of Texas.  In addition, Apple has consented to venue in courts other than in the Northern District of California; Apple's claims here related to convenience are selective, self-serving, and should be afforded no weight.

Second, Apple's assertion that the convenience of the witnesses, including non-party witnesses, favors the Northern District of California is incorrect.  Luxpro (including Luxpro employees) has consented to: (1) respond to subpoenas issued by this Judicial District, (2) be presented for deposition in this Judicial District, and (3) appear for trial in this Judicial District.[4]  Indeed, Luxpro asserts that the Western District of Arkansas is the more convenient forum.[5]

Further, contrary to Apple's claims, non-party witnesses reside in several states across the United States, in at least four other continents, and in several foreign countries across the globe.[6]  The mere fact that *some* of these witnesses would have to spend a few hours less on a plane if the case were pending in California does not carry Apple's heavy burden here.  Moreover, Apple's argument that the Northern District of California will have subpoena power over non-party witnesses is, at best, exaggerated.  The vast majority (if not all) of the actual non-parties in this case are beyond the subpoena power of any one court or venue.  Notably, as in most unfair

---

[2] *Id.* at 1-2.
[3] *Id.*
[4] *See* Declaration of Fu-Ching Wu ("Wu Declaration") attached hereto as Exhibit "A" at ¶6.
[5] *Id*. at ¶¶5-6.
[6] *Id*. at ¶¶8-9.

competition and antitrust cases, expert witness testimony will be central, and, given that expert witnesses reside across the country, no single venue is more convenient.

Third, equally unavailing is Apple's claim that the Northern District of California is more convenient because the sources of proof and relevant documentary evidence are present at Apple's headquarters in California.  To the extent this factor is still even relevant given that, practically speaking, document production is now routinely undertaken electronically (thereby rendering the location of sources of proof largely irrelevant), a substantial volume of Luxpro's relevant documents and evidence resides in this Judicial District.[7]  Further, Apple's own venue briefing and accompanying declaration admits that relevant sources of proof (including witnesses) are located in Apple's foreign offices, foreign offices of Apple affiliates, and agents of Apple in foreign countries, including law firms.  In addition, not unlike the location of many non-party witnesses, significant sources of proof for various non-parties are situated in locales around the world, including in Canada, China, Germany, Japan, Mexico, Singapore, the United Kingdom, and the United States.

Finally, this Circuit correctly recognizes that the plaintiff's choice of venue is accorded deference.  Luxpro's choice of venue is strengthened and accorded deference, where, as here, the time-to-trial and the efficiency in handling complex litigation is of paramount concern to Luxpro and its business.  In addition, given the public threats made by Luxpro concerning prospective litigation, Apple could have filed a declaratory judgment action in the forum of its choosing; Apple voluntarily decided against that option.  For these reasons, as well as others, Luxpro's choice of venue in the Western District of Arkansas should be accorded deference.

In sum, Apple's motion to transfer venue merely seeks to shift the convenience from one side to the other; a practice rejected by courts (including by this Court) in considering venue

---

[7] *Id.* at ¶7.

transfer.  Accordingly, this Court should disregard all of Apple's arguments that the Northern District of California is the more convenient forum.  For all the reasons stated herein, including the practical realties of modern, complex litigation, Luxpro respectfully requests this Court deny Apple's motion and allow the citizens of the State of Arkansas to hear this case.

## II.  JURISDICTION AND VENUE ARE PROPER IN THIS COURT

Luxpro's Amended Complaint correctly asserts, and Apple does not disagree, that this Court has jurisdiction over the parties, including Apple, especially given its extensive business contacts in this Judicial District.  Furthermore, Arkansas' long-arm statute provides for jurisdiction over persons "to the maximum extent permitted by the due process clause of the Fourteenth Amendment on the United States Constitution."[8]

Similarly, venue in this Court is proper.  Pursuant to 28 U.S.C. § 1391(a)(1), venue for a case in which the defendant is a corporation is proper in any district in which the corporation resides.  For purposes of venue, a corporation is deemed to "reside" in any district that would have personal jurisdiction over that corporation were the district a state unto itself.[9]

Accordingly, both personal jurisdiction and venue are proper in the Western District of Arkansas.

## III.  THE PARTIES AND BACKGROUND OF THE LAWSUIT

A.      **Luxpro's MP3 Products Find Early Success in the Global Marketplace.**

Luxpro is a privately-held Taiwanese consumer electronics corporation with its headquarters in Taipei City, Taiwan.[10]  In addition to producing and selling other products such as television and radio receivers, Luxpro engages in developing, manufacturing, distributing, and

---

[8] Ark, Code Ann. § 16-4-101(B) (Repl. 1999).
[9] 28 U.S.C. § 1391(c).
[10] *See* Plaintiff's First Amended Complaint ("Amended Compl.") Dkt. No. 6 at ¶1.

selling MP3 players throughout world, including in the United States.[11]  Luxpro's research and development team has a first-rate reputation in the worldwide MP3 player market for high-quality design.[12]  Apple's pejorative (and incorrect) claim in its motion that Luxpro develops "knock-offs" notwithstanding, Luxpro is often called upon by consumers, retailers, and other third-parties to develop custom MP3 products.  Luxpro has independently developed and marketed a variety of cutting edge MP3 players such as the Luxpro "EZ Share," "EZ Season," "EZ Listen," "Top Tangent," "EZ Tangent," "Super Tangent," "iOta Flash," "Pico" (and "iPico"), and the "Top Square."[13]

Due to the quality and popularity of its MP3 products, Luxpro gained momentum in the global MP3 marketplace including, notably: (1) executing agreements with two Chinese companies (Beijing Huaqi Informational Digital Technology Co., Ltd. and Beijing Qian Kun Time Digital Technology Co., Ltd.) to supply over one million MP3 players for sale to consumers; (2) having discussions with executives from Circuit City Stores, Inc. ("Circuit City"), and Circuit's City's Canadian subsidiary, InterTAN Canada, Ltd. ("InterTAN"), and then executing an agreement with InterTAN to ship over 7,000 of its Top Tangent MP3 players to InterTAN for sale in retail stores; (3) executing an agreement with a third Chinese company (TC Digital Electronic SBU) to supply more than one million sets of MP3 players; (4) receiving substantial interest and orders for its MP3 players from retailers, distributers, suppliers, and consumers in the United States, and around the globe; (5) executing an agreement with Kaga Electronics Co., Ltd., an electronics supplier in Japan, for the sale of $NTD 2.8 Million worth of Luxpro MP3 players; (6) receiving interest from other consumer electronics retailers, including Best Buy and Radio Shack; (7) agreeing with the Starbucks Corporation to initiate a proposal

