IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

LUXPRO CORPORATION, a
Taiwanese corporation                                                                    PLAINTIFF


v.                                         CASE NO. 08-CV-4092


APPLE, INC., f/k/a Apple Computer, Inc.                                          DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion to Dismiss for Failure to State a Claim filed by Defendant

Apple, Inc. ("Apple"). (Doc. 23).  Plaintiff Luxpro Corporation ("Luxpro") responded. (Doc. 34).

Apple replied. (Doc. 37). The Court heard arguments from both parties at a hearing on September

1, 2009. The Court finds this matter ripe for consideration.

## BACKGROUND

Plaintiff Luxpro is a small Taiwanese corporation with its principle place of business in

Taiwan. Luxpro develops, manufactures, and distributes MP3 players worldwide. Defendant Apple

is a California corporation with its principle place of business in Cupertino, California. Apple

manufactures, develops, and distributes MP3 players worldwide under the brand name iPod.

Apple has many versions of MP3 players including the iPod Shuffle, which was introduced

by February 2005. Apple also has an online music store called iTunes Store where it sells songs that

can only be played on iPods. Today, Apple dominates the worldwide MP3 market.

A) Luxpro's Business

Luxpro began producing a variety of MP3 players in 2004.[1] These MP3 players came equipped with features that were unavailable on any iPod at the time. In April 2005, Luxpro entered into an agreement with Beijing Huaqi Informational Digital Technology Co., Ltd. ("Beijing Huaqi") to supply Beijing Huaqi with 630,000 sets of various MP3 players. Beijing Huaqi was also licensed to distribute Luxpro's MP3 players for one year in China. Luxpro also entered into an agreement in April 2005 with Beijing Qian Kun Time Digital Technology Co., Ltd. ("Beijing Qian Kun"). Pursuant to this agreement, Luxpro was to provide over 600,000 sets of MP3 players to Beijing Qian Kun for two years. In June 2005, Luxpro began talks with InterTAN Canada, Ltd. ("InterTAN"). In August 2005, Luxpro shipped over seven thousand Top Tangent MP3 players to InterTAN for a two-week trial in InterTAN's retail stores. The trial was successful and InterTAN began to promote Luxpro's Top Tangent. Also in June of 2005, Luxpro entered into an agreement with TC Digital Electronic SBU ("TC"). Under this agreement, Luxpro agreed to supply TC with more than one million of Luxpro's MP3 players. In September of 2005, Luxpro sent MP3 players valued at NTD 2.8 Million to Kaga Electronics Co., Ltd. ("Kaga Electronics"), an electronics supplier in Japan. Finally, in September 2005, Luxpro was able to begin the process of publicly trading company shares on the GreTai Securities Market ("GreTai").

B) Apple's Actions

In March 2005, while Luxpro was debuting its Super Shuffle MP3 player at the CeBit Tradeshow in Hanover, Germany, Apple applied for and received an injunction from a German

---

[1] Luxpro produces many variations of MP3 players including the EZ Share, EZ Season, EZListen, Top Tangent, EZ Tangent and Super Tangent (formerly the Super Shuffle).

court. This injunction prohibited Luxpro from using the name "Shuffle." Luxpro renamed its Super Shuffle the Super Tangent and added the word "LUXPRO" to the front of the MP3 player. In April 2005, Apple sent letters to Luxpro demanding that they immediately stop marketing, manufacturing, and selling all of its competing MP3 players. Finally, in August 2005, Apple received a preliminary injunction from a Taiwanese court. This injunction prohibited Luxpro from manufacturing, distributing, and marketing any of its MP3 players. Eventually, Luxpro was successful in having the injunction lifted except to those products using the name "Shuffle." This injunction forced Luxpro to stop performing its existing contracts and orders. Luxpro was also forced to halt the progress in having its company shares publicly traded. The Taiwanese injunction was not lifted until November 2005, but it was March 2008 when the Taiwan Supreme Court dismissed the appeal. Apple also filed a claim with the Fair Trade Commission alleging Luxpro violated Taiwan's Fair Trade Act. The Fair Trade Commission issued a letter stating that Luxpro's Tangent product line did not violate the act.

C) Luxpro loses business

While Apple's injunctions were on appeal and without Luxpro's knowledge, Apple sent warning letters to companies who were doing business with Luxpro. These letters demanded that those companies cease business relations with Luxpro. In September 2005, InterTAN pulled 4,500 Luxpro MP3 players from its shelves and destroyed them. In April 2006, InterTAN officers informed Luxpro that they had to cease all business dealings with them because of the pressure exerted on them by Apple. In September 2006, Starbucks Corporation backed out of a proposal to place Luxpro MP3 players in Japanese Starbucks. Also in September 2006, Apple threatened to file suit against Orchard Company, Kaga Electronics, and Web Worker if they did not end all business relationships with Luxpro. Apple also, through its distributors, exerted pressure on Compu Import Co., Carrefour,

3

EUPA, 3C and ET Mall to discontinue business with Luxpro.

