**ORAL ARGUMENT REQUESTED**

No. _____

IN THE
**UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

**IN RE APPLE INC.,**

*Petitioner.*

Original Proceeding from the United States District Court
for the Western District of Arkansas.

**APPENDIX OF EXHIBITS
TO PETITION FOR WRIT OF MANDAMUS
OF APPLE INC.**

Kevin A. Crass
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Ste. 2000
Little Rock, Arkansas 72201-3522
Telephone: (501) 376-2011

James M. Pratt, Jr.
144 Washington Street, Northwest
P.O. Box 938
Camden, Arkansas 71701-0938
Telephone: (870) 836-7328

Penelope A. Preovolos
Stuart C. Plunkett
MORRISON FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000

*Counsel for Petitioner*

November 19, 2009

878589.1

**ORAL ARGUMENT REQUESTED**

**No. _____**

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

---

**IN RE APPLE INC.,**

*Petitioner.*

---

Original Proceeding from the United States District Court
for the Western District of Arkansas.

---

**APPENDIX OF EXHIBITS
TO PETITION FOR WRIT OF MANDAMUS
OF APPLE INC.**

---

Kevin A. Crass
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Ste. 2000
Little Rock, Arkansas 72201-3522
Telephone: (501) 376-2011

James M. Pratt, Jr.
144 Washington Street, Northwest
P.O. Box 938
Camden, Arkansas 71701-0938
Telephone: (870) 836-7328

Penelope A. Preovolos
Stuart C. Plunkett
MORRISON FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000

*Counsel for Petitioner*

November 19, 2009

878589.1

## EXHIBITS

Exhibit A    Plaintiff's First Amended Complaint (October 20, 2008)

Exhibit B    Defendant Apple Inc's Motion to Transfer (December 19, 2008)

Exhibit C    Defendant Apple Inc's Brief in Support of Motion to Transfer (December 19, 2008)

Exhibit D    Declaration of Thomas R. La Perle in Support of Defendant Apple Inc.'s Motion to Transfer and Motion to Dismiss (December 19, 2008)

Exhibit E    Plaintiff's Response in Opposition to Defendant's Motion to Transfer Venue and Brief in Support Thereof (March 2, 2009)

Exhibit F    Defendant Apple Inc's Reply in Support of Motion to Transfer (April 6, 2009)

Exhibit G    Order (September 28, 2009)

Exhibit H    Judicial Caseload Statistics for the Northern District of California and the Western District of Arkansas

November 19, 2009

Respectfully submitted,

Kevin A. Crass
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Ste. 2000
Little Rock, Arkansas 72201-3522
Telephone: (501) 376-2011

James M. Pratt, Jr.
Arkansas Bar No.: 74124
144 Washington Street, Northwest
P.O. Box 938

Camden, Arkansas 71701-0938
Telephone: (870) 836-7328

Penelope A. Preovolos
Stuart C. Plunkett
MORRISON FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000

# CERTIFICATE OF SERVICE

I, Kevin A. Crass, hereby certify that a copy of the foregoing was forwarded to the parties of record, *via* United States Mail, with first class postage affixed thereto, on this 19th day of November, 2009:

The Honorable Harry F. Barnes
United States District Judge
219 U.S. Post Office & Courthouse
101 South Jackson Street
El Dorado, Arkansas  71731

Jeremy Y. Hutchinson
Patton Roberts PLLC
111 Center Street, Suite 1315
Little Rock, Arkansas  72201

Richard A. Adams
Phillip N. Cockrell
Corey D. McGaha
Leisa B. Pearlman
Reid D. Miller
Patton Roberts PLLC
Post Office Box 6128
Texarkana, Texas  75505-6128

Patrick J. Conroy
Glenn E. Janik
Shore Chan Bragalone LLP
Bank of America Plaza
901 Main Street, Suite 3300
Dallas, Texas  75202

_KEVIN A. CRASS_

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## TEXARKANA DIVISION

LUXPRO CORPORATION, a Taiwanese )
corporation, )
)
)
          Plaintiff, )
)    Civil Action No. 4:08-CV-04092-HFB
vs. )
)
APPLE, INC. f/k/a Apple Computer, )
Inc., )
)
          Defendant. )

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT

---

**NOW COMES** Plaintiff Luxpro Corporation, a Taiwanese corporation, and for its Original Complaint against Apple, Inc. f/k/a Apple Computer, Inc. states:

### I.    PARTIES

1.    Luxpro Corporation ("Luxpro") is a Taiwanese corporation, with its principal place of business in Taiwan. It develops, manufactures, distributes and sells MP3 players throughout the world, including in the United States.  Luxpro is a citizen of and is domiciled in Taiwan, a foreign state.

2.    Apple, Inc. ("Apple") is a California corporation that manufactures, distributes and sells MP3 players under the brand name iPod throughout the world. Apple's principal place of business and corporate headquarters are located at 1 Infinite Loop, Cupertino, Santa Clara County, California 95014.  Apple is a citizen of and is domiciled in California.

## II.    JURISDICTION AND VENUE

3.    This Court has original jurisdiction over this case under 28 U.S.C. § 1332(a)(2).  The matter in controversy exceeds the sum or value of $75,000, exclusive of costs and interest.  Luxpro is a citizen of Taiwan, a foreign state.  Apple is a citizen of California.  Therefore, the Court has subject-matter jurisdiction over this case based on diversity of citizenship.

4.    This Court has personal jurisdiction over Apple because Apple regularly conducts business in this state.  At all relevant times, Apple was engaged in the business of marketing, distributing and/or selling its consumer electronics products, including iPods, in Arkansas and throughout the United States.

5.    Venue in the Western District of Arkansas is proper for this case under 28 USC § 1391(a)(1)-(2) and (c).  Apple conducts business in this judicial district and is subject to personal jurisdiction at all times relevant herein.  Apple maintains a substantial presence in this District as it has numerous retail sales locations throughout this District.  Further, Apple promotes, uses, sales, engages in marketing and/or distributes its iPods and related services throughout this District.

## III.    FACTUAL BACKGROUND

6.    Through a scheme designed to interfere with Luxpro's existing and prospective business relations, Apple unlawfully attempted, and partially succeeded, in squashing the success Luxpro had achieved through lawful efforts to compete in the worldwide MP3 player market.  Luxpro's MP3 players were independently researched, developed, manufactured, distributed, licensed and sold.  However, Apple furthered its

unending aspiration to monopolize the worldwide MP3 player market by preventing fair competition from smaller MP3 player manufacturers like Luxpro.

**A.     The History of Apple's Ipod Products**

      7.     On January 8, 2001, Apple introduced iTunes at the Macworld Expo. iTunes is a digital media player application that plays and organizes digital music and video files.  On October 23, 2001, Apple introduced the iPod which interfaces with iTunes to play music files.  By February 2005, Apple had released several generations of the iPod Classic, the first generation of the iPod mini and the iPod Shuffle.  On April 23, 2003, Apple introduced its online media store, the iTunes Store.

      8.     Soon after the iTunes Store launch, Apple announced the iTunes Store had over one million songs available for download in the United States.  Through the iTunes Stores, Apple has gained control over 80% of the music downloaded in the U.S.  However, Apple deliberately makes digital music purchased at the iTunes Store inoperable with its competitor's MP3 players.  Thus, in order to play music from Apple's iTunes Store, the dominant online music retailer, the consumer's only option in the digital music player market is Apple's iPods.  Apple also makes the iPod in such a manner that it is unable to play music sold at rival online music stores, leaving consumers with no choice but to purchase music from iTunes.

      9.     Unlike most internet sites, iTunes Store is accessed with proprietary Apple software rather than with a web browser.  The iTunes Store sells individual songs that can only be played by the iPod.  Individual songs can be downloaded from the iTunes Store for $.99.  Apple receives funds from iTunes purchases that it then funnels to the recording industry.  Apple does not turn a profit on the sale from iTunes.  Instead, Apple

relies on sales of its MP3 players to secure significant profits. Because of the importance of the worldwide MP3 player market to Apple's bottom line, Apple has sought to monopolize the worldwide MP3 player market and crush legitimate, smaller competitors.

**B.    How Apple Monopolized the Worldwide Market**

10.    Since the introduction of the iPod, Apple spurred the creation of the MP3 market and dominated it. Apple has sold over 22 million iPods since its introduction. In the United States alone, Apple has obtained a dominant 90% market share of the hard drive based MP3 player market and 70% share of the MP3 player general market.

11.    Apple dominates the worldwide market today. In 2005, Apple's iPod increased its market share to 26% from 21% in the prior year. Mid-range competitors such as Creative Technologies which created the Ltd.'s ZEN series, Reigncom which created the Ltd.'s Iriver series, Samsung and SanDisk's combined market share dropped from the previous year to a combined 14% market share, perhaps due to legitimate competition from smaller-range manufacturers of other digital music players. These smaller ranged manufacturers increased their combined market share of the digital music player market by eight percent in one year, which was greater than Apple's 5% gain from 2004 through 2005. It is no wonder then, once Apple realized its strongest threat in the MP3 player market included mid-range and small-range manufacturers, that Apple intentionally targeted Luxpro, a small-range MP3 player manufacturer in Taiwan. Apple sought to conquer smaller competitors such as Luxpro to prevent an increased market share among the smaller-ranged manufacturers.

### C.    Apple's Conduct as to the Worldwide MP3 Player Market

12.    Since the introduction of the iPod, Apple has sought to stamp out the competition using various schemes.  In the last few years, Apple's competitors have attempted to fight back with multiple suits having been filed alleging, among other things, that Apple engages in illegal anti-trust tying schemes (between the iPod and iTunes), unfair competition, and monopolizing behavior by placing unneeded and unjustifiable technological restrictions on its most popular products in an effort to restrict consumer choice and restrain competition in the digital music markets.

13.    Apple developed a confidential, internal strategy to stop competition through strategically filed litigation and has repeatedly used other unfair tactics against other small manufacturers.  As an example, although Creative Technology, a Singapore based company, beat Apple to the patent punch on iPod's interface, Apple sued Creative Technology in a Wisconsin District Court alleging that Creative Technologies infringed on four of Apple's patents. Ultimately, the case was settled when Apple forked over one hundred million dollars to Creative Technologies in 2006.  Ironically, the settlement allowed Apple to use Creative's patent on the interface in Apple products, another tactic designed to promote growth of the Apple monopoly and to deter other lawful efforts to compete by smaller manufacturers.  .

### D.    The Luxpro Corporation's History and Product Development

14.    The Luxpro Corporation was founded in December of 2002.  Luxpro owns an outstanding research and development team which has a first-rate reputation in the worldwide MP3 player market for high quality design.  Among others products, Luxpro developed and marketed a variety of cutting edge MP3 players such as the Luxpro EZ

Share MX-125D ("EZ Share"), EZ Season MX-110D ("EZ Season"), EZ Listen MX-265E ("EZ Listen"), Top Tangent MX-585D ("Top Tangent"), EZ Tangent MX-595D ("EZ Tangent") and Super Tangent MX-575D/1075D ("Super Tangent").

15.     Luxpro's products are progressive and unique. Luxpro spent several million dollars in research and development.  Ultimately, Luxpro launched the EZ Share in January 2004 boasting features Apple products fail to contain.  For example, the EZ Share entered the market with the capability to listen to FM radio, record music, and move, receive and set up music files.  Similarly, the EZ Season (product design launched in July 2004), EZ Listen (product design launched in August 2004), Top Tangent (product design launched in April 2005), EZ Tangent (product design launched in April 2005) and Super Tangent (formally in volume production by May 2005) all contained these extra features.  Additionally, Luxpro developed the EZ Listen, Top Tangent, and EZ Tangent with a seven language learning function and tri-color OLED display monitors.  Moreover, the Top Tangent and EZ Tangent were the first MP3 players with a Voice Positioning System. The development of these advanced products led to increased recognition of Luxpro's products in the worldwide MP3 player market and allowed Luxpro to rapidly expand its business and operations.

**E.     Luxpro's MP3 Products Gain Momentum in the Global Consumer Electronics Market.**

16.     The success of Luxpro's MP3 players allowed it to enter into a number of distributorships agreements that should have allowed Luxpro to compete with Apple in the global MP3 marketplace throughout Asia and the United States.

17.     For example, in April 2005, Luxpro entered into an agreement with Beijing Huaqi Informational Digital Technology Co., Ltd. ("Beijing Huaqi").  Under this

agreement, Luxpro agreed to supply Beijing Huaqi with 630,000 sets of its Super Tangent, Top Tangents, EZ Tangents and EZ Listens MP3 players.  Also under this agreement, Beijing Huaqi was licensed to distribute Luxpro's MP3 players in China for one year.

18.   Also in April 2005, Luxpro entered into another agreement with Beijing Qian Kun Time Digital Technology Co., Ltd. ("Beijing Qian Kun").   Under this agreement, Luxpro agreed to supply Beijing Qian Kun with over 600,000 sets of its Super Tangents, Top Tangents, EZ Tangents and EZ Listens MP3 players for two years.  Also under this agreement, Beijing Qian Kun could distribute Luxpro's MP3 players in China for two years.

19.   In June 2005, officers of InterTAN Canada, Ltd. ("InterTAN") traveled to Taiwan to meet with Luxpro about selling Luxpro's MP3 players in InterTAN's retail stores.  InterTAN is a Canadian consumer electronics retailer that operates under "The Source by Circuit City" banner and is a wholly owned subsidiary of Circuit City Stores, Inc.  InterTAN showed great interest in Luxpro's MP3 players.  InterTAN's interest in Luxpro's MP3 players was, in part, based on Luxpro's MP3 players' screens functioning as an FM radio and their ability to record sound.  InterTAN placed orders for Luxpro's Top Tangent under the brand name "Centrios."  In August 2005, Luxpro shipped over seven thousand of its Top Tangent MP3 players under the brand name "Centrios" to InterTAN for a two-week trial sell in InterTAN's retail stores.  Luxpro's Top Tangents were popular with InterTAN's customers and flew off of the retailer's shelves.  In response to this popularity, InterTAN began to actively promote the Top Tangent.

20.    In June 2005, Luxpro entered into another agreement with TC Digital Electronic SBU of Shenzen City, China ("TC").  Under this agreement, Luxpro agreed to supply TC with more than one million sets of Super Tangents, Top Tangents, EZ Tangents and EZ Listens for two years.  Under the agreement, TC could distribute Luxpro's MP3 players for two years.

21.    By August 2005, Luxpro had obtained orders for its MP3 players from all over the world and had attracted the interest of venture capital firms in the United States, Japan, and other countries.  Specifically, Luxpro received substantial interest and orders for its MP3 players from retailers, distributers, suppliers, and consumers in the United States, and around the globe, during this time frame.

