# EXHIBIT E

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| LUXPRO CORPORATION, a Taiwanese ) corporation, ) ) **Plaintiff,** ) ) **vs.** ) ) APPLE, INC. f/k/a Apple Computer, ) Inc., ) ) **Defendant.** ) | **Civil Action No. 4:08-CV-04092-HFB** |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
TRANSFER VENUE AND BRIEF IN SUPPORT THEREOF**

# TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| TABLE OF AUTHORITIES | | | ii |
| I. | SUMMARY OF THE RESPONSE | | 1 |
| II. | JURISDICTION AND VENUE ARE PROPER IN THIS COURT | | 4 |
| III. | THE PARTIES AND BACKGROUND OF THE LAWSUIT | | 4 |
|  | A. | Luxpro's MP3 Products Find Early Success in the Global Market | 4 |
|  | B. | In an Effort to Obtain a Monopoly, Apple Targets Luxpro and Attempts to Destroy Its MP3 Business | 6 |
|  |  | 1. Apple Engages in a Pattern of Sham Litigation Against Luxpro | 7 |
|  |  | 2. Apple Intimidates and Tortiously Interferes with Luxpro Customers and Prospective Customers | 9 |
| IV. | THE LOCATION OF PARTY WITNESSES, NON-PARTY WITNESSES AND SOURCES OF PROOF | | 11 |
| V. | APPLE'S CHOICE OF FORUM FOR LITIGATION DISPUTES | | 15 |
| VI. | ARGUMENT AND AUTHORITIES | | 16 |
|  | A. | The Applicable Standard for Transfer of Venue is Discretionary | 16 |
|  | B. | Apple Has Failed to Show a Strong Balance of Inconvenience For the Parties and the Witnesses | 17 |
|  |  | 1. The Convenience of the Party Witnesses Favors Keeping this Case in the Western District of Arkansas | 18 |
|  |  | 2. Because No Venue is More Convenient for the Relevant Witnesses (Including Non-Parties), This Case Should Remain in the Western District of Arkansas | 20 |
|  |  | 3. Sources of Proof are Located in the Western District of Arkansas, in the Northern District of California, Taiwan, and Around the World; No Venue is More Convenient | 21 |

Case 4:08-cv-04092-HFB    Document 33    Filed 03/02/2009    Page 3 of 35

4. No Convenient Venue Exists for the Place of the Alleged Wrong...........................................................22

C. The Interests of Justice Favor Maintaining this Case in the Western District of Arkansas...............................................23

1. A Speedy Trial is Crucial to Luxpro and Should be Outcome Determinative of the Venue Dispute; Transferring the Case Will Substantially Prejudice Luxpro........24

2. Luxpro's Choice of Forum is Entitled to Deference................25

3. The Balance of the Interest of Justice Factors are Neutral or Favor Venue in the Western District of Arkansas...............26

VII. CONCLUSION

# TABLE OF AUTHORITIES

Pages

## CASES

*Alden Corp. v. Eazypower Corp.*
   294 F. Supp. 2d 233, 238 (D. Conn. 2003)...............................................................19

*Apple Computer v. Creative Technology, Ltd., et. al.*
   Case No. 9:06-cv-114, Federal District Court, Eastern District of Texas ..............7, 8, 15

*Apple Computer Inc. v. Burst.com, Inc.*
   3:06-cv-00019-MHP, Federal District Court, Northern District of California................7

*Arkansas Right to Life v. Butler*
   972 F. Supp. 1187, 1194 (W.D. Ark. 1997)....................................................16, 23, 25

*Arkansas Trophy Hunters Assoc. Inc. v. Texas Trophy Hunters Assoc.*
   Civ. No. 06-5067, 2006 WL 3742239, at *1 (W.D. Ark. Dec. 18, 2006)....................21

*B&G Equip. Co., Inc. v. J.T. Eaton & Co., Inc.,*
   No. WMN-06-1363, 2006 WL 2813886, at *3 (D. Md. Sept. 27, 2006)....................26

*Bradley Waddell v. Apple, Inc.*
   (Ontario Superior Court of Justice, Court File No. 05-CV-200513CP).......................6

*Caudill v. J.C. Penney Corp., Inc.*
   No. 06-3003, 2006 WL 1582089, *2 (W.D. Ark. 2006)......................................27

*Coffey v. Van Dorn Iron Works*
   796 F.2d 217, 220 (7th Cir. 1986)...............................................................23, 24

*Doolittle v. Structured Invs. Co., LLC*
   No. CV 07-356-S-EJL-CWD, 2008 WL 5121591 (D. Idaho Dec. 4, 2008)...............22

*FUL Inc. v. Unified Sch. Dist. No. 204*
   839 F. Supp. 1307, 1311-12 (N.D. Ill. 1993)..................................................18

*Household Fin. Servs. v. N. Trade Mortgage Corp.*
   No. 99 C 2840, 1999 WL 782072, at *5 (N.D. Ill. Sept. 27, 1999)........................21

*In re Nat'l Presto Indus., Inc.*
   347 F.3d 662, 663-64 (7th Cir. 2003)...........................................................16

*In re Nine Mile Ltd.,* 692 F.2d 56, 61 (8th Cir. 1982) *overruled on other grounds,*
   *Mo. Hous. Dev. Com'n v. Brice,* 919 F.2d 1306, 1311 (8th Cir. 1990)............................16

*In re Triton Ltd. Sec. Litig.*
    70 F. Supp. 2d 678, 689 (E.D. Tex. 1999)..................................................25

*Ines Lenzi v. Apple, Inc.*,
    (500-06-000296-059 Superior Court, District of Montreal;
    500-09-016463-069 Quebec Court of Appeal, District of Montreal).............................6

*Ivax Corp. v. B. Braun of Am., Inc.*
    No. 00-4909-CIV-KING, 2001 WL 253253, (S.D. Fla. Feb. 28, 2001).....................22

*Jean-François Carpentier v. Apple, Inc.*,
    (500-06-000315-057 Superior Court of Quebec, District of Montreal).......................6

*Melanie Tucker, et al. v. Apple, Inc.*,
    Case No. 5:05-cv-00037-JW ("The Apple iPod iTunes Anti-Trust Litigation"),
    Federal District Court, Northern District of California ..................................7

*MHL Tek, LLC v. Nissan Motor Co.*,
    No. 2:07-CV-289, 2009 WL 440627 (E.D. Tex. Feb. 23, 2009)............................20

*Miller v. R.K.A. Mgmt. Corp.*
    99 Cal. App. 3d 460, 468 (Cal. Ct. App. 1979)............................................26

*Nelson v. Soo Line R. Co.*
    58 F. Supp. 2d 1023, 1027 (D. Minn. 1999)................................................20

*Norwood v. Kirkpatrick*
    349 U.S. 29, 32 (1955)....................................................................17

*Piper Aircraft Co. v Reyno*
    454 U.S. 235, 255-56 (1981)...............................................................26

*Price Indus. Inc. v. Fulghum Indus. Inc.*
    No. 97-1148, 2002 WL 31681806, 64 U.S.P.Q. 2d 1669, 1675
    (W.D. Ark. 2002).................................................................17, 20, 21

*PRG-Schultz USA, Inc. v. Gottschalks, Inc.*
    No. C 05-2811 MMC, 2005 WL 2649206 (N.D. Cal. Oct. 17, 2005).......................22

*RBC Mortgage Co. v. Couch*
    274 F. Supp. 2d 965, 971 (N.D. Ill. 2003)..................................................21

*R &R Packaging, Inc. v. GAP Roofing, Inc.*
    No. 06-5175, 2007 WL 162730, at *3 (W.D. Ark. January 18, 2007).........16, 20, 21, 23

*Shutte v. Armco Steel Corp.*
    431 F.2d 22, 25 (3d Cir. 1970)……………………………………………...…16

*Terra Int'l, Inc. v. Miss. Chem. Corp.*
    119 F.3d 688, 691 (8th Cir. 1997)……………………………………17, 18, 23

*Vanusen v. J.C. Penney Co.*
    207 F. Supp. 529, 534-35 (W.D. Ark. 1962)………………………………..17, 23

*Windt v. Qwest Commc'ns Int'l., Inc.*
    529 F.3d 183, 190 (3d Cir. 2008), *pet. for cert. filed* (Oct. 31, 2008)…………………26

## STATUTES

Ark, Code Ann. § 16-4-101(B) (Repl. 1999)………………………………………..…4

28 U.S.C. § 1391(a)(1)……………………………………………………………..…4

28 U.S.C. § 1391(c)…………………………………………………………………4

28 U.S.C. § 1404……………………………………………………1, 16, 23, 27

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### TEXARKANA DIVISION

LUXPRO CORPORATION, a Taiwanese )
corporation, )
                                                )
                   Plaintiff, )
                                                )     Civil Action No. 4:08-CV-04092-HFB
vs. )
                                                )
APPLE, INC. f/k/a Apple Computer, )
Inc., )
                                                )
                  Defendant. )

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE AND BRIEF IN SUPPORT THEREOF

---

Plaintiff Luxpro Corporation ("Luxpro") files its response to defendant Apple, Inc. f/k/a Apple Computer, Inc.'s ("Apple's") motion to transfer venue to the Northern District of California, pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, Luxpro respectfully requests that the Court deny Apple's motion in its entirety.

## I.  SUMMARY OF THE RESPONSE

Apple urges this Court to grant its motion to transfer because the Northern District of California is the more convenient forum in which to litigate this dispute.[1] Specifically, Apple contends that the Northern District of California is the more convenient forum because: (1) Apple is headquartered there; (2) Apple's relevant witnesses and documents are located there; (3) it is the district court that is more convenient for non-party witnesses; (4) it is the district court that has subpoena power over non-party witnesses; and (5) it is the more convenient venue

---

[1] Brief in Support of Motion to Transfer ("Transfer Brief"), Dkt. 26 at 1.

for Luxpro.[2]   In addition, Apple claims that Luxpro's choice of forum is entitled to no deference.[3]

Apple is wrong for several reasons and cannot satisfy the heavy burden it bears to demonstrate that transfer is warranted here.  First, Apple's claim that the Northern District of California is the more convenient forum is belied by its own actions and voluntary choice to file significant litigation in other venues across the United States, including just over the border in the Eastern District of Texas.  In addition, Apple has consented to venue in courts other than in the Northern District of California; Apple's claims here related to convenience are selective, self-serving, and should be afforded no weight.

Second, Apple's assertion that the convenience of the witnesses, including non-party witnesses, favors the Northern District of California is incorrect.  Luxpro (including Luxpro employees) has consented to: (1) respond to subpoenas issued by this Judicial District, (2) be presented for deposition in this Judicial District, and (3) appear for trial in this Judicial District.[4] Indeed, Luxpro asserts that the Western District of Arkansas is the more convenient forum.[5]

Further, contrary to Apple's claims, non-party witnesses reside in several states across the United States, in at least four other continents, and in several foreign countries across the globe.[6] The mere fact that *some* of these witnesses would have to spend a few hours less on a plane if the case were pending in California does not carry Apple's heavy burden here.  Moreover, Apple's argument that the Northern District of California will have subpoena power over non-party witnesses is, at best, exaggerated.  The vast majority (if not all) of the actual non-parties in this case are beyond the subpoena power of any one court or venue.  Notably, as in most unfair

---

[2] *Id.* at 1-2.
[3] *Id.*
[4] *See* Declaration of Fu-Ching Wu ("Wu Declaration") attached hereto as Exhibit "A" at ¶6.
[5] *Id.* at ¶¶5-6.
[6] *Id.* at ¶¶8-9.

competition and antitrust cases, expert witness testimony will be central, and, given that expert witnesses reside across the country, no single venue is more convenient.

Third, equally unavailing is Apple's claim that the Northern District of California is more convenient because the sources of proof and relevant documentary evidence are present at Apple's headquarters in California. To the extent this factor is still even relevant given that, practically speaking, document production is now routinely undertaken electronically (thereby rendering the location of sources of proof largely irrelevant), a substantial volume of Luxpro's relevant documents and evidence resides in this Judicial District.[7]  Further, Apple's own venue briefing and accompanying declaration admits that relevant sources of proof (including witnesses) are located in Apple's foreign offices, foreign offices of Apple affiliates, and agents of Apple in foreign countries, including law firms. In addition, not unlike the location of many non-party witnesses, significant sources of proof for various non-parties are situated in locales around the world, including in Canada, China, Germany, Japan, Mexico, Singapore, the United Kingdom, and the United States.

Finally, this Circuit correctly recognizes that the plaintiff's choice of venue is accorded deference. Luxpro's choice of venue is strengthened and accorded deference, where, as here, the time-to-trial and the efficiency in handling complex litigation is of paramount concern to Luxpro and its business. In addition, given the public threats made by Luxpro concerning prospective litigation, Apple could have filed a declaratory judgment action in the forum of its choosing; Apple voluntarily decided against that option. For these reasons, as well as others, Luxpro's choice of venue in the Western District of Arkansas should be accorded deference.

In sum, Apple's motion to transfer venue merely seeks to shift the convenience from one side to the other; a practice rejected by courts (including by this Court) in considering venue

---

[7] *Id.* at ¶7.

transfer.  Accordingly, this Court should disregard all of Apple's arguments that the Northern District of California is the more convenient forum.  For all the reasons stated herein, including the practical realties of modern, complex litigation, Luxpro respectfully requests this Court deny Apple's motion and allow the citizens of the State of Arkansas to hear this case.

## II.  JURISDICTION AND VENUE ARE PROPER IN THIS COURT

Luxpro's Amended Complaint correctly asserts, and Apple does not disagree, that this Court has jurisdiction over the parties, including Apple, especially given its extensive business contacts in this Judicial District.   Furthermore, Arkansas' long-arm statute provides for jurisdiction over persons "to the maximum extent permitted by the due process clause of the Fourteenth Amendment on the United States Constitution."[8]

Similarly, venue in this Court is proper.  Pursuant to 28 U.S.C. § 1391(a)(1), venue for a case in which the defendant is a corporation is proper in any district in which the corporation resides.  For purposes of venue, a corporation is deemed to "reside" in any district that would have personal jurisdiction over that corporation were the district a state unto itself.[9]

Accordingly, both personal jurisdiction and venue are proper in the Western District of Arkansas.

## III.  THE PARTIES AND BACKGROUND OF THE LAWSUIT

**A.    Luxpro's MP3 Products Find Early Success in the Global Marketplace.**

Luxpro is a privately-held Taiwanese consumer electronics corporation with its headquarters in Taipei City, Taiwan.[10]  In addition to producing and selling other products such as television and radio receivers, Luxpro engages in developing, manufacturing, distributing, and

---

[8] Ark, Code Ann. § 16-4-101(B) (Repl. 1999).
[9] 28 U.S.C. § 1391(c).
[10] *See* Plaintiff's First Amended Complaint ("Amended Compl.") Dkt. No. 6 at ¶1.

selling MP3 players throughout world, including in the United States.[11]  Luxpro's research and development team has a first-rate reputation in the worldwide MP3 player market for high-quality design.[12]  Apple's pejorative (and incorrect) claim in its motion that Luxpro develops "knock-offs" notwithstanding, Luxpro is often called upon by consumers, retailers, and other third-parties to develop custom MP3 products.  Luxpro has independently developed and marketed a variety of cutting edge MP3 players such as the Luxpro "EZ Share," "EZ Season," "EZ Listen," "Top Tangent," "EZ Tangent," "Super Tangent," "iOta Flash," "Pico" (and "iPico"), and the "Top Square."[13]

Due to the quality and popularity of its MP3 products, Luxpro gained momentum in the global MP3 marketplace including, notably: (1) executing agreements with two Chinese companies (Beijing Huaqi Informational Digital Technology Co., Ltd. and Beijing Qian Kun Time Digital Technology Co., Ltd.) to supply over one million MP3 players for sale to consumers; (2) having discussions with executives from Circuit City Stores, Inc. ("Circuit City"), and Circuit's City's Canadian subsidiary, InterTAN Canada, Ltd. ("InterTAN"), and then executing an agreement with InterTAN to ship over 7,000 of its Top Tangent MP3 players to InterTAN for sale in retail stores; (3) executing an agreement with a third Chinese company (TC Digital Electronic SBU) to supply more than one million sets of MP3 players; (4) receiving substantial interest and orders for its MP3 players from retailers, distributers, suppliers, and consumers in the United States, and around the globe; (5) executing an agreement with Kaga Electronics Co., Ltd., an electronics supplier in Japan, for the sale of $NTD 2.8 Million worth of Luxpro MP3 players; (6) receiving interest from other consumer electronics retailers, including Best Buy and Radio Shack; (7) agreeing with the Starbucks Corporation to initiate a proposal

---

[11] *Id.*
[12] *Id* at ¶14.
[13] *Id*; http://www.luxpro.com.tw/English/product/iOta_Flash.htm

that would place Luxpro's MP3 players in Starbucks' Japanese stores; and (8) entering into agreements with a number of other companies to sell Luxpro MP3 products around the world, including, but not limited to, Compu Import Co. in Mexico and Taiwanese Luxpro distributers Carrefour, EUPA, 3C, and ET Mall.[14]

Finally, because of its success, Luxpro attracted interest from venture capital and investment companies, including some in the United States such as Citigroup, Inc., and Neuberger Berman.[15]

**B.    In an Effort to Obtain a Monopoly, Apple Targets Luxpro and Attempts to Destroy Its MP3 Business.**

Apple is a publicly-traded multinational California corporation that manufactures, distributes, and sells consumer electronics and computers.[16]   Apple's MP3 players, marketed under the brand name iPod, are sold throughout the world, including in the Western District of Arkansas.[17]   In conjunction with its proprietary iTtunes product—a digital media player application that plays and organizes digital music and video files—Apple has achieved a monopoly in both the hard-drive based MP3 market (90% market share) as well as the more general MP3 market (70% market share).[18]

Apple's anticompetitive conduct is well-documented manifesting itself in substantial litigation (and settlements by Apple) involving patent infringement, unfair competition, and antitrust claims.[19]   Indeed, in Apple's recent 10K filing with the United States Securities and

---

[14] *See* Amended Compl. at ¶¶16-22, 32-34; Wu Declaration at ¶¶8-10.
[15] *See* Wu Declaration at ¶¶8-9.
[16] *See* Amended Compl. at ¶2.
[17] *See* Amended Compl. at ¶¶2, 4-5; Defendant Apple, Inc.'s Transfer Brief at 3.
[18] *See* Amended Compl. at ¶10.
[19] *See e.g., Ines Lenzi v. Apple, Inc.*, (500-06-000296-059 Superior Court, District of Montreal; 500-09-016463-069 Quebec Court of Appeal, District of Montreal); and *Bradley Waddell v. Apple, Inc.*, (Ontario Superior Court of Justice, Court File No. 05-CV-200513CP) (Canadian Class Action Settlements with Apple related to first, second, and third generation iPod batteries)

Exchange Commission, Apple identifies several pieces of litigation filed against it related to its iPod and iTunes products, including multiple antitrust class actions, patent infringement cases, and consumer-related claims.[20]

As demonstrated in the Amended Complaint, Apple's focused, intentional strategy designed to destroy Luxpro's MP3 business was widespread and involved various illicit and illegal activities throughout the world, including in Canada, China, Germany, Japan, Poland, Singapore, Taiwan, and in the United States.[21]  Not coincidentally, these illegal activities were directed toward Luxpro in the years 2005-2006, when Luxpro's products were first gaining momentum in the marketplace, and Apple was attempting to achieve a monopoly in the global MP3 industry.