---

[11] *Id.*
[12] *Id* at ¶14.
[13] *Id*; http://www.luxpro.com.tw/English/product/iOta_Flash.htm

that would place Luxpro's MP3 players in Starbucks' Japanese stores; and (8) entering into agreements with a number of other companies to sell Luxpro MP3 products around the world, including, but not limited to, Compu Import Co. in Mexico and Taiwanese Luxpro distributers Carrefour, EUPA, 3C, and ET Mall.[14]

Finally, because of its success, Luxpro attracted interest from venture capital and investment companies, including some in the United States such as Citigroup, Inc., and Neuberger Berman.[15]

**B.   In an Effort to Obtain a Monopoly, Apple Targets Luxpro and Attempts to Destroy Its MP3 Business.**

Apple is a publicly-traded multinational California corporation that manufactures, distributes, and sells consumer electronics and computers.[16]   Apple's MP3 players, marketed under the brand name iPod, are sold throughout the world, including in the Western District of Arkansas.[17]   In conjunction with its proprietary iTtunes product—a digital media player application that plays and organizes digital music and video files—Apple has achieved a monopoly in both the hard-drive based MP3 market (90% market share) as well as the more general MP3 market (70% market share).[18]

Apple's anticompetitive conduct is well-documented manifesting itself in substantial litigation (and settlements by Apple) involving patent infringement, unfair competition, and antitrust claims.[19]   Indeed, in Apple's recent 10K filing with the United States Securities and

---

[14] *See* Amended Compl. at ¶¶16-22, 32-34; Wu Declaration at ¶¶8-10.
[15] *See* Wu Declaration at ¶¶8-9.
[16] *See* Amended Compl. at ¶2.
[17] *See* Amended Compl. at ¶¶2, 4-5; Defendant Apple, Inc.'s Transfer Brief at 3.
[18] *See* Amended Compl. at ¶10.
[19] *See e.g., Ines Lenzi v. Apple, Inc.*, (500-06-000296-059 Superior Court, District of Montreal; 500-09-016463-069 Quebec Court of Appeal, District of Montreal); and *Bradley Waddell v. Apple, Inc.*, (Ontario Superior Court of Justice, Court File No. 05-CV-200513CP) (Canadian Class Action Settlements with Apple related to first, second, and third generation iPod batteries)

Exchange Commission, Apple identifies several pieces of litigation filed against it related to its iPod and iTunes products, including multiple antitrust class actions, patent infringement cases, and consumer-related claims.[20]

As demonstrated in the Amended Complaint, Apple's focused, intentional strategy designed to destroy Luxpro's MP3 business was widespread and involved various illicit and illegal activities throughout the world, including in Canada, China, Germany, Japan, Poland, Singapore, Taiwan, and in the United States.[21]  Not coincidentally, these illegal activities were directed toward Luxpro in the years 2005-2006, when Luxpro's products were first gaining momentum in the marketplace, and Apple was attempting to achieve a monopoly in the global MP3 industry.

### 1.    Apple Engages in a Pattern of Sham Litigation Against Luxpro.

During the time when Apple was attempting to achieve a monopoly in the marketplace for its iPod products, it targeted certain small and medium sized competitors by filing lawsuits against them.   For example, in 2006, Apple sued Creative Technology ("Creative") for infringement of several of Apple's patents related to technology allegedly embodied in Creative's MP3 players.[22]   Creative, a Singapore company who competes with Apple in manufacturing and selling MP3 players, was also asserting claims for patent infringement against

---

(http://www.apple.com/ca/ipod/settlement/); *Jean-François Carpentier v. Apple, Inc.*, (500-06-000315-057 Superior Court of Quebec, District of Montreal) (Canadian Class Action Settlements with Apple related to the iPod Nano); *Apple, Inc. v. Creative Technology*, (multiple patent litigation with MP3 competitor resulting in settlement payments being made by Apple of approximately one hundred million dollars)  (http://www.apple.com/pr/library/2006/aug/23settlement.html);  *Apple Computer Inc. v. Burst.com, Inc.*, 3:06-cv-00019-MHP, Federal Disrict Court, Northern District of California (patent infringement litigation where Apple settled with Burst.com for ten million dollars over technology present in the Apple Ipod products  http://www.marketwire.com/press-release/BurstCom-Inc-795528.html); *Melanie Tucker, et. al. v. Apple, Inc.*, Case No. 5:05-cv-00037-JW ("The Apple iPod iTunes Anti-Trust Litigation"), Federal District Court, Northern District of California (pending).
[20] *See* Apple 2008 10K at 25-33 attached hereto as Ex. "B."
[21] *See* Amended Compl. at ¶¶6, 10-13, 25-36.
[22] *Id*. at ¶13.

---

Apple related to Apple's iPod products.  On August 23, 2006, Apple announced that it was paying Creative $100 million to settle the lawsuit; Creative made no payments to Apple as part of the settlement.[23]

Similar to its strategy with Creative, Apple targeted Luxpro, another small competitor in the MP3 market.  For example, by March of 2005, Luxpro had developed a couple of samples of an MP3 player it called the "Super Shuffle" to demonstrate at the CeBit Tradeshow in Hanover, Germany.  Without notice to Luxpro, Apple sought, and obtained, *ex parte* injunctive relief from a German court precluding Luxpro from using the name "Super Shuffle" on its products at the tradeshow.[24]  Even though Apple had no intellectual property rights (*i.e.*, no patent, copyright, or trademark) that related to Luxpro's Super Shuffle, Luxpro decided to make a few changes to the product and change its name to the "Super Tangent" in order to (1) eliminate any possible legal claim of product confusion, and (2) efficiently resolve the dispute (because Luxpro is a small company and only a few samples of the Super Shuffle had been made).[25]

Subsequently, after refusing Apple's baseless demand that Luxpro cease the manufacturing and selling of **all** of its MP3 products (not just the Super Shuffle), Apple sued Luxpro in Taiwan alleging that the appearance of Luxpro's MP3 players closely resembled Apple's iPod Shuffle product.[26]  Again, Apple did not claim that Luxpro had infringed any patent, trademark, or copyright.  In the early stages of the lawsuit, Apple was able to temporarily convince the Taiwanese court to enjoin Luxpro from manufacturing any of its MP3 players.[27] This injunction lasted until November of 2005 when the Taiwanese court ruled in Luxpro's favor

---

[23] *Id*; *see* http://www.apple.com/pr/library/2006/aug/23settlement.html
[24] *See* Amended Compl. at ¶26.
[25] *Id*.
[26] *Id*. at ¶¶27-28.
[27] *Id*.

and lifted the injunction.[28]   The Taiwan Supreme Court agreed with the lower court's decision and dismissed Apple's appeal, although not until March of 2008.[29]   Notwithstanding Luxpro's victory in court, Apple's litigation had its intended effect; The litigation cost Luxpro substantial resources, resulted in strained relationships and lost consumer and manufacturing partners, and the injunction stalled the momentum Luxpro had achieved with its MP3 products.