STANDARD OF REVIEW

A motion to dismiss should be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require that a complaint state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court assumes that all facts in a complaint are true when considering a motion to dismiss. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed. 2d 517 (1993). While the Court assumes the facts in a complaint are true, it is free to ignore "sweeping legal conclusions" and "unwarranted inferences." *Wiles v. Capitol Indem. Corp.,* 280 F.3d 868, 870 (8th Cir. 2002)*.* When evaluating a complaint**,** its legal sufficiency may be considered but not the weight of the evidence supporting it. *Id.* The Court is not to require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The plaintiff must "nudge their claims across the line from conceivable to plausible." *Id.*

DISCUSSION

In its First Amended Complaint ("FAC"), Luxpro claims Apple: 1) interfered with its contractual/prospective advantage; 2) tortiously interfered with its contracts; 3) committed an attempted common law monopolization; 4) committed commercial disparagement; and 5) violated California Business and Professions Code section 17200. Apple first argues in its Motion to Dismiss that California law applies to Luxpro's claims, the *Noerr-Pennington* doctrine immunizes Apple from all of Luxpro's claims, and if it does not, Luxpro's interference claims are barred by the

4

applicable statute-of-limitations period. Apple goes on to argue that, if Luxpro's claims are not completely barred, they must fail for failure to state a claim upon which relief can be granted. The Court will address each argument in turn.

### 1) Choice of law: California v. Arkansas

Apple asserts that California state law applies to all of Luxpro's claims. Luxpro disagrees and asserts that it is premature for the Court to perform a choice-of-law analysis. Alternatively, Luxpro contends that it has stated claims upon which relief may be granted under both Arkansas or California law. While the Court does not agree that a choice-of-law analysis is premature at this stage in the case, the parties have not sufficiently briefed the issue for the Court to perform an analysis without making arguments for the parties. Rather than engaging in guesswork, the Court will analyze each of Luxpro's claims under both Arkansas and California law to determine if a claim upon which relief may be granted has been made.

### 3) *Noerr-Pennignton* Doctrine

Apple alleges that all of Luxpro's claims are barred by the *Noerr-Pennington* doctrine. Luxpro responds by arguing that Apple's strategic plan to ruin Luxpro's business does not fall under the protection of the *Noerr-Pennington* doctrine. Specifically, in Luxpro's response it states that its FAC "clearly takes issue with the validity and the abusive nature of Apple's litigation." (Doc. 34). However, in the same paragraph Luxpro states its claims "arise from damages caused by Apple's wholly separate strategy of intimidating Luxpro's customers, retailers, suppliers, and manufacturers." (Doc. 34). The Court interprets this language, along with the totality of Luxpro's response and statements made in the hearing, to mean that Luxpro is asserting that Apple's actions of sending warning letters, making threats, and exerting pressure on non-parties is not covered by *Noerr-*

*Pennington* immunity.

The *Noerr-Pennington* doctrine provides that a party's efforts to procure government action, even when motivated by anticompetive intent, are protected from antitrust scrutiny. *E.g., Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). This protection extends to "the use of administrative or judicial process" as well. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 511-16, 92 S.Ct. 609, 612-15, 30 L.Ed.2d 642 (1972). However, if it is determined that the effort to influence the government is a mere sham intended only to cover up anti-competitive activity, then *Noerr-Pennington* immunity will not be available. *Id.* at 511-16. A two part definition of "sham" litigation is provided in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* 508 U.S. 49, 57, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). First, "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 60. Under this first part of the test, the court should consider whether "an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome." *Id.* at 60. If so, then the suit is immunized under *Noerr-Pennington,* but if not, then the court must move on to the subjective component of the test. *Id.* If the litigation is deemed objectively meritless, a court may then consider the litigants subjective motivations. *Id.* Under this second part of the sham test the court should determine whether the baseless lawsuit conceals "an attempt to interfere directly with the business relationships of a competitor." *Id.* 60-61 (quoting *Noerr,* 365 U.S. at 144). Therefore, if litigation is objectively meritless and intended to conceal an attempt to directly interfere with the business relationship of a competitor, it is not protected by *Noerr-Pennington* immunity. *Id.*