22.    In September 2005, Luxpro sent MP3 players valued at $NTD 2.8 Million to Kaga Electronics Co., Ltd., an electronics supplier in Japan.

## F.    Luxpro's Evolution and the Market Interest in Its Products Provides the Foundation for a Public Offering of Luxpro Securities.

23.    Luxpro's world-wide growth allowed it, in 2005, to begin the process of publicly trading company shares on the GreTai Securities Market ("GreTai"), a non-profit organization which took over the business of public stock trading from the Taipei Securities Dealer's Association.  A listing on the Taiwanese GreTai Securities Market would have been a great advantage to Luxpro's enterprise, shareholders and employees. The opportunity to be traded on GreTai would have made raising long-term capital for growth easier, bettered Luxpro's already outstanding reputation and promoted business growth, improved Luxpro's interior management system and operations and increased Luxpro's support from domestic industries.  Moreover, a GreTai listing would have allowed Luxpro to establish a stock option system for employees designed to increase

loyalty to the company, increase the social status of Luxpro's employees and allow employees to share in the accomplishments of the company.

24.    Being traded on GreTai would have benefited Luxpro's shareholders by increasing the marketability of Luxpro's stock, made Luxpro's stock easier to circulate and liquidate, and would have allowed Luxpro's stock to be used as collateral of loans from financial institutions.

**G.    Luxpro's MP3 players and Apple's Plans to Squash a Competitor**

25.    However, as Luxpro MP3 players began to leave their footprint on the MP3 player market, and Apple continued its unfair trade practices designed to bring down their competition, Apple also initiated a well-planned, and previously undisclosed strategy specifically targeted at Luxpro and all of its current and future products.

26.    In February 2005, Luxpro conducted a trial run of its Super Shuffle MP3 player and showed it off in March 2005 at the CeBit Tradeshow in Hanover, Germany. Contemporaneously with the tradeshow, Apple applied for and received injunctive relief against Luxpro from a German court asking Luxpro to abandon the use of the word "Shuffle" in the product name of one of its competing products, even though no trademark for that name was registered by Apple.  Nevertheless, in the face of this challenge, Luxpro renamed its Super Shuffle the "Super Tangent" and added the word "LUXPRO" to the product to eliminate any possible legal claim of product confusion. Luxpro then began to remarket its MP3 player products under the "Tangent" label.

27.    In spite of these efforts by Luxpro, in April 2005, Apple did not give up the attack and engaged a third party to purchase a Super Tangent from Luxpro.  In addition, in furtherance of its scheme to steal rightfully earned market share from Luxpro,

Apple also surreptitiously obtained two of Luxpro's proprietary price lists. Then, on April 8 and 26, 2005, without any apparent reason other than to intimidate its competition, Apple sent threatening letters to Luxpro demanding that Luxpro immediately stop marketing, manufacturing and selling **all** of its competing MP3 products – the Super Tangent, the Top Tangent *and* the EZ Tangent. Besides noting the obvious differences in the Apple and Luxpro MP3 players, Luxpro responded by reminding Apple that it had changed the name of one of its MP3 players the Super Tangent to avoid confusion and differentiate it with Apple's iPod Shuffle. Since Apple had no legal right to demand that a competitor simply withdraw its independently developed products from the market, Luxpro continued to manufacture, market, distribute, license, and sell its MP3 players.

28.     Nevertheless, Apple, as part of its privately developed scheme to ambush and eliminate one of its most serious smaller competitors, Apple sued Luxpro in Taiwan alleging that the appearance of the Super Tangent, EZ Tangent, **and** Top Tangent closely resembled the iPod Shuffle. Through a clearly one-sided submission by Apple when the lawsuit was filed, Apple was able to convince a Taiwanese court to enter a preliminary injunction that prohibited Luxpro from manufacturing, distributing and marketing **any** of its MP3 players. Eventually, Luxpro won the lawsuit on appeal, and the injunction was lifted as to all of Luxpro's products, except any using the name "Shuffle." However, in spite of this favorable ruling, the injunction had forced Luxpro to stop manufacturing, advertising and marketing its MP3 players for a significant period of time. The improperly obtained broad-form injunction had stopped all of Luxpro's MP3 production and had forced Luxpro to cease performance of existing contracts and orders. Luxpro

attempted to negotiate with material suppliers to terminate or hold orders of raw materials. Some of these raw material orders could not be cancelled. As a result, Luxpro's relationship with its raw material suppliers significantly worsened and deteriorated. Additionally, even though Luxpro had spent significant resources to undertake listing its stock on the GraTei securities market, Apple's litigation forced Luxpro to halt these efforts, as well. Apple's litigation was calculated to stomp out the competition, caused Luxpro great economic damage, and ruined the company's reputation with the public and with its business contacts and partners. Apple knew that Luxpro would not be able to clear its name and compete effectively in the global and U.S. markets until the litigation had concluded and the injunction was lifted. It was not until November 2005, that the Taiwanese courts agreed with Luxpro and revoked the preliminary injunction issued against the Top Tangent and EZ Tangent MP3 players. But Apple wouldn't stop its efforts and appealed that ruling in Luxpro's favor. Finally, in March of 2008, the Taiwan Supreme Court dismissed Apple's appeal of the Taiwan High Court's ruling. Despite the enormous damage intentionally and wrongfully inflicted on Luxpro due to the injunction and continued, frivolous, legal proceedings, Apple was not finished.

29.    However, Apple would not give up on its improper litigation strategy. The Taiwan Supreme Court's ruling notwithstanding, Apple filed a motion with the Fair Trade Commission alleging that Luxpro violated Taiwan's Fair Trade Act. The Fair Trade Commission ultimately issued a letter opinion stating that Luxpro's Tangent product line was not in contravention of the act. However, the delays caused by Apple's unlawful legal strategy caused Luxpro to lose valuable market opportunities and a

considerable amount of product orders.  These secretly and carefully planned actions gravely impeded Luxpro's efforts to market its MP3 players.  In fact, to this day, Apple continues to pursue its litigation strategy through endless appeals, in hopes that the litigation, coupled with pressure exerted against Luxpro's business partners, will completely squash Luxpro or severely hamper Luxpro's ability to increase market share in the worldwide MP3 player market.  The Taiwanese civil court dismissed Apple's latest appeal in February 2008, but the resulting damage fostered by this litigation strategy had already crippled Luxpro's business efforts in the MP3 market.

30.    Abusive litigation was not the only tactic Apple utilized to attempt to stunt Luxpro's growth in the worldwide MP3 player market.  While Apple's over-reaching injunctions were on appeal, unbeknownst to Luxpro, Apple compounded their illegal acts by sending warning letters to other companies who were doing business with Luxpro demanding that those companies cease business relations with Luxpro.  For example, Apple placed significant pressure on InterTAN, a subsidiary of U.S. based consumer electronics giant, Circuit City, to drop Luxpro's MP3 players from its retail shelves.  In September 2005, under pressure from Apple, InterTAN yanked 4,500 Luxpro MP3 players off its shelves and destroyed these products, directly costing Luxpro significant revenue, to say nothing of the damage to Luxpro's brand, marketing efforts, and related issues.  Despite the popularity of the Luxpro MP3 players in its retail stores that are owned and operated by Circuit City, InterTAN stopped placing orders with Luxpro.  News of the incident spread throughout the MP3 player market and, combined with the undisclosed threatening letters to Luxpro's business partners, resulted in other entities terminating contracts with Luxpro, causing further economic damage to Luxpro.

Notably, other U.S.-based consumer electronics companies, such as Best Buy and Radio Shack, consequently refused to do business with Luxpro.

31.    By April 2006, while Apple was still appealing the Taiwanese district court ruling, Luxpro managed to persuade InterTAN's officers and company product buyers to travel to Taiwan to meet.  At that meeting, InterTAN's officers disclosed to Luxpro that Apple had placed exceptionally strong pressure on InterTAN to yank the Centrios brand from InterTAN's retail shelves and discontinue all business dealings with Luxpro.  Luxpro showed InterTAN many MP3 players that Luxpro had improved since InterTAN's first order in 2005.  Over Luxpro's vigorous insistence that Apple's actions were designed to improperly stop the production of better products, InterTAN ultimately refused to order more of Luxpro's MP3 players.  Upon receipt of this devastating news, Luxpro inquired why InterTAN would carry other MP3 players, like those produced by Samsung, but not Luxpro's.  InterTAN explained it could not afford to annoy Apple over a small company like Luxpro.  InterTAN apologized to Luxpro, but left Taiwan without placing orders for Luxpro's MP3 players.

32.    This pattern of tortiously interfering in Luxpro's business did not end with InterTAN.  In September 2006, Apple increased its pressure on Luxpro's business partners, including a number of U.S.-based partners and retailers located in the United States.  For example, Starbucks Corporation had agreed to initiate a proposal that would place Luxpro's MP3 players in Starbucks' Japanese stores.  Luxpro prepared samples for Starbucks to approve for sale.  Apple pressured Starbucks to quash its deal with Luxpro and Luxpro's relationship with Starbucks ended.

33.    Also in September 2006, Apple threatened Orchard Company ("Orchard"), a Singapore company, and Kaga Electronics Co. Ltd. ("Kaga"), a Japanese company, to cease all business relations with Luxpro or Apple would either file suit against Orchard and Kaga or end its business relationship with those companies. Apple also threatened Web Worker, a German Luxpro client, to end all business relationships with Luxpro.

34.    In an attempt to erase its fingerprints off the secretly developed scheme to squash Luxpro, Apple successfully encouraged some of its suppliers to begin to pressure Luxpro business partners to end their relationships with Luxpro. For example, Apple supplier ASUS Tek Computer Co. ("ASUS"), threatened Compu Import Co. ("Compu"), a Luxpro client in Poland. ASUS told Compu that if it did not stop carrying Luxpro products, ASUS would stop supplying Compu with ASUS products. Apple supplier Synnex Technology International Corp. ("Synnex") threatened a number of Taiwanese Luxpro distributors, including Carrefour, EUPA, 3C, and ET Mall.

35.    By the time Luxpro had successfully defeated Apple's litigation strategy in the Taiwanese courts, including the 2008 dismissal of the latest appeal, it was too late to get back into the global market, including its efforts to penetrate Apple's vise-grip on the United States MP3 market.

36.    Apple's combined, concerted, and illegal efforts to unfairly ruin Luxpro as a viable competitor, caused great damage to Luxpro. Further, Apple's combined, concerted, and illegal efforts to unfairly ruin Luxpro harmed consumers, including in the United States, for MP3 players. Finally, Apple's actions against Luxpro, and others in the industry, had a chilling effect on competition, and harmed competition (*e.g.*,

14

consumers paid higher prices for MP3 players and products), in the relevant market, including in the United States, for MP3 players.

### IV.     CAUSES OF ACTION

**A.     Interference with Contractual/Prospective Advantage**

36.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth above.

37.     Due to the early success of Luxpro and the existing contracts that were canceled only due to Apple's pressure, Luxpro had a reasonable expectation of economic advantage or benefit.  As set forth above, Luxpro has been in the MP3 players business since 2002 and had a number of business partners with whom it had entered into contracts.  Those contracts call for Luxpro's MP3 players to be distributed, marketed and sold throughout the world in well known stores such as The Source by Circuit City. Luxpro's MP3 players are unique and are designed with features that not all MP3 players have, such as a FM radio tuner.

38.     Apple had knowledge of Luxpro's expectation of economic advantage or benefit.  In fact, without Luxpro's knowledge or consent, Apple sought out information about Luxpro's relationships with its business partners.  Apple implemented a concerted plan to discredit Luxpro and even persuaded other business entities to exert pressure on Luxpro's business partners.

39.     Apple wrongfully, and without justification, interfered with Luxpro's reasonable expectation of an economic advantage or benefit.   No legally sufficient justification for Apple targeting Luxpro exists.  Apple's actions can only be explained by its thirst for complete global dominance in the worldwide MP3 player market.

40.    In the absence of the wrongful acts of Apple, it is reasonably probable that Luxpro would have realized its economic advantage or benefit.  Luxpro is a successful company in the worldwide MP3 player market.  A reasonable probability certainly exists that Luxpro would have realized a significant economic advantage or benefit that it missed out on due to Apple's scheme to quash it.

41.    Luxpro did in fact sustain damages as a result of this wrongful interference by Apple.  Luxpro sustained damage as a result of Apple's wrongful interference because its true market share in the worldwide MP3 player market was never realized.

**B.    Tortious Interference with a Contract**

42.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth above.

43.    A valid contractual relationship existed between Luxpro and its retailers, distributors and business partners.  As set forth above, Luxpro has been in the MP3 players business since 2002 and had a number of business partners with whom it had entered into contracts.  Those contracts call for Luxpro's MP3 players to be distributed, marketed and sold throughout the world in well known stores such as The Source by Circuit City.

44.    Apple had knowledge of the relationship between Luxpro and Luxpro's retailers, distributors and business partners.

45.    Apple intentionally and improperly interfered with the relationship between Luxpro and their Retailers which induced or caused a breach or termination of said relationships.  Apple forced entities like InterTAN to drop existing contracts with Luxpro or be without Apple products.  Such conducts is intentional and improper.

Apple's market share of the worldwide MP3 player market at that time was so great, InterTAN had not real choice but to bow to Apple's wishes and terminate its relationship with Luxpro.

46.    As a result of Apple's intentional and improper interference, Luxpro experienced significant economic and other damages. Luxpro expended substantial sums in developing its MP3 player products prior to Apple's intentional and improper interference. Luxpro sustained damage as a result of Apple's wrongful interference because its true potential or available market share in the worldwide MP3 player market was never realized.

**C.    Attempted Common Law Monopolization**

47.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth above.

48.    Luxpro was a growing and active member of the MP3 player market. Luxpro's MP3 players were attracting a lot of attention and posed a significant risk to Apple's dominant share of the market.

49.    Apple had specific intent to monopolize the MP3 player market.

50.    One or more of Apple's acts claimed by Luxpro in this Complaint was done, was wrongful, and was done in furtherance of this intent.

51.    Apple intended to monopolize the MP3 players market and acted in furtherance of that intent so as to create a reasonable probability that monopolization of the market would sooner or later occur.

52.     The attempted monopolization so established was the proximate cause of damage to the business or property of Luxpro, by causing Luxpro to lose sales on which Luxpro would have made a profit.

**D.    Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***

53.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth above.

54.     The conduct alleged in this complaint constitutes unfair competition and unlawful, unfair, and fraudulent business acts and practices within the meaning of the California Unfair Competition Law, § 17200, *et seq.* of the California Business and Professions Code. Luxpro has suffered injury in fact and lost money and/or property as a result of Apple's violations of law and wrongful conduct.