### 1.    Apple Engages in a Pattern of Sham Litigation Against Luxpro.

During the time when Apple was attempting to achieve a monopoly in the marketplace for its iPod products, it targeted certain small and medium sized competitors by filing lawsuits against them.   For example, in 2006, Apple sued Creative Technology ("Creative") for infringement of several of Apple's patents related to technology allegedly embodied in Creative's MP3 players.[22]   Creative, a Singapore company who competes with Apple in manufacturing and selling MP3 players, was also asserting claims for patent infringement against

---

(http://www.apple.com/ca/ipod/settlement/); *Jean-François Carpentier v. Apple, Inc.*, (500-06-000315-057 Superior Court of Quebec, District of Montreal) (Canadian Class Action Settlements with Apple related to the iPod Nano); *Apple, Inc. v. Creative Technology*, (multiple patent litigation with MP3 competitor resulting in settlement payments being made by Apple of approximately one hundred million dollars) (http://www.apple.com/pr/library/2006/aug/23settlement.html); *Apple Computer Inc. v. Burst.com, Inc.*, 3:06-cv-00019-MHP, Federal Disrict Court, Northern District of California (patent infringement litigation where Apple settled with Burst.com for ten million dollars over technology present in the Apple Ipod products http://www.marketwire.com/press-release/BurstCom-Inc-795528.html); *Melanie Tucker, et. al. v. Apple, Inc.*, Case No. 5:05-cv-00037-JW ("The Apple iPod iTunes Anti-Trust Litigation"), Federal District Court, Northern District of California (pending).

[20] *See* Apple 2008 10K at 25-33 attached hereto as Ex. "B."

[21] *See* Amended Compl. at ¶¶6, 10-13, 25-36.

[22] *Id.* at ¶13.

Apple related to Apple's iPod products. On August 23, 2006, Apple announced that it was paying Creative $100 million to settle the lawsuit; Creative made no payments to Apple as part of the settlement.[23]

Similar to its strategy with Creative, Apple targeted Luxpro, another small competitor in the MP3 market. For example, by March of 2005, Luxpro had developed a couple of samples of an MP3 player it called the "Super Shuffle" to demonstrate at the CeBit Tradeshow in Hanover, Germany. Without notice to Luxpro, Apple sought, and obtained, *ex parte* injunctive relief from a German court precluding Luxpro from using the name "Super Shuffle" on its products at the tradeshow.[24] Even though Apple had no intellectual property rights (*i.e.*, no patent, copyright, or trademark) that related to Luxpro's Super Shuffle, Luxpro decided to make a few changes to the product and change its name to the "Super Tangent" in order to (1) eliminate any possible legal claim of product confusion, and (2) efficiently resolve the dispute (because Luxpro is a small company and only a few samples of the Super Shuffle had been made).[25]

Subsequently, after refusing Apple's baseless demand that Luxpro cease the manufacturing and selling of **all** of its MP3 products (not just the Super Shuffle), Apple sued Luxpro in Taiwan alleging that the appearance of Luxpro's MP3 players closely resembled Apple's iPod Shuffle product.[26] Again, Apple did not claim that Luxpro had infringed any patent, trademark, or copyright. In the early stages of the lawsuit, Apple was able to temporarily convince the Taiwanese court to enjoin Luxpro from manufacturing any of its MP3 players.[27] This injunction lasted until November of 2005 when the Taiwanese court ruled in Luxpro's favor

---

[23] *Id*; *see* http://www.apple.com/pr/library/2006/aug/23settlement.html
[24] *See* Amended Compl. at ¶26.
[25] *Id.*
[26] *Id.* at ¶¶27-28.
[27] *Id.*

and lifted the injunction.[28]  The Taiwan Supreme Court agreed with the lower court's decision and dismissed Apple's appeal, although not until March of 2008.[29]  Notwithstanding Luxpro's victory in court, Apple's litigation had its intended effect; The litigation cost Luxpro substantial resources, resulted in strained relationships and lost consumer and manufacturing partners, and the injunction stalled the momentum Luxpro had achieved with its MP3 products.

Apple was not finished.  Undeterred by its failure, Apple then filed a motion with the Fair Trade Commission alleging that Luxpro violated Taiwan's Fair Trade Act.[30]  Not unlike the result in the Taiwanese civil courts, the Fair Trade Commission issued a ruling stating that Apple's complaints lacked merit and that Luxpro's MP3 products did not violate the Fair Trade Act.[31]  Again, however, Apple's litigation had its intended effect; The delays stemming from Apple's Fair Trade Act complaints, coupled with the previous lawsuits, created a cloud over Luxpro that resulted in the loss of valuable market opportunities, product orders, and business relationships.

### 2.    Apple Intimidates and Tortiously Interferes with Luxpro Customers and Prospective Customers.

Apple's attempt to destroy Luxpro's MP3 business was not limited to filing sham litigation.  In conjunction with the frivolous legal proceedings it initiated against Luxpro, Apple also began an illegitimate business campaign against Luxpro by sending illegal and intimidating letters to Luxpro's customers, Luxpro's business partners and others.  While the breadth and scope of Apple's illegal acts will not be completely exposed without thorough discovery, Luxpro is aware of several non-parties with whom Apple has illegally interfered.  For example, as articulated in the Amended Complaint, Apple placed significant pressure on InterTAN to drop

---

[28] *Id.*
[29] *Id.*
[30] *Id.* at ¶29.
[31] *Id.*

from its retail shelves the MP3 players it had purchased from Luxpro.[32]  InterTAN was one of

Luxpro's North American customers and had been working with Luxpro to develop MP3 players

for InterTAN's retail stores.   InterTAN, along with its parent company, Circuit City, had

discovered Luxpro's products at a tradeshow in Las Vegas, Nevada and expressed interest in

Luxpro's MP3 products.   Circuit City was also interested in selling Luxpro's MP3 products in

the United States.   However, as a result of Apple's actions and threats, InterTAN stopped

offering Luxpro's products for sale and destroyed several thousand Luxpro MP3 players; this,

despite the popularity of the Luxpro MP3 players in InterTAN retail stores.   Further, Circuit

City's interest in discussing the sale of Luxpro MP3 players in the United States ceased.

InterTAN was not the only customer or business partner of Luxpro that Apple targeted,

however.  News of Apple's lawsuits and intimidation of InterTAN spread throughout the MP3

player marketplace, resulting in (1) other business partners terminating contracts with Luxpro,

and (2) other large U.S.-based retailers (such as Best Buy and RadioShack) refusing to do

business with Luxpro.  Another Luxpro partner—U.S.-based Starbucks Corporation—backed out

of an agreement with Luxpro to sell MP3 players in its Japanese stores because of pressure from

Apple.[33]  In addition, Apple threatened the following companies to end all business relationships

with Luxpro:  Orchard Company, a Singapore company, Kaga Electronics Co. Ltd., a Japanese

company, and Web Worker, a German Luxpro client.[34]

Further, Apple successfully encouraged some of its own suppliers to begin to pressure

Luxpro's business partners to end their relationships with Luxpro.   For example, Apple's

supplier ASUS Tek Computer Co. threatened Compu Import Co., a Luxpro client in Mexico.

---

[32] *Id*. at ¶¶30-31.
[33] *Id*. at ¶32.
[34] *Id*. at ¶33.

Apple's supplier Synnex Technology International Corp. also threatened a number of Luxpro's distributors in Taiwan.[35]

In sum, similar to its sham litigation strategy, Apple's illegal interference and intimidation of Luxpro's business partners, customers (including prospective customers), and suppliers had its intended affect; Luxpro's MP3 business was crippled during the 2005-2006 timeframe.

## IV. THE LOCATION OF PARTY WITNESSES, NON-PARTY WITNESSES AND SOURCES OF PROOF

As demonstrated in the attached Declaration of the Chairman of the Board and Chief Executive Officer of Luxpro, Fu-Ching Wu, Luxpro witnesses, including Mr. Wu, have consented to venue in the Western District of Arkansas and agree to: (1) be presented for deposition in this Judicial District, (2) respond to subpoenas issued by this Judicial District, and (3) be available for trial in this Judicial District.[36]

In addition, Chairman Wu provides that Luxpro's sources of proof and relevant documentary evidence (including samples of its MP3 products) are present in this Judicial District.[37]

Further, the non-parties listed below (as well as numerous others) will likely be witnesses with relevant information, documents, and evidence.[38]  The following is a list of these non-parties and individual witnesses, as well as a brief description of the type of information each party is likely to have:[39]

---

[35] *Id.* at ¶34.
[36] *See* Wu Declaration at ¶¶5-6.
[37] *Id.* at ¶7.
[38] *Id.* at ¶¶8-10.
[39] The list of non-parties is merely representative and should not be considered exclusive.

- **Atlas Sound and Vision Corporation** is a Singapore corporation headquartered in Singapore.  Atlas is likely to have relevant witnesses and documentary evidence related to Luxpro and Apple;

- **ASUS Tek Computer Co.** is a Taiwanese company headquartered in Taipei City, Taiwan.  ASUS is likely to have relevant witnesses and documentary evidence related to Luxpro, Apple, and Apple's communications concerning Luxpro, and Compu Import Co.;

- **Beijing Huaqi Informational Digital Technology Co., Ltd.** is a company located in Beijing, China.  Beijing Huaqi Informational Digital Technology Co., Ltd. is likely to have relevant witnesses and documentary evidence related to Luxpo and Luxpro's MP3 players;

- **Beijing Qian Kun Time Digital Technology Co., Ltd.** is a company based in Beijing, China.  Beijing Qian Kun Time Digital Technology Co., Ltd. is likely to have relevant witnesses and documentary evidence related to Luxpo and Luxpro's MP3 players;

- **Best Buy Co., Inc.** is a Minnesota corporation with its principal place of business in Richfield, Minnesota.  Best Buy is likely to have relevant witnesses and documentary evidence related to Luxpro, Apple, and the MP3 marketplace;

- **Circuit City Stores, Inc.** is a Virginia corporation with its principal place of business in Richmond, Virginia.  Circuit City is likely to have relevant witnesses and documentary evidence related to its wholly-owned subsidiary, InterTAN, Luxpro, Apple, and the MP3 marketplace;

- **Citigroup, Inc.** is a Delaware corporation with its principal place of business at 399 Park Avenue, New York, New York.  Citigroup, including its subsidiaries and investment banking arm, Citigroup Global Markets Securities Investment Consulting, are likely to have relevant witnesses (Lulu Cheng and others) and documentary evidence related to Luxpro;

- **CMS Hasche Sigle** is a law firm in Cologne, Germany.  CMS is likely to have relevant witnesses (Dr. Gordian N. Hasselblatt and others) and documentary evidence related to Apple and Luxpro;

- **Compu Import S.A. de C.V.** is an import company in Mexico and supplier of parts for Luxpro.  Compu is likely to have relevant witnesses (Eduardo Solórzano and others) and documentary evidence related to Luxpro, Apple, and ASUS's communications with Compu related to Luxpro;

- **Deutsche Messe** is a German company located in Hanover, Germany.  Deutsche Messe is likely to have relevant witnesses and documentary evidence related to Luxpro, Apple, and the 2005 CeBit Tradeshow in Hanover, Germany;

- **Drew & Napier, LLC** is a law firm based in Singapore. Drew & Napier is likely to have relevant witnesses and documentary evidence related to Apple and Luxpro;

- **Ernst & Young Global, Ltd.** is a privately held company in the United Kingdom. Ernst & Young, including its foreign subsidiaries in Taiwan, are likely to have relevant witnesses (Ann Shen and others) and documentary evidence related to Luxpro;

- **Federal Communications Commission** is a governmental agency of the United States located in Washington, DC. The FCC is likely to have relevant documentary evidence related to Luxpro;

- **InterTAN Company** is wholly owned subsidiary of Circuit City Stores, Inc., located in Barrie Ontario, Canada. InterTan, including its foreign offices (*e.g.*, Taiwan) is likely to have relevant witnesses (Chris Corcoran, Benjamin Morden, Eva Tai, Cathie Emms, Brian E. Levy, Ian J. Hutton, Craig Touchie, Tseng Ching-tang, Hung Hui-ling, Julie Hong, and others) and documentary evidence related to Luxpro, Apple, and the MP3 marketplace;

- **J.P. Chang** is Luxpro's legal counsel located in Taipei City, Taiwan. Mr. Chang is likely to have relevant evidence related to Apple, Luxpro, and the lawsuits in Taiwan filed by Apple against Luxpro;

- **Kaga Electronics Company, Ltd.**, is a Japanese company located in Tokyo, Japan. Kaga is likely to have relevant witnesses (Jason Yen and others) and documentary evidence related to Luxpro, Apple, and Apple's communications concerning Luxpro;

- **Kmart Corporation** is a subsidiary of Sears Holding Corporation, with its principal place of business in Troy, Michigan. Kmart is likely to have relevant witnesses and documentary evidence related to Luxpro, Apple, and the MP3 marketplace;

- **Neuberger Berman, LLC** is a global asset management company based in New York City, New York. Neuberger Berman is likely to have relevant witnesses (Greg Kobrick and others) and documentary evidence related to Luxpro;

- **Orchard Company** is a company based in Singapore. Orchard is likely to have relevant witnesses (Johnson Goh and others) and documentary evidence related to Luxpro, Apple, and Apple's communications with Orchard concerning Luxpro;

- **Parkersco, LLC** is a company located in Morehead City, North Carolina. Parkersco is likely to have relevant witnesses (Bruce Henderson) and documentary evidence related to Luxpro;

- **RadioShack Corporation** is a Delaware corporation with its principal place of business in Fort Worth, Texas. RadioShack, and its foreign subsidiaries and offices, are likely to have relevant witnesses (John Shen, Edmund Pan, and others) and documentary evidence related to Luxpro, Apple, and the MP3 marketplace;

- **Starbucks Corporation** is a Washington corporation with its principal place of business in Seattle, Washington. Starbucks, and its foreign subsidiaries, are likely to have relevant witnesses and documentary evidence related to Luxpro and Apple;

- **Starbucks Coffee Japan, Ltd.** is a subsidiary of Starbucks Corporation and is located in Tokyo, Japan. Starbucks, and its foreign subsidiaries, are likely to have relevant witnesses and documentary evidence related to Luxpro and Apple;

- **Synnex Technology International Corp.** is a Delaware corporation with its principal place of business in Fremont California. Synnex has offices around the world, including in Canada, China, Japan, Mexico, and in the United Kingdom. Synnex, and its foreign offices, are likely to have relevant witnesses and documentary evidence related to Luxpro, Apple, and communications with Luxpro distributers;

- **TCL Digital Electronic** SBU is a company based in China. TCL Digital is likely to have relevant witnesses and documentary evidence related to Luxpro and Luxpro's MP3 products; and

- **Webworker** is a German company located in Hanover, Germany. Web Worker is likely to have relevant witnesses (Oliver Lafos and others) and documentary evidence related to Luxpro and Apple.[40]

Finally, relevant non-party witnesses and documentary evidence are present in countries and continents throughout the world, including in Africa, Asia, Australia, Europe, the Middle East, New Zealand, North America (including multiple states in the United States), Central America, and South America.[41] Many of these witnesses are likely to have relevant evidence related to interest in, and the purchase of, Luxpro's MP3 products.[42]

---

[40] *Id.*
[41] *Id.*
[42] *Id.*

## V.  APPLE'S CHOICE OF FORUM FOR LITIGATION OF DISPUTES

Despite Apple's claim that the Northern District of California is the more convenient forum, it has voluntarily chosen to file significant litigation in several other venues across the United States.  The following cases are recent examples of Apple's choice to file litigation in venues other than in the Northern District of California:

- *Apple Inc. v. Atico International USA Inc. et al*, Case No. 1:08-cv-00283-GMS, Federal District Court, District of Delaware (patent infringement litigation);

- *Apple Computer v. Creative Technology, Ltd., et. al.*, Case No. 9:06-cv-114, Federal District Court, Eastern District of Texas (Lufkin Division) (patent infringement litigation);

- *Apple Computer v. Creative Technology, Ltd., et. al.*, Case No. 9:06-cv-149, Federal District Court, Eastern District of Texas (Lufkin Division) (patent infringement litigation);

- *Apple Computer v. Creative Technology, Ltd., et. al.*, Case No. 9:06-cv-150, Federal District Court, Eastern District of Texas (Lufkin Division) (patent infringement litigation);

- *Apple Computer Inc., v. Creative Labs, Inc.*, Case No. 3:06-cv-00263-bbc, Federal District Court, Western District of Wisconsin (patent infringement litigation); and

- *Apple Computer Inc. v. Unova Inc., et al*, Case No. 1:03-cv-00101-JJF, Federal District Court, District of Delaware (patent infringement litigation where Apple opposed a motion to transfer venue to California).