Apple was not finished.  Undeterred by its failure, Apple then filed a motion with the Fair Trade Commission alleging that Luxpro violated Taiwan's Fair Trade Act.[30]   Not unlike the result in the Taiwanese civil courts, the Fair Trade Commission issued a ruling stating that Apple's complaints lacked merit and that Luxpro's MP3 products did not violate the Fair Trade Act.[31]   Again, however, Apple's litigation had its intended effect; The delays stemming from Apple's Fair Trade Act complaints, coupled with the previous lawsuits, created a cloud over Luxpro that resulted in the loss of valuable market opportunities, product orders, and business relationships.

### 2.    Apple Intimidates and Tortiously Interferes with Luxpro Customers and Prospective Customers.

Apple's attempt to destroy Luxpro's MP3 business was not limited to filing sham litigation.  In conjunction with the frivolous legal proceedings it initiated against Luxpro, Apple also began an illegitimate business campaign against Luxpro by sending illegal and intimidating letters to Luxpro's customers, Luxpro's business partners and others.  While the breadth and scope of Apple's illegal acts will not be completely exposed without thorough discovery, Luxpro is aware of several non-parties with whom Apple has illegally interfered.  For example, as articulated in the Amended Complaint, Apple placed significant pressure on InterTAN to drop

---

[28] *Id.*
[29] *Id.*
[30] *Id.* at ¶29.
[31] *Id.*

from its retail shelves the MP3 players it had purchased from Luxpro.[32]  InterTAN was one of Luxpro's North American customers and had been working with Luxpro to develop MP3 players for InterTAN's retail stores.  InterTAN, along with its parent company, Circuit City, had discovered Luxpro's products at a tradeshow in Las Vegas, Nevada and expressed interest in Luxpro's MP3 products.  Circuit City was also interested in selling Luxpro's MP3 products in the United States.  However, as a result of Apple's actions and threats, InterTAN stopped offering Luxpro's products for sale and destroyed several thousand Luxpro MP3 players; this, despite the popularity of the Luxpro MP3 players in InterTAN retail stores.  Further, Circuit City's interest in discussing the sale of Luxpro MP3 players in the United States ceased.

InterTAN was not the only customer or business partner of Luxpro that Apple targeted, however.  News of Apple's lawsuits and intimidation of InterTAN spread throughout the MP3 player marketplace, resulting in (1) other business partners terminating contracts with Luxpro, and (2) other large U.S.-based retailers (such as Best Buy and RadioShack) refusing to do business with Luxpro.  Another Luxpro partner—U.S.-based Starbucks Corporation—backed out of an agreement with Luxpro to sell MP3 players in its Japanese stores because of pressure from Apple.[33]  In addition, Apple threatened the following companies to end all business relationships with Luxpro:  Orchard Company, a Singapore company, Kaga Electronics Co. Ltd., a Japanese company, and Web Worker, a German Luxpro client.[34]

Further, Apple successfully encouraged some of its own suppliers to begin to pressure Luxpro's business partners to end their relationships with Luxpro.  For example, Apple's supplier ASUS Tek Computer Co. threatened Compu Import Co., a Luxpro client in Mexico.

---

[32] *Id*. at ¶¶30-31.
[33] *Id*. at ¶32.
[34] *Id*. at ¶33.

Apple's supplier Synnex Technology International Corp. also threatened a number of Luxpro's distributors in Taiwan.[35]

In sum, similar to its sham litigation strategy, Apple's illegal interference and intimidation of Luxpro's business partners, customers (including prospective customers), and suppliers had its intended affect; Luxpro's MP3 business was crippled during the 2005-2006 timeframe.

### IV. THE LOCATION OF PARTY WITNESSES, NON-PARTY WITNESSES AND SOURCES OF PROOF

As demonstrated in the attached Declaration of the Chairman of the Board and Chief Executive Officer of Luxpro, Fu-Ching Wu, Luxpro witnesses, including Mr. Wu, have consented to venue in the Western District of Arkansas and agree to: (1) be presented for deposition in this Judicial District, (2) respond to subpoenas issued by this Judicial District, and (3) be available for trial in this Judicial District.[36]

In addition, Chairman Wu provides that Luxpro's sources of proof and relevant documentary evidence (including samples of its MP3 products) are present in this Judicial District.[37]

Further, the non-parties listed below (as well as numerous others) will likely be witnesses with relevant information, documents, and evidence.[38]   The following is a list of these non-parties and individual witnesses, as well as a brief description of the type of information each party is likely to have:[39]

---

[35] *Id*. at ¶34.
[36] *See* Wu Declaration at ¶¶5-6.
[37] *Id*. at ¶7.
[38] *Id*. at ¶¶8-10.
[39] The list of non-parties is merely representative and should not be considered exclusive.

- **Atlas Sound and Vision Corporation** is a Singapore corporation headquartered in Singapore.   Atlas is likely to have relevant witnesses and documentary evidence related to Luxpro and Apple;

- **ASUS Tek Computer Co.** is a Taiwanese company headquartered in Taipei City, Taiwan.   ASUS is likely to have relevant witnesses and documentary evidence related to Luxpro, Apple, and Apple's communications concerning Luxpro, and Compu Import Co.;

- **Beijing Huaqi Informational Digital Technology Co., Ltd.** is a company located in Beijing, China.  Beijing Huaqi Informational Digital Technology Co., Ltd. is likely to have relevant witnesses and documentary evidence related to Luxpo and Luxpro's MP3 players;

- **Beijing Qian Kun Time Digital Technology Co., Ltd.** is a company based in Beijing, China.  Beijing Qian Kun Time Digital Technology Co., Ltd.  is likely to have relevant witnesses and documentary evidence related to Luxpo and Luxpro's MP3 players;

- **Best Buy Co., Inc.** is a Minnesota corporation with its principal place of business in Richfield, Minnesota. Best Buy is likely to have relevant witnesses and documentary evidence related to Luxpro, Apple, and the MP3 marketplace;