6

Here, Apple instituted litigation in both Germany and Taiwan and received preliminary injunctions against Luxpro. Luxpro was ultimately successful in having the Taiwanese injunction lifted. Apple contends that its success in obtaining preliminary injunctions establishes that the litigation was not objectively baseless. *Omni Resource Dev. Corp. v. Conoco, Inc.,* 739 F.2d 1412, 1414 (9th Cir. 1984). Luxpro does not challenge this contention in its response. Therefore, the Court finds that Apple's litigation in Germany and Taiwan are protected under the *Noerr-Pennington* immunity.[2]

However, in this case there is another layer to the applicability of the *Noerr-Pennington* doctrine. Many of the actions by Apple, upon which Luxpro is basing its claims, were committed after the initiation of the litigation and consisted of contact between Apple and non-parties. It is Luxpro's position that, even if the litigation is protected by *Noerr-Pennington* immunity, these actions are not. Apple argues that pre-litigation conduct to protect intellectual property rights is protected under *Noerr-Pennington. See Sosa v. Direct TV,* 437 F.3d 923 (9th Cir. 2006)(holding that if the litigation is protected then pre-suit demand letters between the two parties are protected). Here, it is not pre-litigation letters upon which Luxpro basis its claims. Instead, its claims are based on warning letters sent, threats made, and pressure exerted by Apple, either directly or through its distributors, to Luxpro's clients and distributors after it petitioned the German and Taiwan courts for injunctions. Luxpro argues that because these actions were not in an effort to petition a court they are not protected by *Noerr-Pennington.*

---

[2]The Court notes that, as discussed in the next section, Luxpro's interference claims based on the litigation in both Germany and Taiwan are barred by the statute of limitations. However, it is necessary to determine whether *Noerr-Pennington* immunity even exists in order to determine if it can be extended to Apple's post-litigation conduct, which is not barred by the statute of limitations.

7

It is one's right to petition the government under the First Amendment that is ultimately being protected by the *Noerr-Pennington* doctrine. *See Sosa,* 437 F.3d at 931. In *Sosa*, the Ninth Circuit explained that "only litigation activities which constitute 'communication[s] to the court' may be fairly described as 'petitions.'" 437 F.3d at 933. However, the *Sosa* court reasoned that, based on the breathing space principle, "not only petitions sent directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of the suit' is protected by the *Noerr-Pennington* doctrine." *Sosa,* 437 F.3d at 934 (quoting *Columbia Pictures Inds., Inc. v. Prof'l Real Estate Investors, Inc.,* 944 F.2d 1525, 1528-29 (9th Cir. 1991), aff'd 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993)). This is based on the idea that the First Amendment would be hollow if the court were allowed to erode the right to petition by indirect restraints. *Id.* In *International Motor Contest Ass'n, Inc., v. Stanely,* the court held that "the *Noerr-Pennington* doctrine does not . . . bar defenses (or even claims) in which the filing of the lawsuit, or other action in petitioning the government, is not identified as the inequitable or wrongful conduct." 434 F.Supp.2d 650, 663 (N.D. Iowa 2006). Also in *Laitram Machinery, Inc. v. Carnitech A/S,* the court held that "the *Noerr-Pennington* doctrine does not extend to sending letters to a competitor's customers alleging violation of trade secrets and infringement of patents." 901 F.Supp. 1155, 1161 (E.D. La. 1995). The question for the Court here is whether or not Apple's conduct can be considered a part of its right to petition the court or was incidental to the prosecution of the suit.

First, the Court finds this situation distinguishable from the facts in *Sosa.* In *Sosa*, Direct TV sent  pre-suit demand letters to recipients who it alleged accessed Direct TV's signal illegally. *Id.* at 925-6. The letters threatened a lawsuit if the recipients did not quickly settle with Direct TV. *Id.* at 926. Many of the recipients of these letters settled with Direct TV, but then brought a lawsuit

8

claiming Direct TV violated the Racketeer Influenced and Corrupt Organizations Act. *Id.* The Court held that Direct TV's pre-suit demand letters were protected under the *Noerr-Pennington* immunity because they were incidental to the prosecution of its claim. Here, Apple's course of conduct occurred after it received the injunctions. These warning letters were not pre-suit demand letters, as in *Sosa.* Apple petitioned the government and received redress, and then proceeded to send out warning letters, make threats, and exert pressure on Luxpro's clients and distributors. The Court finds that Apple has not shown that its post-litigation conduct of sending warning letters, making threats, and exerting pressure on Luxpro's clients were incidental to the prosecution of the foreign litigation. Also the Court cannot find that Apple's conduct was in anyway related to its right to petition a court. Therefore, the Court will not allow Apple, at this stage in this litigation, immunity under the *Noerr-Pennington* doctrine.