55.     Apple's actions are unlawful and unfair because, in an attempt to monopolize the worldwide MP3 player market, it has attempted to squash a smaller competitor, Luxpro. Apple has interfered with Luxpro's business, economic advantages and contracts and has disparaged Luxpro's name in the worldwide MP3 player market in violation of common law.

56.     Accordingly, Apple has violated the Unfair Competition law proscription against engaging in unlawful, unfair, and fraudulent business practices.

57.     As a result of Apple's unlawful, unfair and fraudulent conduct, Apple has been unjustly enriched at the expense of Luxpro.

**E.    Commercial Disparagement**

58.     Plaintiff re-alleges and incorporates by reference each of the allegations set forth above.

59.     Apple published false statements concerning Luxpro's business and products.

60.     Apple intended the publication of its false statements to cause a pecuniary loss to Luxpro or Apple should have reasonably known that the publication of its false statements would result in a pecuniary loss to Luxpro's business and products.

61.     Apple knew the statements it made were false or Apple acted in reckless disregard of the statements truth or falsity.

62.     Apple's disparagement caused harm to Luxpro's reputation and caused Luxpro economic losses and pecuniary damages.

## DAMAGES

63.     As a direct and proximate result of Defendant's actions Plaintiff has been damaged in an amount to be determined by a jury at a trial of this matter and an award of attorney's fees.

64.     That in addition to the aforementioned damages and as a result of the conduct on the part of the Defendant, punitive damages should be imposed to punish the conduct of the Defendant and to deter others from similar conduct.

## JURY DEMAND

65.  The Plaintiff demands a jury trial on all issues of this complaint.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff prays for judgment against the Defendant and respectfully requests that this Court enter its Order granting judgment against Defendant for actual and consequential damages, attorney fees, punitive damages and for all other relief which Plaintiff is entitled.

Respectfully Submitted,

/s/ Richard A. Adams
Richard A. Adams
Ark. Bar No.  97036
Phillip N. Cockrell
Ark. Bar No.  79154
Corey D. McGaha
Ark. Bar No.  2003047
**PATTON ROBERTS PLLC**
Century Bank Plaza, Suite 400
P.O. Box 6128
Texarkana, Texas 75505-6128
Phone:  (903) 334-7000
Fax:  (903) 334-7007

Jeremy Y. Hutchinson
Ark. Bar No.  2006145
**PATTON ROBERTS PLLC**
111 Center St., Suite 1315
Little Rock, AR 72201
Telephone: (501) 372-3480
Facsimile: (501) 372-3488

Patrick J. Conroy
*Pro Hac Vice*
Glenn E. Janik
*Pro Hac Vice*
**SHORE CHAN BRAGALONE
LLP**
Bank of America Plaza
901 Main Street, Suite 3300
Dallas, Texas 75202
Telephone:  (214) 593-9110
Facsimile:  (214) 593-9111

**ATTORNEYS FOR
PLAINTIFF LUXPRO
CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served upon C T Corporation System, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201, Registered Agent in Arkansas for Apple, Inc., by U. S. Certified Mail, Return Receipt Requested, this 20th day of October, 2008.

/s/ Richard A. Adams_____
Richard A. Adams

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### TEXARKANA DIVISION

**LUXPRO CORPORATION**                                                  **PLAINTIFF**

**VS.**                     **NO.    4-08-CV-4092  HFB**

**APPLE INC. f/k/a Apple Computer, Inc.**               **DEFENDANT**

## DEFENDANT APPLE INC'S MOTION TO TRANSFER

COMES now the Defendant, Apple Inc. f/k/a Apple Computer, Inc. (hereinafter "Apple"), and for its Motion to Transfer this matter to the Northern District of California, pursuant to 28 U.S.C. §1404(a), states:

1.    Apple respectfully requests this Court to transfer this matter to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §1404(a). Apple's Motion is Transfer is based upon the following:

(a)    The Northern District of California is the only forum in the United States that has any connection to this dispute, Apple is located there and it is the location of relevant witnesses and documents.

(b)    The Northern District of California is the most convenient forum for non-parties, it is the only District that would have the power to subpoena potential non-party witnesses to appear at trial.

(c)    The Northern District of California would be substantially more convenient for the Plaintiff to litigate since Plaintiff is located in Taiwan.

(d)    Plaintiff's choice of the Western District of Arkansas is also highly inconvenient to the parties.

2.      The interests of justice favor transfer of this matter to the Northern District of California because, most importantly, California law governs this dispute, including one that is brought expressly pursuant to a California statute.

3.      Apple is filing herewith a Brief in Support of the Motion to Transfer.

WHEREFORE, for the convenience of the parties and the witnesses, and in the interest of justice, Apple Inc. respectfully requests that this matter be transferred to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted,

JAMES M. PRATT, JR.
Attorney at Law
Post Office Box 938
Camden, Arkansas  71701-0938
Telephone:    870-836-7328
jamiepratt@cablelynx.com

KEVIN A. CRASS (84029)
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas  72201-3522
Telephone:  (501) 376-2011
Crass@fec.net

CO-COUNSEL:
PENELOPE A. PREOVOLOS
STUART C. PLUNKETT
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  415-268-7000
ppreovolos@mofo.com
splunkett@mofo.com

Attorneys for Defendant,
Apple Inc. f/k/a Apple Computer, Inc.


BY:  /s/  Kevin A. Crass
         KEVIN A. CRASS

## CERTIFICATE OF SERVICE

I, Kevin A. Crass, hereby certify that on December 19, 2008, the foregoing was electronically filed with the Clerk which shall send notification of such filing to the following:

- **Richard A. Adams**
  radams@pattonroberts.com,shicks@pattonroberts.com,mcosta@pattonroberts.com
- **Phillip N. Cockrell**
  pcockrell@pattonroberts.com,kharris@pattonroberts.com
- **Patrick J. Conroy**
  pconroy@shorechan.com,ldalton@shorechan.com
- **Jeremy Young Hutchinson**
  jhutchinson@pattonroberts.com,kbraswell@pattonroberts.com
- **Glenn E. Janik**
  gjanik@shorechan.com,ldalton@shorechan.com
- **Corey Darnell McGaha**
  cmcgaha@pattonroberts.com,shicks@pattonroberts.com,mcosta@pattonroberts.com,ssrebalus@pattonroberts.com
- **Nicholas H. Patton**
  nickpatton@texarkanalaw.com,mlong@texarkanalaw.com
- **Leisa B. Pearlman**
  lpearlman@pattonroberts.com,shicks@pattonroberts.com,pdesantis@pattonroberts.com,kgarrett@pattonroberts.com
- **Patricia L. Peden**
  ppeden@pedenlawfirm.com
- **Stuart Christopher Plunkett**
  rpelletier@mofo.com,splunkett@mofo.com
- **James M. Pratt , Jr**
  jamiepratt@cablelynx.com
- **Penelope A. Preovolos**
  PPreovolos@mofo.com,kfranklin@mofo.com
- **Sean F. Rommel**
  srommel@pattonroberts.com,shicks@pattonroberts.com,mcosta@pattonroberts.com,kgarrett@pattonroberts.com

/s/ Kevin A. Crass
KEVIN A. CRASS (84029)
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201-3522
Telephone: (501) 376-2011
Crass@fec.net
Attorneys for Defendant,
Apple Inc. f/k/a Apple Computer, Inc.

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF ARKANSAS

TEXARKANA DIVISION

| | |
|---|---|
| LUXPRO CORPORATION, a Taiwanese corporation,     ) <br>     ) <br> Plaintiff,     ) <br>     ) <br> v.     ) <br>     ) <br> APPLE, INC. f/k/a Apple Computer, Inc.,     ) <br>     ) <br> Defendant.     ) | Civil Action No. 4:08-CV-04092-HFB |

**DEFENDANT APPLE INC.'S BRIEF
IN SUPPORT OF MOTION TO TRANSFER**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 3

I.      PARTIES ................................................................................................ 3

II.     ALLEGATIONS AND CLAIMS ........................................................... 3

III.    NONPARTIES IDENTIFIED IN COMPLAINT .................................. 5

ARGUMENT ....................................................................................................... 6

I.      LUXPRO'S FORUM CHOICE IS NOT ENTITLED TO DEFERENCE ................... 7

        A.    Arkansas Has No Connection to Luxpro or to this Dispute ............... 7

        B.    As a Foreign Plaintiff, Luxpro Should Have Filed in a District
              With Some Connection to the Dispute ............................................ 9

        C.    The Circumstances Suggest Luxpro Is Forum Shopping ................ 11

II.     THE "BALANCE OF CONVENIENCE" FAVORS A TRANSFER TO THE
        NORTHERN DISTRICT OF CALIFORNIA ............................................... 11

        A.    The Convenience of the Parties and Witnesses, and the Power To
              Subpoena Nonparty Witnesses, Favor Transfer ............................. 11

        B.    The Location of Relevant Documents and the Location of
              Alleged Conduct Both Favor Transfer ........................................... 14

        C.    The Applicability of California Law Favors Transfer ..................... 14

III.    THE INTERESTS OF JUSTICE FAVOR A TRANSFER TO THE NORTHERN
        DISTRICT OF CALIFORNIA ................................................................. 15

CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Amazin' Raisins Int'l, Inc. v. Ocean Spray Cranberries, Inc.,*
  No. 04-3358 ADM/AJB, 2004 U.S. Dist. LEXIS 23200 (D. Minn. Nov. 15, 2004) ..........8, 10

*Biometics, LLC v. New Womyn, Inc.,*
  112 F. Supp. 2d 869 (E.D. Mo. 2000)...........................................................................8, 12, 14

*Capital Ford New Holland, Inc. v. AB Volvo,*
  No. 4:00-CV-00715 GH, 2000 U.S. Dist. LEXIS 22671 (E.D. Ark. Dec. 18, 2000)....8, 13, 14

*Coast-To-Coast Stores, Inc. v. Womack-Bowers, Inc.,*
  594 F. Supp. 731 (D. Minn. 1984) ......................................................................................16

*Darchuk v. Kellwood Co.,*
  715 F. Supp. 1438 (E.D. Ark. 1988) ..........................................................................9, 12, 14

*Harris v. City of Memphis,*
  119 F. Supp. 2d 893 (E.D. Ark. 2000) .................................................................................15

*Int'l Administrators, Inc. v. Pettigrew,*
  430 F. Supp. 2d 890 (S.D. Iowa 2006) ..............................................................................9, 13

*Jaco Envt'l Inc. v. Appliance Recycling Centers of Am., Inc.,*
  No. C 06-06601 JSW, 2007 U.S. Dist. LEXIS 274221 (N.D. Cal. Mar. 27, 2007) ...............11

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
  313 U.S. 487 (1941).............................................................................................................15

*Lane v. Celadon Trucking, Inc.,*
  543 F.3d 1005 (8th Cir. 2008) .............................................................................................15

*McEvily v. Sunbeam-Oster Co.,*
  878 F. Supp. 337 (D.R.I. 1994).............................................................................................12

*Nanya Tech. Corp. v. Fujitsu Ltd.,*
  No. 06-00025, 2007 U.S. Dist. LEXIS 46431 (D. Guam June 27, 2007)................................10

*Nat'l Bank of Harvey v. Bathgate Capital Partners, LLC,*
  No. 1:06-CV-053, 2007 U.S. Dist. LEXIS 25646 (D.N.D. Apr. 4, 2007)........................16, 17

*Nelson v. Soo Line Railroad Co.,*
  58 F. Supp. 2d 1023 (D. Minn. 1999)...................................................................................12

*Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.,*
  387 F. Supp. 2d 564 (E.D. Va. 2005) ......................................................................9, 12, 13 16

*Ozarks Coca-Cola/Dr. Pepper Bottling Co. v. Coca-Cola Co.*,
        No. 06-03056-CV-W-GAF, 2006 U.S. Dist. LEXIS 14588 (W.D. Mo. Mar. 17, 2006) ..14, 16

*Princess House, Inc. v. Lindsey*,
        136 F.R.D. 16 (D. Mass. 1991) ..................................................................................8

*Reiffin v. Microsoft Corp.*,
        104 F. Supp. 2d 48 (D.D.C. 2000) ...........................................................................11

*Rudich v. Metro Goldwyn Mayer Studio, Inc.*,
        No. 08-CV-389-BBC, 2008 U.S. Dist. LEXIS (W.D. Wis. Oct. 22, 2008) ...........................10

*Saleh v. Titan Corp.*,
        361 F. Supp. 2d 1152 (S.D. Cal. 2005) .......................................................................10

*Terra International, Inc. v. Mississippi Chem. Corp.*,
        119 F.3d 688 (8th Cir. 1997) ..........................................................................6, 7, 16

*Thornton Drilling Co. v. Stephens Production Co.*,
        No. 4:06-CV-00851 GTE, 2006 U.S. Dist. LEXIS 67961 (E.D. Ark. Sept. 6, 2006) ...7, 12, 13

*Travelers Ins. Co. v. Stuart*,
        226 F. Supp. 557 (W.D. Ark. 1964) ........................................................................6, 15

*Walker v. Jon Renau Collection, Inc.*,
        423 F. Supp. 2d 115 (S.D.N.Y. 2005) .......................................................................10

*Wilson v. United States*,
        No. 4:05-CV-562, 2006 U.S. Dist. LEXIS 87382 (E.D. Ark. Nov. 28, 2006) ...............1, 9, 15

### STATUTES

28 U.S.C. § 1391(a)(1) ...................................................................................................6

28 U.S.C. § 1404(a) ............................................................................................. passim

California Business and Professions Code § 17200 ..............................................2, 5, 14

Defendant Apple Inc. ("Apple") submits this memorandum of law in support of its motion to transfer this matter to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## INTRODUCTION

The plaintiff in this action, Luxpro Corporation, is a Taiwanese company that manufactures and sells unauthorized copies (sometimes called "knockoffs") of Apple's uniquely designed iPod digital music player products. Apple first became aware of Luxpro's unlawful activities in 2005, when Apple learned that Luxpro displayed a knockoff of Apple's iPod shuffle digital music player at a tradeshow in Germany. Apple responded by acting to enforce its intellectual property rights against Luxpro, including obtaining preliminary injunctions in Germany and Taiwan. Now, more than three years later, Luxpro has brought suit in a forum that has no connection to this dispute. Luxpro's claim is that Apple's legitimate attempts to stop Luxpro from selling clones of Apple's iPod shuffle violated state statutory and common law.