In addition, in several instances, Apple has failed to seek a change of venue, thereby consenting to venue in jurisdictions other than in the Northern District of California.  Examples include:

- *QRG, Ltd. v. Apple Computer Company, Inc., et al.*, 1:05-cv-03408-WMN, Federal District Court, District of Maryland (patent infringement litigation);

- *Texas MP3 Technologies, LTD., v. Samsung Electronics Co., LTD., et al*, Case No. 2:07-cv-00052-CE, Federal District Court, Eastern District of Texas (Marshall Division) (patent infringement litigation); and

- *WI-Lan, Inc. v. Acer, Inc.,* Case No. 2:07-cv-00473-TJW, Federal District Court, Eastern District of Texas (Marshall Division) (patent infringement litigation).

In contrast to Apple's claim that the Northern District of California is the more convenient forum to litigate its disputes—premised largely on the fact that it is headquartered in California, and California is the locus for its witnesses and documents—Apple routinely, and *voluntarily*, chooses to file important, complex litigation in venues far from the Northern District of California, including in a venue that is a stone's throw from the Western District of Arkansas, the Eastern District of Texas.

## VI. ARGUMENT AND AUTHORITIES

### A.   The Applicable Standard for Transfer of Venue is Discretionary.

28 U.S.C. § 1404 provides: "For the convenience of parties and witnesses, in the interest of justice, a district court *may* transfer any civil action to any other district or division where it might have been brought."[43]  However, "[c]hange of venue, although within the discretion of the district court, should not be freely granted.  Courts are in the business of deciding cases, not playing procedural hockey among available districts at the whim of dissatisfied parties."[44]  "[A] party moving for a change of venue has the burden of proving that its alternative forum of choice is more convenient than the forum chosen by the plaintiff, and the court *must* give deference to the plaintiff's choice of forum."[45]  In fact, "great weight" must be given to the plaintiff's choice of forum.[46]

---

[43] 28 U.S.C. § 1404(a) (emphasis added).

[44] *In re Nine Mile Ltd.,* 692 F.2d 56, 61 (8th Cir. 1982), *overruled on other grounds by Mo. Hous. Dev. Com'n v. Brice,* 919 F.2d 1306, 1311 (8th Cir. 1990).

[45] *R&R Packaging, Inc. v. GAP Roofing, Inc.,* No. 06-5175, 2007 WL 162730, at *3 (W.D. Ark. January 18, 2007) (emphasis added); *see also Arkansas Right to Life v. Butler,* 972 F. Supp. 1187, 1194 (W.D. Ark. 1997) (stating that "[p]laintiff's choice of forum is given 'great weight' and should rarely be disturbed"); *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970) (stating that "[i]t is *black letter law* that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed.") (citation omitted, emphasis added);

A party seeking transfer is "required to show a *strong balance of inconvenience* in their favor before the court is justified in disturbing the plaintiff's choice of forum."[47]   Indeed, this Court has found that if no one forum exists that is more convenient for all the parties or where there is no apparent advantage to the litigants or the administration of justice, a transfer should be denied.[48]

When jurisdiction is proper in both the transferee and transferor districts, as it is here, the Court must consider "(1) the convenience of the parties; (2) the convenience of witnesses; and (3) the interests of justice."[49]   The Court is not limited to these enumerated factors and must conduct a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors."[50]   "Merely shifting the inconvenience from one side to the other, however, … is not a permissible reason for change of venue."[51]

**B.   Apple Has Failed to Show a Strong Balance of Inconvenience for the Parties and the Witnesses.**

In considering the convenience of the parties and witnesses, the Eighth Circuit has approved a district court's consideration of the following factors:  "(1) the convenience of the

---

*In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003) (stating "[w]hether the denial of the motion to transfer was patently erroneous, or indeed erroneous at all, is much more doubtful, especially since, 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'") (citations omitted).

[46] *See Price Indus. Inc. v. Fulghum Indus. Inc.*, No. 97-1148, 2002 WL 31681806, 64 U.S.P.Q. 2d 1669, 1675 (W.D. Ark. 2002) ("In considering a §1404(a) motion, the Court must give great weight to the plaintiff's choice of forum.").

[47] *Vanusen v. J.C. Penney Co.*, 207 F. Supp. 529, 534-35 (W.D. Ark. 1962) (emphasis added) (discussing the enactment of § 1404(a) and the effect the statute had on the common law doctrine of *forum non conveniens*); *see also Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) (discussing the adoption of § 1404(a) and stating "[w]e believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience.  This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.").

[48] *See Price Indus. Inc.*, 2002 WL 31681806, at *1675 (refusing to transfer case to different venue where no one venue is more convenient to the parties).

[49] *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).

[50] *Id.*

[51] *Id.* at 696-97 (quotation omitted).

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE AND BRIEF IN SUPPORT THEREOF**                                                                                    Page 17

parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law."[52]

### 1.   The Convenience of the Party Witnesses Favors Keeping this Case in the Western District of Arkansas.

Apple's convenience argument related to its employee witnesses is self-serving, benefits only Apple, and is contrary to Apple's own litigation conduct. Apple has failed to bring forth any competent evidence that the convenience of the parties and witnesses favors a transfer to the Northern District of California. While Apple lists ten current employees with knowledge of relevant facts who reside in California, each of these employees would likely be compelled to testify in any jurisdiction, including in the Western District of Arkansas.[53] Apple suggests that these employees may quit the company before trial and, thus, would only be subject to subpoena in the Northern District of California, but this argument is purely speculative. Apple provides no evidence that any of these employees' departures are imminent, nor does Apple demonstrate that these hypothetical ex-employees will remain in the Northern District of California following their departure.

Equally unavailing is Apple's argument that this case should be transferred to the Northern District of California for the convenience of its *current* employees—so that the disruption to their work schedule will be minimal. But, Apple fails to mention that when it is the plaintiff, it has no qualms about filing in districts located thousands of miles away from the Northern District of California—including in the Western District of Wisconsin, District of

---

[52] *Id.* at 696 (approving the factors that the district court had considered).
[53] *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311-12 (N.D. Ill. 1993) (stating that "it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily").

Delaware, and the Eastern District of Texas.[54]   Moreover, in other cases where Apple is a

defendant in forums other than in the Northern District of California, Apple has decided not to

seek a transfer and therefore has voluntarily consented to the venue chosen by the plaintiff.[55]  In

sum, Apple's own litigation history belies the fact that litigating this case in the Western District

of Arkansas would be inconvenient.   Apple routinely, voluntarily, and purposefully litigates

outside the Northern District of California and, therefore, its "inconvenience" arguments should

be afforded no weight.

Further, similar to other complex commercial cases, expert witnesses will play a central

role in this case.   But the location of expert witnesses, consistent with the issue of party

witnesses, is largely immaterial given they will be available in whatever forum is selected.[56]

In addition, in a declaration accompanying Apple's venue briefing, Apple admits that

certain of its employees residing in foreign offices may have information and evidence relevant

to this case.[57]  In other words, the Northern District of California isn't even the location for all of

*Apple's* witnesses.

Finally, Apple argues that the Northern District of California is more convenient for

Luxpro.  This argument is incorrect.  Luxpro has chosen to file its case in this Court, and as

evidenced by Chairman Wu's Declaration, Luxpro's documentary evidence is located in the

Western District of Arkansas.  In addition, Luxpro has consented to receive service of process

---

[54] *See, e.g.,* Section IV herein, *supra.*
[55] *Id.*
[56] *See Alden Corp. v. Eazypower Corp.,* 294 F. Supp. 2d 233, 238 (D. Conn. 2003) ("Additionally, the types of witnesses, often experts and employees of the parties, who are called in a patent and commercial litigation case such as this one does not support venue in Illinois over Connecticut, or vice versa, since they will be available in either location.").
[57] *See* Declaration of Thomas R. La Perle In Support of Apple, Inc.'s Motion to Transfer and Motion to Dismiss ("La Perle Declaration") at ¶¶3-4.

and subpoenas issued by this Court, have its witnesses deposed in the Western District of Arkansas, and bring witnesses to trial in the Western District of Arkansas.[58]

**2.    Because No Venue is More Convenient for the Relevant Witnesses (Including Non-Parties), This Case Should Remain in the Western District of Arkansas.**

This Court has stated, "[w]here a motion for change of venue rests on the convenience of witnesses, '[r]elevant considerations include the number of essential non-party witnesses, their location, and the preferences of courts for live testimony as opposed to depositions.'"[59] Accordingly, it is the inconvenience of *non-party* witnesses that is important.  Where no one forum exists that is convenient for the witnesses, transfer should be denied.[60]

Apple states that the Northern District of California is more convenient for non-party witnesses.  This conclusory statement is also without merit.  While non-parties in Asia may be marginally geographically closer to the Northern District of California, non-parties located in Germany, Canada (Ontario), Mexico, New York, Minnesota, Texas, Michigan, North Carolina, and several other locales are geographically closer to the Western District of Arkansas.  Indeed, Luxpro has listed non-party witnesses that are, literally, located around the world.[61]

Moreover, Apple has failed to demonstrate that any of these non-parties (1) will be required to attend trial, and (2) would attend trial in California, but not Arkansas, based on convenience factors.  While it might be marginally closer for some non-parties to access the Northern District of California via the airport in San Francisco, the Western District of Arkansas

---

[58] *See* Wu Declaration at at ¶¶5-6.
[59] *R&R Packaging, Inc.*, 2007 WL 162730, at *3 (quoting, *Nelson v. Soo Line R. Co.*, 58 F. Supp. 2d 1023, 1027 (D. Minn. 1999)).
[60] *See Price Indus. Inc.*, 2002 WL 31681806, at *1675 (refusing to transfer case to different venue where no one venue is more convenient to the parties); *see also MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-CV-289, 2009 WL 440627 (E.D. Tex. Feb. 23, 2009) (noting that where witnesses will come from all over the globe, no convenient forum exists).
[61] *See* Wu Declaration at ¶¶8-10.

is readily accessible and conveniently accessed from international airports located in both Dallas/Fort Worth and Little Rock.

Tellingly, even Apple identifies non-party witnesses (and party witnesses as well) in its venue briefing that are located far from the Northern District of California, including Apple's outside counsel in Germany and Taiwan, Apple's employees in its foreign offices, and Apple's affiliates in foreign countries.[62]

Finally, Apple incorrectly claims that, somehow, the Northern District of California is the only district court that has the power to subpoena certain non-parties.[63] Other than Apple's potential (and speculatively) ex-employees that would still reside within the 100 mile subpoena power of the Northern District of California, no other non-parties would be covered by Apple's argument. In such instances, deposition testimony is more than adequate.[64]

At the very least, where, as here, witnesses reside in different fora, this factor is at best a "wash."[65] Based on that issue alone, Apple's motion should be denied.[66]

> **3.    Sources of Proof are Located in the Western District of Arkansas, in the Northern District of California, Taiwan, and Around the World; No Venue is More Convenient.**

Apple also maintains that this case should be transferred to the Northern District of California based on the location of sources of proof. Not unlike Apple's analysis related to the

---

[62] *See* La Perle Declaration" at ¶¶3-4.

[63] *See* Apple's Motion to Transfer at ¶1(b).

[64] *See, e.g., RBC Mortgage Co. v. Couch*, 274 F. Supp. 2d 965, 971 (N.D. Ill. 2003) (denying transfer and reasoning that third-party witnesses outside subpoena power of the court can readily appear by video deposition or written transcript); *Household Fin. Servs. v. N. Trade Mortgage Corp.*, No. 99 C 2840, 1999 WL 782072, at *5 (N.D. Ill. Sept. 27, 1999) (same).

[65] *See, e.g., R&R Packaging, Inc.*, 2007 WL 162730, at *3.

[66] *See Arkansas Trophy Hunters Assoc. Inc. v. Texas Trophy Hunters Assoc.*, Civ. No. 06-5067, 2006 WL 3742239, at *1 (W.D. Ark. Dec. 18, 2006) (noting the movant's failure to demonstrate that the other forum was more convenient for non-party witnesses); *Price Indus. Inc.*, 2002 WL 31681806, at *1675 (refusing to transfer case to different venue where no one venue is more convenient to the parties).

convenience of witnesses and non-witnesses, the Northern District of California is only the more convenient venue for sources of *Apple's* proof.

As demonstrated herein, the vast majority of Luxpro's documentary evidence is located in the Western District of Arkansas.[67] In addition, sources of proof for non-parties are located throughout the world.[68]

The realities of modern litigation are that the location of documents, particularly in this case, will not involve a physical inspection by one party at the other party's facilities. Rather, the parties will transmit documents to one another that have been gathered from around the world by mail or electronic means. To that end, the costs associated with either travel for review or duplication and shipping of documents and information in the present matter will not be greater merely because the case is pending in the Western District of Arkansas.[69]

In any event, it is important to note that Luxpro has attested that its records and documents are physically located in the Western District of Arkansas.[70] Further, Apple admits that not all of its sources of proof are located in the Northern District of California.[71]

### 4.    No Convenient Venue Exists for the Place of the Alleged Wrong.

Luxpro's claims against Apple involve illegal conduct and torts committed by Apple in Canada, China, Germany, Japan, Mexico, Singapore, Taiwan, the United States, and other countries. In addition, the consumers of MP3 players in Arkansas have been damaged by

---

[67] *See* Section III herein, *supra*.

[68] *Id.*

[69] *See Doolittle v. Structured Invs. Co., LLC*, No. CV 07-356-S-EJL-CWD, 2008 WL 5121591, at *11 (D. Idaho Dec. 4, 2008) ("The location of documents will rarely weigh in favor of transfer because documents may be easily photocopied and shipped to wherever the documents are needed."); *PRG-Schultz USA, Inc. v. Gottschalks, Inc.*, No. C 05-2811 MMC, 2005 WL 2649206, at *5 (N.D. Cal. Oct. 17, 2005) (same); *Ivax Corp. v. B. Braun of Am., Inc.*, No. 00-4909-CIV-KING, 2001 WL 253253, at *2 (S.D. Fla. Feb. 28, 2001) ("In the real world of computerization and electronic transfer of information, the assemblage of accounting data can be accomplished as easily in Miami, Florida as anywhere elsewhere.").

[70] *See* Wu Declaration at ¶7.

[71] *See* La Perle Declaration at ¶¶ 3-4.

Apple's actions. It is uncontested that Apple's products are sold throughout the United States, including in the State of Arkansas. Accordingly, Apple's claim that the conduct complained of occurred only at its company's headquarters in the Northern District of California lacks merit.