- **Circuit City Stores, Inc.** is a Virginia corporation with its principal place of business in Richmond, Virginia.  Circuit City is likely to have relevant witnesses and documentary evidence related to its wholly-owned subsidiary, InterTAN, Luxpro, Apple, and the MP3 marketplace;

- **Citigroup, Inc.** is a Delaware corporation with its principal place of business at 399 Park Avenue, New York, New York.  Citigroup, including its subsidiaries and investment banking arm, Citigroup Global Markets Securities Investment Consulting, are likely to have relevant witnesses (Lulu Cheng and others) and documentary evidence related to Luxpro;

- **CMS Hasche Sigle** is a law firm in Cologne, Germany.  CMS is likely to have relevant witnesses (Dr. Gordian N. Hasselblatt and others) and documentary evidence related to Apple and Luxpro;

- **Compu Import S.A. de C.V.** is an import company in Mexico and supplier of parts for Luxpro.  Compu is likely to have relevant witnesses (Eduardo Solórzano and others) and documentary evidence related to Luxpro, Apple, and ASUS's communications with Compu related to Luxpro;

- **Deutsche Messe** is a German company located in Hanover, Germany.  Deutsche Messe is likely to have relevant witnesses and documentary evidence related to Luxpro, Apple, and the 2005 CeBit Tradeshow in Hanover, Germany;

- **Drew & Napier, LLC** is a law firm based in Singapore.  Drew & Napier is likely to have relevant witnesses and documentary evidence related to Apple and Luxpro;

- **Ernst & Young Global, Ltd.** is a privately held company in the United Kingdom.  Ernst & Young, including its foreign subsidiaries in Taiwan, are likely to have relevant witnesses (Ann Shen and others) and documentary evidence related to Luxpro;

- **Federal Communications Commission** is a governmental agency of the United States located in Washington, DC.   The FCC is likely to have relevant documentary evidence related to Luxpro;

- **InterTAN Company** is wholly owned subsidiary of Circuit City Stores, Inc., located in Barrie Ontario, Canada.  InterTan, including its foreign offices (*e.g.*, Taiwan) is likely to have relevant witnesses (Chris Corcoran, Benjamin Morden, Eva Tai, Cathie Emms, Brian E. Levy, Ian J. Hutton, Craig Touchie, Tseng Ching-tang, Hung Hui-ling, Julie Hong, and others) and documentary evidence related to Luxpro, Apple, and the MP3 marketplace;

- **J.P. Chang** is Luxpro's legal counsel located in Taipei City, Taiwan.  Mr. Chang is likely to have relevant evidence related to Apple, Luxpro, and the lawsuits in Taiwan filed by Apple against Luxpro;

- **Kaga Electronics Company, Ltd.,** is a Japanese company located in Tokyo, Japan.  Kaga is likely to have relevant witnesses (Jason Yen and others) and documentary evidence related to Luxpro, Apple, and Apple's communications concerning Luxpro;

- **Kmart Corporation** is a subsidiary of Sears Holding Corporation, with its principal place of business in Troy, Michigan.  Kmart is likely to have relevant witnesses and documentary evidence related to Luxpro, Apple, and the MP3 marketplace;

- **Neuberger Berman, LLC** is a global asset management company based in New York City, New York.  Neuberger Berman is likely to have relevant witnesses (Greg Kobrick and others) and documentary evidence related to Luxpro;

- **Orchard Company** is a company based in Singapore.  Orchard is likely to have relevant witnesses (Johnson Goh and others) and documentary evidence related to Luxpro, Apple, and Apple's communications with Orchard concerning Luxpro;

- **Parkersco, LLC** is a company located in Morehead City, North Carolina. Parkersco is likely to have relevant witnesses (Bruce Henderson) and documentary evidence related to Luxpro;

- **RadioShack Corporation** is a Delaware corporation with its principal place of business in Fort Worth, Texas.  RadioShack, and its foreign subsidiaries and offices, are likely to have relevant witnesses (John Shen, Edmund Pan, and others) and documentary evidence related to Luxpro, Apple, and the MP3 marketplace;

- **Starbucks Corporation** is a Washington corporation with its principal place of business in Seattle, Washington.  Starbucks, and its foreign subsidiaries, are likely to have relevant witnesses and documentary evidence related to Luxpro and Apple;

- **Starbucks Coffee Japan, Ltd.** is a subsidiary of Starbucks Corporation and is located in Tokyo, Japan.  Starbucks, and its foreign subsidiaries, are likely to have relevant witnesses and documentary evidence related to Luxpro and Apple;

- **Synnex Technology International Corp.** is a Delaware corporation with its principal place of business in Fremont California.  Synnex has offices around the world, including in Canada, China, Japan, Mexico, and in the United Kingdom.  Synnex, and its foreign offices, are likely to have relevant witnesses and documentary evidence related to Luxpro, Apple, and communications with Luxpro distributers;

- **TCL Digital Electronic** SBU is a company based in China.  TCL Digital is likely to have relevant witnesses and documentary evidence related to Luxpro and Luxpro's MP3 products; and

- **Webworker** is a German company located in Hanover, Germany.  Web Worker is likely to have relevant witnesses (Oliver Lafos and others) and documentary evidence related to Luxpro and Apple.[40]

Finally, relevant non-party witnesses and documentary evidence are present in countries and continents throughout the world, including in Africa, Asia, Australia, Europe, the Middle East, New Zealand, North America (including multiple states in the United States), Central America, and South America.[41]  Many of these witnesses are likely to have relevant evidence related to interest in, and the purchase of, Luxpro's MP3 products.[42]

---

[40] *Id.*
[41] *Id.*
[42] *Id.*

### V.  APPLE'S CHOICE OF FORUM FOR LITIGATION OF DISPUTES

Despite Apple's claim that the Northern District of California is the more convenient forum, it has voluntarily chosen to file significant litigation in several other venues across the United States.  The following cases are recent examples of Apple's choice to file litigation in venues other than in the Northern District of California:

- *Apple Inc. v. Atico International USA Inc. et al*, Case No. 1:08-cv-00283-GMS, Federal District Court, District of Delaware (patent infringement litigation);

- *Apple Computer v. Creative Technology, Ltd., et. al.*, Case No. 9:06-cv-114, Federal District Court, Eastern District of Texas (Lufkin Division) (patent infringement litigation);

- *Apple Computer v. Creative Technology, Ltd., et. al.*, Case No. 9:06-cv-149, Federal District Court, Eastern District of Texas (Lufkin Division) (patent infringement litigation);

- *Apple Computer v. Creative Technology, Ltd., et. al.*, Case No. 9:06-cv-150, Federal District Court, Eastern District of Texas (Lufkin Division) (patent infringement litigation);

- *Apple Computer Inc., v. Creative Labs, Inc.*, Case No. 3:06-cv-00263-bbc, Federal District Court, Western District of Wisconsin (patent infringement litigation); and

- *Apple Computer Inc. v. Unova Inc., et al*, Case No. 1:03-cv-00101-JJF, Federal District Court, District of Delaware (patent infringement litigation where Apple <u>opposed</u> a motion to transfer venue to California).