### 4) Interference with Contractual/Prospective Advantage and Tortious Interference with Contract

#### i) Statute of Limitations

Luxpro filed this action on October 14, 2008. Luxpro claims Apple interfered with a contractual or prospective advantage and tortiously interfered with contracts between Luxpro and other businesses.[3] The parties do not dispute that the applicable statute-of-limitations period is three year under Arkansas law. *Quality Optical of Jonesboro, Inc. v. Trusty Optical, L.L.C.,* 365 Ark. 106, 109-10, 225 S.W.3d 369, 372 (Ark. 2006). Arkansas does not recognize a "continuing tort" theory. *Id.* at 110 (quoting *Chalmers v. Toyota Motor Saes, USA, Inc.,* 326 Ark. 895, 935 S.W.2d 258

---

[3] The parties are not consistent in the names they use for these two claims. The Court will refer to them as the "interference claims."

(1996)). Instead, the statute of limitations period begins to accrue when there is a complete and full cause of action, and in the absence of concealment or wrong, when the injury occurs, not when it is discovered. *Quality Optical,* 365 Ark. at 110.

The Court first notes that the litigation in Germany and Taiwan was commenced in March and August of 2005, respectively. Both of these dates are beyond the three year limitation period. Therefore, the litigation is barred by the applicable statute of limitations. Additionally, pre-suit demand letters would have been sent prior to March and August of 2005 and thus are also barred.

In Luxpro's FAC, it alleges under its interference claims, that due to Apple's contact with non-party entites Luxpro's reasonable expectation of economic advantage was destroyed as well as existing contracts with these entities. However, Luxpro does not assert that the German or Taiwanese injunctions are the basis for the interference claims. While Luxpro does elaborate on the injunctions received by Apple in the FAC and refers to Apple's litigation as an illegal scheme, the Court does not find that Luxpro asserts that these injunctions are the basis for its interference claims.[4] Instead, it seems to be Apple's contact with Luxpro's clients and distributors that is the basis for the interference claims. Therefore, Luxpro's interference claims did not accrue in 2005 at the time the German and Taiwan injunctions were issued.

According to the FAC, which the Court must take as true at this stage, Apple had been sending out letters and exerting pressure on non-party companies as early as September of 2005. However, the non-party companies did not cease doing business with Luxpro until various times

---

[4] Luxpro counsel affirmed this in the hearing on September 1, 2009 when he stated that the basis for Luxpro's interference claims is Apple's post injunction actions, for example warning letters to non-parties.

in 2006.[5] Accordingly, Luxpro's interference claims regarding these non-party companies did not become full and complete causes of action until some time in 2006 when these companies ceased business relationships with Luxpro.[6] *Quality Optical,* 365 Ark. at 110. Therefore, at this stage of the litigation, the Court cannot find that Luxpro's interference claims are barred by the applicable statute of limitations.

### ii) Failure to state an interference claim

Luxpro claims that Apple interfered with its contractual or prospective advantage and tortiously interfered with its contracts with non-parties. In Arkansas, to establish a prima facie case of tortious interference the plaintiff must prove: 1) the existence of a valid contractual relationship or a business expectancy; 2) the defendant's knowledge of the relationship or expectancy; 3) intentional interference by the defendant that induces or causes a breach or termination of the relationship or expectancy; and 4) resultant damage to the party whose relationship or expectancy has been disrupted.[7] *Vowell v. Fairfield Bay Community Club, Inc.,* 346 Ark. 270, 276-77, 58 S.W.3d 324, 329 (2001). In addition, the defendant's conduct must be at least improper. *Id.*

---

[5] InterTAN informed Luxpro in April 2006 it would no longer be doing business with it. In September of 2006 Starbucks backed out of a deal to allow Luxpro to put MP3 players in Japanese Starbucks. Also in September 2006, Apple threatened Orchard, Kaga, and Web Works not to do business with Luxpro.

[6] In both Arkansas and California the elements for tortious interference with contract or business expectancy include an actual breach or disruption of the contractual relationship or expectancy. *See Mid-South Beverages, Inc. v. Forrest City Grocery Co., Inc.,* 300 Ark. 204, 205, 778 S.W.2d 218 (1998); *Pacific Gas & Electric Co. v. Bear Stearns & Co.,* 41 Cal.3d 118, 1126, 791 P.2d 587 (1990).

[7] The Court notes that in Arkansas the claims of tortious interference with contract and tortious interference with a business expectancy do not seem to be distinct, while in California they do have separate elements.