Apple has brought a motion to dismiss Luxpro's claims, which are legally barred for multiple reasons. Although it is clear that Luxpro's claims must be dismissed, this Court should not reach the merits of the motion to dismiss, because this action should be transferred to the Northern District of California.[1] It is the only forum in the United States that has any connection to this dispute. Apple is headquartered there, and it is the location of relevant witnesses and documents. It is easily the most convenient forum for numerous nonparties identified in the complaint. It is the only district that will have the power to subpoena potential nonparty

---

[1] *See Wilson v. United States*, 2006 U.S. Dist. LEXIS 87382, *8 (E.D. Ark. Nov. 28, 2006) (declining to rule on motion for summary judgment on state law claim, because transferee forum, District of New Mexico, had superior knowledge of New Mexico law applicable to claim).

witnesses to appear at trial.  Finally, it would be substantially more convenient for Luxpro to

litigate this case in California than in Arkansas, since it is located in Taiwan.

Courts weigh a variety of factors, including whether plaintiff's forum choice is entitled to

deference, in evaluating a motion to transfer under section 1404(a).  In this case, Luxpro's forum

choice is not entitled to deference.  First, Luxpro chose a forum that has no connection to this

dispute.  Luxpro claims that Apple's enforcement of its intellectual property rights against

Luxpro in Taiwan and Germany was unlawful.  Apple's United States-based conduct with

respect to this enforcement occurred entirely in the Northern District of California.  Second,

Luxpro's only apparent connection to the Western District of Arkansas is the location of its

counsel, but courts do not consider the convenience of counsel under section 1404(a).

This Court should also disregard Luxpro's forum choice because, on the facts of this

case, it is reasonable to conclude that Luxpro has engaged in forum shopping — a practice that

courts uniformly condemn.  Luxpro inexplicably chose a forum with no connection to this

dispute when the forum with the greatest connection to this dispute *would have been more*

*convenient for Luxpro.*  Moreover, Luxpro specifies applicable state law with respect to only one

of its claims — and the law it specifies is California's Business & Professions Code Section

17200.  Luxpro thus acknowledges that California law applies, not Arkansas law.

Luxpro's choice of an Arkansas forum is also highly inconvenient.  The overwhelming

majority of relevant documents and witnesses are located in California, Asia and Germany; no

documents or witnesses are located in Arkansas.  Many nonparty witnesses are located in other

countries, particularly Asia, and for all of these nonparty witnesses — at least 11 companies

identified in the complaint — California is by far the more convenient forum due to the relative

ease of travel.  In determining the appropriate forum, courts give great weight to the relative ease

2

of traveling to the competing venues. Indeed, the convenience of nonparty witnesses is generally considered the most important factor in determining whether a case should be transferred.

Finally, the interests of justice favor transfer. Most importantly, California law governs this dispute, including one claim that is expressly brought pursuant to a California statute. It will also be comparatively less expensive for all involved if this case were to proceed in the Northern District of California, and it would be more efficient for Luxpro to enforce any judgment in California since that is where Apple is located.

For the convenience of the parties and witnesses, and in the interests of justice, this action should be transferred to the Northern District of California.

## FACTUAL BACKGROUND

### I.    PARTIES

Plaintiff Luxpro is a Taiwanese corporation with its principal place of business in Taiwan. (First Amended Complaint ("Compl.") ¶ 1.) Luxpro develops and sells digital music players. (*Id.*) Luxpro began selling digital music players under various brand names in 2004. (*Id.* ¶ 15.) Luxpro's digital music players copied the unique product design of Apple's iPod shuffle, even using the name "shuffle." Luxpro marketed its products using advertising that copied Apple's distinctive iPod silhouette and included an Apple design that was strikingly similar to the Apple logo.

Defendant Apple is a California corporation with its principal place of business in Cupertino, California. (*Id.* ¶ 2.) Apple distributes and sells digital music players throughout the world under the brand name iPod, including the iPod shuffle. (*Id.*)

### II.    ALLEGATIONS AND CLAIMS

Luxpro alleges that Apple engaged in conduct intended to damage Luxpro's digital music player business and interfere with its business relations. (*Id.* ¶ 6.) This alleged conduct involved

Apple initiating supposedly "[a]busive litigation" against Luxpro in Germany and Taiwan regarding the similarity of its MP3 [digital music] players to Apple's iPod products, as well as Apple's attempts to protect its intellectual property rights with respect to nonparties doing business with Luxpro. (*Id.* ¶¶ 25-35.)

In February 2005, Luxpro conducted a "trial run" of one of its digital music players at the CeBit Tradeshow in Hanover, Germany. (*Id.* ¶ 26.) Luxpro called this digital music player the "Super shuffle." (*Id.*) In response, Apple applied for injunctive relief from a German court. (*Id.*; Declaration of Thomas R. La Perle in Support of Apple Inc.'s Motion to Transfer and Motion to Dismiss ("La Perle Decl.") Exhibits 1 and 2.) The German court granted Apple's request and issued an injunction. (Compl. ¶ 26; La Perle Decl. Exhibits 1 and 2.) The injunction prevented Luxpro from offering a clone of the iPod shuffle digital music player. (La Perle Decl. Exhibits 1 and 2.)

Following the CeBit Tradeshow and the issuance of an injunction, in April 2005, Apple sent letters to Luxpro demanding that Luxpro stop marketing or selling certain digital music players — marketed under the names Super Tangent, Top Tangent, and EZ Tangent — that infringed Apple's intellectual property rights. (Compl. ¶ 27.) Luxpro did not comply with Apple's demand. (*Id.*)

Apple then commenced litigation against Luxpro in Taiwan, "alleging that the appearance" of Luxpro's Super Tangent, Top Tangent, and EZ Tangent products "closely resembled the iPod shuffle." (*Id.* ¶ 28.) Apple succeeded in obtaining a preliminary injunction from the Taiwanese court related to Luxpro's unauthorized copying of the iPod shuffle's product configuration. (*Id.*; La Perle Decl. Exhibits 3 and 4.) The injunction prohibited Luxpro from manufacturing, distributing, or marketing the digital music players at issue. (Compl. ¶ 28; La

Perle Decl. Exhibits 3 and 4.)  Luxpro appealed the injunction, which was partially lifted in

November 2005 with respect to certain of Luxpro's products.  (Compl. ¶ 28.)  Apple also filed a

motion with the Taiwan Fair Trade Commission alleging that Luxpro had violated the Taiwan

Fair Trade Act.  (*Id.* ¶ 29.)

     Finally, Apple sought to enforce its intellectual property rights associated with its iPod

products by sending "warning letters" regarding infringement or potential infringement to

companies selling Luxpro's products.  (*Id.* ¶ 30.)

     The complaint asserts that Apple's conduct in seeking to enforce its intellectual property

rights constituted interference with contractual and prospective advantage, tortious interference

with contract, attempted common law monopolization, and commercial disparagement, and

violated California Business & Professions Code § 17200.  (*Id.* ¶¶ 36-62.)

## III.    NONPARTIES IDENTIFIED IN COMPLAINT

     The complaint identifies several companies relevant to Luxpro's allegations that are not

parties to this action.  Luxpro alleges that Apple's conduct interfered with Luxpro's business

relationships with the following companies:

     Beijing Huaqi Informational Digital Technology Co., located in China (*id.* ¶ 17);

     Beijing Qian Kun Time Digital Technology Co., Ltd., located in China (*id.* ¶ 18);

     InterTAN Canada, Ltd., located in Canada (*id.* ¶ 19);

     TC Digital Electronic SBU, located in China (*id.* ¶ 20);

     Kaga Electronics Co., Ltd., located in Japan (*id.* ¶¶ 22 & 33);

     Starbucks Corporation, located in Seattle Washington, but concerning Starbucks stores in

Japan (*id.* ¶ 32);

     Orchard Company, located in Singapore (*id.* ¶ 33); and

     Web Worker, located in Germany (*id.*)

The complaint identifies other nonparties. Luxpro allegedly contacted GreTai Securities Market in Taipei, Taiwan to undertake listing its stock. (*Id.* ¶¶ 23 & 28.) Luxpro also alleges that Apple indirectly contacted two of its business partners — one in Poland (Compu Import Co.) and four in Taiwan (Carrefour, EUPA, 3C, and ET Mall). (*Id.* ¶ 34.)

In summary, the complaint identifies eight nonparties located in China, one in Canada, one in Singapore, one in Japan, one in Germany, one in Poland, and one in Seattle, Washington (concerning its stores in Japan). The Court must consider the convenience of these nonparties, as discussed below.

## ARGUMENT

Section 1404(a) provides that a case may be transferred to another district court if (1) venue would be proper in the proposed new court,[2] (2) the transfer would serve "the convenience of parties and witnesses," and (3) a transfer would promote "the interests of justice." 28 U.S.C. § 1404(a); *see also Terra International, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).

Courts have broad discretion to transfer based on these factors. *Travelers Ins. Co. v. Stuart*, 226 F. Supp. 557, 561 (W.D. Ark. 1964). In exercising its discretion, the Court should consider whether plaintiff's choice of forum is entitled to deference. The Court should then consider the "balance of convenience," including the convenience of parties and witnesses, the location of relevant documents, the location of the conduct complained of, and the applicability of the forum state's substantive law. *Terra International*, 119 F.3d at 696. Finally, the Court

---

[2] Venue in diversity cases is proper in any district where the defendant resides. 28 U.S.C. § 1391(a)(1). Here, Apple's principal place of business is in the Northern District of California. (*See* Compl. ¶ 2; La Perle Decl. ¶ 1.)

should consider the interests of justice, including the advantage of having a local court determine questions of local law and the comparative costs to the parties. *Id.*[3]

All these factors indicate that this case should be transferred to the Northern District of California. Luxpro's choice of forum is, on the facts of this case, not entitled to deference. Luxpro is a Taiwanese company with no relationship to Arkansas. And Luxpro complains of conduct that has no connection to Arkansas.

California is more convenient for the parties and witnesses. Apple is located there, and it is more convenient for Luxpro, given that it is easier to travel from Asia to California than to Arkansas. It is also more convenient for the many nonparties identified in the complaint. The overwhelming majority of Apple's documents are also located in California. Finally, justice and judicial economy will be served, because California law applies to this suit and because this litigation would be comparatively less expensive for all concerned if it is transferred to California.

## I.      LUXPRO'S FORUM CHOICE IS NOT ENTITLED TO DEFERENCE

### A.      Arkansas Has No Connection to Luxpro or to this Dispute

Luxpro's choice of the Western District of Arkansas to bring suit against Apple is entitled to little, if any, deference. A plaintiff's forum choice should be given no deference where plaintiff does not reside in the chosen forum or where the forum lacks a significant connection to the dispute. *Thornton Drilling Co. v. Stephens Production Co.*, No. 4:06-CV-00851 GTE, 2006 U.S. Dist. LEXIS 67961, *6-7 (E.D. Ark. Sept. 6, 2006) (transferring case where plaintiff sued in forum "with no connection to the issues in dispute and no apparent or stated connection

---

[3] There is no exhaustive list of factors. *Terra International*, 119 F.3d at 691. Instead, courts conduct "a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.* We have limited our discussion to factors that are relevant in light of the circumstances of this case.

to the Plaintiff"); *see also Capital Ford New Holland, Inc. v. AB Volvo*, No. 4:00-CV-00715 GH,

2000 U.S. Dist. LEXIS 22671, *7 (E.D. Ark. Dec. 18, 2000) ("where the plaintiff is not a

resident of the forum in which the case is brought, a transfer will generally be regarded as less

inconvenient to the plaintiffs") (citation omitted); *Biometics, LLC v. New Womyn, Inc.*,

112 F. Supp. 2d 869, 877 (E.D. Mo. 2000) (forum choice given less deference where plaintiff

was not resident of forum and operative facts occurred elsewhere).

      Both factors are present here. Luxpro does not reside in Arkansas. Rather, it "is a

Taiwanese corporation, with its principal place of business in Taiwan." (Compl. ¶ 1 ("Luxpro is

a citizen of and is domiciled in Taiwan, a foreign state.").) Luxpro does not allege that it has any

connection to Arkansas whatsoever. Luxpro's only apparent connection to Arkansas is the

location of certain of its attorneys. But the location of plaintiff's attorneys is not a relevant factor

in evaluating transfer. *See Amazin' Raisins Int'l, Inc. v. Ocean Spray Cranberries, Inc.*, No. 04-

3358 ADM/AJB, 2004 U.S. Dist. LEXIS 23200, at *9 (D. Minn. Nov. 15, 2004) ("it is axiomatic

that convenience to plaintiff's counsel is not a factor") (citation omitted); *Princess House, Inc. v.*

*Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991) ("No case articulates that the convenience of counsel

is a consideration in deciding a motion to transfer pursuant to § 1404(a).").

      Nor does the dispute have any connection to Arkansas. None of the alleged conduct

occurred in Arkansas. The complaint concerns legal proceedings commenced by Apple in

Germany and Taiwan. It also concerns Apple's alleged interference with Luxpro's relations with

businesses in Asia, Europe, and Canada. Apple's conduct with respect to these allegations

occurred in the foreign countries mentioned; its United States-based conduct occurred in the

Northern District of California at Apple's headquarters. (La Perle Decl. ¶ 4.)

8

Where plaintiff's chosen forum lacks a significant connection to the dispute, courts grant transfer motions *even where the plaintiff is a resident of the forum*. In *Wilson v. United States*, No. 4:05-CV-562, 2006 U.S. Dist. LEXIS 87382 (E.D. Ark. Nov. 28, 2006), for example, plaintiff — an Arkansas resident — filed suit in Arkansas even though the relevant events occurred in New Mexico. *Id.* at *1-2. The court transferred the case on the ground that "the only connection of this case to Arkansas is that Plaintiff is a resident of Mountain View, Arkansas." *Id.* at *16 (plaintiff's "choice of forum is assigned less weight if the operative events giving rise to the lawsuit took place in a forum other than that chosen by the plaintiff."); *see also Int'l Administrators, Inc. v. Pettigrew*, 430 F. Supp. 2d 890, 901 (S.D. Iowa 2006) (case transferred to Texas even though plaintiff was Iowa corporation, because Texas was home to more witnesses and documents than Iowa); *Darchuk v. Kellwood Co.*, 715 F. Supp. 1438, 1439-40 (E.D. Ark. 1988) (case transferred even though plaintiff was resident of Arkansas and would incur costs as a result of transfer). The facts here are far more compelling for transfer than in these cases, because Arkansas is not Luxpro's home and it would actually be more convenient for Luxpro to litigate in California than in Arkansas.