Finally, it is uncontested that the Northern District of California may have afforded proper venue in this case. Thus, by the assertions in its motion, Apple has attempted to "merely shift[ ]the inconvenience from one side to the other," which is not a permissible reason for the Court to grant Apple's motion for change of venue.[72] Accordingly, Apple has not shown a strong balance of inconvenience in its favor such to disturb Luxpro's choice of forum.[73]

## C.    The Interests of Justice Favor Maintaining this Case in the Western District of Arkansas.

"The 'interest of justice' is a separate component of a § 1404(a) transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a separate result."[74] Although the Eighth Circuit has approved a district court's use of the following "interest of justice" factors: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law,"[75] the "[f]actors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system," including whether the litigants are likely to receive a speedy trial.[76]

---

[72] See Terra Int'l, 119 F.3d at 696-97.
[73] See Vanusen, 207 F. Supp. at 534-35; Norwood, 349 U.S. at 32; Arkansas Right to Life, 972 F.Supp. at 1194; R&R Packaging, 2007 WL 162730, at *3.
[74] Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220 (7th Cir. 1986) (citations omitted) (considering a plaintiff's motion to change venue).
[75] See Terra Int'l., 119 F.3d at 696.
[76] See Coffey, 796 F.2d at 221.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE AND BRIEF IN SUPPORT THEREOF**

1.    **A Speedy Trial is Crucial to Luxpro and Should be Outcome Determinative of the Venue Dispute; Transferring the Case Will Substantially Prejudice Luxpro.**

While Apple has wholly failed to demonstrate that the Northern District of California is a more convenient forum, the availability of a short trial date in the Western District of Arkansas also provides a separate basis on which this Court should deny the motion to transfer.  Apple apparently concedes, by failing to address it, that the Northern District of California's time-to-trial and efficiency in managing its docket is far slower than the Western District of Arkansas.  Indeed, the statistics reported in the United States Judicial Caseload Profile bear out the enormous discrepancy.  Those statistics provide that, as of September 30, 2007, in the Northern District of California, there were 7,970 cases filed, 9,005 cases pending, and the median time from filing to trial in civil cases was 24.9 months.[77]  On the other hand, in the Western District of Arkansas, there were 1,067 filings, 881 cases pending, and the median time from filing to trial in civil cases was 13 months.[78]  As a result, Apple's request to transfer venue to the Northern District of California, essentially, would mean that Luxpro would be required to wait at least *one additional year* before this matter is resolved, which would further cripple Luxpro's business.

Because of Apple's pattern of sham litigation, intimidation and illegal interference with Luxpro's partners, Luxpro's business has been substantially damaged.[79]   In light of the foregoing, the interest of justice component in this case strongly outweighs any other factor.[80]

---

[77] *See* Exhibit A, Judicial Caseload Profile Report (N.D. Cal.).
[78] *See* Exhibit B, Judicial Caseload Profile Report (W.D. Ark.).
[79] *See* Wu Declaration at ¶5.
[80] *See Coffey*, 796 F.2d at 221.

In addition, Apple's comments in its brief notwithstanding,[81] because of the slower docket in the Northern District of California, the costs to Luxpro will be greatly increased as opposed to obtaining a speedy, efficient resolution in this Court.

**2.    Luxpro's Choice of Forum is Entitled to Deference.**

Although a foreign plaintiff's choice of forum is sometimes accorded less deference,[82] that is not the law in the Eighth Circuit and no court in the Eighth Circuit has so held.  A plaintiff's right to choose a forum is well established, and it should not be disturbed unless it is clearly outweighed by the other considerations.[83]  The fact that a plaintiff may choose between and among proper venues is well recognized as the availability of multiple forums:

> ...not only permits but indeed invites counsel in an adversary system seeking to serve his client's interests, to select the forum that he considers most receptive to his cause...a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor.[84]

Luxpro has chosen this venue for most, if not all, of the foregoing reasons especially given this Court's efficient manner in handling complex litigation and the short time-to-trial; a fact particularly sensitive to Luxpro as detailed herein.[85]  Apple's contention that this matter should be transferred to the Northern District of California should be afforded no weight.  This is

---

[81] Apple claims on pages 16-17 of its brief that the costs for Luxpro will be less to the extent the case is transferred to the Northern District of California because "it will be easier for Luxpro's principals and employees to travel to California than to Arkansas."  *See* Apple's Transfer Brief at pp. 16-17.  Apple's claim is without merit, especially given the relative costs of lodging, meals, and other costs will be substantially less in this Judicial District, and the airfare will be substantially the same.  In any event, the true cost is felt in having this litigation stretched out for two years or more, which is what will occur if a transfer is granted.

[82] While some authorities note that the deference afforded a foreign plaintiff's choice of venue is less than a domestic plaintiff's choice, the deference is still honored.  The circumstances, as described herein, dictate that Luxpro's choice of forum should be afforded its due deference.

[83] *See Arkansas Right to Life*, 972 F. Supp. at 1194 (stating that "[p]laintiff's choice of forum is given 'great weight' and should rarely be disturbed").

[84] *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 689 (E.D. Tex. 1999).

[85] *See* Wu Declaration at ¶5.

especially true where, as here, Apple could have filed a declaratory judgment action in the venue of its choosing.[86]

In any event, and to the extent this Court adopts the law of other circuits providing that a foreign plaintiff's choice of venue is afforded less deference than a domestic plaintiff's choice, the amount of deference a foreign plaintiff is entitled to may be bolstered when there is a strong showing of evidence, in which case the "district court must assess[, and articulate,] whether the . . . evidence . . . has . . . overcome any reason to refrain from extending full deference to the foreign plaintiff's choice."[87]  As stated above, a speedy resolution to this litigation is important to Luxpro given the damage inflicted on it by Apple, and this factor is determinative of the § 1404(a) venue transfer analysis.  Moreover, Apple could have filed its own lawsuit in the forum of its choice.  Apple chose to defer such a decision to Luxpro.  Because Luxpro has made such a strong showing in its favor, it has overcome any reason for this Court to refrain from extending its choice of forum the full deference accorded under the law.[88]

### 3. The Balance of the Interest of Justice Factors are Neutral or Favor Venue in the Western District of Arkansas.

The remaining factors related to the interest of justice (*i.e.*, each party's ability to enforce a judgment, obstacles to a fair trial, conflict of law issues, and the advantages of having a local court determine questions of local law) are not material to this dispute.  Nevertheless, given Apple's wealth and commercial activities throughout the United States, including in Arkansas, and California's obligation under the Full Faith and Credit Clause to honor judgments from

---

[86] In public press releases, Luxpro had been threatening to sue Apple for at least a year. *See* http://www.ft.com/cms/s/0/57458146-9c4a-11db-9c9b-0000779e2340.html?nclick_check=1

[87] *See Windt v. Qwest Commc'ns Int'l., Inc.*, 529 F.3d 183, 190 (3d Cir. 2008), *pet. for cert. filed*, (Oct. 31, 2008) (No. 08-614) (*forum non conveniens* case) (citations omitted, alterations in original); *see also Piper Aircraft Co. v Reyno*, 454 U.S. 235, 255-56 (1981) (*forum non conveniens* case).

[88] *See Windt*, 529 F.3d at 190.

federal courts,[89] the ability to enforce a judgment by Luxpro is neither relevant nor significant.[90] Second, there appear to be no obstacles to a fair trial in Arkansas, and none have been raised by Apple. Third, Arkansas judges, including the judges in the Western District of Arkansas routinely apply the law of other jurisdictions,[91] rendering this issue immaterial. Finally, the consumers of Arkansas do have a local interest in this dispute given Apple's actions caused them to pay higher prices for MP3 players.

## VII.    CONCLUSION

This Court should deny Apple's motion to transfer venue because Apple has not met its substantial burden of proving that a transfer is warranted for the convenience of the parties and the witnesses. By the assertions it made in its motion, Apple has attempted to merely shift the inconvenience from one side to the other, which is not a permissible reason for a court to either disturb Luxpro's choice of forum or grant Apple's motion for change of venue. However, to the extent it has shown that the Northern District of California is a more convenient forum (which it has not), Apple still has failed to meet its burden of proving that a transfer is warranted in the interest of justice, particularly in light of Luxpro's request for a speedy trial. Finally, as Luxpro has made such a strong showing in its favor, its choice of forum is entitled to full deference.

WHEREFORE, Luxpro respectfully requests this Court deny Apple's § 1404(a) Motion to Transfer Venue.

---

[89] *Miller v. R.K.A. Mgmt. Corp.*, 99 Cal. App. 3d 460, 468 (Cal. Ct. App. 1979) (stating that "[f]ull faith and credit must be given a final order or judgment of a federal court").
[90] *See B&G Equip. Co., Inc. v. J.T. Eaton & Co., Inc.*, No. WMN-06-1363, 2006 WL 2813886, at *3 (D. Md. Sept. 27, 2006) (noting a judgment obtained in one state's federal court is obviously enforceable and given full faith and credit by another state's federal court).
[91] *See Caudill v. J.C. Penney Corp., Inc.*, No. 06-3003, 2006 WL 1582089, *2 (W.D. Ark. 2006) (applying Texas law to dispute).

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE AND BRIEF IN SUPPORT THEREOF**                                                  Page 27

**Dated: March 2, 2009.**

Respectfully Submitted,

/s/ Richard A. Adams
Richard A. Adams
Ark. Bar No. 97036
Phillip N. Cockrell
Ark. Bar No. 79154
Corey D. McGaha
Ark. Bar No. 2003047
**PATTON ROBERTS PLLC**
Century Bank Plaza, Suite 400
P.O. Box 6128
Texarkana, Texas 75505-6128
Phone: (903) 334-7000
Fax: (903) 334-7007

Jeremy Y. Hutchinson
Ark. Bar No. 2006145
**PATTON ROBERTS PLLC**
111 Center St., Suite 1315
Little Rock, AR 72201
Telephone: (501) 372-3480
Facsimile: (501) 372-3488

Patrick J. Conroy
*Pro Hac Vice*
Glenn E. Janik
*Pro Hac Vice*
**SHORE CHAN BRAGALONE LLP**
Bank of America Plaza
901 Main Street, Suite 3300
Dallas, Texas 75202
Telephone: (214) 593-9110
Facsimile: (214) 593-9111

Nicholas H. Patton
Arkansas State Bar No. 63035
**PATTON TIDWELL & SCHROEDER, LLP**
4605 Texas Boulevard, P. O. Box 5398
Texarkana, Texas 75505-5398
Telephone: (903) 792-7080
Facsimile: (903) 792-8233

Patricia L. Peden
**LAW OFFICES OF PATRICIA L.
PEDEN**
5901 Christie Avenue, Suite 201
Emeryville, California 94608
Telephone: (510) 268-8033
Facsimile: (510) 547-2446


**ATTORNEYS FOR PLAINTIFF
LUXPRO CORPORATION**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV5(a)(3), this 2nd day of March, 2009.


/s/ Richard A. Adams_____
Richard A. Adams

# EXHIBIT  A

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

LUXPRO CORPORATION, a Taiwanese )
corporation,                     )
                                 )
              Plaintiff,          )
                                 )        Civil Action No. 4:08-CV-04092-HFB
vs.                              )
                                 )
APPLE, INC. f/k/a Apple Computer, )
Inc.,                            )
                                 )
              Defendant.          )

---

DECLARATION OF FU-CHING WU IN SUPPORT OF PLAINTIFF'S
RESPONSE TO APPLE, INC.'S MOTION TO TRANSFER

---

Fu-Ching Wu, hereby declares, under penalty of perjury, as follows:

1.      I am the Chairman of the Board and Chief Executive Officer of Luxpro Corporation ("Luxpro") and I am familiar with the day-to-day operations, business, and financial affairs of Luxpro.  In my capacity as Chairman of the Board and Chief Executive Officer of Luxpro, I have the authority to make the statements contained herein.

2.      I am the current Chairman of Luxpro and have been for many years.  I am actively involved in the daily operations from Luxpro's offices located in Taipei, Taiwan.

3.      My responsibilities as Chairman of the Board and Chief Executive Officer of Luxpro require me to conduct business on an international basis and travel frequently. I have traveled to the United States and to other countries on business and am willing to travel to Arkansas to represent Luxpro in this case.

4.    In addition to having personal knowledge of the matters relevant to this litigation, I have actively participated directly in communications and negotiations with Luxpro's vendors, customers, and others, and have worked closely with Luxpro's personnel who handle business operations and financial management, as well as with Luxpro's outside counsel and other advisors. I also have knowledge of Luxpro's products and the general business of the company.

5.    I have reviewed the Original Complaint in this case (as well as the Amended Complaint). Luxpro's choice of venue in the Western District of Arkansas is a convenient forum and was made for a variety of reasons. I have authorized Luxpro to consent to the jurisdiction and venue of this Court throughout these proceedings. Apple's illegal campaign against Luxpro substantially harmed Luxpro's business. Because of this, Luxpro requires a speedy resolution of its claims. The Western District of Arkansas was chosen by Luxpro because of its ability to resolve complex cases in an efficient and timely manner. In fact, the relative short time-to-trial from the date of the filing of the lawsuit in the Western District of Arkansas was one of the main reasons for choosing this venue. In addition, I believe that consumers in the Western District of Arkansas were forced to pay higher prices for MP3 players and products due to Apple's illegal conduct.

6.    I am able, willing and do not consider it an inconvenience to travel to the United States to attend a deposition and trial in the Western District of Arkansas, if the need arises. Luxpro and its employees will respond to information requests or subpoenas served on the company from the Western District of Arkansas and will comply with the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Western

2

District of Arkansas. I will authorize and require relevant witnesses from Luxpro to be presented for depositions and trial testimony in the United States and in the Western District of Arkansas.

7.    All of Luxpro's documents believed to be related to this lawsuit are in the possession of Luxpro's counsel, Patton Roberts, PLLC, in Texarkana. Luxpro and I will cooperate with the parties to produce any additional documents needed to prepare this case for trial.

8.    Luxpro received inquiries for its products from prospective customers, and also sold products to customers, located all across the United States. Luxpro may need to obtain testimony and documentary evidence for this case from witnesses located in the eastern, northern, southern and central regions of the United States. In addition, Luxpro received inquiries for its products from prospective customers, and sold its products to customers, from countries throughout the world, including in Asia, Africa, Europe, North America, and South America. Finally, Luxpro also received interest from prospective venture capital companies and investors related to its company. Luxpro may need to obtain testimony and documentary evidence for this case from witnesses located in foreign countries throughout the world. The Western District of Arkansas is centrally located and will be more convenient to non-party witnesses than the forum proposed by Apple. A representative sample of certain non-parties that are likely to have relevant witnesses and documentary evidence are listed in paragraph 9.

9.    One of Luxpro's early and most interested contacts in our global marketing strategy was through Circuit City Stores, Inc., its subsidiaries and marketing agents. Many of Circuit City's management and marketing personnel were and still are

3

located in Richmond, Virginia at its headquarters. Emails, letters, and documents relevant to our case will be located in Circuit City's files. The Western District of Arkansas is closer and more convenient to Richmond than the Northern District of California. The following is a list of representative non-parties that are likely to have relevant documentary evidence and witnesses related to this case:

- Atlas Sound and Vison Corporation is a Singapore Corporation headquartered in Singapore. Atlas is likely to have relevant witnesses and documentary evidence related to Luxpro and Apple;

- ASUSTek Computer INC. is a Taiwanese company headquartered in Taipei City, Taiwan. ASUS is likely to have relevant witnesses and documentary evidence related to Luxpro, Apple, and Apple's communications concerning Luxpro and Compuimport;

- Beijing Huaqi Informational Digital Technology Co., Ltd. is a company located in Beijing, China. Beijing Huaqi Informational Digital Technology Co. is likely to have relevant witnesses and documentary evidence related to Luxpro and Luxrpo's MP3 products;

- Beijing Qian Kun Time Digital Technology Co., Ltd., is a company based in China. Beijing Qian Kun Time Digital Technology Co. is likely to have relevant witnesses and documentary evidence related to Luxpro and Luxrpo's MP3 products;

- Best Buy Co., Inc. is a Minnesota Corporation with its principal place of business in Richfield, Minnesota. Best Buy is likely to have relevant witnesses and documentary evidence related to Luxpro, Apple, and the MP3 marketplace;

- Circuit City Stores, Inc. is a Virginia Corporation with its principal place of business in Richmond, Virginia. Circuit City is likely to have relevant witnesses and documentary evidence related to its wholly-owned subsidiary, InterTAN, Luxpro, Apple, and the MP3 marketplace;

- Citigroup, Inc. is a Delaware Corporation with its principle place of business at 399 Park Avenue, New York, New York. Citigroup, including its subsidiaries and investment banking arm, Citigroup Global Markets Securities Investment Consulting, are likely to have relevant witnesses (Lulu Cheng and others) and documentary evidence related to Luxpro;

4

- **CMS Haselic Sigle** is a law firm in Cologne, Germany. CMS is likely to have relevant witnesses (Dr. Gordian N. Hasselblatt and others) and documentary evidence related to Apple and Luxpro;

- **Compuimport S.A. de C.V.** is a Mexico import company. Compuimport is likely to have relevant witnesses (Eduardo Solórzano and others) and documentary evidence related to Luxpro, Apple, and ASUS's communications with Compuimport related to Luxpro;

- **Deutsche Messe** is a German Company located in Hanover, Germany. Deutsche Messe is likely to have relevant witnesses and documentary evidence related to Luxpro, Apple, and the 2005 CeBit Tradeshow in Hanover, Germany;

- **Drew & Napier, LLC** is a law firm based in Singapore. Drew & Napier is likely to have relevant witnesses and documentary evidence related to Apple and Luxpro;