In addition, in several instances, Apple has failed to seek a change of venue, thereby consenting to venue in jurisdictions other than in the Northern District of California.  Examples include:

- *QRG, Ltd. v. Apple Computer Company, Inc., et al.*, 1:05-cv-03408-WMN, Federal District Court, District of Maryland (patent infringement litigation);

- *Texas MP3 Technologies, LTD., v. Samsung Electronics Co., LTD., et al*, Case No. 2:07-cv-00052-CE, Federal District Court, Eastern District of Texas (Marshall Division) (patent infringement litigation); and

- *WI-Lan, Inc. v. Acer, Inc.,* Case No. 2:07-cv-00473-TJW, Federal District Court, Eastern District of Texas (Marshall Division) (patent infringement litigation).

In contrast to Apple's claim that the Northern District of California is the more convenient forum to litigate its disputes—premised largely on the fact that it is headquartered in California, and California is the locus for its witnesses and documents—Apple routinely, and *voluntarily*, chooses to file important, complex litigation in venues far from the Northern District of California, including in a venue that is a stone's throw from the Western District of Arkansas, the Eastern District of Texas.

## VI. ARGUMENT AND AUTHORITIES

### A.    The Applicable Standard for Transfer of Venue is Discretionary.

28 U.S.C. § 1404 provides: "For the convenience of parties and witnesses, in the interest of justice, a district court *may* transfer any civil action to any other district or division where it might have been brought."[43]   However, "[c]hange of venue, although within the discretion of the district court, should not be freely granted.  Courts are in the business of deciding cases, not playing procedural hockey among available districts at the whim of dissatisfied parties."[44]   "[A] party moving for a change of venue has the burden of proving that its alternative forum of choice is more convenient than the forum chosen by the plaintiff, and the court *must* give deference to the plaintiff's choice of forum."[45]   In fact, "great weight" must be given to the plaintiff's choice of forum.[46]

---

[43] 28 U.S.C. § 1404(a) (emphasis added).

[44] *In re Nine Mile Ltd.,* 692 F.2d 56, 61 (8th Cir. 1982), *overruled on other grounds by Mo. Hous. Dev. Com'n v. Brice,* 919 F.2d 1306, 1311 (8th Cir. 1990).

[45] *R&R Packaging, Inc. v. GAP Roofing, Inc.*, No. 06-5175, 2007 WL 162730, at *3 (W.D. Ark. January 18, 2007) (emphasis added); *see also Arkansas Right to Life v. Butler,* 972 F. Supp. 1187, 1194 (W.D. Ark. 1997) (stating that "[p]laintiff's choice of forum is given 'great weight' and should rarely be disturbed"); *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970) (stating that "[i]t is *black letter law* that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed.") (citation omitted, emphasis added);

---

A party seeking transfer is "required to show a *strong balance of inconvenience* in their favor before the court is justified in disturbing the plaintiff's choice of forum."[47]  Indeed, this Court has found that if no one forum exists that is more convenient for all the parties or where there is no apparent advantage to the litigants or the administration of justice, a transfer should be denied.[48]

When jurisdiction is proper in both the transferee and transferor districts, as it is here, the Court must consider "(1) the convenience of the parties; (2) the convenience of witnesses; and (3) the interests of justice."[49]  The Court is not limited to these enumerated factors and must conduct a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors."[50]  "Merely shifting the inconvenience from one side to the other, however, … is not a permissible reason for change of venue."[51]

## B.      Apple Has Failed to Show a Strong Balance of Inconvenience for the Parties and the Witnesses.

In considering the convenience of the parties and witnesses, the Eighth Circuit has approved a district court's consideration of the following factors:  "(1) the convenience of the

---

*In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003) (stating "[w]hether the denial of the motion to transfer was patently erroneous, or indeed erroneous at all, is much more doubtful, especially since, 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'") (citations omitted).

[46] *See Price Indus. Inc. v. Fulghum Indus. Inc.*, No. 97-1148, 2002 WL 31681806, 64 U.S.P.Q. 2d 1669, 1675 (W.D. Ark. 2002) ("In considering a §1404(a) motion, the Court must give great weight to the plaintiff's choice of forum.").

[47] *Vanusen v. J.C. Penney Co.*, 207 F. Supp. 529, 534-35 (W.D. Ark. 1962) (emphasis added) (discussing the enactment of § 1404(a) and the effect the statute had on the common law doctrine of *forum non conveniens*); *see also Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) (discussing the adoption of § 1404(a) and stating "[w]e believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience.  This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.").

[48] *See Price Indus. Inc.*, 2002 WL 31681806, at *1675 (refusing to transfer case to different venue where no one venue is more convenient to the parties).

[49] *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).

[50] *Id.*

[51] *Id.* at 696-97 (quotation omitted).

parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law."[52]

1.      **The Convenience of the Party Witnesses Favors Keeping this Case in the Western District of Arkansas.**

Apple's convenience argument related to its employee witnesses is self-serving, benefits only Apple, and is contrary to Apple's own litigation conduct.  Apple has failed to bring forth any competent evidence that the convenience of the parties and witnesses favors a transfer to the Northern District of California.  While Apple lists ten current employees with knowledge of relevant facts who reside in California, each of these employees would likely be compelled to testify in any jurisdiction, including in the Western District of Arkansas.[53]  Apple suggests that these employees may quit the company before trial and, thus, would only be subject to subpoena in the Northern District of California, but this argument is purely speculative.  Apple provides no evidence that any of these employees' departures are imminent, nor does Apple demonstrate that these hypothetical ex-employees will remain in the Northern District of California following their departure.

Equally unavailing is Apple's argument that this case should be transferred to the Northern District of California for the convenience of its *current* employees—so that the disruption to their work schedule will be minimal.  But, Apple fails to mention that when it is the plaintiff, it has no qualms about filing in districts located thousands of miles away from the Northern District of California—including in the Western District of Wisconsin, District of

---

[52] *Id.* at 696 (approving the factors that the district court had considered).
[53] *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311-12 (N.D. Ill. 1993) (stating that "it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily").