In California, the elements for interference with prospective economic advantage are: 1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; 2) the defendant's knowledge of the relationship; 3) intentional acts on the part of the defendant designed to disrupt the relationship; 4) actual disruption of the relationship; and 5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1153, 63 P.3d 937, 950 (2003). In California, the elements for intentional interference with contractual relationship include: 1) a valid contract between plaintiff and a third party; 2) defendant's knowledge of this contract; 3) the defendant's intentional acts designed to induce breach or disruption of the contractual relationship; 4) actual breach or disruption of the contractual relationship; and 5) resulting damage. *Pacific Gas & Electric Co. v. Bear Stearns & Co.,* 41 Cal.3d 1118, 1126, 791 P.2d 587 (1990).

Apple argues that Luxpro has failed to allege a probability of economic advantage or the existence of a contract with many of the alleged distributors and clients. Specifically, Apple alleges that Luxpro's claim regarding Starbucks of Japan does not establish a reasonable probability of economic advantage or the existence of a contract sufficient to satisfy the *Twombly* standard. Secondly, Apple asserts that Luxpro's allegations regarding its relationships with Orchard Company, Kaga Electronics, Web Worker, Carrefour, UEPA, 3C, and ET Mall are too vague to met the *Twombly* standard.[8] The Court will address each of Apple's arguments as they apply to the individual companies.

---

[8]The Court notes that it is not addressing any of Apple's arguments regarding the interference claims applicable to the litigation in Germany and Taiwan and the pre-suit demand letters because the Court has already found these claims to be barred by the statute of limitations.

In Arkansas, the existence of a contractual relationship is not a prerequisite to an action for tortious interference with business expectancy. *Mid-South Beverages,* 300 Ark. at 205. Instead, the existence of a valid business expectancy is sufficient. *Id.* Prosser defines "business expectancy" as "[F]uture contractual relations, such as . . . the opportunity of obtaining customers. In such cases, there is a background of business experience on the basis of which it is possible to estimate . . . the likelihood that the plaintiff would have received it if the defendant had not interfered." *Stewart Title Guar. Co. v. American Abstract & Title Co.*, 363 Ark. 530, 542, 215 S.W.3d 596, 602-03 (2005)(quoting W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* § 130 at 1003-09 (5th ed. 1984)). The *Restatement (Second) of Torts* § 766B provides that any prospective business relationship that would be of pecuniary value constitutes a valid business expectancy. *Stewart Title,* 363 Ark. at 543. The business expectancy must be specifically plead. *Id.*

In California, the plaintiff must show an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff. *Korea Supply,* 29 Cal.4th at 1153. This protects the expectation that the relationship eventually will yield the desired benefit, not necessarily the more speculative expectation that a potentially beneficial relationship will eventually arise. *Westside Center Assoc. v. Safeway Store 23, Inc.,* 42 Cal. App. 4th 507, 527 (Cal. Ct. App. 1996)(holding that a claim of "interference with the market" with no factual basis of an existing relationship with an identifiable buyer or plaintiff's expectation of a future sale was insufficient to show plaintiff had an economic relationship with a prospective buyer which was reasonably likely to produce a future beneficial sale of property).[9]

---

[9] The Court notes that *Westside* is an appeal from a trial court judgment following a lengthy pretrial proceeding where the court decided questions of law based on stipulated facts and offers of proof, it was not a 12(b)(6) motion to dismiss. *See Westside,* 42 Cal.App.4th 507.

13

First, Apple claims that Luxpro's claims regarding Starbucks Japan mut be dismissed because no probability of business expectation was shown. Luxpro stated in its FAC that Starbucks Japan agreed to initiate a proposal with Luxpro in which Luxpro would provide MP3 players for Starbucks Japan to sell in its stores. However, after pressure from Apple, Starbucks Japan refused to have any business relationship with Luxpro. The Court finds that under either Arkansas or California law Luxpro has sufficiently alleged the probability of a business expectancy with Starbucks Japan. Luxpro specifically named Starbucks Japan and identified the existing relationship between the two companies. *Westside,* 42 Cal.App.4th 507. From the FAC, the Court is able to determine that there is a likelihood that Luxpro would have entered into a contract with Starbucks Japan for distribution of MP3 players. *Stewart Title,* 363 Ark. at 542. The Court finds that Luxpro's FAC states a plausible claim for interference with business expectancy as it relates to Luxpro's relationship with Starbucks Japan under either Arkansas or California law. *Twombly,* 550 U.S. at 570.