**B.    As a Foreign Plaintiff, Luxpro Should Have Filed in a District With Some Connection to the Dispute**

Courts hold that, for a foreign plaintiff's forum choice "to be given *any* weight, there must be a connection between the [chosen forum] and the claims alleged against the defendants." *Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 568 (E.D. Va. 2005) (emphasis added). No such connection exists here. Luxpro may cite allegations in the complaint regarding personal jurisdiction, which state that Apple does business in Arkansas because it sells products here. (Compl. ¶¶ 4-5.) But, "[i]n order to give deference to a foreign plaintiff's choice of forum, *the contacts at issue must relate to the plaintiff's claims*." *Original*

9

*Creatine*, 387 F. Supp. 2d at 568 (emphasis added).  Apple's sales in Arkansas do not relate to

Luxpro's claims.  Moreover, Apple sells products nationwide, and there is nothing unique about

its sales in Arkansas.  *Id.* (holding that defendant's sales of allegedly infringing products in

chosen forum did not afford deference to plaintiff's choice, because defendant sold products

nationwide).[4]

      Where a foreign plaintiff chooses a forum in the United States that lacks a significant

connection to the dispute, courts routinely disregard plaintiff's choice and transfer the action to a

district with more substantial ties.  *Rudich v. Metro Goldwyn Mayer Studio, Inc.*, No. 08-CV-

389-BBC, 2008 U.S. Dist. LEXIS, at *9-10 (W.D. Wis. Oct. 22, 2008) (transferring case brought

by Israeli plaintiff to district where defendant is headquartered); *Nanya Tech. Corp. v. Fujitsu*

*Ltd.*, No. 06-00025, 2007 U.S. Dist. LEXIS 46431, at *9-12 (D. Guam June 27, 2007)

(transferring case brought by Taiwanese company in forum where none of the defendants

resided); *Walker v. Jon Renau Collection, Inc.*, 423 F. Supp. 2d 115, 118-19 (S.D.N.Y. 2005)

(transferring case brought by British company to California where defendant resided, even

though New York, which had no connection to controversy, would have been more convenient to

plaintiff); *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1157-58 (S.D. Cal. 2005) (transferring

case brought by Iraqi plaintiffs in forum with only minimal connection to controversy); *Amazin'*

*Raisins*, 2004 U.S. Dist. LEXIS 23200 at *6 & *14 (transferring case brought by Canadian

plaintiff to forum where defendant was headquartered).

      The same rule should apply here, and Luxpro's forum choice should not prevent a

transfer to the Northern District of California — the only district with any connection to this

dispute.

---

[4] Luxpro's allegations are incorrect.  Luxpro alleges that Apple has "numerous retail sales locations throughout this District."  In fact, Apple does not have any retail store locations in Arkansas.  (La Perle Decl. ¶ 2.)

### C.   The Circumstances Suggest Luxpro Is Forum Shopping

If this Court concludes that Luxpro has engaged in forum shopping, that too is a reason to disregard Luxpro's forum choice. *Jaco Envt'l Inc. v. Appliance Recycling Centers of Am., Inc.*, No. C 06-06601 JSW, 2007 U.S. Dist. LEXIS 274221 at *7 (N.D. Cal. Mar. 27, 2007) ("if there is any indication that a plaintiff is forum shopping, its choice will be given little deference"); *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 54 n.12 (D.D.C. 2000) (plaintiff's chosen forum will be accorded little deference where it is apparent that plaintiff is engaged in "forum-shopping" and is offered an equally convenient forum elsewhere).

The circumstances here warrant such a conclusion. Luxpro chose a forum that has no connection to this case when it could have filed suit in the Northern District of California, which does have a connection to this case. Luxpro cannot explain this decision with reference to its own convenience, because it would be *more* convenient for Luxpro to litigate in California. After all, it would be far easier for Luxpro to travel from Taiwan to California. The Court can reasonably conclude on these facts that Luxpro is forum shopping, a practice that the federal courts condemn.

### II.   THE "BALANCE OF CONVENIENCE" FAVORS A TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

Luxpro could have filed this action in the Northern District of California, which would have been far more convenient for the parties and witnesses. Indeed, the "balance of convenience" weighs heavily in favor of a transfer to the Northern District of California. None of the convenience factors weighs against transfer.

### A.   The Convenience of the Parties and Witnesses, and the Power To Subpoena Nonparty Witnesses, Favor Transfer

The convenience of party and nonparty witnesses is an important, if not the most important, factor to be analyzed in determining whether to change a litigation's venue.

11

*McEvily v. Sunbeam-Oster Co.*, 878 F. Supp. 337, 344-45 (D.R.I. 1994) ("The convenience of witnesses is said to be a primary, if not the most important, factor in passing on a motion to transfer under § 1404(a).").

The Northern District of California is easily the most convenient forum for the parties. Apple is headquartered in that district, and employees with relevant knowledge are located there. (La Perle Decl. ¶¶ 1, 4.) The defense of this case in Arkansas would thus result in substantial costs in terms of travel and disruption in the work schedules of Apple employees. *See Biometics*, 112 F. Supp. 2d at 875-76 (transferring case where defendant would incur substantial costs for travel and loss of employee time if forced to defend action in original forum); *Darchuk*, 715 F. Supp. at 1439; *Nelson v. Soo Line Railroad Co.,* 58 F. Supp. 2d 1023, 1027 (D. Minn. 1999) ("While it is true that most of the witnesses are employees of defendant, the cost of obtaining these witnesses such as transportation, meals, lodging and work schedules is considerable.").

Importantly, because these witnesses currently work and reside in California, they will likely be outside of this Court's subpoena power should they leave Apple's employ during the pendency of this litigation. The fact that these witnesses are currently employed by Apple and could arguably be required by Apple to appear in this Court does not undercut the importance of this point. As the court in *Thornton Drilling* held, "[p]eople change jobs and there is no assurance that . . . witnesses will remain employed when this case goes to trial." 2006 U.S. Dist. LEXIS 67961 at *10 (granting transfer based in part on court's lack of subpoena power over defendant's employees).

The Northern District of California is also more convenient for Luxpro and its employees. Given that Luxpro's principal place of business is Taiwan, it is likely that many of

its party witnesses will reside in that country. It will be easier for them travel to California than

to Arkansas. *See Original Creatine*, 387 F. Supp. 2d at 570 (transferring where it would be more

convenient for foreign plaintiff to travel by air to New York than to chosen forum in Virginia);

*see also Thornton Drilling*, 2006 U.S. Dist. LEXIS 67961 at *10 (granting transfer where "it

would be more convenient to both Plaintiff and Defendant to litigate" in transferee forum);

*Capital Ford*, 2000 U.S. Dist. LEXIS 22671 at *10 (granting transfer where plaintiffs, who were

located around North America, would have easier time flying to Chicago than to Little Rock,

Arkansas). Courts sometimes deny transfer where the burden would simply be shifted from one

party to the other, but that is not the case here. Instead, transfer would be more convenient for

*both* parties and their witnesses.

Finally, the Court should assign perhaps the greatest weight to the convenience of

nonparty witnesses. *Pettigrew*, 430 F. Supp. 2d at 900 ("convenience of nonparty witnesses is

generally considered to be one of the most important factors to be weighed in the venue transfer

analysis"). This factor overwhelmingly favors transfer. Luxpro's complaint identifies 14

nonparty entities who will undoubtedly possess relevant information. And for all 14, the

Northern District of California is far more convenient due to the comparative difficulty of

traveling to Texarkana, Arkansas than to San Francisco, California. This includes 11 companies

in Asia, two in Europe, one in Canada and one in Seattle, Washington. It will also include

current Apple employees who cease to work for the company. The Court should not permit

Luxpro to inconvenience all of these nonparties merely because it chose a forum that has no

connection to Luxpro or to this case.

### B. The Location of Relevant Documents and the Location of Alleged Conduct Both Favor Transfer

The overwhelming majority of relevant documents in the United States are located in the Northern District of California. (La Perle Decl. ¶ 3.) That is because Apple is headquartered in Cupertino, California, and the United States-based conduct of Apple relevant to this dispute occurred in that district. (*Id.* ¶¶ 1, 4, 5.) By contrast, no relevant events occurred in Arkansas and no documents are located there. (*Id.* ¶¶ 3, 5.) The location of relevant documents and events thus favors transfer to the Northern District of California. *See Ozarks Coca-Cola/Dr. Pepper Bottling Co. v. Coca-Cola Co.*, No. 06-03056-CV-W-GAF, 2006 U.S. Dist. LEXIS 14588 at *20 (W.D. Mo. Mar. 17, 2006) (granting transfer where none of plaintiff's documents were in chosen forum and defendants documents were located primarily in transferee district); *Biometics*, 112 F. Supp. 2d at 876 (transferring case to forum in which research, development and marketing underlying complaint took place); *Darchuk*, 715 F. Supp. at 1440 (transferring case to forum where key events occurred and files and records located).

### C. The Applicability of California Law Favors Transfer

Luxpro asserts five causes of action, all of which are likely governed by California law. One is clearly governed by California law, because it alleges a violation of California Business and Professions Code section 17200. (Compl. ¶¶ 53-57.) The inclusion of a claim under another state's law generally favors transfer to that forum. *See Capital Ford*, 2000 U.S. Dist. LEXIS 22671 at *11 (noting that "one additional factor" in favor of transferring case from Arkansas to Illinois was plaintiff's inclusion of a claim under the Illinois Franchise Disclosure Act). As the court held in *Capital Ford*, a federal district court "is in a better position to interpret" the law of the state in which it sits. *Id.*

Luxpro's other claims are common-law claims that are likely governed by California law. Indeed, it appears under Arkansas choice-of-law principles that the only state law that could apply here is California law.[5]  Arkansas requires courts to determine which state has the most significant relationship to the parties and the issues. *Lane v. Celadon Trucking, Inc.*, 543 F.3d 1005, 1010 (8th Cir. 2008).  California is the *only* state in the United States that has any relationship to the parties and the issues here, as discussed above.[6]

The applicability of California law to all of Luxpro's claims strongly supports transfer. *See Wilson*, 2006 U.S. Dist. LEXIS 87382 at *18 (transferring case to New Mexico because district court there "is more familiar with" the New Mexico law that would govern several of plaintiff's claims); *Travelers Insurance*, 226 F. Supp. at 562 (transferring to California where "substantive law of California governs" several issues in dispute).

## III.    THE INTERESTS OF JUSTICE FAVOR A TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

The interests of justice also weigh in favor of a transfer to the Northern District of California.  Courts consider a variety of interest-of-justice factors depending on the circumstances of the case.  Here, the relevant factors are (1) the advantages of having a local court determine questions of local law, (2) the comparative costs to the parties of litigating in

---

[5] Because this is a diversity case, Arkansas choice-of-law rules apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (when jurisdiction is based on diversity of citizenship, federal district courts apply the choice-of-law rules of the state in which they sit).

[6] Arkansas then requires courts to consider five factors:  (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Lane*, 543 F.3d at 1010 (citing *Ganey v. Kawasaki Motors Corp., U.S.A.*, 366 Ark. 234, 234 S.W.3d 838, 846 (Ark. 2006)).  These factors also favor California law. For example, advancement of the forum's governmental interests is considered the most significant factor in tort actions. *Harris v. City of Memphis*, 119 F. Supp. 2d 893, 896 (E.D. Ark. 2000).  This factor favors California law, because California has a strong interest given that Apple has its principal place of business there.  None of the factors favors Arkansas.

each forum, and (3) the ability to enforce a judgment. *See Terra International*, 119 F.3d at 696 (listing potential factors).

First, as discussed above, California law applies to Luxpro's claims, including one claim that Luxpro has expressly brought under a California statute. The fact that California law will apply demonstrates that a transfer will serve the interests of justice: "It is in the interest of justice to transfer [an] action to a judge familiar with the law that will control the outcome of the case." *Ozarks Coca-Cola*, 2006 U.S. Dist. LEXIS 14588 at *19 (fact that plaintiff asserted a statutory claim under transferee forum's law favored transfer) (quotation and citation omitted); *see also Nat'l Bank of Harvey v. Bathgate Capital Partners, LLC*, No. 1:06-CV-053, 2007 U.S. Dist. LEXIS 25646, *31 (D.N.D. Apr. 4, 2007) (fact that plaintiff's claim would likely be governed by law of Colorado, and Colorado courts were more familiar with Colorado law, favored transfer); *Coast-To-Coast Stores, Inc. v. Womack-Bowers, Inc.*, 594 F. Supp. 731, 734 (D. Minn. 1984) (transfer to Arkansas in interest of justice because district court in Arkansas in "better position" to construe Arkansas law).

In contrast, there "is little local interest" in having a matter brought by a foreign plaintiff decided in a forum with no connection to the dispute. *Original Creatine*, 387 F. Supp. 2d at 572 (transferring case brought by forum plaintiff to forum where defendant's documents and witnesses were located).

Second, the comparative costs to the parties favor transfer. The costs to Apple of litigating in this forum will substantially exceed the costs of litigating in the Northern District of California, where Apple's witnesses and documents are located. Luxpro, on the other hand, will incur no additional costs by litigating this case in California. Luxpro will be required to hire local counsel and travel regardless of whether this case proceeds in Arkansas or California. *See*

16

*Nat'l Bank of Harvey,* 2007 U.S. Dist. LEXIS 25646 at *31-32 (granting transfer where

defendant would not have to travel or hire local counsel in transferee forum and plaintiff would

have to do so in either forum). Luxpro's litigation costs are likely to be *lower* in the Northern

District of California, because it is easier for Luxpro's principals and employees to travel to

California than to Arkansas.

Third, the ability to enforce a judgment favors a California forum. Apple is located in the

Northern District of California, and accordingly, any judgment against it will likely have to be

enforced in that district. It will be less expensive to enforce a judgment issued in the Northern

District of California, and there will be no need for any recognition of judgment proceedings

there. *Nat'l Bank of Harvey,* 2007 U.S. Dist. LEXIS 25646 at *31 (granting transfer where

enforcement of judgment would be cheaper in transferee forum and there would be no need for

recognition of judgment proceedings, as defendants resided in transferee forum).

In summary, the relevant interest of justice factors all favor a transfer to the Northern

District of California.

## CONCLUSION

There is no basis whatsoever for Luxpro's decision to file in this district. Neither Luxpro

nor the facts alleged in its complaint have any connection to Arkansas. Each of the factors used

to determine whether transfer is appropriate under 28 U.S.C. § 1404(a) overwhelmingly favors

transfer to the Northern District of California. Similarly, no deference should be accorded here

to plaintiff's choice of forum given the complete absence of any connection to the forum. In

sum, the interest of justice and the convenience of all concerned dictate transfer to the Northern

District of California.