- **Ernst & Young Global, Ltd.** is a privately held company in the United Kingdom. Ernst & Young, including its foreign subsidiaries in Taiwan, are likely to have relevant witnesses (Ann Shen and others) and documentary evidence related to Luxpro;

- **Federal Communications Commission** is a governmental agency of the United States located in Washington, DC. The FCC is likely to have relevant documentary evidence related to Luxpro;

- **InterTAN Company** is wholly owned subsidiary of Circuit City Stores, Inc., located in Barrie Ontario, Canada. InterTan, including its foreign offices (e.g., Taiwan) is likely to have relevant witnesses (Chris Corcoran, Benjamin Morden, Eva Tai, Cathie Emms, Brian E. Levy, Ian J. Hutton, Craig Touchie, Tseng Ching-tang, Julie Hong, and others) and documentary evidence related to Luxpro, Apple, and the MP3 marketplace;

- **Kaga Electronics Company, Ltd.,** is a Japanese Company located in Tokyo, Japan. Kaga is likely to have relevant witnesses (Jason Yen and others) and documentary evidence related to Luxpro, Apple, and Apple's communications concerning Luxpro;

- **Kmart Corporation** is a subsidiary of Sears Holding Corporation, with its principal place of business in Troy, Michigan. Kmart is likely to have relevant witnesses and documentary evidence related to Luxpro, Apple, and the MP3 marketplace;

5

- Neuberger-Berman, LLC is a global asset management company based in New York City, New York. Neuberger Berman is likely to have relevant witnesses (Greg Kobrick and others) and documentary evidence related to Luxpro;

- Orchard Company is a company based in Singapore. Orchard is likely to have relevant witnesses (Johnson Goh and others) and documentary evidence related to Luxpro, Apple, and Apple's communications with Orchard concerning Luxpro;

- Parkersco, LLC is a United States company located in Morehead City, North Carolina. Parkersco is likely to have relevant witnesses (Bruce Henderson) and documentary evidence related to Luxpro;

- RadioShack Corporation is a Delaware Corporation with its principal place of business in Fort Worth, Texas. RadioShack is likely to have relevant witnesses (John Shen and others) and documentary evidence related to Luxpro, Apple, and the MP3 marketplace;

- Starbucks Corporation is a Washington Corporation with its principal place of business in Seattle, Washington. Starbucks, and its foreign subsidiaries, are likely to have relevant witnesses and documentary evidence related to Luxpro and Apple;

- Starbucks Coffee Japan, Ltd. is a subsidiary of Starbucks Corporation and is located in Tokyo, Japan. Starbucks, and its foreign subsidiaries, are likely to have relevant witnesses and documentary evidence related to Luxpro and Apple;

- Synnex Technology International Corp. is a Delaware Corporation with its principle place of business in Fremont California. Synnex has offices around the world, including in Canada, China, Mexico, Japan, and in the United Kingdom. Synnex, and its foreign offices, are likely to have relevant witnesses and documentary evidence related to Luxpro, Apple, and communications with Luxpro distributers;

- TCL Digital Electronic SBU is a company based in china. TCL Digital is likely to have relevant witnesses and documentary evidence related to Luxpro and Luxpro's MP3 products;

- Webworker. Web Worker is likely to have relevant witnesses (Oliver Latos and others) and documentary evidence related to Luxpro and Apple;

6

- **J.P. Chang.** J.P. Chang, Luxpro's legal counsel in Taiwan, is likely to have relevant information and documentary evidence related to the litigation initiated by Apple in Taiwan;

10.    In addition, Luxpro's global marketing strategy for its products anticipated sales through large distributors of electronic products in the United States. The largest such distributor, Wal-Mart, is located in the Western District of Arkansas.

11.    I have knowledge of, and familiarity with, Luxpro's books and records and financial and operational affairs. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my familiarity with books and records of Luxpro and other relevant documents, and other information prepared or collected by Luxpro's employees, or upon my opinion based upon my experience with the operations and financial affairs of Luxpro.

12.    I submit this declaration in support of Luxpro's Response to the Motion to Dismiss and Motion to Transfer Venue. As the Chairman and Chief Executive Officer of Luxpro, I am authorized to submit this Affidavit on behalf of Luxpro.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26 day of February, 2009 at Taipei, Taiwan.

Fu-Ching Wu, Chairman
Luxpro Corporation

7

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF ARKANSAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| LUXPRO CORPORATION, a Taiwanese corporation, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 4:08-CV-04092-HFB |
| v. | ) ) | |
| APPLE, INC. f/k/a Apple Computer, Inc., | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT APPLE INC.'S REPLY
IN SUPPORT OF MOTION TO TRANSFER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ................................................................................................ 1

ARGUMENT ....................................................................................................... 3

I.    LUXPRO'S OPPOSITION CONFIRMS THAT ITS CHOICE OF AN
      ARKANSAS FORUM IS NOT ENTITLED TO DEFERENCE ..................................... 3

      A.    The Law Is Clear That a Plaintiff's Forum Choice Is Not Entitled to
            Deference Where the Chosen Forum Lacks a Connection to the Plaintiff or
            to the Dispute ........................................................................................... 3

      B.    Luxpro Fails to Identify Any Connection That Arkansas Has to Luxpro or
            to This Dispute ......................................................................................... 4

      C.    Luxpro's Status as a Foreign Plaintiff Further Undercuts the Deference
            Due Its Choice of a Forum That Lacks a Connection to the Dispute ................. 5

      D.    Luxpro's Attempts to Justify Its Forum Choice Only Add to the Evidence
            of Improper Forum Shopping .................................................................... 6

            1.    Luxpro's Attempt to "Consent" to This Forum Is Further Evidence
                  of Forum Shopping ......................................................................... 7

            2.    Luxpro's Assertion That It Chose This Forum for "Speedy"
                  Resolution Is Not Credible............................................................... 8

      E.    Luxpro's Argument That Apple Could Have Filed for Declaratory Relief
            Is Meritless .............................................................................................. 10

II.   NOTHING IN LUXPRO'S SUBMISSION COUNTERS APPLE'S SHOWING
      THAT THE "BALANCE OF CONVENIENCE" FAVORS THE NORTHERN
      DISTRICT OF CALIFORNIA .......................................................................... 10

      A.    The Northern District of California Is More Convenient for Both of the
            Parties..................................................................................................... 10

            1.    Luxpro Cannot Dispute That California Is More Convenient for
                  Luxpro and Its Witnesses................................................................ 11

            2.    Luxpro's Arguments Regarding Apple's Convenience Are
                  Misleading...................................................................................... 12

      B.    The Northern District of California Is More Convenient for Nonparty
            Witnesses ................................................................................................ 14

      C.    The Location of Relevant Documents Favors the Northern District of
            California ................................................................................................. 17

      D.    Any Alleged Conduct That Occurred in the United States Occurred in
            California ................................................................................................. 18

      E.    The Applicability of California Law to Luxpro's Claims Favors Transfer ......... 19

III.    THE INTERESTS OF JUSTICE FAVOR A TRANSFER TO THE NORTHERN
        DISTRICT OF CALIFORNIA ................................................................................. 20

CONCLUSION ............................................................................................................ 22

## TABLE OF AUTHORITIES

### CASES

Page(s)

*Alden Corp. v. Eazypower Corp.*,
    294 F. Supp. 2d 233 (D. Conn. 2003) ...............................................................................3

*Amazin' Raisins Int'l, Inc. v. Ocean Spray Cranberries, Inc.*,
    No. 04-3358 ADM/AJB, 2004 U.S. Dist. LEXIS 23200 (D. Minn. Nov. 15, 2004) ..........6, 17

*Apple Computer, Inc. v. Unova, Inc.*,
    No. Civ. A. 03-101-JJF, 2003 U.S. Dist. LEXIS 23843 (D. Del. Nov. 25, 2003)...................12

*Arkansas Right to Life v. Butler*,
    972 F. Supp. 1187 (W.D. Ark. 1997)..............................................................................3

*Arkansas Trophy Hunters Assoc. Inc. v. Texas Trophy Hunters Assoc.*,
    Civ. No. 06-5067, 2006 U.S. Dist. LEXIS 92152 (W.D. Ark. Dec. 18, 2006) ......................17

*B&G Equip. Co. v. J.T. Eaton & Co.*,
    WMN-06-1363, 2006 U.S. Dist. LEXIS 74098 (D. Md. Sept. 27, 2006) ...............................3

*Capital Ford New Holland, Inv. v. AB Volvo*,
    No. 4:00CV00715GH, 2000 U.S. Dist. LEXIS 22671 (E.D. Ark. Dec. 18, 2000) .7, 11, 16, 19

*Coffey v. Van Dorn Iron Works*,
    796 F.2d 217 (7th Cir. 1986) .......................................................................................12

*De Shane v. Deere & Co.*,
    726 F.2d 443 (8th Cir. 1984) .........................................................................................6

*Doolittle v. Structured Investments Co., LLC*,
    No. CV 07-356-S-EJL-CWD, 2008 U.S. Dist. LEXIS 98693 (D. Idaho Dec. 4, 2008)..........19

*In re Nat'l Presto Indus., Inc.*,
    347 F.3d 662 (7th Cir. 2003) .........................................................................................3

*In re Triton Ltd. Sec. Litig.*,
    70 F. Supp. 2d 678 (E.D. Tex. 1999).............................................................................3

*Jaco Envt'l Inc. v. Appliance Recycling Centers of Am., Inc.*,
    No. C 06-06601 JSW, 2007 U.S. Dist. LEXIS 274221 (N.D. Cal. Mar. 27, 2007) ...............10

*MHL Tek, LLC v. Nissan Motor Co.*,
    No. 2:07-CV-289, 2009 U.S. Dist. LEXIS 13676 (E.D. Tex. Feb. 23, 2009).........................18

*Nat'l Bank of Harvey v. Bathgate Capital Ptnrs.,*
    No. 1:06-CV-053, 2007 U.S. Dist. LEXIS 25646 (D.N.D. Apr. 4, 2007) ......................20, 21

*Nelson v. Soo Line R.R. Co.,*
    58 F. Supp. 2d 1023 (D. Minn. 1999) .................................................................................3

*Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.,*
    387 F. Supp. 2d 564 (E.D. Va. 2005) .......................................................................5, 20

*Ozarks Coca-Cola/Dr. Pepper Bottling Co. v. Coca-Cola Co.,*
    No. 06-30056-CV-W-GAF, 2006 U.S. Dist. LEXIS 14588 (W.D. Mo. Mar. 17, 2006) ........20

*Pressdough of Bismarck, LLC v. A&W Rests., Inc.,*
    587 F. Supp. 2d 1079 (D.N.D. 2008) ...............................................................................15

*PRG-Schultz USA, Inc. v. Gottschalks, Inc.,*
    No. C 05-2811 MMC, 2005 U.S. Dist. LEXIS 42272 (N.D. Cal. Oct. 17, 2005) ...............3, 13

*Price Indus. Inc. v. Fulghum Indus. Inc.,*
    No. 97-1148, 2002 LEXIS 25453 (W.D. Ark. Apr. 19, 2002) ...................................................3

*R&R Packaging, Inc. v. GAP Roofing, Inc.,*
    No. 06-5175, 2007 US Dist. LEXIS 3803 (W.D. Ark. Jan. 18, 2007) ......................................3

*RBC Mortgage Co. v. Couch,*
    274 F. Supp. 2d 965 (N.D. Ill. 2003) .................................................................................15

*Reiffin v. Microsoft Corp.,*
    104 F. Supp. 2d 48 (D.D.C. 2000) .....................................................................................10

*Shutte v. Armco Steel Corp.,*
    431 F.2d 22 (3d Cir. 1970) ...................................................................................................3

*Terra Intern., Inc. v. Mississippi Chemical Corp.,*
    119 F.3d 688 (8th Cir. 1997) ...............................................................................................12

*Thornton Drilling Co. v. Stephens Production Co.,*
    No. 4:06-cv-0851 GTE, 2006 U.S. Dist. LEXIS 67961 (E.D. Ark. Sept. 6, 2006) ...........11, 13

*Travelers Insurance Co. v. Stuart,*
    226 F. Supp. 557 (W.D. Ark. 1964) ..................................................................................19

*Vandusen v. J.C. Penney Co.,*
    207 F. Supp. 529 (W.D. Ark. 1962) ....................................................................................4

*Wilson v. United States,*
    No. 4:05-CV-562, 2006 U.S. Dist. LEXIS 87382 (E.D. Ark. Nov. 28, 2006) ......................19

# OTHER AUTHORITIES

2008 Judicial Caseload Profiles ..................................................................................................8, 9

United States Judicial Panel on Multidistrict Litigation, *Statistical Analysis of Multidistrict Litigation 2008* ...................................................................................................9

# INTRODUCTION

Luxpro's opposition brief confirms what was already apparent from the complaint — that neither Luxpro nor its dispute with Apple has any connection whatsoever to the Western District of Arkansas. None of the operative events occurred in Arkansas and no witnesses are located here. Although Luxpro's counsel is nearby, Luxpro concedes that counsel's location is irrelevant under section 1404(a). Luxpro underscores the lack of connection to this forum by submitting a declaration that mentions only *one* supposed "contact" with Arkansas. However, that purported "contact" — Wal-Mart — turns out to be a company Luxpro *wanted* to do business with, but with which Luxpro apparently had no actual contact at all. Indeed, Luxpro's declaration does not even name Wal-Mart as a relevant nonparty.

Unable to establish a connection to Arkansas, Luxpro instead attempts to explain why it chose a distant forum where no witnesses are located. But that explanation is irrelevant under section 1404(a), and instead merely highlights the lack of any connection to this forum. Luxpro says that it chose the Western District of Arkansas because its desire for a speedy resolution was "crucial." Luxpro's explanation is not credible. The same set of statistics regarding median "time to trial" that supposedly persuaded Luxpro to file in this District show that the median "time to disposition" is *faster in the Northern District of California* than it is here. Furthermore, if a speedy resolution was truly "crucial" to Luxpro, it would have filed in one of the *65* other districts with faster times to disposition, or in one of the seven other districts with faster times to trial.

Luxpro, moreover, fails to contradict any of the factors indicating that the Northern District of California is the more convenient forum — both for Apple, which is located there, *and for Luxpro.* Rather than dispute that California is the more convenient forum, Luxpro's chairman purports to "consent" to litigate in this District despite the greater travel time, and

states in his declaration that he will "require" Luxpro witnesses to travel to Arkansas. The operative question under section 1404(a), however, is not whether Luxpro consents, but which forum is more *convenient*. Luxpro cannot dispute, and does not dispute, that California is more convenient. It is also not clear on what authority Luxpro's chairman can require witnesses who may no longer work at the company to travel to Arkansas. More fundamentally, if the Court were to endorse Luxpro's "consent" as a valid means of opposing a motion to transfer, plaintiffs would have free rein to forum shop unfettered by the convenience analysis mandated by section 1404(a). Notably, plaintiff cites no authority — because there is none — for the proposition that "consent" has any relevance whatsoever to that analysis.

Not only is California more convenient for Luxpro and Apple, the undisputed facts also show that it is more convenient for nonparty witnesses. The overwhelming majority of witnesses are located in Asia, and Luxpro does not dispute that it is more convenient for these nonparties to appear in California. Luxpro attempts to muddy this important fact by claiming that nonparties are located across the United States and around the world, such that no district is any more convenient than another. But Luxpro's attempt cannot withstand scrutiny. It is undisputed that there are a total of 16 nonparties located in Asia. Luxpro also identifies one nonparty in the Northern District of California. The other nonparties are either of marginal relevance or are not adequately identified by Luxpro. Given the importance of convenience to nonparty witnesses in the section 1404(a) calculus, this factor weighs strongly in favor of transfer.

As discussed in greater detail below, the convenience factors and the interest of justice factors all strongly favor a transfer to the Northern District of California.

# ARGUMENT

## I.    LUXPRO'S OPPOSITION CONFIRMS THAT ITS CHOICE OF AN ARKANSAS FORUM IS NOT ENTITLED TO DEFERENCE

### A.    The Law Is Clear That a Plaintiff's Forum Choice Is Not Entitled to Deference Where the Chosen Forum Lacks a Connection to the Plaintiff or to the Dispute

Courts uniformly hold that a plaintiff's forum choice is not entitled to deference where the forum lacks a connection to the plaintiff or to the dispute.  (*See* Apple Inc.'s Brief in Support of Motion to Transfer ("Mot.") at 7-9 (citing numerous cases).)  Luxpro fails to address any of the cases cited in Apple's opening brief on this point.  Indeed, Luxpro cites several cases that make this very point.[1]

Having ignored all of the authority cited in the motion — and the holdings of several of its own cases — Luxpro contends that the Court "*must*" give deference to its choice of forum. (Luxpro Corp.'s Response in Opposition to Motion to Transfer ("Opp.") at 16.)  But the cases Luxpro cites do not stand for the proposition that courts must give deference to a plaintiff's forum choice in all circumstances.  Rather, all of the cases involved a clear connection to the chosen forum.[2]

---

[1] *See, e.g., B&G Equip. Co. v. J.T. Eaton & Co.*, WMN-06-1363, 2006 U.S. Dist. LEXIS 74098 at *6-7 (D. Md. Sept. 27, 2006) (plaintiff's choice of forum not given substantial weight where "there is little material connection between the chosen forum and the facts and issues of the case"); *PRG-Schultz USA, Inc. v. Gottschalks, Inc.*, No. C 05-2811 MMC, 2005 U.S. Dist. LEXIS 42272 at *11 (N.D. Cal. Oct. 17, 2005) ("plaintiff's choice of forum is given 'much less weight' when the plaintiff is not a resident of the chosen forum or the forum lacks any significant contact with the activities alleged in the complaint"); *Alden Corp. v. Eazypower Corp.*, 294 F. Supp. 2d 233, 237 (D. Conn. 2003) ("plaintiff's choice of forum is given less weight where the case's operative facts have little connection with the chosen forum"); *Nelson v. Soo Line R.R. Co.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999) (courts afford plaintiff's forum choice "significantly less deference" when plaintiff is not forum resident or underlying facts did not occur in forum); *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 689 (E.D. Tex. 1999) (because no plaintiff resided in the forum, plaintiffs' forum choice given less deference).