Delaware, and the Eastern District of Texas.[54]   Moreover, in other cases where Apple is a defendant in forums other than in the Northern District of California, Apple has decided not to seek a transfer and therefore has voluntarily consented to the venue chosen by the plaintiff.[55]   In sum, Apple's own litigation history belies the fact that litigating this case in the Western District of Arkansas would be inconvenient.   Apple routinely, voluntarily, and purposefully litigates outside the Northern District of California and, therefore, its "inconvenience" arguments should be afforded no weight.

Further, similar to other complex commercial cases, expert witnesses will play a central role in this case.   But the location of expert witnesses, consistent with the issue of party witnesses, is largely immaterial given they will be available in whatever forum is selected.[56]

In addition, in a declaration accompanying Apple's venue briefing, Apple admits that certain of its employees residing in foreign offices may have information and evidence relevant to this case.[57]   In other words, the Northern District of California isn't even the location for all of *Apple's* witnesses.

Finally, Apple argues that the Northern District of California is more convenient for Luxpro.   This argument is incorrect.   Luxpro has chosen to file its case in this Court, and as evidenced by Chairman Wu's Declaration, Luxpro's documentary evidence is located in the Western District of Arkansas.   In addition, Luxpro has consented to receive service of process

---

[54] *See, e.g.,* Section IV herein, *supra.*

[55] *Id.*

[56] *See Alden Corp. v. Eazypower Corp.*, 294 F. Supp. 2d 233, 238 (D. Conn. 2003) ("Additionally, the types of witnesses, often experts and employees of the parties, who are called in a patent and commercial litigation case such as this one does not support venue in Illinois over Connecticut, or vice versa, since they will be available in either location.").

[57] *See* Declaration of Thomas R. La Perle In Support of Apple, Inc.'s Motion to Transfer and Motion to Dismiss ("La Perle Declaration") at ¶¶3-4.

and subpoenas issued by this Court, have its witnesses deposed in the Western District of Arkansas, and bring witnesses to trial in the Western District of Arkansas.[58]

2.      **Because No Venue is More Convenient for the Relevant Witnesses (Including Non-Parties), This Case Should Remain in the Western District of Arkansas.**

This Court has stated, "[w]here a motion for change of venue rests on the convenience of witnesses, '[r]elevant considerations include the number of essential non-party witnesses, their location, and the preferences of courts for live testimony as opposed to depositions.'"[59] Accordingly, it is the inconvenience of *non-party* witnesses that is important.  Where no one forum exists that is convenient for the witnesses, transfer should be denied.[60]

Apple states that the Northern District of California is more convenient for non-party witnesses.  This conclusory statement is also without merit.  While non-parties in Asia may be marginally geographically closer to the Northern District of California, non-parties located in Germany, Canada (Ontario), Mexico, New York, Minnesota, Texas, Michigan, North Carolina, and several other locales are geographically closer to the Western District of Arkansas.  Indeed, Luxpro has listed non-party witnesses that are, literally, located around the world.[61]

Moreover, Apple has failed to demonstrate that any of these non-parties (1) will be required to attend trial, and (2) would attend trial in California, but not Arkansas, based on convenience factors.  While it might be marginally closer for some non-parties to access the Northern District of California via the airport in San Francisco, the Western District of Arkansas

---

[58] *See* Wu Declaration at at ¶¶5-6.

[59] *R&R Packaging, Inc.*, 2007 WL 162730, at *3 (quoting, *Nelson v. Soo Line R. Co.*, 58 F. Supp. 2d 1023, 1027 (D. Minn. 1999)).

[60] *See Price Indus. Inc.*, 2002 WL 31681806, at *1675 (refusing to transfer case to different venue where no one venue is more convenient to the parties); *see also MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-CV-289, 2009 WL 440627 (E.D. Tex. Feb. 23, 2009) (noting that where witnesses will come from all over the globe, no convenient forum exists).

[61] *See* Wu Declaration at ¶¶8-10.

is readily accessible and conveniently accessed from international airports located in both Dallas/Fort Worth and Little Rock.

Tellingly, even Apple identifies non-party witnesses (and party witnesses as well) in its venue briefing that are located far from the Northern District of California, including Apple's outside counsel in Germany and Taiwan, Apple's employees in its foreign offices, and Apple's affiliates in foreign countries.[62]

Finally, Apple incorrectly claims that, somehow, the Northern District of California is the only district court that has the power to subpoena certain non-parties.[63]   Other than Apple's potential (and speculatively) ex-employees that would still reside within the 100 mile subpoena power of the Northern District of California, no other non-parties would be covered by Apple's argument.  In such instances, deposition testimony is more than adequate.[64]

At the very least, where, as here, witnesses reside in different fora, this factor is at best a "wash."[65]  Based on that issue alone, Apple's motion should be denied.[66]

> **3.     Sources of Proof are Located in the Western District of Arkansas, in the Northern District of California, Taiwan, and Around the World; No Venue is More Convenient.**

Apple also maintains that this case should be transferred to the Northern District of California based on the location of sources of proof.  Not unlike Apple's analysis related to the

---

[62] *See* La Perle Declaration" at ¶¶3-4.

[63] *See* Apple's Motion to Transfer at ¶1(b).

[64] *See, e.g.*, *RBC Mortgage Co. v. Couch*, 274 F. Supp. 2d 965, 971 (N.D. Ill. 2003) (denying transfer and reasoning that third-party witnesses outside subpoena power of the court can readily appear by video deposition or written transcript); *Household Fin. Servs. v. N. Trade Mortgage Corp.*, No. 99 C 2840, 1999 WL 782072, at *5 (N.D. Ill. Sept. 27, 1999) (same).

[65] *See, e.g., R&R Packaging, Inc.*, 2007 WL 162730, at *3.

[66] *See Arkansas Trophy Hunters Assoc. Inc. v. Texas Trophy Hunters Assoc.*, Civ. No. 06-5067, 2006 WL 3742239, at *1 (W.D. Ark. Dec. 18, 2006) (noting the movant's failure to demonstrate that the other forum was more convenient for non-party witnesses); *Price Indus. Inc.*, 2002 WL 31681806, at *1675 (refusing to transfer case to different venue where no one venue is more convenient to the parties).

convenience of witnesses and non-witnesses, the Northern District of California is only the more convenient venue for sources of *Apple's* proof.