Second, Apple claims that Luxpro's interference claim regarding Kaga Electronics should be dismissed because no probability of business expectancy was shown. Luxpro claims that it has a past business relationship with Kaga Electronics, specifically Luxpro sold MP3 players to Kaga Electronics valued at 2.8 million NTD in September 2005. Luxpro also claims that Apple threatened Kaga Electronics to end all business relationships with Luxpro. Again, the Court finds that Luxpro has sufficiently alleged the probability of a business expectancy with Kaga Electronics under either Arkansas or California law. Luxpro specifically named Kaga Electronics and identified its business relationship between the companies. *Westside,* 42 Cal.App.4th 507. From the FAC the Court is able to determine that there is a likelihood that Luxpro would have continued to do business with Kaga Electronics for distribution of MP3 players. *Stewart Title,* 363 Ark. at 542. The Court finds that

14

Luxpro's FAC states a plausible claim for interference with business expectancy as to its relationship with Kaga Electronics under both Arkansas and California law. *Twombly,* 550 U.S. at 570.

Next, Apple alleges that Luxpro's allegations regarding its relationship with Orchard Company, Web Worker, Carrefour, EUPA, 3C, and ET Mall are vague and do not state a claim upon which relief can be granted. The Court notes that in Luxpro's FAC it does state that each of these companies are clients or distributors of Luxpro; however, that is the extent of facts offered regarding these companies. There are no facts to indicate the business relationship between these companies and Luxpro. The Court finds that Luxpro has failed to state an interference claim under the *Twombly* standard regarding Orchard Company, Web Worker, Carrefour, EUPA, 3C, and ET Mall. Therefore, Luxpro's interference claims regarding these companies are **dismissed.**

Finally, Apple argues that Luxpro has not sufficiently alleged any disruption of an economic relationship or contract with Kaga Electronics or Compu Import Co.[10] The Court agrees. Nowhere in the FAC does Luxpro claim that any of these companies discontinued their business relationships with Luxpro or breached any contracts with Luxpro. Even in response to Apple's Motion to Dismiss, there is no mention of these companies discontinuing their business relationships with Luxpro. Without pleading that a breach or termination of a contract or business expectancy or actual disruption of the business relationship, Luxpro has not adequately plead the elements of its interference claims as to these companies under Arkansas or California  law. *Vowell,* 346 Ark. at 276-77; *Korea Supply,* 29 Cal.4th at 1153; and *Pacific Gas,* 41 Cal.3d at 1126. Therefore, Luxpro's interference claims regarding Kaga Electronics and Compu Import Co. are **dismissed.**

---

[10] Apple also made this argument regarding Orchard Company, Web Worker, Carrefour, EUPA, and ET Mall, but because the Court has already dismissed the claims against these companies there is no need to address the arguments.

5) Attempted Common Law Monopolization

As an initial matter, the Court will address Luxpro's argument that it makes little sense for the Court to determine whether Arkansas, California, or another state's law applies to Luxpro's attempted common law monopolization claim. The Court points out that it would be unable to determine if Luxpro has stated a claim upon which relief may be granted if it does not at least narrow which of the 50 states' law applies to the claim. At this time, the Court cannot conceive a scenario where another state's law other than the law of Arkansas or California would apply to this claim. Therefore, the Court will continue its course by determining whether Luxpro has stated a claim upon which relief may be granted under both California and Arkansas law. Apple argues that attempted common law monopolization is not a cause of action in either California or Arkansas. Luxpro responds that it is a cause of action in both states and that it has adequately pleaded the claim under both state laws.

Neither the California Supreme Court or the Court of Appeals has actually analyzed whether a common law monopolization claim is cognizable under California law. *Lorenzo v. Qualcomm, Inc.,* 603 F.Supp.2d 1291, 1305 (S.D. Cal. 2009) (citing *Burdell v. Grandi*, 152 Cal. 376, 92 P. 1022 (1907) and *Exxon Corp. v. Superior Court*, 51 Cal. App. 4th 1672, 60 Cal. Rptr. 2d 195 (Cal. Ct. App. 1997)). However, in *In re: Intel Corp. Microprocessor Antitrust Litigation,* 496 F.Supp.2d 404, 420 (D. Del. 2007) and *Branning v. Apple Computer, Inc.,* 1-05-cv-045719 (Cal. Super. Ct. May 9, 2006) the courts held that there is no cause of action for common law monopoly under California law. The *Intel* and *Branning* court came to this conclusion by analyzing the legislative history of an attempt to amend the Cartwright Act in 2002. *Lorenzo*, 603 F.Supp.2d at 1306. In this legislative history, the California Attorney General reported to the state legislature that "the remedies for illegal

16

monopolization are limited under current law to relief in a federal court." *Id.* (quoting *Intel,* 496 F.Sup.2d at 419). This indicated that California did not have a common law regarding monopolization. In the absence of California Supreme Court law to the contrary, the Southern District of California found the reasoning in *Intel* and *Branning* to be persuasive. This Court agrees and finds that common law monopolization is not a cognizable claim under California law. Consequently, Luxpro's attempted common law monopolization claim is not a cause of action under the laws of California.