Respectfully submitted,

/s/Kevin A. Crass
Arkansas Bar No.: 84029

KEVIN A. CRASS
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue
Suite 2000
Little Rock, Arkansas 72201-3522
Telephone: (501) 376-2011
Email: crass@fec.net

and

JAMES M. PRATT, JR.
Arkansas Bar No.: 74124
144 Washington Street, Northwest
P.O. Box 938
Camden, Arkansas 71701-0938
Telephone: (870) 836-7328
Email: jamiepratt@cablelynx.com

and CoCounsel

PENELOPE A. PREOVOLOS
California Bar No.: 87607
STUART C. PLUNKETT
California Bar No.:187971
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
E-mail:  PPreovolos@mofo.com
E-mail:  SPlunkett@mofo.com

*Attorneys for Defendant Apple Inc.*

## CERTIFICATE OF SERVICE

I, Kevin A. Crass, hereby certify that on December 19, 2008, the foregoing was electronically filed with the Clerk which shall send notification of such filing to the following:

- **Richard A. Adams**
  radams@pattonroberts.com,shicks@pattonroberts.com,mcosta@pattonroberts.com
- **Phillip N. Cockrell**
  pcockrell@pattonroberts.com,kharris@pattonroberts.com
- **Patrick J. Conroy**
  pconroy@shorechan.com,ldalton@shorechan.com
- **Jeremy Young Hutchinson**
  jhutchinson@pattonroberts.com,kbraswell@pattonroberts.com
- **Glenn E. Janik**
  gjanik@shorechan.com,ldalton@shorechan.com
- **Corey Darnell McGaha**
  cmcgaha@pattonroberts.com,shicks@pattonroberts.com,mcosta@pattonroberts.com,ssrebalus@pattonroberts.com
- **Nicholas H. Patton**
  nickpatton@texarkanalaw.com,mlong@texarkanalaw.com
- **Leisa B. Pearlman**
  lpearlman@pattonroberts.com,shicks@pattonroberts.com,pdesantis@pattonroberts.com,kgarrett@pattonroberts.com
- **Patricia L. Peden**
  ppeden@pedenlawfirm.com
- **Stuart Christopher Plunkett**
  rpelletier@mofo.com,splunkett@mofo.com
- **James M. Pratt , Jr**
  jamiepratt@cablelynx.com
- **Penelope A. Preovolos**
  PPreovolos@mofo.com,kfranklin@mofo.com
- **Sean F. Rommel**
  srommel@pattonroberts.com,shicks@pattonroberts.com,mcosta@pattonroberts.com,kgarrett@pattonroberts.com

/s/ Kevin A. Crass
KEVIN A. CRASS (84029)
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201-3522
Telephone: (501) 376-2011
Crass@fec.net
Attorneys for Defendant,
Apple Inc. f/k/a Apple Computer, Inc.

# 695210

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF ARKANSAS

### TEXARKANA DIVISION

| | | |
|---|---|---|
| LUXPRO CORPORATION, a Taiwanese corporation, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 4:08-CV-04092-HFB |
| v. | ) ) | |
| APPLE, INC. f/k/a Apple Computer, Inc., | ) ) ) | |
| Defendant. | ) ) | |

## DECLARATION OF THOMAS R. LA PERLE IN SUPPORT OF DEFENDANT APPLE INC'S MOTION TO TRANSFER AND MOTION TO DISMISS

I, Thomas R. La Perle, declare as follows:

I am an attorney licensed to practice law in the State of California. I am Senior Intellectual Property Counsel at Apple Inc. ("Apple"), the defendant in this action. I submit this declaration in support of Apple's motion to transfer this action to the Northern District of California and Apple's motion to dismiss the action. I make this declaration based on personal knowledge, except for those matters stated on information and belief. If called as a witness, I would testify to the facts set forth below.

1.    Apple is a California corporation with its principal place of business in Cupertino, California, which is within the Northern District of California.

2.　　　Apple does not maintain any offices in Arkansas.  In paragraph 5 of the complaint, Luxpro alleges that Apple maintains "retail sales locations" in Arkansas.  This is not correct.  Apple does not operate any retail stores in Arkansas.

3.　　　Within the United States, the overwhelming majority of documents relevant to Luxpro's claims are located at Apple's headquarters in Cupertino, California.  Documents relevant to Luxpro's claims are also located at the offices of Apple's outside counsel in China and Germany, as well as in certain foreign offices of Apple and Apple affiliates.  Apple is not aware of any documents relevant to Luxpro's claims that are located in Arkansas.

4.　　　Luxpro's allegations concern legal actions taken by Apple, including filing litigation in Germany and Taiwan and sending cease and desist letters regarding Apple's intellectual property.  As a result, many of the Apple employees with knowledge relevant to the allegations are attorneys located at Apple's headquarters in California and in certain foreign offices of Apple and Apple affiliates.  The vast majority of Apple witnesses who are not attorneys and who possess information relevant to Luxpro's claims reside in California; none resides in Arkansas.  These witnesses include the following:

Anthony ("Tony") Fadell.  During the relevant time period, Mr. Fadell was Vice President, iPod Hardware.  Mr. Fadell was responsible for hardware engineering for iPod products, including the first generation iPod shuffle ("iPod shuffle").  Mr. Fadell has knowledge about the design and engineering of iPod products, including iPod shuffle.  Mr. Fadell resides within the Northern District of California.

Greg Joswiak.  During the relevant time period, Mr. Joswiak was Vice President, iPod Product Marketing.  Mr. Joswiak is knowledgeable about the design, engineering,

and marketing of the iPod shuffle.  Mr. Joswiak resides within the Northern District of California.

Stan Ng.  During the relevant time period, Mr. Ng was Director, iPod Product Marketing.  Mr. Ng is knowledgeable about the design, engineering, and marketing of Apple's iPod products, including the iPod shuffle.  Mr. Ng resides within the Northern District of California.

Jonathan Ive.  During the relevant time period, Mr. Ive served as Vice President, Industrial Design until May 2005, and as Senior Vice President, Industrial Design thereafter.  Mr. Ive is head of industrial development for all Apple products.  Mr. Ive has knowledge about the design and material selection for Apple iPod products, including the iPod shuffle.  Mr. Ive resides within the Northern District of California.

Andrew Hodge.  During the relevant time period, Mr. Hodge was Engineering Director, iPod Division.  Mr. Hodge is in charge of hardware engineering for iPod products, including iPod shuffle.  Mr. Hodge has knowledge about iPod hardware engineering design and development.  Mr. Hodge resides within the Northern District of California.

Bryan Roos.  During the relevant time period, Mr. Roos was Engineering Program Manager for iPod shuffle.  Mr. Roos has knowledge about the development, design, and engineering of the iPod shuffle  Mr. Roos resides within the Northern District of California.

David Tupman.  During the relevant time period, Mr. Tupman was Manager, Hardware Engineering, iPod Division, and Engineering Director as of June 2005.  Mr.

Tupman has knowledge about the hardware engineering for the iPod shuffle. Mr. Tupman resides within the Northern District of California.

Joseph Fisher. During the relevant time period, Mr. Fisher was an Engineer and Senior Scientist in the iPod Division. Mr. Fisher has knowledge about the hardware engineering for the iPod shuffle. Mr. Fisher resides within the Northern District of California.

Steve Zadesky. During the relevant time period, Mr. Zadesky was Engineering Manager, Product Design, iPod Division. Mr. Zadesky has knowledge about iPod shuffle hardware engineering design and development. Mr. Zadesky resides within the Northern District of California.

Brian Lynch. During the relevant time period, Mr. Lynch was an Engineer and Senior Scientist in the iPod Division. Mr. Lynch has knowledge about iPod shuffle hardware engineering design and development. Mr. Lynch resides within the Northern District of California.

5.    Apple is not aware of any witnesses with relevant information who reside in Arkansas. Apple is also not aware of any events relevant to Luxpro's claims that occurred in Arkansas, or in any state in the United States other than California.

6.    Attached as Exhibit 1 hereto is a true and correct copy of an injunction issued by the Ninth Panel of the Braunschweig Regional Court in Germany on March 14, 2005.

7.    Attached as Exhibit 2 hereto is a true and correct copy of a translation of an injunction issued by the Ninth Panel of the Braunschweig Regional Court in Germany on March 14, 2005.

8.    Attached as Exhibit 3 hereto is a true and correct copy of an injunction issued by the Regional Court of Shilin in Taiwan on August 18, 2005.

9.    Attached as Exhibit 4 hereto is a true and correct copy of the translation of an injunction issued by the Regional Court of Shilin in Taiwan on August 18, 2005.

10.    Attached as Exhibit 5 hereto is a true and correct copy of a picture showing a first generation Apple iPod shuffle and the "Super Shuffle" sold by Luxpro Corporation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 18, 2008 in Cupertino, California.

_____
Thomas R. La Perle

sf-2620754

## CERTIFICATE OF SERVICE

I, Kevin A. Crass, hereby certify that on December 19, 2008, the foregoing was electronically filed with the Clerk which shall send notification of such filing to the following:

- **Richard A. Adams**
  radams@pattonroberts.com,shicks@pattonroberts.com,mcosta@pattonroberts.com
- **Phillip N. Cockrell**
  pcockrell@pattonroberts.com,kharris@pattonroberts.com
- **Patrick J. Conroy**
  pconroy@shorechan.com,ldalton@shorechan.com
- **Jeremy Young Hutchinson**
  jhutchinson@pattonroberts.com,kbraswell@pattonroberts.com
- **Glenn E. Janik**
  gjanik@shorechan.com,ldalton@shorechan.com
- **Corey Darnell McGaha**
  cmcgaha@pattonroberts.com,shicks@pattonroberts.com,mcosta@pattonroberts.com,ssrebalus@pattonroberts.com
- **Nicholas H. Patton**
  nickpatton@texarkanalaw.com,mlong@texarkanalaw.com
- **Leisa B. Pearlman**
  lpearlman@pattonroberts.com,shicks@pattonroberts.com,pdesantis@pattonroberts.com,kgarrett@pattonroberts.com
- **Patricia L. Peden**
  ppeden@pedenlawfirm.com
- **Stuart Christopher Plunkett**
  rpelletier@mofo.com,splunkett@mofo.com
- **James M. Pratt , Jr**
  jamiepratt@cablelynx.com
- **Penelope A. Preovolos**
  PPreovolos@mofo.com,kfranklin@mofo.com
- **Sean F. Rommel**
  srommel@pattonroberts.com,shicks@pattonroberts.com,mcosta@pattonroberts.com,kgarrett@pattonroberts.com

/s/ Kevin A. Crass
KEVIN A. CRASS (84029)
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201-3522
Telephone: (501) 376-2011
Crass@fec.net
Attorneys for Defendant,
Apple Inc. f/k/a Apple Computer, Inc.

# Exhibit 1

- Ausfertigung -

**Landgericht Braunschweig**
Geschäfts-Nr.:
9 O 683/05 (132)

Thomas Boxhorn
Gerichtsvollzieher
Eing. 1 4. März 2005
DR Nr. ........................

## Beschluss

In Sachen

Apple Computer Inc., gesetzlich vertreten, 1 Infinite Loop, Cupertino,
USA 95014 Kalifornien,

                                                    Antragstellerin

Prozessbevollmächtigte: Rechtsanwältinnen und Rechtsanwälte CMS Hasche Sigle,
Theodor-Heuss-Ring 19-21, 50668 Köln,
Geschäftszeichen: Has-Me-ch-02534-03

gegen

Luxpro Corporation 3 F, No. 39, Alley 20, Lane 407, Sec. 2, Tiding Blvd.,
RC 114 Taipei, Taiwan,
**z. Zt. CeBIT (Hannover) Halle 24, Stand C 24**

                                                    Antragsgegnerin

erlässt die 9. Zivilkammer des Landgerichts Braunschweig - wegen Dringlichkeit des
Falles ohne vorherige mündliche Verhandlung und durch den Kammervorsitzenden
allein - folgende   **e i n s t w e i l i g e   V e r f ü g u n g :**

1. Der Antragsgegnerin wird untersagt, untersagt im geschäftlichen Verkehr zu Zwe-
   cken des Wettbewerbs MP3-Player anzubieten, feilzuhalten und/oder zu veräußern
   und/oder anbieten, feilhalten und/oder veräußern zu lassen, wenn dies wie nachste-
   hend wiedergegeben geschieht:



Case 4:08-cv-04092-HFB Document 27-2 Filed 12/19/2008 Page 3 of 6

2





2. Für jeden Fall der schuldhaften Zuwiderhandlung wird der Antragsgegnerin Ord-
nungshaft von bis zu 6 Monaten oder ein Ordnungsgeld von bis zu 250.000,-- Euro
angedroht; an die Stelle des Ordnungsgeldes tritt bei Nichtbeitreibbarkeit Ordnungs-
haft. Ordnungshaft ist zu vollziehen an dem der Antragsgegnerin.

3. Es wird angeordnet, dass die Antragsgegnerin sämtliche in ihrem Besitz befindlichen
MP3-Player „Super-Shuffle" gem. **Ziff. 1)** an einen von der Antragsstellerin zu be-
auftragenden Gerichtsvollzieher zum Zwecke der Sequestration herauszugeben hat.

4. Die Antragsgegnerin trägt die Kosten des Verfahrens.



3

5.  Der Streitwert wird auf 100.000,00 € festgesetzt.

6.  Der Antragsgegnerin wird aufgegeben, zu dem beigefügten Kostenfestsetzungsantrag binnen drei Wochen ab Zustellung Stellung zu nehmen.

7.  Wegen des Kostenerstattungsanspruchs betreffend die festzusetzenden Kosten in Höhe von 3.095,00 Euro wird der dingliche Arrest in das gesamte Vermögen der Antragsgegnerin angeordnet. Die Vollziehung des Arrestes wird durch Hinterlegung durch die Antragsgegnerin in Höhe von 3.095,00 Euro gehemmt.

### G r ü n d e :

Mit der Antragsschrift, auf die verwiesen wird, hat die Antragstellerin Tatsachen glaubhaft gemacht, die sowohl den Verfügungsanspruch als auch den Verfügungsgrund bejahen lassen.

Der begehrte Unterlassungsanspruch rechtfertigt sich aus §§ 3, 4 Nr. 9 UWG sowie aus Art. 19, 89 GGVO.

Der Herausgabeanspruch dient der Sicherung des Vernichtungsanspruches.

Die Ordnungsmittelandrohung hat ihre Grundlage in § 890 ZPO.

Die Kostenentscheidung folgt aus § 91 ZPO.

Der Streitwert war gem. § 12 b, Abs. 1 GKG, § 3 ZPO festzusetzen.

Der begehrte dingliche Arrest ist gemäß § 917 Abs. 1 und Abs. 2 S. 1 ZPO zu erlassen. Ein dinglicher Arrest ist insbesondere zur Sicherung des Anspruches auf Kostenerstattung zulässig, sofern, wie im vorliegenden Fall, das Unterliegen der Antragsgegnerin in einem Hauptverfahren wahrscheinlich ist (Zöller ZPO 24 A. § 916, Rn. 8). Der Arrestgrund ergibt sich aus § 917 Abs. 2 ZPO, wenn – wie hier – ohne den Arrestbefehl im Ausland vollstreckt werden müsste, ohne dass die Voraussetzungen des § 917, Abs. 2, S. 2 ZPO vorliegen.