[2] *See R&R Packaging, Inc. v. GAP Roofing, Inc.*, No. 06-5175, 2007 US Dist. LEXIS 3803 at *8 (W.D. Ark. Jan. 18, 2007) (transfer denied where plaintiff's employees lived and worked in Arkansas, plaintiff's chosen forum); *Arkansas Right to Life v. Butler*, 972 F. Supp. 1187, 1194 (W.D. Ark. 1997) (transfer denied where plaintiff resided in district in which she brought suit); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (transfer denied where plaintiff resided in district in which suit was brought); *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003) (transfer denied because plaintiff had office in district in which it brought suit); *Price Indus. Inc. v.*

**B.    Luxpro Fails to Identify Any Connection That Arkansas Has to Luxpro or to This Dispute**

The undisputed facts establish that this forum lacks any relevant connection to Luxpro or to this dispute. Neither Luxpro nor any of its employees resides in Arkansas. The complaint does not allege that any events related to Luxpro's claims against Apple occurred in Arkansas, and Luxpro's opposition does not attempt to establish any relevant connection.

Unable to assert any connection to Arkansas, Luxpro has included in its submission an extraordinarily attenuated *suggestion* of a *possible* connection, which the Court should flatly reject. The last page of Luxpro's declaration, submitted by its chairman, Fu-Ching Wu, states:

> Luxpro's global marketing strategy for its products *anticipated sales* through large distributors of electronic products in the United States. The largest such distributor, *Wal-Mart*, is located in the Western District of Arkansas.

(Declaration of Fu-Chin Wu in support of Luxpro Corp.'s Response in Opposition to Motion to Transfer ("Wu Decl.") ¶ 10 (emphasis added).) This strained passage fails to establish a connection to Arkansas. It says that Luxpro "anticipated sales" through large distributors in the United States, and that Wal-Mart is "the largest" such distributor. The passage is most notable for what it does not state: that Luxpro had, or even attempted to have, any contact whatsoever with Wal-Mart. If it had, Mr. Wu certainly would have said so. Thus, this irrelevant passage should be understood for exactly what it is — a feeble excuse to mention "*Wal-Mart*" in the hope of creating the fiction that this case really does have a connection to this District. It does not. Indeed, that this irrelevant and misleading statement is all Luxpro can say about a connection to Arkansas demonstrates the complete absence of a connection to this forum.

---

*Fulghum Indus. Inc.*, No. 97-1148, 2002 LEXIS 25453 at *23 (W.D. Ark. Apr. 19, 2002) (transfer denied because "its place of business, witnesses and evidence are located in this district"); *Vandusen v. J.C. Penney Co.*, 207 F. Supp. 529, 536 (W.D. Ark. 1962) (transfer denied where plaintiff resided in chosen forum).

One other passage in Mr. Wu's declaration attempts to draw a connection to Arkansas. He says, "I believe that consumers in the Western District of Arkansas were forced to pay higher prices for MP3 players and products due to Apple's illegal conduct." (Wu Decl. ¶ 5.) But Luxpro's complaint makes clear that Luxpro would make the same claim respecting consumers in any jurisdiction where Apple sells its products, including the Northern District of California. Moreover, such self-serving opinion testimony from a non-expert is clearly inadmissible — notably, the declaration makes no attempt to qualify Mr. Wu as an expert economist. Most fundamentally, Mr. Wu's statement is irrelevant under Section 1404. As Apple pointed out in the Motion (*see* Mot. at 9-10), "[i]n order to give deference to a foreign plaintiff's choice of forum, *the contacts at issue must relate to the plaintiff's claims*"; nationwide sales are not a sufficient contact with any particular forum. *Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 568 (E.D. Va. 2005) (emphasis added). Courts thus hold that where a defendant, like Apple, has nationwide sales, sales of products in a particular district do not support deference to the plaintiff's forum choice. *Id.* Luxpro failed to respond to this point in its opposition, and thus apparently concedes it.

In the final analysis, Luxpro's only connection to Arkansas is the location of certain of its attorneys. But Luxpro concedes — again by not arguing the point — that the location of plaintiff's attorneys is not a relevant factor in evaluating transfer. (Mot. at 8 (citing cases).)

## C. Luxpro's Status as a Foreign Plaintiff Further Undercuts the Deference Due Its Choice of a Forum That Lacks a Connection to the Dispute

Luxpro admits that a foreign plaintiff's choice of forum is "sometimes" accorded less deference, but contends that no court in the Eighth Circuit has addressed the issue. (Opp. at 25.) This is wrong. In *Amazin' Raisins*, one of several cases cited in Apple's motion that Luxpro ignores, the District of Minnesota disregarded a Canadian plaintiff's choice of forum, stating that

"it is well-established that *significantly less deference* is granted when the plaintiff does not reside in the forum." *Amazin' Raisins Int'l, Inc. v. Ocean Spray Cranberries, Inc.,* No. 04-3358 ADM/AJB, 2004 U.S. Dist. LEXIS 23200 at *13 (D. Minn. Nov. 15, 2004); *see also De Shane v. Deere & Co.,* 726 F.2d 443, 445 (8th Cir. 1984) (holding, in *forum non conveniens* context, that "foreign plaintiff's choice deserves less deference") (quotation omitted).

Courts in the Eighth Circuit thus *have* addressed this issue, and they have done so consistently with the many other cases Apple cited which hold that a foreign plaintiff's complaint should be transferred where it was filed in a district that lacks a connection to the dispute. (*See* Mot. at 9-10 (citing numerous cases).) Luxpro ignores all of these cases, and fails to cite any cases to the contrary. Indeed, Luxpro fails to cite even one case suggesting that *any* deference is due a foreign plaintiff's choice of a forum that lacks a connection to the dispute. Thus, because Luxpro as a foreign plaintiff chose a forum with no connection to the dispute, when a forum with a substantial connection to the dispute was available, Luxpro's forum choice is entitled to no deference.

### D.     Luxpro's Attempts to Justify Its Forum Choice Only Add to the Evidence of Improper Forum Shopping

As Apple argued in the motion, the circumstances of this case warrant the conclusion that Luxpro has engaged in improper forum shopping and that its forum choice is therefore not entitled to deference. (Mot. at 11 (citing cases).) Specifically, Luxpro chose a forum that has no connection to this dispute when it would have been *more convenient for Luxpro* to litigate in the one forum that does have a substantial connection to this dispute — the Northern District of California. Luxpro responds to this point, *not by asserting that Arkansas is more convenient*, but by attempting to "consent" to an Arkansas forum and justifying its forum choice on the ground that it wanted a "speedy resolution."

### 1.    Luxpro's Attempt to "Consent" to This Forum Is Further Evidence of Forum Shopping

Luxpro concedes, as it must, that it would be more convenient for Luxpro and its employees to litigate this case in the Northern District of California. Knowing full well that this fact is uncontestable, Luxpro submits Mr. Wu's declaration in which he states that he "has authorized Luxpro to consent" to this forum, that he is "willing to travel to Arkansas," that he does not consider traveling to Arkansas "an inconvenience," and that he will "authorize and require relevant witnesses from Luxpro" to appear in Arkansas. (Wu Decl. ¶¶ 3, 5, 6.) In other words, Mr. Wu attempts to consent to an Arkansas forum on behalf of Luxpro and its employees.

Mr. Wu's statements should carry no weight in resolving Apple's motion. Nothing Mr. Wu says bears any relevance to whether it is *convenient* for Luxpro to litigate in Arkansas rather than California. There is no case holding that consent is relevant. Instead, courts look at relative travel times, and the authority is clear that shorter travel times support transfer. *See, e.g., Capital Ford New Holland, Inv. v. AB Volvo*, No. 4:00CV00715GH, 2000 U.S. Dist. LEXIS 22671 at *10 (E.D. Ark. Dec. 18, 2000) (granting transfer where plaintiffs, who were located around North America, would have easier time flying to Chicago than to Little Rock, Arkansas). Nothing Mr. Wu declares changes the fact that Luxpro witnesses are most likely in Taiwan, and it will be easier for them to travel to California than to Arkansas.

Furthermore, Mr. Wu does not indicate whether or how he obtained the "consent" of any other employee of Luxpro. Just because Mr. Wu may not consider it "an inconvenience" does not mean others would agree. Luxpro also makes no attempt to show that Mr. Wu has the authority to order any former Luxpro employees to appear in Arkansas. Presumably if Mr. Wu had obtained the consent of other witnesses, he would have included that fact in his declaration. But more importantly, if merely "consenting" to have party witnesses appear for depositions and

trial in a forum is sufficient to establish convenience, then any party could forum shop anywhere, and section 1404 would be rendered a nullity. As noted, there is no authority whatsoever for such a proposition.

Mr. Wu's attempt to consent on Luxpro's behalf is nothing more than an admission that Luxpro is forum shopping, with no regard for the convenience of the parties or witnesses or the relationship between the chosen forum and the dispute.

### 2.    Luxpro's Assertion That It Chose This Forum for "Speedy" Resolution Is Not Credible

In search of some way to justify its choice of an Arkansas forum, Luxpro contends that it chose this District so it could obtain a "speedy, efficient" resolution of its claims, whereas the Northern District of California has a "slower docket." (Opp. at 24-25.) Mr. Wu states in his declaration that this was the reason Luxpro filed suit in the Western District of Arkansas. (Wu Decl. ¶ 5.) Luxpro relies on federal judicial caseload statistics for this argument (Opp. at 24), and Mr. Wu's declaration suggests that he must have relied on the same statistics when choosing a forum.

Luxpro's argument and Mr. Wu's statements are not credible. At best, the statistics Luxpro cites show that it is not clear which district is more likely to resolve Luxpro's dispute most speedily. While the median time from filing to trial is shorter in the Western District of Arkansas according to these statistics, the *median time from filing to disposition is shorter in the Northern District of California*, by about three months. (*See* 2008 Judicial Caseload Profile, Northern District of California, http://www.uscourts.gov/cgi-bin/cmsd2008.pl (last visited March 9, 2009) (median time to disposition 7.7 months; ranked 22nd in the country).) This suggests that Luxpro may get a speedier resolution of its claims in the Northern District of California.

Given these conflicting statistics, it is disingenuous for Luxpro to tout its desire for speedy resolution as the reason it chose this forum. It is also disingenuous for Luxpro to accuse Apple of conceding that this case would be resolved more quickly in this District by not citing the statistics in its Motion. Apple did not rely on the federal judicial caseload statistics in the Motion because they provide conflicting information — not because Apple concedes the point.

It is not just the comparison with the Northern District of California that calls the credibility of Luxpro's argument and Mr. Wu's statements into question. If, as Luxpro claims, speedy resolution was "*crucial*" to its forum choice (Mot. at 24), surely Luxpro would have selected one of the _65_ other districts that have faster times to disposition than the Western District of Arkansas. (2008 Judicial Caseload Profile, Western District of Arkansas, http://www.uscourts.gov/cgi-bin/cmsd2008.pl (last visited March 9, 2009) (median time to disposition 10 months; ranked 67th in the country)).[3] Luxpro also could have filed suit in one of the _seven_ other district courts with faster times to trial than the Western District of Arkansas.[4] Thus, if a quick trial of the case was truly "crucial" to Luxpro, it could have chosen several other districts with faster times to trial than the Western District of Arkansas.[5]

For all of these reasons, Luxpro's submission only further demonstrates that it is engaged in improper forum shopping. Its forum choice should thus be given little, if any, deference. *See*

---

[3] Luxpro also suggests that the Northern District of California cannot handle complex litigation. (Opp. at 3.) This is clearly not the case. For example, the Northern District of California regularly handles multidistrict litigation. (*See* United States Judicial Panel on Multidistrict Litigation, Statistical Analysis of Multidistrict Litigation 2008, http://www.jpml.uscourts.gov/General_Info/Statistics/Statistical-Analysis-2008.pdf (last visited March 10, 2009)).

[4] The others are the Eastern District of Virginia, the District of Wyoming, the Eastern District of Wisconsin, the Eastern District of Oklahoma, the Western District of Oklahoma, the Southern District of Alabama, and the Southern District of Florida. (*See* 2008 Judicial Caseload Profiles, http://www.uscourts.gov/cgi-bin/cmsd2008.pl (last visited March 9, 2009).)

[5] Luxpro's suggestion that time is of the essence in this case is belied by the fact that Luxpro is not seeking an injunction or otherwise alleging any ongoing conduct that is causing it harm. Luxpro's claim that a delay would "cripple" its business is thus questionable. (*See* Opp. at 24.) Because Luxpro is seeking damages for past conduct, any concerns about delay in resolution of the case are vitiated by the ability of the Court to award prejudgment interest in the unlikely event Luxpro succeeds in proving its claims.

*Jaco Envt'l Inc. v. Appliance Recycling Centers of Am., Inc.*, No. C 06-06601 JSW, 2007 U.S.

Dist. LEXIS 274221 at *7 (N.D. Cal. Mar. 27, 2007); *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d

48, 54 n.12 (D.D.C. 2000).

### E.  Luxpro's Argument That Apple Could Have Filed for Declaratory Relief Is Meritless

Luxpro argues that Apple knew from published reports that Luxpro was considering

suing Apple and that Apple therefore missed the opportunity to select its own forum by filing a

preemptive declaratory relief action in the Northern District of California.  (Opp. at 25-26.)  This

argument has no relevance to any of the factors under section 1404(a).  Moreover, as

demonstrated by its motion to dismiss, Apple believes Luxpro's suit is meritless, and thus Apple

had no reason to expend resources filing a declaratory relief action.  A requirement that a party

seek declaratory relief whenever a frivolous lawsuit is threatened so that it can proceed in the

most convenient forum would result in a multiplication of lawsuits that would severely tax the

judicial system.  Not surprisingly, Luxpro provides no authority to support this meritless

position.

## II.  NOTHING IN LUXPRO'S SUBMISSION COUNTERS APPLE'S SHOWING THAT THE "BALANCE OF CONVENIENCE" FAVORS THE NORTHERN DISTRICT OF CALIFORNIA

### A.  The Northern District of California Is More Convenient for Both of the Parties

The undisputed facts show that the convenience of both parties favors a transfer to the

Northern District of California.

#### 1.  Luxpro Cannot Dispute That California Is More Convenient for Luxpro and Its Witnesses

What is notable about Luxpro's opposition brief is its total failure to provide any valid

reason why the Northern District of California is not more convenient for Luxpro and its

witnesses. Luxpro does not reside in Arkansas and none of its employees resides here, and it is undisputed that it is easier to travel from Asia to California than from Asia to Arkansas. In the face of these undisputed facts, Luxpro responds that it has "chosen" this District and that it has "consented" to receive service of process here and have its witnesses brought to Arkansas. (Opp. at 19-20.) As explained above, Luxpro's "consent" to a less convenient forum is irrelevant to Apple's transfer motion.

It is undisputed that California is more convenient for Luxpro. Luxpro ignores the many cases cited in Apple's motion where courts granted transfers in nearly identical circumstances. (*See* Mot. at 13 (citing *Original Creatine*, 387 F. Supp. 2d at 570 (transferring where it would be more convenient for foreign plaintiff to travel by air to New York than to chosen forum in Virginia); *Thornton Drilling Co. v. Stephens Production Co.*, No. 4:06-cv-0851 GTE, 2006 U.S. Dist. LEXIS 67961 at *10 (E.D. Ark. Sept. 6, 2006) (granting transfer where "it would be more convenient to both Plaintiff and Defendant to litigate" in transferee forum); *Capital Ford*, 2000 U.S. Dist. LEXIS 22671 at *10 (granting transfer where plaintiffs, who were located around North America, would have easier time flying to Chicago than to Little Rock, Arkansas).)

Luxpro also makes the perplexing argument that Apple is merely asking the Court to shift the inconvenience from Apple to Luxpro. (Opp. at 23.) This argument makes no sense, because Luxpro does not contend that Arkansas is more convenient for it than California, nor could it. Luxpro argues only that it prefers Arkansas and has therefore "consented" to litigate in this District. That, of course, does not mean that granting Apple's motion would shift the burden to Luxpro. To the contrary, litigating in the Northern District of California would be more convenient for *both* parties.