As demonstrated herein, the vast majority of Luxpro's documentary evidence is located in the Western District of Arkansas.[67]  In addition, sources of proof for non-parties are located throughout the world.[68]

The realities of modern litigation are that the location of documents, particularly in this case, will not involve a physical inspection by one party at the other party's facilities.  Rather, the parties will transmit documents to one another that have been gathered from around the world by mail or electronic means.  To that end, the costs associated with either travel for review or duplication and shipping of documents and information in the present matter will not be greater merely because the case is pending in the Western District of Arkansas.[69]

In any event, it is important to note that Luxpro has attested that its records and documents are physically located in the Western District of Arkansas.[70]  Further, Apple admits that not all of its sources of proof are located in the Northern District of California.[71]

### 4.      No Convenient Venue Exists for the Place of the Alleged Wrong.

Luxpro's claims against Apple involve illegal conduct and torts committed by Apple in Canada, China, Germany, Japan, Mexico, Singapore, Taiwan, the United States, and other countries.  In addition, the consumers of MP3 players in Arkansas have been damaged by

---

[67] *See* Section III herein, *supra*.

[68] *Id.*

[69] *See Doolittle v. Structured Invs. Co., LLC*, No. CV 07-356-S-EJL-CWD, 2008 WL 5121591, at *11 (D. Idaho Dec. 4, 2008) ("The location of documents will rarely weigh in favor of transfer because documents may be easily photocopied and shipped to wherever the documents are needed."); *PRG-Schultz USA, Inc. v. Gottschalks, Inc.*, No. C 05-2811 MMC, 2005 WL 2649206, at *5 (N.D. Cal. Oct. 17, 2005) (same); *Ivax Corp. v. B. Braun of Am., Inc.*, No. 00-4909-CIV-KING, 2001 WL 253253, at *2 (S.D. Fla. Feb. 28, 2001) ("In the real world of computerization and electronic transfer of information, the assemblage of accounting data can be accomplished as easily in Miami, Florida as anywhere elsewhere.").

[70] *See* Wu Declaration at ¶7.

[71] *See* La Perle Declaration at ¶¶ 3-4.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE AND BRIEF IN SUPPORT THEREOF**                                                                                                    Page 22

Apple's actions.  It is uncontested that Apple's products are sold throughout the United States, including in the State of Arkansas.  Accordingly, Apple's claim that the conduct complained of occurred only at its company's headquarters in the Northern District of California lacks merit.

Finally, it is uncontested that the Northern District of California may have afforded proper venue in this case.  Thus, by the assertions in its motion, Apple has attempted to "merely shift[ ]the inconvenience from one side to the other," which is not a permissible reason for the Court to grant Apple's motion for change of venue.[72]   Accordingly, Apple has not shown a strong balance of inconvenience in its favor such to disturb Luxpro's choice of forum.[73]

## C.    The Interests of Justice Favor Maintaining this Case in the Western District of Arkansas.

"The 'interest of justice' is a separate component of a § 1404(a) transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a separate result."[74]   Although the Eighth Circuit has approved a district court's use of the following "interest of justice" factors:  "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law,"[75]  the "[f]actors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system," including whether the litigants are likely to receive a speedy trial.[76]

---

[72] *See Terra Int'l*, 119 F.3d at 696-97.

[73] *See Vanusen*, 207 F. Supp. at 534-35; *Norwood*, 349 U.S. at 32; *Arkansas Right to Life*, 972 F.Supp. at 1194; *R&R Packaging*, 2007 WL 162730, at *3.

[74] *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986) (citations omitted) (considering a plaintiff's motion to change venue).

[75] *See Terra Int'l.*, 119 F.3d at 696.

[76] *See Coffey*, 796 F.2d at 221.

1.    **A Speedy Trial is Crucial to Luxpro and Should be Outcome Determinative of the Venue Dispute; Transferring the Case Will Substantially Prejudice Luxpro.**

While Apple has wholly failed to demonstrate that the Northern District of California is a more convenient forum, the availability of a short trial date in the Western District of Arkansas also provides a separate basis on which this Court should deny the motion to transfer.  Apple apparently concedes, by failing to address it, that the Northern District of California's time-to-trial and efficiency in managing its docket is far slower than the Western District of Arkansas. Indeed, the statistics reported in the United States Judicial Caseload Profile bear out the enormous discrepancy.  Those statistics provide that, as of September 30, 2007, in the Northern District of California, there were 7,970 cases filed, 9,005 cases pending, and the median time from filing to trial in civil cases was 24.9 months.[77]   On the other hand, in the Western District of Arkansas, there were 1,067 filings, 881 cases pending, and the median time from filing to trial in civil cases was 13 months.[78]   As a result, Apple's request to transfer venue to the Northern District of California, essentially, would mean that Luxpro would be required to wait at least *one additional year* before this matter is resolved, which would further cripple Luxpro's business.

Because of Apple's pattern of sham litigation, intimidation and illegal interference with Luxpro's partners, Luxpro's business has been substantially damaged.[79]   In light of the foregoing, the interest of justice component in this case strongly outweighs any other factor.[80]

---

[77] *See* Exhibit A, Judicial Caseload Profile Report (N.D. Cal.).
[78] *See* Exhibit B, Judicial Caseload Profile Report (W.D. Ark.).
[79] *See* Wu Declaration at ¶5.
[80] *See Coffey*, 796 F.2d at 221.

In addition, Apple's comments in its brief notwithstanding,[81] because of the slower docket in the Northern District of California, the costs to Luxpro will be greatly increased as opposed to obtaining a speedy, efficient resolution in this Court.

### 2. Luxpro's Choice of Forum is Entitled to Deference.

Although a foreign plaintiff's choice of forum is sometimes accorded less deference,[82] that is not the law in the Eighth Circuit and no court in the Eighth Circuit has so held. A plaintiff's right to choose a forum is well established, and it should not be disturbed unless it is clearly outweighed by the other considerations.[83] The fact that a plaintiff may choose between and among proper venues is well recognized as the availability of multiple forums:

> …not only permits but indeed invites counsel in an adversary system seeking to serve his client's interests, to select the forum that he considers most receptive to his cause…a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor.[84]

Luxpro has chosen this venue for most, if not all, of the foregoing reasons especially given this Court's efficient manner in handling complex litigation and the short time-to-trial; a fact particularly sensitive to Luxpro as detailed herein.[85] Apple's contention that this matter should be transferred to the Northern District of California should be afforded no weight. This is

---

[81] Apple claims on pages 16-17 of its brief that the costs for Luxpro will be less to the extent the case is transferred to the Northern District of California because "it will be easier for Luxpro's principals and employees to travel to California than to Arkansas." *See* Apple's Transfer Brief at pp. 16-17. Apple's claim is without merit, especially given the relative costs of lodging, meals, and other costs will be substantially less in this Judicial District, and the airfare will be substantially the same. In any event, the true cost is felt in having this litigation stretched out for two years or more, which is what will occur if a transfer is granted.