The Court is unable to find any Arkansas precedent supporting Luxpro's contention that a claim for attempted common law monopolization is recognized as a civil cause of action under Arkansas law. Luxpro cites to the Court *Nelson v. Berry Petroleum Co.,* 242 Ark. 273, 279, n. 2, 413 S.W.2d 46, 50 n.2 (1967) in support of its contention that such a claim exists. In *Nelson*, the Arkansas Supreme Court states in a footnote that ". . . an attempted monopoly or an agreement in restraining of trade, was a criminal conspiracy at common law." *Id.* This statement is not expanded on and is only offered in support of the Chancery Court's jurisdiction over the *Nelson* suit which was one by a taxpayer against an oil company for conspiracy to fix prices. *Id.* at 274. In *Hammond Packing Co. v. State,* 81 Ark. 519, 100 S.W. 407 (1907), the Arkansas Supreme Court explained that an attempted monopoly, which was an agreement to restrain the freedom of trade, was a criminal conspiracy at common law. *Id.* at 410. A civil conspiracy at common law is a conspiracy to do an unlawful act, or a conspiracy to do a lawful act in an unlawful manner. *Id.* The remedy for a criminal conspiracy at common law was indictment for the criminal conspiracy and damages for the aggrieved party. *Id.* In *Hammond,* the claim was for doing business in violation of the antitrust act of 1905. *Id.* In *Nelson,* the claims where asserted under the Sherman Anti-Trust Act, the Clayton Act, and the

17

Arkansas Constitution. 242 Ark. at 273.

First, the Court notes that the Plaintiff cited no other, and the Court is unable to locate any other Arkansas precedent addressing an attempted common law monopolization. Therefore, it must rely solely on *Nelson* and *Hammond* for direction. The Court does not find that these two cases indicate that Arkansas recognizes a civil common law claim for attempted monopolization. Instead, these cases only indicate to the court that an attempt to create a monopoly was a crime at common law. This is irrelevant to a civil common law claim attempting to hold Apple civilly liable for a common law claim. Moreover, *Hammond* defines an attempted monopoly at common law as an agreement or conspiracy to restrain trade. *Id.* Here, Luxpro is not claiming that Apple had an agreement or conspiracy to restrain trade. Therefore, the Court finds that there is no cause of action in Arkansas for a civil claim of attempted common law monopolization.

Because the Court finds that there is no cause of action for attempted common law monopolization recognized in California or Arkansas, Luxpro's claim for attempted common law monopolization has failed to state a claim upon which relief may be granted and is **dismissed**.

6) Commercial Disparagement

Apple alleges that it is unclear whether Luxpro's commercial disparagement claim is one for defamation or trade libel. Luxpro responds that it claims both. Apple goes on to assert that Luxpro has failed to adequately plead a claim for either defamation or trade libel because it has not 1) specifically identified the words or substance of the defamatory statements it claims constitute libel; or 2) specifically plead special damages which is required for a claim of trade libel. Luxpro responds that it did specifically identify the false statements and that it did specifically plead special damages.

The Court notes that because it is unable to locate Arkansas precedent on a claim for

18

"commercial disparagement" or one for "trade libel" it will treat this claim as one for defamation as that is the closest claim in Arkansas to one for trade libel.[11] In Arkansas, for a claim of defamation, Luxpro must prove: 1) the defamatory nature of the statement of fact; 2) the statement's identification of or reference to the plaintiff; 3) publication of the statement by the defendant; 4) the defendant's fault in the publication; 5) the statement's falsity; and 6) damages. *Faulkner v. Arkansas Children's Hosp.,* 347 Ark. 941, 955-56, 69 S.W.3d 393, 402 (2002). The Eighth Circuit has explained that the complaint must set forth the alleged defamatory statements and identify the persons to whom they were published or the defendant cannot adequately respond. *Freeman v. Bechtel Constr. Co.,* 87 F.3d 1029, 1031 (8th Cir. 1996). Additionally, the words alleged to be defamatory must be pleaded and proved. *Holliday v. Great Atlantic & Pacific Tea Co.,* 256 F.2d 297, 302 (8th Cir. 1958). While a general knowledge of the exact language used is necessary to form a responsive pleading, a district court should be leery to strike the allegations and instead allow the plaintiff a chance to amend its complaint. *Asay v. Hallmark Cards, Inc.,* 594 F.2d 692, 699 (8th Cir. 1979)(holding that despite a poorly plead defamation claim the plaintiff should be provided an opportunity to amend its complaint in accordance with the policy to liberally permit amendments).