4

Der Antragsgegnerin wird empfohlen, dem Gericht binnen drei Wochen nach Zustellung dieses Beschlusses einen in der Bundesrepublik Deutschland ansässigen Zustellungsbevollmächtigten zu benennen. Damit kann eine durch die Notwendigkeit von Übersetzungen teure Zustellung im Wege der internationalen Rechtshilfe vermieden werden. Ohnehin würde der Antragsgegnerin bei der nächstfolgenden förmlichen Auslandszustellung eine entsprechende Auflage gemacht werden. Gem. §184, Abs. 1, S. 1 ZPO ist eine entsprechende Anordnung nur bei einer förmlichen Zustellung gem. § 183, Abs. 1 Nr. 2 (Ersuchen einer Behörde) oder § 183, Abs. 1, Nr. Nr. 3 (Ersuchen des Auswärtigen Amtes) möglich.

Braunschweig, den 14.03.05
Landgericht, 9. Zivilkammer

Dr. Meyer
Vorsitzender Richter am Landgericht

Ausgefertigt
Braunschweig, 14.03.05

Winsemann, Justizobersekretärin
- als Urkundsbeamtin der Geschäftsstelle



Bitte stets angeben  **DR I 315/05**

Geschäftsnummer

GV Bodiam
Ernsestr. 14
30161 Hannover

Im Auftrag d. Gläubiger

Apple Computer Inc.
1 Infinite Loop.
95014 Cupertino. Kalifornien

Rechtsanwälte
CMS Hasche Sigle
Theodor-Heuss-Ring 19-21
50668 Köln

Kostenrechnung nach dem GvKostG (KV=Kostenverzeichnis)

| A. Gebühren | |
|---|---|
| Gebühren KV 100,101,604 | 7,50 EUR |
| B. Auslagen | |
| Dokum.-paus. KV 700 | 2,00 EUR |
| Wegegeld KV 711 | 2,50 EUR |
| Pauschale KV 713 | 3,00 EUR |
| Gesamtsumme | 15,00 EUR |

Zustellungsausweis

Luxpro Corporation 3 F
No. 39, Alley 20, Lane 407, Sec. 2 Tidiv
RC 114 Taipei Taiwan

# Zustellungsurkunde

Beglaubigte Abschrift des hiermit verbundenen Schriftstückes
„einstweilige Verfügung " habe ich heute

☒ d ☐ Adressaten ☐ Firmeninhaber(in) ☒ gesetzliche(n) Vertreter(in)
☐ gewillkürte(n) Vertreter(in) nach Vorlage d. Vollmachtsnach-
weises selbst ☐ in ☐ der Wohnung ☐ dem Geschäftslokal
☐ meinem Geschäftslokal ☐ der Gemeinschaftseinrichtung
☐ an folgendem Ort übergeben.

Ersatzzustellung:

☐ an Beschäftigten bei Behörden, Firmen, Vereine usw.:
Da ich in dem Geschäftslokal ☐ den Adressaten ☐ d. Vorsteher(in)
☐ d. gesetzl. Vertreter(in)
☐ d. vertretungsberecht. Mitinhaber(in) persönlich nicht
angetroffen habe, dort d. beim
Adressaten beschäftigten Herrn/Frau
übergeben.

☐ an Familienangehörige, Mitbewohner etc.: Da ich d.
Adressaten in der Wohnung nicht angetroffen habe, dort ☐ d.
erwachs. Familienangehörigen ☐ Ehefrau ☐ Ehemann ☐ eingetr. ☐
Lebensgef. ☐ Sohn ☐ Tochter ☐ Vater ☐ Mutter ☐ bei der Familie als
beschäftigte(n) Erwachsene(n) Herrn/Frau                    ☐ d.
erwachs. ständige(n) Mitbewohner(in)
☐ d. gesetzl. Vertreter(in)
übergeben.

☐ in der Gemeinschaftseinrichtung, Leiter, Vertreter etc.:
Da ich d. Adressaten in der Gemeinschaftseinrichtung nicht
angetroffen habe, dort ☐ d. Leiter(in) der Einrichtung ☐ d. dazu ☐
nachweislich ermächtigten Vertreter(in) d. Leiter(in) ☐ d. gesetzl.
Vertreter(in)                              übergeben.

☐ durch Einlegung:
☐ Da ich d. Adressaten in der Wohnung nicht angetroffen habe
und die Zustellung an eine(n) erwachsene(n) Familienange-
hörige(n) oder an eine(n) erwachsene(n) Mitbewohner(in)
oder an eine in der Familie beschäftigte Person nicht
ausführbar war, in einen zu der Wohnung
☐ Da ich d. Firmeninhaber(in) ☐ gesetzlichen(n) Vertreter(in)
selbst in dem Geschäftslokal nicht angetroffen habe und die
Zustellung an eine im Geschäftslokal beschäftigte Person
nicht ausführbar war, in einen zu dem Geschäftsraum
gehörenden Briefkasten oder in eine sichere, vom Adressaten für
den Postempfang eingerichtete Vorrichtung eingelegt.
Das Datum der Zustellung - ggf. mit Uhrzeit - habe ich auf dem
Umschlag des zuzustellenden Schriftstückes vermerkt.

☐ durch Niederlegung:
☐ Da kein Briefkasten bzw. keine für den Postempfang
eingerichtete Vorrichtung vorhanden ist,
☐ Da der Briefkasten bzw. die für den Postempfang eingerichtete
Vorrichtung nicht für eine sichere Aufbewahrung geeignet ist,
habe ich die Sendung bei d. Geschäftsstelle beim Amtsgericht
Hannover
niedergelegt
Über die Niederlegung habe ich eine an den Adressaten gerichtete
schriftliche Mitteilung
☐ in der bei gewöhnlichen Briefen üblichen Weise abgesandt
☐ an der Tür ☐ der Wohnung ☐ des Geschäftsraumes
☐ der Gemeinschaftseinrichtung
befestigt
Das Datum der Zustellung - ggf. mit Uhrzeit - habe ich auf dem
Umschlag des zuzustellenden Schriftstückes vermerkt

☐ Verweigerte Annahme:
Da der ☐ Adressat ☐ Ersatzempfänger, nämlich                    die
Annahme der Sendung unberechtigt verweigerte, habe ich diese
☐ in der Wohnung ☐ dem Geschäftslokal zurückgelassen
☐ nach Belehrung an d. Absender/Auftraggeber zurückgesandt,
da keine Wohnung / kein Geschäftsraum vorhanden war.

Den Tag der Zustellung - ggf. mit Uhrzeit - habe ich auf dem
Umschlag der Sendung / dem Schriftstück vermerkt.

AG 114 Taipei Taiwan, 14.03.05

☐ Uhr       Min.   (nur auf Verlangen)

(Bild)(ich) Gemeindevollzieher beim AG Hannover)

# Exhibit 2

*This translation is for information purposes only.*

– Copy –

Landgericht Braunschweig
Case no.
9 O 683/05 (132)

### Decision

In the matter

Apple Computer Inc., represented by its authorised representatives, 1 Inifinite Loop, Cupertino,
USA 95014 California

Applicant

Counsel: Rechtsanwältinnen und Rechtsanwälte CMS Hasche Sigle,
Theodor-Heuss-Ring 19-21, 50668 Cologne,
Reference: Has-Me-ch-02534-03

v.

Luxpro Corporation 3 F, No. 39, Alley 20, Lane 407, Sec. 2, Tiding Blvd.,
RC 114 Taipei, Taiwan
Currently: CEBIT (Hanover) Hall 24, Stand C 24

Respondent

owing to the urgency of the matter the Ninth Civil Panel of the Braunschweig Regional Court – issues the
following

### Interim Junction

without prior oral hearing and by the president of the panel acting alone:

1.  The Respondent is prohibited from offering MP3 players commercially for the purpose of competition,
    keeping for sale and/or selling and/or to having such offered, kept for sale and/or sold if this occurs as
    reproduced below.



Case 4:08-cv-04092-HFB   Document 27-3   Filed 12/19/2008   Page 3 of 4

*This translation is for information purposes only.*





2.  For each individual infringement the Respondent shall be punishable with detention (*Ordnungshaft*) of up to six months or a fine (*Ordnungsgeld*) of up to EUR 250,000.00. In the event that the fine cannot be collected it shall be substituted for by detention. The detention shall be executed against the Respondent.

3.  The Respondent shall be ordered to surrender all MP players ("super shuffle" as specified in (1)) in its possession to a court bailiff to be appointed by the Applicant for the purpose of sequestration.

4.  The costs of the proceedings shall be borne by the Respondent.

5.  The dispute value is set at EUR 100,000.00.

6.  The Respondent is ordered to comment on the attached application for setting costs (*Kostenfestsetzungsantrag*) within three weeks of service.

7.  With regard to the claim for the reimbursement of costs for the costs to be set of EUR 3,095.00 the court orders *in rem* attachment from the entire assets of the Respondent.

*This translation is for information purposes only.*

## Grounds:

In its application pleading, to which reference is made, the Applicant has plausibly described the circumstances in a manner that justifies both the claim for injunctive relief and the grounds for the injunction.

The claim for a cease and desist order (*Unterlassungsanspruch*) sought by the Applicant is justified under §§ 3, 4 (9) of the German Act against Unfair Competition (*Gesetz gegen den unlauteren Wettbewerb*) and Art. 19, 89 of the Community Designs Regulation (*Gemeinschaftsgeschmacksmusterverordnung*).

The claim for surrender serves as security for the claim for destruction.

The basis for the penalties is set out in § 890 of the German Code of Civil Procedure (*Zivilprozeßordnung*).

The decision on costs is based on § 91 of the German Code of Civil Procedure.

The dispute value was to be set pursuant to § 12 b (1) of the German Court Fees Act (*Gerichtskostengesetz*), § 3 of the German Code of Civil Procedure.

The writ of attachment sought by the Applicant shall be issued pursuant to § 917 (1) and (2) sentence 1 of the German Code of Civil Procedure. A writ of attachment is permitted in particular to secure the claim for the reimbursement of costs if – as in the present case – the Respondent is likely to be unsuccessful in the main proceedings (Zöller Code of Civil Procedure 24 A. § 916, no. 8). The grounds for attachment derive from § 917 (2) of the German Code of Civil Procedure if – as is the case here – it would otherwise be necessary to enforce the attachment order abroad without the requirements of § 197 (2) sentence 2 of the German Code of Civil Procedure being satisfied.

The Respondent is advised to provide the court with the name of an authorised recipient resident in the Federal Republic of Germany within three weeks of service of this decision. This could avoid the high cost of service by way of international legal assistance brought about by the need for translations. A requirement to this effect would in any case be imposed on the Respondent with the next formal service abroad. Pursuant to § 184 (1) sentence 1 of the German Code of Civil Procedure a requirement to this effect is only possible with a formal service pursuant to § 183 (1) no. 2 (request from an authority) or § 183 (1) no. 3 (request from the German Foreign Office).

Bruanschweig, 14.03.05
Regional Court, Ninth Civil Panel'

Dr Meyer
Presiding Judge at the Regional Court

**Signed**
Braunschweig, 14.03.05
(*Signature – illegible*)
Winsemann, court secretary
- as deeds officer for the court office

(*Circular stamp:*
Braunschweig Regional Court)

# Exhibit 3

臺灣士林地方法院民事裁定

94年度裁全字第2584號

聲　請　人
即　債權人　美商．蘋果電腦股份有限公司

　　　　　　　　　設1 Infinte Loop,Cupertino,CA 9501
　　　　　　　　　4-2084,U.S.A

法定代理人　Kevin Saul

　　　　　　　　　住同上

代　理　人　陳和貴律師
　　　　　　　吳婷婷律師

相　對　人
即　債務人　茂嘉科技股份有限公司

　　　　　　　　　設台北市內湖區堤頂大道2段407巷20弄
　　　　　　　　　39號3樓

法定代理人　吳富錦　　　住同上

代　理　人　張澤平律師

上列當事人間請求排除侵害事件，債權人聲請假處分，本院裁定
如下：

　　　　主　文

債權人以新台幣參佰零玖萬捌仟參佰參拾參元或同額之第一商業
銀行可轉讓定期存單為債務人供擔保後，債務人就如附件一所示
商品及相同或近似於如附件二所示之商品，不得自行或使他人為
輸出或輸入、運送、販賣、批售、加工、揀選、生產、製造或其
他一切處分行為；亦不得於網路、報章雜誌或任何傳播媒體為廣
告、散佈商品說明書、價目〔書記官 詹志鵬〕品目錄、為商品說明會、展覽
會及其他一切推廣促銷行為〔詹志鵬〕

聲請程序費用由債務人負擔〔書記官 詹志鵬〕

　　　　理　由

一、本件聲請意旨略以：債權人主張其於民國90年10月起，開始
　　推出iPod家族系列數位隨身碟，創先使用扁薄直長方形體外
　　觀，外觀正面上方設置一橫長方形顯示幕，下方則為一同心
　　圓觸控式按鍵介面，在世界各國屢獲大獎。94年1月聲請人

1

在美國首先推出另一iPod家族系列即如附件二所示之iPod
Shuffle 數位音樂隨身碟，外觀造型仍延續iPod家族系列商
品之設計理念，獨特長方形直線造型，正面有一簡單圓形觸
控式按鍵介面，背面則為簡單播放裝置，陸續在全世界上市
銷售，造成相當轟動，並出現嚴重缺貨情形。同年2月中旬
，聲請人在我國正式推出iPod Shuffle數位音樂隨身碟，有
極高之市場佔有率，頗具知名度，因此iPod Shuffle數位
音樂隨身碟，其獨特外觀造型，業已成為相關事業或消費者
所普遍認知係聲請人商品之表徵。詎相對人為謀不法利益，
及為攀附聲請人之商譽及努力成果，竟於94年3 月間在德國
漢諾威舉辦之電腦電信展覽會之相對人參展攤位上，展示仿
冒相同於聲請人iPod Shuffle數位音樂隨身碟外觀特徵之
Super Shuffle 侵害品，並仿冒使用相同於聲請人在世界許
多國家包含我國已獲註冊或尚在申請中之Shuffle 商標圖樣
於該侵害品上。相對人並仿冒使用聲請人之iPod Shuffle數
位音樂隨身碟商品圖樣於其參展會場內所展示之宣傳看板上
，並在該看板上背景圖樣上仿冒使用代表聲請人商品及服務
之蘋果圖樣。聲請人於參展期間即已向得德國法院聲請禁止
令，並經德國法院核發。相對人嗣雖將其Super Shuffle 侵
害品名稱改為Super Tangent ，及推出仍抄襲iPod Shuffle
設計之其他Tangent 系列商品，如：Top Tangent 及EZ
Tangent 侵害品等，並在該侵害品之正面圓形按鍵內部做些
微更改，惟該侵害品之外觀造型，與聲請人之iPod Shuffle
數位音樂隨身碟之外觀特徵，仍幾乎完全相同。經聲請人予
以制止，然相對人仍以商品外觀並非完全相同，而仍繼續製
造、推銷、販賣前開侵害品。聲請人依公平交易法第20條第
1 項第1 款、第24條、第30條規定，得請求排除相對人之侵
害。相對人所生產如附件一所示之商品，幾乎完全抄襲聲請
人之iPod Shuffle數位音樂隨身碟之外觀特徵，如相對人繼
續製造、銷售、廣告如附件一所示商品及就相同或近似於如
附件二所示商品之商品，不僅損害聲請人公平競爭之利益，