### 2.    Luxpro's Arguments Regarding Apple's Convenience Are Misleading

California is clearly more convenient for Apple.  Apple is located in California and its principal witnesses and documents are in California, whereas Apple knows of no witnesses in Arkansas.  These are undisputed facts.  Luxpro's attempts to undermine them ignore relevant authority and are misleading.

Luxpro argues that Apple's convenience arguments are undermined because Apple has sued and been sued in various patent cases pending in districts outside of California.  (Opp. at 15-16, 18-19.)  The problem with Luxpro's argument is that it ignores the law of the Eighth Circuit, and of every other circuit:  motions for transfer under section 1404(a) "require a *case-by-case evaluation* of the *particular circumstances* at hand and a consideration of all relevant factors." *Terra Intern., Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8th Cir. 1997) (emphasis added); *see also Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220 n.3 (7th Cir. 1986) (section 1404(a) factors "are best viewed as placeholder for a broader set of considerations, the contours of which turn upon the particular facts of each case").  Luxpro has not demonstrated that the circumstances of any of the patent cases it lists are identical or even similar to the circumstances here.  Thus, there is nothing in Luxpro's submission that is even remotely relevant to Apple's motion to transfer.

Luxpro's reliance on the patent cases as somehow undermining the convenience arguments in this case is also misleading.  For example, the first case Luxpro lists was filed by Apple in Delaware *against a Delaware corporation.*[6]  In another one of Luxpro's examples, Apple filed suit in Delaware because *three of the four defendants were Delaware corporations* and none of the key witnesses resided in California. *See Apple Computer, Inc. v. Unova, Inc.,*

---

[6] *See* Apple's Supplemental Request for Judicial Notice Ex. 1 at ¶ 3.

No. Civ. A. 03-101-JJF, 2003 U.S. Dist. LEXIS 23843 at *2 (D. Del. Nov. 25, 2003) (denying

Unova's motion to transfer). Luxpro also lists cases where Apple was sued in other districts and

"failed" to ask for transfer to California. But Luxpro does not address the facts of these cases, as

it must. For example, Luxpro cites one case that was filed in the Eastern District of Texas *by a*

*resident of that district.*[7] These examples highlight the misleading nature of Luxpro's argument,

and the importance of evaluating the section 1404(a) convenience factors based solely on the

circumstances of a particular case.

Luxpro also attempts to undermine Apple's showing that its witnesses are in California

by arguing that they can be "compelled" by Apple to testify in Arkansas. (Mot. at 18.) But the

operative question is the relative *convenience* of the two districts. There is no question that

California is the more convenient forum for Apple's California witnesses. A transfer to the

Northern District of California would eliminate the need for many of Apple's witnesses to travel,

while Luxpro's witnesses will have to travel regardless — the very circumstances that compelled

transfer in a case Luxpro cites. *See PRG-Schultz USA*, 2005 U.S. Dist. LEXIS 42272 at *9

(granting motion to transfer where transfer would eliminate need for many witnesses to travel,

while others would have to travel regardless).

Apple noted in the motion that current Apple witnesses may no longer be at the company

for the duration of this litigation, further supporting venue in California because this Court would

not have subpoena power over those witnesses. (Mot. at 12.) Luxpro responds that this is

speculative (Opp. at 18), but Luxpro neglects to address the relevant authority, including

*Thornton Drilling*, 2006 U.S. Dist. LEXIS 67961 at *10. In that case, the court found that the

possibility that defendant's employees may become former employees was significant, because

---

[7] *See* Apple's Supplemental Request for Judicial Notice Ex. 2 at ¶ 1.

the forum in which plaintiff had filed suit would not have subpoena power. The court did not require a showing that employee departures were "imminent," as Luxpro suggests. *See id.* Thus, the possibility that relevant former Apple employees may be subject only to the subpoena power of the Northern District of California weighs in favor of transfer here. There is no nonparty witness over which this Court would have subpoena power.

In sum, the convenience of the parties weighs in favor of transferring the case to the Northern District of California. Nothing in Luxpro's submission is to the contrary.

**B.      The Northern District of California Is More Convenient for Nonparty Witnesses**

The vast majority of nonparty witnesses in this case reside in Asia, and it is undisputed that it would be more convenient for these witnesses to travel to California than to Arkansas. (*See* Mot. at 13.) Given the paramount importance courts place on the convenience of nonparty witnesses in evaluating section 1404(a) motions, the presence of so many nonparties in Asia strongly supports a transfer here. Obviously concerned about this, Luxpro's opposition attempts to portray this case as one that will require the attendance of witnesses from around the United States and the world, meaning that no district is more convenient than another. This argument is a smokescreen.

Luxpro identifies 26 nonparties in its opposition papers. (Opp. at 12-14; Wu Decl. ¶ 9.) A careful analysis of this list reveals Luxpro's attempts to deemphasize Asian nonparties and supplement the list with supposedly relevant nonparties in other locations. Omitted from this list are five nonparties that Luxpro identified in the complaint — all located in Taiwan (GreTai Securities Market, Carrefour, EUPA, 3C, and ET Mall). (Luxpro Corp.'s First Amended Complaint ("Compl.") ¶¶ 23, 28, 34.) But Luxpro's allegations, including statements in its opposition brief (*see* Opp. at 5-6), establish that all five possess relevant information.

Luxpro then adds to its list of nonparties the names of seven entities that are described in only vague terms. They are: Citigroup, Inc; CMS Hasche Sigle; Deutsche Messe; Federal Communications Commission; Kmart Corporation; Neuberger Berman LLC; and Parkersco LLC. (Opp. at 12-14; Wu Decl. ¶ 9.) With respect to these, Luxpro fails to identify the nature of the testimony, stating only that each has "relevant witnesses and documentary evidence" that is "related to" Luxpro and/or Apple. Furthermore, *none of these entities is even mentioned in the complaint.* Due to this complete lack of specificity and the absence of any mention of these entities in the complaint, the Court has no way to evaluate the importance and materiality of these alleged nonparties and they should therefore be disregarded. *See Pressdough of Bismarck, LLC v. A&W Rests., Inc.*, 587 F. Supp. 2d 1079, 1086 (D.N.D. 2008) ("The Court 'must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum.'"); *RBC Mortgage Co. v. Couch*, 274 F. Supp. 2d 965, 971 (N.D. Ill. 2003) (considering "nature and importance" of witnesses' testimony in determining balance of convenience).[8]

Of the remaining 19 nonparties on Luxpro's list, 11 are located in Asia. (Opp. at 12-14; Wu Decl. ¶ 9.) Thus, the total number of nonparties located in Asia, including those identified in the complaint, is *16*. Luxpro cannot dispute that for all of these nonparties, California is easily the more convenient forum. Luxpro does not even attempt to argue otherwise.

The convenience of the remaining nonparties on the list in no way undercuts the convenience of a California forum. To the contrary, one of the nonparties Luxpro identifies both in its papers and in the complaint — Synnex Technology International Corp. — is *located in the*

---

[8] Luxpro's contention that there are additional relevant witnesses "present in countries and continents throughout the world, including in Africa, Asia, Australia, Europe, the Middle East, New Zealand, North America (including multiple states in the United States), Central America, and South America" (Opp. at 14) suffers from the same defect.

*745798.1*                                    15

*Northern District of California*.  (Opp. at 14; Compl. ¶ 34.)  Synnex's principal place of business
is Fremont, California, which is within the Northern District of California.  It will clearly be
more convenient for Synnex witnesses if this case were transferred to California, and only the
Northern District of California will have subpoena power over Synnex.

Another nonparty, Starbucks, is located in Washington, but Luxpro's allegations
regarding Starbucks involve Starbucks stores in Japan.  (Compl. ¶ 32.)  In any event, it is
undisputed that California provides a more convenient forum for a company located in either
Asia or Washington.  Three other nonparties are located in Mexico (Compu Import S.A. de
C.V.), Germany (Web Worker), and Canada (InterTAN).  As stated in Apple's opening brief, the
Northern District of California will be a more convenient forum for these witnesses because it is
easier to travel to California from these locations than to Arkansas.  *Cf Capital Ford*, 2000 U.S.
Dist. LEXIS 22671 at *10 (granting transfer where plaintiffs would have easier time flying to
Chicago than to Little Rock, Arkansas).

The last three nonparties on Luxpro's list are in the United States, located in Virginia
(Circuit City), Texas (Radio Shack), and Minnesota (Best Buy).  But Luxpro fails to identify the
relevant testimony or witnesses with any specificity, and the complaint's allegations indicate that
these entities will not have any relevant or material testimony.  Circuit City's only relevance is
that it is the *parent company* of InterTAN, which is located in Canada.  The complaint makes no
mention of any action taken by Circuit City; instead, *the allegations all relate to InterTAN*.
Thus, Luxpro fails to establish that Circuit City will have any relevant information.  RadioShack
and Best Buy are also irrelevant.  The only contention about them is that Luxpro received
"interest" from these nonparties.  (Opp. at 5.)  But this supposed "interest" clearly falls short of
creating an expectation of prospective economic advantage and is of no legal relevance; it thus is

irrelevant to the choice of forum. Were Luxpro able to allege legally relevant involvement by any of these entities, it would have done so in far more specific terms. Moreover, even if these nonparties were relevant to the litigation, their purported convenience is outweighed by the convenience of the majority of the other nonparties in having this case proceed in the Northern District of California.

In short, the convenience of the nonparties weighs heavily in favor of a transfer to the Northern District of California.

### C.   The Location of Relevant Documents Favors the Northern District of California

The location of relevant document also favors a transfer. Luxpro makes much of the fact that it has sent documents "believed to be related to this lawsuit" to its counsel in Arkansas. (Opp. at 22.) A party opposing a motion to transfer should not be able to manufacture convenience simply by sending documents to its counsel in its chosen forum. If that were permitted, any party could ensure that its forum shopping efforts were rewarded by sending documents to its attorneys. Further, now that the documents are in the possession of Luxpro's counsel, the issue becomes one of counsel's convenience, which is not a factor in the transfer analysis. *See Amazin' Raisins*, 2004 U.S. Dist. LEXIS 23200 at *9 ("it is axiomatic that convenience to plaintiff's counsel is not a factor"); *Arkansas Trophy Hunters Assoc. Inc. v. Texas Trophy Hunters Assoc.*, Civ. No. 06-5067, 2006 U.S. Dist. LEXIS 92152 at *3 (W.D. Ark. Dec. 18, 2006) (convenience of counsel is not a valid basis for a transfer of venue).

Moreover, Luxpro's statement that it sent documents it "believes to be related" is completely self-serving. Apple and the Court may have different opinions about what Luxpro documents are related to this case, and these additional documents are most likely located at

Luxpro's principal place of business in Taiwan. They certainly are not located in Arkansas, where Luxpro does not reside or do business, and where no relevant conduct took place.

Luxpro also contends that other sources of proof are located throughout the world, but it does not dispute that the majority of the relevant documents will come from Apple itself. The bulk of these documents are located in the Northern District of California, because Apple is headquartered in Cupertino, California, and the United States-based conduct of Apple relevant to this dispute occurred in that district. (Declaration of Thomas La Perle in support of Motion to Transfer and Motion to Dismiss ("La Perle Decl."), ¶¶ 1, 4, 5.)

Finally, Luxpro suggests that the location of documents should not be considered given the realities of modern litigation. (Opp. at 22.) Yet Luxpro's own authority states that such realities do not render this factor "superfluous" or allow courts to read "out of the § 1404(a) analysis" the location of documents. *MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-CV-289, 2009 U.S. Dist. LEXIS 13676 at *24 (E.D. Tex. Feb. 23, 2009). Given that the bulk of the relevant documents originating in the United States will come from Apple in California, this factor favors a transfer to the Northern District of California.

### D.     Any Alleged Conduct That Occurred in the United States Occurred in California

Luxpro contends that its claims involve conduct that occurred in various countries, yet Luxpro does not (and cannot) claim that any event occurred in Arkansas. Its only attempt to link this case to Arkansas is the claim that Arkansas consumers were damaged by Apple's alleged actions. But the complaint does not limit the allegation of damage to Arkansas consumers, meaning that California consumers were allegedly damaged as well. (*See, e.g.*, Compl. ¶ 36.) The fact that all of Apple's United States-based conduct relevant to Luxpro's claims occurred in California (La Perle Decl. ¶ 5) favors a transfer.

E.    **The Applicability of California Law to Luxpro's Claims Favors Transfer**

Luxpro's only argument regarding the applicability of California law is that this Court routinely applies the law of other states. While that may be true, courts still find the applicability of the transferee forum's law to be significant when granting motions to transfer.[9] *See Capital Ford*, 2000 U.S. Dist. LEXIS 22671 at *11 (a federal court "is in a better position to interpret" the law of the state in which it sits); *Wilson v. United States*, No. 4:05-CV-562, 2006 U.S. Dist. LEXIS 87382 at *18 (E.D. Ark. Nov. 28, 2006) (transferring case to New Mexico because district court there "is more familiar with" the New Mexico law that would govern several of plaintiff's claims); *Travelers Insurance Co. v. Stuart*, 226 F. Supp. 557, 562 (W.D. Ark. 1964) (transferring to California where "substantive law of California governs" several issues in dispute).

Luxpro fails to confront any of this authority. California law will clearly apply to all of Luxpro's claims, including one claim brought expressly under California law. In its opposition to Apple's motion to dismiss, Luxpro attempts to argue that any of the 50-states' laws may apply to its common-law claims, but that argument is meritless. As discussed more fully in Apple's Reply in support of its Motion to Dismiss, only California law could apply to Luxpro's claims. (Apple Inc.'s Reply in support of Motion to Dismiss, at 5-7.) Thus, the applicability of California law to Luxpro's claims supports a transfer.

III.    **THE INTERESTS OF JUSTICE FAVOR A TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

Luxpro's arguments regarding the interests of justice fail. All the relevant factors favor the Northern District of California. As demonstrated above, Luxpro's forum choice should be

---

[9] Luxpro's authority is in accord. *Doolittle v. Structured Investments Co., LLC,* No. CV 07-356-S-EJL-CWD, 2008 U.S. Dist. LEXIS 98693 at *27 (D. Idaho Dec. 4, 2008) ("While analyzing law from a different state is certainly not uncommon for a federal district court, it is nonetheless a factor to consider in decided whether venue should be transferred.").

accorded no deference, and the claim that a speedy resolution is "crucial" to Luxpro is not credible. California law will apply, which also favors a transfer in the interests of justice. Again, although it is true that Arkansas judges apply the law of other jurisdictions, it "is in the interest of justice to transfer [an] action to a judge familiar with the law that will control the outcome of the case." *Ozarks Coca-Cola/Dr. Pepper Bottling Co. v. Coca-Cola Co.*, No. 06-30056-CV-W-GAF, 2006 U.S. Dist. LEXIS 14588 at *19 (W.D. Mo. Mar. 17, 2006).

Luxpro fails to address Apple's authority establishing that there is little local interest in having a matter brought by a foreign plaintiff decided in a forum with no connection to the dispute. *Original Creatine*, 387 F. Supp. 2d at 572 (transferring case brought by forum plaintiff to forum where defendant's documents and witnesses were located). Luxpro's only contention regarding Arkansas' interest is that that state's consumers have allegedly paid higher prices for MP3 players as a result of Apple's actions. Again, the same can be said for California consumers. The fact that California has an interest in regulating businesses within its borders far outweighs any interest Arkansas may have in the dispute.

Luxpro also does not dispute that the costs to Apple of litigating in the Northern District of California will be less than in this forum, while Luxpro will incur no significant additional costs by litigating this case in California. Luxpro's argument is that costs of lodging, meals, and "other costs" will be less in the Western District of Arkansas than in the Northern District of California. (Opp. at 25 n.81.) Luxpro fails to demonstrate the significance of this cost difference, or that it would outweigh Apple's significant travel and lodging costs if this litigation proceeds in this forum. Luxpro will have to incur costs regardless of where this case proceeds, while Apple's costs will be substantially reduced if this litigation proceeds in the Northern District of California. This factor favors a transfer. *See Nat'l Bank of Harvey v. Bathgate*

*Capital Ptnrs.*, No. 1:06-CV-053, 2007 U.S. Dist. LEXIS 25646 at *31-32 (D.N.D. Apr. 4, 2007) (granting transfer where defendant would not have to travel or hire local counsel in transferee forum and plaintiff would have to do so in either forum).

The ability to enforce a judgment also favors a California forum. While it is true that California would likely honor an Arkansas judgment, the costs of enforcing such a judgment would be less and there would be no need for recognition of judgment proceedings in California. Regardless of the magnitude of these costs, courts have found this fact to be significant. *Id.* at *31 (granting transfer where enforcement of judgment would be cheaper in transferee forum and there would be no need for recognition of judgment proceedings, as defendants resided in transferee forum). Luxpro does not address this authority.

In summary, the relevant interest of justice factors all favor a transfer to the Northern District of California. Luxpro has failed to establish otherwise.