[82] While some authorities note that the deference afforded a foreign plaintiff's choice of venue is less than a domestic plaintiff's choice, the deference is still honored. The circumstances, as described herein, dictate that Luxpro's choice of forum should be afforded its due deference.

[83] *See Arkansas Right to Life*, 972 F. Supp. at 1194 (stating that "[p]laintiff's choice of forum is given 'great weight' and should rarely be disturbed").

[84] *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 689 (E.D. Tex. 1999).

[85] *See* Wu Declaration at ¶5.

---

especially true where, as here, Apple could have filed a declaratory judgment action in the venue of its choosing.[86]

In any event, and to the extent this Court adopts the law of other circuits providing that a foreign plaintiff's choice of venue is afforded less deference than a domestic plaintiff's choice, the amount of deference a foreign plaintiff is entitled to may be bolstered when there is a strong showing of evidence, in which case the "district court must assess[, and articulate,] whether the . . . evidence . . . has . . . overcome any reason to refrain from extending full deference to the foreign plaintiff's choice."[87]  As stated above, a speedy resolution to this litigation is important to Luxpro given the damage inflicted on it by Apple, and this factor is determinative of the § 1404(a) venue transfer analysis.  Moreover, Apple could have filed its own lawsuit in the forum of its choice.  Apple chose to defer such a decision to Luxpro.  Because Luxpro has made such a strong showing in its favor, it has overcome any reason for this Court to refrain from extending its choice of forum the full deference accorded under the law.[88]

3. **The Balance of the Interest of Justice Factors are Neutral or Favor Venue in the Western District of Arkansas.**

The remaining factors related to the interest of justice (*i.e.*, each party's ability to enforce a judgment, obstacles to a fair trial, conflict of law issues, and the advantages of having a local court determine questions of local law) are not material to this dispute.  Nevertheless, given Apple's wealth and commercial activities throughout the United States, including in Arkansas, and California's obligation under the Full Faith and Credit Clause to honor judgments from

---

[86] In public press releases, Luxpro had been threatening to sue Apple for at least a year.  *See* http://www.ft.com/cms/s/0/57458146-9c4a-11db-9c9b-0000779e2340.html?nclick_check=1
[87] *See Windt v. Qwest Commc'ns Int'l., Inc.*, 529 F.3d 183, 190 (3d Cir. 2008), *pet. for cert. filed*, (Oct. 31, 2008) (No. 08-614) (*forum non conveniens* case) (citations omitted, alterations in original); *see also Piper Aircraft Co. v Reyno*, 454 U.S. 235, 255-56 (1981) (*forum non conveniens* case).
[88] *See Windt*, 529 F.3d at 190.

federal courts,[89] the ability to enforce a judgment by Luxpro is neither relevant nor significant.[90] Second, there appear to be no obstacles to a fair trial in Arkansas, and none have been raised by Apple.   Third, Arkansas judges, including the judges in the Western District of Arkansas routinely apply the law of other jurisdictions,[91] rendering this issue immaterial.   Finally, the consumers of Arkansas do have a local interest in this dispute given Apple's actions caused them to pay higher prices for MP3 players.

## VII.    CONCLUSION

This Court should deny Apple's motion to transfer venue because Apple has not met its substantial burden of proving that a transfer is warranted for the convenience of the parties and the witnesses.  By the assertions it made in its motion, Apple has attempted to merely shift the inconvenience from one side to the other, which is not a permissible reason for a court to either disturb Luxpro's choice of forum or grant Apple's motion for change of venue.  However, to the extent it has shown that the Northern District of California is a more convenient forum (which it has not), Apple still has failed to meet its burden of proving that a transfer is warranted in the interest of justice, particularly in light of Luxpro's request for a speedy trial.  Finally, as Luxpro has made such a strong showing in its favor, its choice of forum is entitled to full deference.

WHEREFORE, Luxpro respectfully requests this Court deny Apple's § 1404(a) Motion to Transfer Venue.

---

[89] *Miller v. R.K.A. Mgmt. Corp.*, 99 Cal. App. 3d 460, 468 (Cal. Ct. App. 1979) (stating that "[f]ull faith and credit must be given a final order or judgment of a federal court").
[90] *See B&G Equip. Co., Inc. v. J.T. Eaton & Co., Inc.*, No. WMN-06-1363, 2006 WL 2813886, at *3 (D. Md. Sept. 27, 2006) (noting a judgment obtained in one state's federal court is obviously enforceable and given full faith and credit by another state's federal court).
[91] *See Caudill v. J.C. Penney Corp., Inc.*, No. 06-3003, 2006 WL 1582089, *2 (W.D. Ark. 2006) (applying Texas law to dispute).

**Dated: March 2, 2009.**

Respectfully Submitted,

/s/ Richard_A. Adams_____

Richard A. Adams
Ark. Bar No.  97036
Phillip N. Cockrell
Ark. Bar No.  79154
Corey D. McGaha
Ark. Bar No.  2003047
**PATTON ROBERTS PLLC**
Century Bank Plaza, Suite 400
P.O. Box 6128
Texarkana, Texas 75505-6128
Phone:  (903) 334-7000
Fax:  (903) 334-7007

Jeremy Y. Hutchinson
Ark. Bar No.  2006145
**PATTON ROBERTS PLLC**
111 Center St., Suite 1315
Little Rock, AR 72201
Telephone: (501) 372-3480
Facsimile: (501) 372-3488

Patrick J. Conroy
*Pro Hac Vice*
Glenn E. Janik
*Pro Hac Vice*
**SHORE CHAN BRAGALONE LLP**
Bank of America Plaza
901 Main Street, Suite 3300
Dallas, Texas 75202
Telephone:  (214) 593-9110
Facsimile:  (214) 593-9111

Nicholas H. Patton
Arkansas State Bar No. 63035
**PATTON TIDWELL & SCHROEDER, LLP**
4605 Texas Boulevard, P. O. Box 5398
Texarkana, Texas 75505-5398
Telephone: (903) 792-7080
Facsimile: (903) 792-8233

Patricia L. Peden
**LAW OFFICES OF PATRICIA L.
PEDEN**
5901 Christie Avenue, Suite 201
Emeryville, California 94608
Telephone:  (510) 268-8033
Facsimile:  (510) 547-2446

**ATTORNEYS FOR PLAINTIFF
LUXPRO CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV5(a)(3), this 2nd day of March, 2009.

/s/ Richard A. Adams_____
 Richard A. Adams