In California, to state a claim for defamation the defamatory words must be specifically identified, if not plead verbatim. *Silicon Knights v. Crystal Dynamics,* 983 F.Supp. 1303, 1314 (N.C. Cal. 1997). The plaintiff does not have to allege the exact words, but the substance of the defamatory statement must be alleged. *Id.* In the Ninth Circuit, to state a claim for trade libel the plaintiff must

---

[11] The Court is unclear whether Luxpro is even alleging Arkansas law applies to this commercial disparagement claim, as it did not cite any case law in its section on commercial disparagement in its response. However, the Court will stay on its course of analyzing each claim under both Arkansas and California law.

provide specific statements and the defamatory character of the language must be apparent from the words. *Films of Distinction, Inc. v. Allegro Film Prods., Inc.* 12 F. Supp. 2d 1068, 1081, n. 8 (C.D.Cal. 1998). Additionally, in California a claim for trade libel requires pleading and proof of special damages in the form of pecuniary loss. *Isuzu Motors, Ltd. v. Consumers Union of United States, Inc.,* 12 F.Supp.2d 1035, 1047 (C.D. Cal. 1998). Rule 9(g) of the Federal Rules of Civil Procedure requires that "[w]hen items of special damages are claimed, they shall be specifically stated." The plaintiff need not plead the specific dollar amount, but must allege facts showing an "established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, and facts showing that such loss in sales were the natural and probable result of such publication." *Isuzu Motors,* 12 F. Supp. 2d at 1047 (quoting *Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories,* 17 F.2d 255, 261 (8th Cir. 1926)).

Here, Luxpro claims that: 1) its detailed description of the unlawful campaign Apple undertook to discredit Luxpro's products and reputation is sufficient to specifically identify the defamatory statements and plead special damages; 2) its FAC is sufficient because it identifies that Apple or Apple's suppliers made the defamatory statements and the recipients of the statements were InterTAN, Starbucks Japan, Orchard Company, Kaga Electronics, and Compu Import Co.; and 3) the substance of the defamatory statements concerned the manner in which Luxpro designed, produced, and marketed its products. The Court finds that this is insufficient. Luxpro did not specifically identify any defamatory words or provide a general knowledge of the exact language used. *Silicon Knights,* 983 F.Supp. at 1314; *Asay,* 594 F.2d at 699. Instead, Luxpro only provided the subject matter of the alleged defamation. This is insufficient under both Arkansas' defamation laws and California's defamation and trade libel laws.

Additionally, Luxpro has failed to specifically plead special damages for trade libel as required by Rule 9(g) of the Federal Rules of Civil Procedure. Luxpro alleges that it is not required to plead the exact amount of special damages, but only the kind of special damages. *Great American Indemnity Company v. Brown,* 307 F.2d 306, 308 (5th Cir. 1962). While the Court agrees that Luxpro does not have to plead the exact amount of its special damages, it does need to provide more than the general statements offered in the FAC. *See Isuzu Motors,* 12 F. Supp. 2d at 1047; *see also Erick Bowman Remedy Co.,* 17 F.2d at 261.

Therefore, the Court finds that Luxpro has inadequately plead a claim for defamation and/or trade libel under either Arkansas or California law. However, the Court will grant Luxpro leave to Amend its FAC as to its defamation and trade libel claims. *Asay,* 594 F.2d at 699.

7) California Business and Professions Code section 17200

In Luxpro's FACit claims that Apple's conduct constitutes unfair competition and unlawful, unfair, and fraudulent business acts and practices within the meaning of the California Unfair Competition Law, section 17200, et seq., of the California Business and Professions Code ("Section 17200").[12] Section 17200 prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 180, 973 P.2d 527, 539 (1999). Section 17200 borrows violations of other laws and treats them as unlawful practices which makes them independently actionable under Section 17200. *Id.* at 540. Because Luxpro's Section 17200 claims are dependent on the same facts

---

[12] Busienss and Professions Code section 17200 states: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

of Luxpro's disparagement claims and the Court is allowing Luxpro to amend its FAC as to those

claims, the Court finds that an analysis on the section 17200 claim would be premature at this time.

<u>CONCLUSION</u>

For the reasons stated above, the Court finds that Apple's Motion to Dismiss should be and

hereby is **GRANTED** in part and **DENIED** in part. Luxpro's claim of attempted common law

monopolization is **DISMISSED**. Furthermore, Luxpro's interference claims regarding Orchard

Company, Web Worker, Carrefour, EUPA, 3C, ET Mall, Kaga Electronics, and Compu Import are

**DISMISSED** without prejudice. Luxpro is directed to file any amendments to its FAC regarding its

commercial disparagement claim within 14 days of the date of this order.

**IT IS SO ORDERED,** this 28th day of September, 2009.


     /s/ Harry F. Barnes
     Hon. Harry F. Barnes
     United States District Judge

22