2

及致消費者混淆誤認，更嚴重造成國際間認為我國係一仿冒
王國之負面影響，且該侵害商品流入市面，將造成聲請人無
法回復之重大損失，爰提本件聲請等情。

二、相對人則以：其所生產之Tangent 系列產品其外觀之整體設
計理念，與聲請人之iPod Shuffle之產品設計理念全然不同
，且產品外型不同，相對人之產品螢幕，並附加自己之商標
，且圓形控制鍵位置及形狀亦不同，自無造成任何混淆之可
能。而聲請人附件一所述之Super Tangent 因市場測試後反
應不佳，已停止廣告及銷售，聲請人就此聲請假處分，自與
法不合。另二款商品雖為相對人持續推廣之商品，然與聲請
人商品外觀完全不同，並無造成聲請人任何損害之可能，其
所為假處分之聲請，亦與法不符等情置辯。

三、按於爭執之法律關係，為防止發生重大之損害或避免急迫之
危險或有其他相類之情形而有必要時，得聲請為定暫時狀態
之處分，民事訴訟法第538 條第1 項定有明文。經查：聲請
人主張相對人所生產如附件一所示之商品，抄襲其相iPod
Shuffle 數位音樂隨身碟之外觀特徵，如准許相對人繼續銷
售，將造成其重大之損害一節，依聲請人提出之網頁相關資
料、德國法院核發之禁止令、宣傳廣告資料、及兩造所提出
如附件一、二所示之商品，已可認相對人所生產如附件一所
示之商品與聲請人所生產iPod Shuffle數位音樂隨身碟外觀
有雷同之處，聲請人所生產之iPod Shuffle數位音樂隨身碟
因屢獲世界性大獎，故該產品為消費者所普遍認知為聲請人
之產品，亦足認聲請人就此已有釋明。而相對人雖抗辯其所
生產如附件一所示之Super Tangent 因市場測試後反應不佳
，目前已停止廣告及銷售，另二款商品之外觀與附件二聲請
人之商品完全不同云云，然相對人既自承確曾銷售如附件一
所示之Super Tangent 產品，且依聲請人所提相對人網站上
仍載有94年5 月Super Tangent 量產上市等資料，相對人就
此所辯自不足採信。又若相對人所生產如附件一所示之商品
有使消費者混同誤認為聲請人所生產之iPod Shuffle數位音

3

樂隨身碟外觀，除將造成聲請人營業額之財產上重大損害外，尚可能影響其商品信譽、形象等，至相對人因本件定暫時狀態之假處分所受之損害則係其所生產品將延遲銷售所受之損害，故本院認聲請人所為之聲請符合前揭定暫時狀態假處分之要件，然聲請人雖就前揭要件已有釋明，惟本院認釋明仍屬不足，而聲請人既陳明願供擔保以代釋明，本院認其釋明之欠缺，擔保足以補之，其請求自應准許。

四、又本院命相對人提出附件一所示商品之年度預定銷售額，相對人雖主張其年度銷售額可達 3,520,000 台，然就此除一簡單之表格外，並無其他可供本院審酌之資料，故本院認就此並不足採，是本院參酌相對人之資本額新台幣（下同）13,000,000 元，附件一所示商品為其登記營業項目之 2 分之 1，而依財政部 92 年度營利事業各業別所得額標準與同業利潤標準，相對人關於附件一所示商品之淨利率為 11%，另審酌各級法院之辦案期限實施要點第 2 項第 2 款、第 7 款、第 8 款之規定，民事第一審審判案件辦案期限為 1 年 4 月，第二審為 2 年，第三審為 1 年，並佐以法定遲延利率計算相對人可能所受之損害為新台幣元（13000000x 1/2 × 11% × 13/3 =3098333，元以下四捨五入），故定本件聲請人所應供之擔保金為 3,098,333 元。

五、按假處分所保全之請求，得以金錢之給付達其目的，或債務人將因假處分而受難以補償之重大損害，或有其他特別情事者，法院始得於假處分裁定內，記載債務人供所定金額之擔保後免為或撤銷假處分；此規定並為定暫時狀態之處分準用之，民事訴訟法第 536 條第 1 項、第 538 條之 4 分別定有明文。依聲請人聲請意旨所述，其所欲保全之標的為相對人依公平交易法第 30 條之除去、防止侵害請求權，該權利不僅維護其營業上之金錢利益，尚含無形之商品信譽、形象及認同度等，且不惟包括消極地除去過去侵害，並含積極地預防將來可能發生之侵害，又因其具繼續性、未來性之特性，故聲

4

請人所欲保全之請求，非謂得以金錢之給付達其目的，且相
對人所述其就附件一所示商品之預定銷售額達 3,520,000 台
一節，僅提出表格，而未提出合約供本院審酌，故尚難認其
將因此而受有難以補償之重大損害，故本院認本件假處分，
無記載債務人供一定金得之擔保後得免為或撤銷假處分之必
要，併此敘明。

六、依民事訴訟法第95條、第78條裁定如主文。

中　　華　　民　　國　　94　　年　　8　　月　　18　　日

方彬彬



以上為正本係照原本作成

如對本裁定抗告應於送達後10日內向本院提出抗告狀

中　　華　　民　　國　　94　　年　　8　　月　　18　　日

詹志鵬

DSC00307 (640x480x16M.jpeg)



# LUXPRO-EZ Tangent



# LUXPRO-Top Tangent



DSC00300 (640x480x16M jpeg)



# Exhibit 4

*Civil Order of the Regional Court of Shilin in Taiwan*

Order No.2584

Applicant: APPLE COMPUTER, INC. – U.S.A.

Applicant's Address: 1Infinite Loop, Cupertino, CA95014-2084, U.S.A.

Legal Rep: Kevin Saul

Legal Rep's Address: (the same as above)

Law Firm: Attorney – Hegui Chen and Tingting Wu

Defendant: LUXPRO CORPORATION

Defendant's Address: 3F, NO.39, Alley407, Sec.2, Tiding Blvd., Neihu District, Taipei114, Taiwan

Legal Representative: Fujin Wu

Address: (the same as above)

Law firm: Attorney—Zheping Zhang

Regarding the Applicant applying for a preliminary injunction to stop infringement, this court now provides its decision as follows:

**Main body:**

On condition that the Applicant offers NT3, 098, 333 in cash or by a negotiable time deposit certificate with the First Commercial Bank as a guarantee, the Defendant is to be prohibited from exporting, importing, transporting, vending, wholesaling, processing, sorting, producing, manufacturing, etc. any products identified in Attachment 1 or products that are the same as or similar to the product showed in

Attachment 2 by itself or with others - it is also prohibited from advertising these products online, in magazines and in other media, distributing instructions, price lists, catalogues, carrying out product introduction meetings, exhibitions and any other promotions.

All court fees relating to this application should be borne by the Defendant.

**Reasons**

1. The general statement of the Applicant for the application is as follow: the Applicant began to produce the portable digital iPod products in October 2001, It was the first one to adopt the flat thin and straight rectangular appearance with horizontal rectangle screen on the top and a concentric circle touch interface below. The distinctive design of the iPod has won lots of design prizes in various countries throughout the world. In January 2005, the Applicant began to produce the product named iPod Shuffle that is identified in Attachment 2 - its appearance continued the design ideology of the iPod family of products - that is distinctive straight rectangular shape with a simple circular touch interface on the front and play device at the back. The introduction of iPod Shuffle caused much sensation throughout the world, and many stores sold out of stock incredibly quickly because of the amazing purchasing by consumers. In mid February 2005, the Applicant began to sell iPod Shuffle in Taiwan and received a great reputation for occupying a large market share in a relevant market and the distinctive design became the distinctive mark of the Applicant. Knowing all these facts, with the aims of engaging in unlawful conduct and to take advantage of Apple's reputation and effort, LUXPRO CORPORATION exhibited an iPod Shuffle look-a-like product at the CeBit electronics fair in Germany in March 2005. The Defendant not only used the famous shape on its own products named "Super Shuffle", but also used the SHUFFLE mark that was registered by the Applicant in many countries and is pending registration in many others throughout the world - furthermore, it also used the iPod Shuffle pattern in its advertising bulletin and an Apple picture almost identical to the Applicant's famous Apple picture mark in the background of the bulletin. The Applicant immediately instructed its German

2

attorney to successfully apply for injunctive relief in a German court. Although the Defendant has changed the name of the product from "Super Shuffle" to "Super Tangent" as well as developed other "Tangent" products modeled on the iPod Shuffle design like Top Tangent, EZ Tangent, and made some small changes inside of the circular interface on top of the look-a-like products, the appearance of the product is still a replica of the iPod Shuffle. Although the Applicant required the Defendant to stop these acts of unfair trade, the Defendant replied each time that the appearance of Super Tangent was not the same as that of iPod Shuffle and continued to manufacture, promote and sell its look-a-like products. According to Item 1 of Section 1 of Article 20, Article 24 and Article 30 of the Fair Trade Law, the Applicant has the right to plead for stopping of such acts of unfair trade. The appearance of the products produced by the Defendant showed in Attachment 1 are nearly replicas of that of iPod Shuffle of the Applicant - if the Defendant continues to manufacture, sell and/or advertise the products showed in Attachment 1 or products the same as or similar to that in Attachment 2, it will not only confuse consumers and damage the fair competition rights of the Applicant, but also lead to negative consequences for Taiwan in the international community, as many will see our country as fostering dishonest activities. The Applicant claims that if the court does not grant a preliminary injunction to prevent the Defendant from manufacturing and/or selling in the future, then a large number of look-a-like products will appear in the market, and will seriously damage the interests of the Applicant.

2. The defense of the Defendant: the overall design ideology of the Tangent products produced by the Defendant is definitely different from the ideology of iPod Shuffle of the Applicant - the differences between the shapes, screens, trademarks and the location and shape of the circular interface of the two kinds of products will not lead to any confusion by consumers. It is unnecessary for the Applicant to apply for an injunction, since as stated in Attachment 1, Super Tangent has stopped advertising and selling due to poor market conditions. Furthermore, the appearance of the other two Tangent products that the Defendant is still producing and promoting is clearly

different from that of the products of the Applicant, and such production and sale will not result in any damage to the Applicant.

3. Article 538 of the *Civil Procedural Law* states clearly that: an applicant can apply for a preliminary injunction when it is necessary to avoid serious damage, urgent dangers, etc. Upon examination of the evidence, it can be proved, by the relevant Internet materials, the injunction issued by the German court, promotional and advertising materials and the products shown in Attachment 1 and 2 offered by the Applicant, that the appearance of the products produced by the Defendant shown in Attachment 1 is similar to the appearance of the iPod Shuffle of the Applicant, the Applicant has stated enough reasons in its submissions to prove that the appearance of the iPod Shuffle will commonly be associated with the product and service of the Applicant by consumers as it has won lots of worldwide design prizes for iPod. With regard to the defense of the Defendant, it is not accountable because the Defendant itself admitted that it once sold Super Tangent that was identified in Attachment 1, and the website of the Defendant still shows the appearance of Super Tangent in the market in May 2005. The reasons stated by the Applicant prove the necessity of fixing the present situation and meet the conditions of issuing a preliminary injunction; however, this court recognizes a guarantee by the Applicant will be required.

4. The Defendant states that the annual target sales of the product shown in Attachment 1 can reach 3,520,000 units - this court finds that this number can not be substantiated from the Defendant providing a simple form estimating this number. Upon considering the following elements, this court determines the guarantee amount the Applicant should offer is 3,098,333.

(1)     the capitalization of the Defendant is NT13,000,000;

(2)     the products shown in Attachment 1 account for 1/2 of the recorded business items;

(3)     according to the income standard and profit standard of profitable industries issued by the Treasury Department in 2003, the average net profit rate of the product

4

shown in Attachment 1 of the Defendant is 11%;

(4)        according to Items 2, 7, 8 of Section 2 of the execution points of the time limits for handling cases for all levels of courts, the time limit for handling a civil case in the first instance is 16 months, the second instance is 2 years and the third instance is 1 year - so the longest time for handling this case may be calculated as 4 years and 4 months;

In conclusion, we have calculated the potential damages that the Defendant may suffer from the imposition of the injunction to be: NT13,000,000×1/2×11%×13/3 = NT3,098,333

5. According to Item 1 of Article 536, and Item 4 of Article 538, of the Civil Procedural Law, only if the damage which may be suffered by the Applicant if the injunction is not imposed can be compensated by the paying of money, or the Defendant may suffer from unrecoverable damages, or any other special reasons, can the court allow the Defendant to be exempted from the issuance of preliminary injunction after the Defendant submits a certain guarantee. As stated by the Applicant, the intention of the Applicant is to protect its reputation from damage in accordance with Article 30 of the Fair Trade Law - this right of claim not only protects the pecuniary interest but also intangible interests like reputation, goodwill and recognition. This kind of right not only requires the immediate cessation of infringement, but also the active prevention of further damages that may be suffered by the Applicant, so the Defendant's petition for covering potential damage to the Applicant by the payment of monetary compensation can not be accepted.    Further, it would be very difficult for this court to accept that the target sales of the products of the Defendant shown in Attachment 1 is 3,520,000 units, because the evidence provided by the Defendant was very insubstantial. So this court recognizes that it is not proper to make the Defendant exempt from the issuance of a preliminary injunction by offering a guarantee amount by the Defendant.

6. According to Articles 95 and 78 of the Civil Procedural Law, this court's decision is as set out above.

August 18, 2005, People's Republic of China

Judge: Binbin Fang

[Issued 23 August 2005]

The above is the original one that made according to the source version

A party may appeal this decision, within 10 days of receipt of this order.

August 18, 2005 – Republic of China

Law clerk: Zhipeng Zhan

# Exhibit 5