## CONCLUSION

For the foregoing reasons, the Court should transfer this action to the Northern District of California.

Respectfully submitted,

*/s/Kevin A. Crass*
Arkansas Bar No.: 84029

KEVIN A. CRASS
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue
Suite 2000
Little Rock, Arkansas 72201-3522
Telephone: (501) 376-2011
Email: crass@fec.net

and

JAMES M. PRATT, JR.
Arkansas Bar No.: 74124
144 Washington Street, Northwest
P.O. Box 938
Camden, Arkansas 71701-0938
Telephone: (870) 836-7328
Email: jamiepratt@cablelynx.com

and CoCounsel

PENELOPE A. PREOVOLOS
California Bar No.: 87607
STUART C. PLUNKETT
California Bar No.:187971
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
E-mail:  PPreovolos@mofo.com
E-mail:  SPlunkett@mofo.com

*Attorneys for Defendant Apple Inc.*

## CERTIFICATE OF SERVICE

I, Kevin A. Crass, hereby certify that on April 6, 2009, the foregoing was electronically filed with the Clerk which shall send notification of such filing to the following:

- **Richard A. Adams**
  radams@pattonroberts.com,shicks@pattonroberts.com,mcosta@pattonroberts.com
- **Phillip N. Cockrell**
  pcockrell@pattonroberts.com,kharris@pattonroberts.com
- **Patrick J. Conroy**
  pconroy@shorechan.com,ldalton@shorechan.com
- **Kevin A. Crass**
  crass@fec.net,tmaness@fec.net
- **Jeremy Young Hutchinson**
  jhutchinson@pattonroberts.com,kbraswell@pattonroberts.com
- **Glenn E. Janik**
  gjanik@shorechan.com,ldalton@shorechan.com
- **Corey Darnell McGaha**
  cmcgaha@pattonroberts.com,shicks@pattonroberts.com,mcosta@pattonroberts.com,ssrebalus@pattonroberts.com

*745798.1*

22

- **Reid Davis Miller**
  rmiller@pattonroberts.com,shicks@pattonroberts.com
- **Nicholas H. Patton**
  nickpatton@texarkanalaw.com,mlong@texarkanalaw.com
- **Leisa B. Pearlman**
  lpearlman@pattonroberts.com,shicks@pattonroberts.com,pdesantis@pattonroberts.com,kgarrett@pattonroberts.com
- **Patricia L. Peden**
  ppeden@pedenlawfirm.com
- **Stuart Christopher Plunkett**
  rpelletier@mofo.com,splunkett@mofo.com
- **James M. Pratt , Jr**
  jamiepratt@cablelynx.com
- **Penelope A. Preovolos**
  PPreovolos@mofo.com,kfranklin@mofo.com
- **Sean F. Rommel**
  srommel@pattonroberts.com,shicks@pattonroberts.com,mcosta@pattonroberts.com,kgarrett@pattonroberts.com

/s/  Kevin A. Crass
KEVIN A. CRASS (84029)
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas  72201-3522
Telephone:  (501) 376-2011
Crass@fec.net
Attorneys for Defendant,
Apple Inc. f/k/a Apple Computer, Inc.

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

LUXPRO CORPORATION, a
Taiwanese corporation                                              PLAINTIFF

v.                                  CASE NO. 08-CV-4092

APPLE, INC., f/k/a Apple Computer, Inc.                        DEFENDANT

### ORDER

Before the Court is a Motion to Transfer filed by Defendant Apple, Inc. ("Apple"). (Doc. 25).

Plaintiff Luxpro Corporation ("Luxpro") responded. (Doc. 33). Apple replied. (Doc. 38). The Court

finds this matter ripe for consideration.

Plaintiff Luxpro is a small Taiwanese corporation with its principle place of business in

Taiwan. Luxpro develops, manufactures, and distributes MP3 players worldwide. Defendant Apple

is a California corporation with its principle place of business in Cupertino, California, which is in

the Northern District of California. Apple manufactures, develops, and distributes MP3 players

worldwide under the brand name iPod.

Luxpro filed this suit on October 14, 2008 claiming that Apple: 1) interfered with its

contractual/prospective advantage; 2) tortiously interfered with its contracts; 3) committed an

attempted common law monopolization; 4) committed commercial disparagement; and 5) violated

California Business and Professions Code section 17200. The conduct at issue in this case occurred

in various countries around the world. Consequently, the potential witnesses offered by the parties

are located in many different countries around the world.

"For the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.

§ 1404(a). The Court is not limited to only these three factors in determining whether a transfer is

proper; instead, the Court must "weigh in the balance a number of case-specific factors." *Stewart*

*Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 28, 108 S.Ct. 2239, 2244 (1988). The Court must

consider the convenience of the parties, the convenience of the witnesses, the interest of justice, and

all other relevant factors regarding the transfer. *See Terra Intern., Inc. v. Mississippi Chemical Corp.,*

119 F.3d 688, 691 (8th Cir. 1997). In general, federal courts give considerable deference to the

plaintiff's choice of forum, and thus, the party seeking transfer typically bears the burden of proving

that the transfer is warranted under 28 U.S.C. section 1404(a). *Id.*

Under section 1404 the Court, when balancing the conveniences, may consider such things

as: 1) the convenience of the parties; 2) the convenience of the witnesses—including the willingness

of the witnesses to appear; 3) the accessibility to records and documents; 4) the location where the

conduct complained of occurred; and 5) the applicability of each forum state's substantive law.

*Terra,* 119 F.3d at 691. Shifting the inconvenience from one party to the other is not justifiable for

a change of venue. *R & R Packaging, Inc. v. GAP Roofing, Inc.,* 2007 WL 162730, *3 (W.D. Ark.

2007). The Court may also consider the following when determining what is in the interest of justice

under section 1404: 1) judicial economy; 2) the plaintiff's choice of forum; 3) the comparative costs

to the parties of litigating in each forum; 4) each party's ability to enforce a judgment; 5) obstacles

to a fair trial; 6) conflict of law issues; and 7) the advantages of having a local court determine

questions of local law. *Terra,* 119 F.3d at 691.

As an initial matter, the Court must determine whether Luxpro could have brought this suit

in the Northern District of California. 28 U.S.C. § 1404(a). Because Apple is headquartered there,

Luxpro could have filed this case in the Northern District of California. 28 U.S.C. § 1400(b). The

2

Court now must weigh the convenience and interest of justice factors along with any other factor or circumstance that may be relevant to determine if a transfer is warranted. *Terra*, 119 F.3d at 691.

Apple first argues that Luxpro's choice of forum should be afforded no deference because it does not reside in the chosen forum and there are no connections to the chosen forum. The Court disagrees. The Court recognizes that some district courts do not afford the usual deference to the plaintiff's choice of forum when the plaintiff does not reside in that forum. *Thornton Drilling Co. v. Stephens Production Co.*, 2006 WL 2583659 *2 (E.D. Ark. 2006)(holding that transfer was warranted to district where conduct in dispute occurred and where a majority of witnesses were located); *Biometics, LLC v. New Womyn, Inc.*, 112 F. Supp. 2d 869, 877 (E.D. Mo. 2000)(holding transfer to district where conduct in dispute occurred was warranted). However, the Court finds that the facts here are distinguishable from *Thornton* and *Biometics* where the plaintiffs were both domestic corporations which were residents of districts other than the one where they chose to bring suits. Here we have a foreign corporation with its residence in Taiwan, conduct that occurred outside of the United States, and witnesses around the world. The Court will not disregard the deference provided Luxpro because it brought its claim in a forum that was not its residence nor the place where the conduct occurred when a U.S. forum with those two connections does not exist.

Next, Apple argues that as a foreign plaintiff, Luxpro should have filed in a district with some connection to the dispute. *Amazin' Raisins Intern., Inc. v. Ocean Spray Cranberries, Inc.*, 2004 WL 2595896 *5. Apple also argues that Luxpro is forum shopping. The Court has the discretion to take into account, on a case-by-case basis, any factors or circumstances that may be relevant. *Terra*, 119 F.3d at 691. The Court reiterates that no state has connections of the type in *Amazin' Raisins*. 2004 WL 2595896 *5 (in this patent infringement case, there was a district in which a manufacturing plant was located and a district closest to the patent inventor, but the Canadian

plaintiff chose a district with no connections instead). The Court finds it relevant that the only connection to California is that Apple is headquartered there. Therefore, Luxpro did not choose the Western District of Arkansas in spite of the existence of a district with substantial connections to the dispute. This, along with the absence of clear evidence to the contrary, leads the Court to find that Luxpro was not forum shopping.

Next, Apple argues that the balance of conveniences favors a transfer. Luxpro disagrees and argues no convenient forum exist for the place the conduct in dispute occurred. The Court agrees that the Northern District of California would be more convenient to travel to for the parties and some of the nonparty witnesses. However, the Court is not convinced that the ability to subpoena or the location of documents favors the Northern District of California. The majority of witnesses in this case seem to be international; thus, neither court will be in a better position to subpoena nonparty witnesses. Additionally, in this age of electronic document transmissions, the Court finds that the location of documents will not provide an inconvenience to either party. Furthermore, the Court agrees with Luxpro that no venue is more convenient for the place where the alleged wrongs occurred.[1]

Apple also contends that the interest of justice favors transfer to the Northern District of California. Luxpro disagrees and argues that its choice of forum is entitled to deference and because the median time-to-trial is shorter in the Western District of Arkansas the Court should not transfer this case.The Court recognizes that the median time-to-trial in the Northern District

---

[1] The Court will not consider Apple's argument that because California law applies to Luxpro's claims, this factor should weigh in favor of transfer. The Court recently noted in its Memorandum Opinion on Apple's Motion to Dismiss that the parties had not adequately briefed the choice-of-law issue and the Court will not make arguments for the parties. This situation has not changed. Therefore, the Court is unable to consider this factor here.

of California is more than double that of the Western District of Arkansas, and the median time-to-disposition is also longer.[2]  The Court finds that this factor of judicial economy weighs in favor of retaining this matter. Furthermore, the Court is not convinced that the comparative cost of trial definitively favors the Northern District of California. Moreover, the Court does not find that Apple's arguments regarding additional cost to Luxpro to enforce a judgment weigh in favor of transfer. Luxpro chose this forum with the knowledge that if it were successful on its claims it would then have to enforce them in California.

The Court has considered all arguments presented regarding the transfer of this case and finds that Apple has not met its burden of proving that a transfer is warranted here. Apple has shown the Court that the only convenience factor that definitively favors the Northern District of California is that it would be easier for the parties and some of the nonparty witnesses to travel to San Francisco, California rather than Texarkana, Arkansas. In this modern day of travel conveniences, this alone does not convince the Court that a transfer is warranted for convenience purposes. Additionally, there is nothing here that indicates that the interest of justice cannot properly be served in the Western District of Arkansas. Therefore, Apple's Motion to Transfer is **DENIED.**

**IT IS SO ORDERED,** this 28th day of September, 2009.

_/s/ Harry F. Barnes_
Hon. Harry F. Barnes
United States District Judge

---

[2] www.uscourts.gov/cgi-bin/cmsd2008.pl (last visited September 24, 2009).

# EXHIBIT H

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **CALIFORNIA NORTHERN** | | 2008 | 2007 | 2006 | 2005 | 2004 | 2003 | Numerical Standing | |
| | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | 7,295 | 7,970 | 8,683 | 6,362 | 6,727 | 6,919 | | |
| | Terminations | 7,402 | 6,777 | 6,983 | 6,966 | 6,471 | 7,094 | | |
| | Pending | 8,882 | 9,005 | 8,157 | 6,557 | 7,267 | 7,567 | | |
| | % Change in Total Filings — Over Last Year | | -8.5 | | | | | 78 | 12 |
| | % Change in Total Filings — Over Earlier Years | | | -16.0 | 14.7 | 8.4 | 5.4 | 20 | 1 |
| | Number of Judgeships | 14 | 14 | 14 | 14 | 14 | 14 | | |
| | Vacant Judgeship Months** | 5.9 | .0 | .0 | .0 | .0 | 3.1 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 521 | 569 | 620 | 455 | 480 | 494 | 22 | 6 |
| | FILINGS — Civil | 441 | 505 | 558 | 390 | 413 | 424 | 10 | 2 |
| | FILINGS — Criminal Felony | 42 | 33 | 37 | 39 | 44 | 47 | 78 | 14 |
| | FILINGS — Supervised Release Hearings** | 38 | 31 | 25 | 26 | 23 | 23 | 19 | 8 |
| | Pending Cases | 634 | 643 | 583 | 468 | 519 | 541 | 10 | 2 |
| | Weighted Filings** | 592 | 624 | 621 | 543 | 581 | 631 | 10 | 3 |
| | Terminations | 529 | 484 | 499 | 498 | 462 | 507 | 17 | 5 |
| | Trials Completed | 6 | 8 | 8 | 10 | 10 | 11 | 93 | 14 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 11.2 | 12.4 | 11.2 | 12.6 | 11.1 | 11.7 | 72 | 13 |
| | From Filing to Disposition — Civil** | 7.7 | 6.7 | 7.4 | 9.8 | 8.2 | 10.6 | 22 | 4 |
| | From Filing to Trial** (Civil Only) | 30.0 | 24.9 | 25.0 | 28.0 | 22.5 | 30.3 | 61 | 8 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 488 | 393 | 528 | 530 | 430 | 377 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 6.0 | 4.7 | 7.3 | 9.5 | 6.9 | 5.7 | 53 | 6 |
| | Average Number of Felony Defendants Filed Per Case | 1.3 | 1.2 | 1.5 | 1.5 | 1.4 | 1.5 | | |
| | Jurors — Avg. Present for Jury Selection | 64.09 | 53.81 | 59.09 | 55.21 | 61.19 | 65.00 | | |
| | Jurors — Percent Not Selected or Challenged | 42.1 | 41.9 | 43.2 | 31.0 | 48.9 | 40.9 | | |

| 2008 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 6175 | 97 | 326 | 1877 | 92 | 75 | 564 | 557 | 246 | 479 | 710 | 162 | 990 |
| Criminal* | 575 | 3 | 83 | 221 | 75 | 83 | 19 | 39 | 4 | 10 | 13 | 5 | 20 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **ARKANSAS WESTERN** | | | 2008 | 2007 | 2006 | 2005 | 2004 | 2003 | | |
| | | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 1,088 | 1,067 | 1,078 | 1,083 | 1,478 | 1,425 | U.S. | Circuit |
| | Terminations | | 1,004 | 989 | 1,140 | 1,337 | 1,514 | 1,399 | | |
| | Pending | | 970 | 881 | 808 | 854 | 1,108 | 1,139 | | |
| | % Change in Total Filings | Over Last Year | | 2.0 | | | | | 40 | 5 |
| | | Over Earlier Years | | | .9 | .5 | -26.4 | -23.7 | 83 | 10 |
| | Number of Judgeships | | 3 | 3 | 3 | 3 | 3 | 3 | | |
| | Vacant Judgeship Months** | | .0 | .0 | .0 | .0 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 363 | 356 | 359 | 361 | 493 | 475 | 67 | 8 |
| | | Civil | 287 | 268 | 283 | 281 | 421 | 403 | 52 | 4 |
| | | Criminal Felony | 66 | 73 | 65 | 69 | 60 | 59 | 45 | 9 |
| | | Supervised Release Hearings** | 10 | 15 | 11 | 11 | 12 | 13 | 81 | 10 |
| | Pending Cases | | 323 | 294 | 269 | 285 | 369 | 380 | 69 | 8 |
| | Weighted Filings** | | 326 | 314 | 399 | 348 | 423 | 411 | 76 | 8 |
| | Terminations | | 335 | 330 | 380 | 446 | 505 | 466 | 72 | 8 |
| | Trials Completed | | 13 | 10 | 13 | 14 | 19 | 17 | 76 | 9 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 6.9 | 5.9 | 6.3 | 5.8 | 5.1 | 5.6 | 17 | 2 |
| | | Civil** | 10.0 | 10.3 | 11.9 | 12.0 | 10.2 | 11.6 | 67 | 7 |
| | From Filing to Trial** (Civil Only) | | 16.0 | 13.0 | 13.0 | 13.0 | 15.4 | 14.0 | 8 | 1 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 9 | 5 | 10 | 5 | 4 | 0 | | |
| | | Percentage | 1.1 | .7 | 1.5 | .7 | .4 | .0 | 1 | 1 |
| | Average Number of Felony Defendants Filed Per Case | | 1.2 | 1.1 | 1.1 | 1.1 | 1.3 | 1.2 | | |
| | Jurors | Avg. Present for Jury Selection | 61.06 | 46.57 | 53.35 | 40.59 | 64.04 | 68.94 | | |
| | | Percent Not Selected or Challenged | 57.4 | 59.2 | 53.4 | 47.5 | 59.7 | 59.6 | | |

| 2008 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 860 | 277 | 23 | 180 | 10 | 11 | 29 | 120 | 73 | 10 | 80 | 2 | 45 |
| Criminal* | 196 | 5 | 45 | 64 | 26 | 11 | 3 | 22 | 2 | 11 | 3 | 1 | 3 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."