IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| LUXPRO CORPORATION, a Taiwanese corporation, ) ) ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 4:08-CV-04092-HFB |
| vs. ) ) | |
| APPLE, INC. f/k/a Apple Computer, Inc., ) ) ) | |
| Defendant. ) | |

---

**PLAINTIFF'S MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT**

---

Plaintiff Luxpro Corporation (hereafter "Luxpro" or "Plaintiff") requests leave of this Court to file its Second Amended Complaint pursuant to FEDERAL RULES OF CIVIL PROCEDURE 15(A)(2) and RULE 8.  A copy of Plaintiff's Second Amended Complaint ("SAC") is attached as Exhibit A.

### A.  FACTUAL BACKGROUND

Although Luxpro was a fledging Taiwanese MP3 player maker, it had experienced a substantial degree of success in selling MP3 players and other electronic devices in Asia and throughout the world.  *See* SAC ¶¶ 29-34.  Luxpro had just begun receiving significant orders from North American retailers when Defendant Apple, Inc. (hereafter "Apple" or "Defendant") launched its plan of unfair trade practices against Luxpro.  *See* SAC ¶¶ 6-7, 31-34.  Luxpro was receiving positive feedback regarding the superiority of its MP3 players' interface when compared to Apple's iPod products.  *See*

Dockets.Justia.com

SAC ¶¶ 27-28.  In addition, Luxpro was in the midst of financial planning that would allow it to appropriately compete with Apple and the other MP3 makers world-wide. *See* SAC ¶¶ 35-36.

Luxpro may have never experienced the success that Apple eventually achieved with the iPod.  However, Luxpro was enough of a threat that Apple was not going to take any chances.  Therefore, Apple embarked on a campaign to make sure that Luxpro would not interfere with Apple's plans to dominate the MP3 player market. *See* SAC ¶¶ 7, 37-63.  Specifically, during Luxpro's emergence in the MP3 player market, Apple was implementing its iTunes store.  *See* SAC ¶¶ 9-26.  iTunes was a software program Apple designed to work in tandem with Apple's iPod, whereby Apple would sell music for use only on the iPod.  *Id.*   However, Apple was having more difficulty than expected in negotiating deals with the record companies.  *Id.*   These difficulties delayed Apple's rollout of its new iPod, and forced Apple to come up with various nefarious ways to delay its competitors, such as Luxpro, in the MP3 player market until it could secure agreements with the record companies and then launch its rollout of new iPod products (products for which Apple had no intellectual property rights).  *See* SAC ¶¶ 21-26.  Apple's heavy-handed and illegal ways had the effect of destroying Luxpro's MP3 player business including, but not limited to, cancellation of key contracts with customers and the public offering of its stock which was key to providing financing for Luxpro's future MP3 player plans.  *See* SAC ¶¶ 91-93.  Apple's unlawful and illegal actions and their effect on Luxpro's business prospects are listed in greater detail below.

## B.  PROCEDURAL BACKGROUND

On October 14, 2008, Luxpro filed its Original Complaint in the Western District of Arkansas, Texarkana Division.  On October 20, 2008, Luxpro filed a First Amended Complaint (collectively the "Complaint").  The Complaint detailed Apple's illegal actions towards Luxpro, and the damage it caused.  Specifically the Complaint sought damages for tortious interference with business expectancies, tortious interference with contracts, attempted common law monopolization, violations of Cal. Bus. & Prof. Code § 17200, et seq. ("§ 17200") and commercial disparagement.  *See* Plaintiff's First Amended Complaint (Dkt. 6).

In response, Apple filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) and a Motion to Transfer Venue under Section 1404.  *See* Defendant Apple Inc.'s Motion to Dismiss for Failure to State a Claim and Brief in Support, and Motion to Transfer and Brief in Support, Dkt. 23-26.  Luxpro filed Responses to both Motions.  *See* Plaintiff's Response in Opposition to Defendant's Motion to Transfer Venue and Brief in Support and Plaintiff Luxpro Corporation's Response to Defendant Apple Inc.'s Motion to Dismiss for Failure to State a Claim (Dkt. 33-34).  Apple, in turn, filed Reply Briefs.  *See* Defendant Apple Inc.'s Reply in Support of Motion to Dismiss for Failure to State a Claim and Defendant Apple Inc.'s Reply in Support of Motion to Transfer.  (Dkt. 37 and 38).

On September 1, 2009, the Court held a hearing on both motions.  *See* Exhibit B (Transcript of Argument on Motions Before Honorable Harry F. Barnes, United States District Judge).  On September 28, 2009, the Court issued a Memorandum Opinion and

Order, granting in part and denying in part Apple's Motion to Dismiss.   *See* Memorandum Opinion & Order (Dkt. 48-49).  The Order dismissed Luxpro's attempted monopolization cause of action, dismissed parts of Luxpro's tortious interference causes of action without prejudice, and directed any amendments to the First Amended Complaint regarding its commercial disparagement cause of action to be set forth in a Second Amended Complaint.[1]  *Id.*[2]  On the same date, the Court issued an Order denying Apple's motion to transfer venue.  *See* Order (Dkt. 50).

On November 20, 2009, Apple filed a Petition for Writ of Mandamus in the United States Court of Appeals for the Eighth Circuit seeking to overturn this Court's denial of Apple's Motion to Transfer Venue.  *See* Petition for Writ of Mandamus of Apple Inc. (Dkt. 57).  Specifically, Apple's Petition for Mandamus argues that this Court abused its discretion in denying its Motion to Transfer Venue and requests that: (1) the Eighth Circuit grant its Petition for Writ of Mandamus; (2) vacate this Court's prior Order denying Apple's Motion to Transfer Venue; and (3) transfer this case to the United States District Court for the Northern District of California.  *Id.*

### C.  JUSTICE REQUIRES THAT THE COURT GRANT LEAVE TO FILE PLAINTIFF'S SECOND AMENDED COMPLAINT

This Motion for Leave is being filed under Federal Rule of Civil Procedure 15(a)(2).  Although Apple will undoubtedly do so, opposition of a Motion for Leave to Amend should not be automatically filed.  *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1960). Specifically, *Foman* holds:

---

[1] The order did not specifically address Luxpro's cause of action under § 17200.
[2] The Court's Memorandum Opinion stated that both of Luxpro's causes of action for tortious interference were dismissed without prejudice and that Luxpro had the right to replead the causes of action.

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. **If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.** In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc,--the leave sought should, as the rules require, be 'freely given.'

*Foman* at 182. (emphasis added). Thus, absent a showing of undue delay, bad faith, dilatory motive, undue prejudice to the non-moving party, or futility of the amendment, leave to amend a complaint should be freely granted. *Alternate Fuels, Inc. v. Cabanas,* 538 F.3d 969, 974 (8th Cir. 2008); *see also Baptist Health v. Smith,* 477 F.3d 540, 544 (8th Cir. 2007). So, both the Federal Rules of Civil Procedure and U.S. Supreme Court case law establish that leave to amend at this stage of the proceedings should be freely given when justice requires. *See* FED. R. CIV. P. 15(a)(2); *Foman,* 371 U.S. 178, 83 S.Ct. 227 (1962); *In re Hutchinson Technology, Inc. Securities Litigation,* 536 F.3d 952, 962 (8th Cir. 2008).

From the beginning of the suit, Apple has attempted to improperly short-circuit Luxpro's ability to bring suit against it (most likely to prevent it from pursuing discovery from Apple that would establish Apple's wrongful activities, in general, and its activities against Luxpro in particular). This has been Apple's pattern from the outset and continues to this very day. Specifically, following the Court's denial of Apple's Motion to Transfer, Apple has gone to the extraordinary step of seeking a Petition for Writ of Mandamus. *See* Dkt. 57. Apple has done everything it can to prevent or make difficult Luxpro's ability to have this Court adjudicate its claims against Apple. The question this

Court must ask itself is: What does Apple have to hide and why does it not want this Court to hear Luxpro's suit?

Given that the Memorandum Opinion and Order: (1) dismisses a significant part of Luxpro's claims against Apple; (2) occurred **without Luxpro being allowed the opportunity to conduct any discovery or present any evidence against Apple**; (3) included false statements with regard to Apple's affirmative defenses;[3] and (4) was granted, in part, because (in briefing and in oral arguments) Apple made false arguments that a more rigorous standard of review was to be used by the Court in analyzing Luxpro's pleadings[4] , Luxpro's motion to amend the complaint should be granted.

In sum, Apple's activities in the prosecution of this litigation were clearly deceptive and designed to deprive Luxpro of its due process rights. Specifically, Apple has, at every turn, sought to prevent Luxpro from having its pleadings analyzed under the liberal standards provided under FED. R. CIV. P. 8, as interpreted by the U.S. Supreme Court, the Eighth Circuit **and even the precedent of this very Court**. These activities, at the very least, contributed to prevent Luxpro from seeking redress for its allegations against Apple—allegations that contend Apple destroyed its business. Thus, justice requires that leave be granted so that Luxpro has the right to prosecute its claims against Apple.

As discussed in detail below, Rule 8 is a very liberal standard. Apple has attempted to deprive Luxpro of its right to plead its case under this standard—and to

---

[3] Apple's attempts to confuse the Court included  (1) two requests for judicial notice relating to other suits that, at best, tangentially related to Luxpro's claims without including material facts relating to these suits; and (2)  applying a higher pleading standard or (in some instances) requirement of presentation of evidence. Rule 8 is the only proper standard for evaluating the sufficiency of Luxpro's Complaint.

[4] Apple's attempts to confuse the Court included an argument that Luxpro was required to provide "evidence" in order to have its pleadings sustained.  *See* Exhibit B, 40:4-41:6..

some extent has been successful.  However, granting of the Motion for Leave will remedy **that injustice in that it allows Luxpro to test its claims on the merits—not a misunderstanding promulgated by Apple relating to Luxpro's right to have its claims reviewed under Rule 8**.  This includes Luxpro's ability to conduct discovery and present the evidence collected by it.  At some point, Apple will have the right to file a dispositive motion—but now is not the time for that.

As discussed below, the Second Amended Complaint eliminates the attempted monopolization claim that the Court dismissed.  With regard to the other causes of action that were dismissed, Luxpro clarifies its factual allegations and sets forth additional facts with more specificity--facts that must be assumed to be true at this stage of the litigation.

To the extent that the Court dismissed the other causes of action, the dismissal was based on the manner in which the causes of action were plead.  There was no material discussion that the First Amended Complaint was vague, conclusory or did not contain the necessary level of specificity.  Rather, there appears to be some confusion as to what was required of Luxpro.  This confusion, as discussed in this Motion, was brought on in large part by Apple attempting to confuse the pleading standard required.  **<u>Given the multiple responses filed by Apple (and now a Petition for Mandamus), there is no legitimate way that Apple can complain that it did not have notice of Luxpro's claims.</u>**  However, it is clear that there was some confusion as it relates to the pleading standard and what Luxpro was required to have in its Complaint. The granting of the Motion for Leave allows justice to be done in that it allows Luxpro to have its day in Court.  Apple will have its ability through the filing of dispositive motions and should have every confidence that this Court will give it that day.

### D.  THE SECOND AMENDED COMPLAINT CURES ANY AND ALL DEFECTS SET OUT IN THE MEMORANDUM OPINION AND ORDER RELATING TO THE FIRST AMENDED COMPLAINT AND MAKES THE GRANTING OF THE MOTION FOR LEAVE IN THE INTERESTS OF JUSTICE EVEN MORE COMPELLING

#### 1.  The Second Amended Complaint Must Be Reviewed Under the Liberal Pleading Standards of Rule 8.

Throughout the briefing and argument relating to the First Amended Complaint, Apple attempted to confuse the Court into believing that its Motion to Dismiss should be examined under something other than the standard laid out in Rule 8(a)(2).  It is clear that the Complaint should be examined under Rule 8.  And, as noted above, it is beyond peradventure that Apple had notice of Luxpro's claims.  First, it is Luxpro's view that its First Amended Complaint should have been sustained in its entirety when viewed under the liberal pleading standards of FED. R. CIV. P. 8(a)(2) which only requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard under Rule 8 does not require "detailed factual allegations."  *See Aschroft v. Iqtar*, ____ U.S. ____, 129 S.Ct. 1937, 1949 (2009); *see also Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).

Even under the post-Twombly Rule 8 standard, to survive a motion to dismiss, a complaint must only contain factual matters that, when accepted as true, state a claim that is plausible on its face.  *Id.*  A claim is plausible on its face when its factual content allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.  *Iqtar*, 129 S.Ct. at 1949, *Twombly*, 550 U.S. at 556.  The "plausibility standard" should not be confused with a "probability requirement."  *Iqtar,* 129 S.Ct. at 1949.  Only more than a sheer possibility that a defendant acted unlawfully is required.  *Id.*  Under this standard, it is clear that Apple's actions (under both the First or

8

Second Amended Complaint) were entirely plausible and, thus, factuall allegations concerning those actions must be taken as true.   This is clear under United.States Supreme Court, Eighth Circuit and this very Court's precedent.   Specifically, the following case law provides a clear synopsis of this Court's view of Rule 8.   Under this analysis, the allegations contained in the Second Amended Complaint are entirely plausible:

- ● *Southern Wine and Spirits of Nevada v. Mountain Valley Spring Company, LLC,* 2008 WL 2186176 (W.D. Ark. 2008) - In reviewing Mountain Valley's Motion to Dismiss, the Court assumes as true all factual allegations of the complaint. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007); *Abels v. Farmers Commodities Corp*., 259 F.3d 910, 914 (8th Cir.2001).   [With regard to pleading damages, all a plaintiff must do is] "provide a defendant with some indication of the loss and the causal connection that a plaintiff has in mind."   *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). **This Court does not dismiss a complaint pursuant to Fed.R.Civ.P. 12(b)(6) except in the "unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief.**" *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir.2002).   In the case at bar, Southern's Complaint sets forth the circumstances surrounding the fraudulent activity, the time during which the fraud occurred and the party alleged to have committed the fraud….The Court is satisfied that Southern has satisfied Rule 9(b)'s pleading with particularity requirement….*Robertson v. White*, 633 F.Supp. 954, 968 (W.D.Ark.1986)(finding fraud sufficiently pled with particularity where the Court believes it would be able to identify the issues and prepare an answer and defense) and declines Mountain Valley's invitation to order a more definite statement from Southern.[5]  (emphasis added).

- ● *Pickering v. Walker*, 2008 WL 4277674 (W.D. Ark. 2008) - "The Court assumes that all facts in a complaint are true when considering a motion to dismiss. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). While the Court assumes the facts in a complaint are true, it is free to ignore 'sweeping legal conclusions' and 'unwarranted inferences.'

---

[5]This is particularly important in that the Memorandum Opinion stated that, as to Luxpro's claims and causes of action, it had failed to appropriately plead damages. *See* Memorandum Opinion & Order, p. 21. This Court held that all a plaintiff must do is set forth the circumstances, the time frame and the party causing the loss, which appears to be inconsistent with its finding in this case.

*Wiles v. Capitol Indem. Corp*., 280 F.3d 868, 870 (8th Cir. 2002). When evaluating a complaint, its legal sufficiency may be considered, but not the weight of the evidence supporting it. *Id*. This Court will dismiss a complaint only if the plaintiff has not proffered 'enough facts to state a claim to relief that is plausible on its face.' *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d (2007).

● **Duffer v. Tyco International, Ltd.**, **2008 WL 4417293 (W.D. Ark. 2008) -** Since 1957, courts addressing Rule 12(b)(6) motions to dismiss were guided by the principle articulated in *Conley v. Gibson*, 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In 2007, however, the Supreme Court held that the *Conley* standard had 'earned its retirement,' and implemented a new standard for addressing whether a complaint states a claim upon which relief may be granted. *See  Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1968, 167 L.Ed.2d 929 (2007). The Supreme Court held that a viable complaint must now include 'enough facts to state a claim to relief that is plausible on its face.' *Id*. at 1974.  That is, '[f]actual allegations must be enough to raise a right to relief above the speculative level....' *Id*. at 1965.  The new standard is not a 'heightened fact pleading' requirement, but 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim].' *Id*. at 1965, 1974.  Under *Twombly,* as was the case under *Conley,* the complaint must be liberally construed in the light most favorable to the plaintiff and should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *See id.* at 1964-65; *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 (8th Cir.1997). Moreover, when considering a motion to dismiss for failure to state a claim, a court must accept the facts alleged in the complaint as true, even if doubtful. *See Twombly,* 127 S.Ct. at 1965; *see also  Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Thus, a well-pled complaint may proceed even if it appears "that recovery is very remote and unlikely."  *Twombly,* 127 S.Ct. at 1965 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by  *Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

● **Brasel v. Weyerhauser**,  2008 WL 693805 (W.D.Ark. 2008) -- In reviewing [a defendant's motion to dismiss], the Court assumes as true all factual allegations of the complaint. *Bell Atlantic Corp. v. Twombly, 127 U.S. 1955, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)*; This Court will dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d

59 (1984)....The Federal Rules of Civil Procedure do not require Plaintiffs to set out in detail the facts upon which they base their claims. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give [a defendant] fair notice of Plaintiffs' claims and the grounds upon which they rest. Fed.R.Civ.P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

• *Eastman v. U.S,* 2008 WL 899252 (W.D.Ark. 2008) -- Dismissal for failure to state a claim upon which relief can be granted should be granted only when the plaintiff has not proffered 'enough facts to state a claim to relief that is plausible on its face.' *Bell Atlantic Corp. v. Twombly*, U.S., 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Consequently, such a motion should be granted where the plaintiffs have failed to 'nudge[ ] their claims across the line from conceivable to plausible.' *Id.* In evaluating a complaint, only its legal sufficiency may be considered, not the weight of the evidence supporting it. Furthermore, a court 'must accept as true all factual allegations in the complaint.' *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)

• *Hayden v. Nevada County, Arkansas,* 2009 WL 596534 (W.D. Ark. 2009) - The Court assumes that all facts in a complaint are true when considering a motion to dismiss. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)....When evaluating a complaint, its legal sufficiency may be considered but not the weight of the evidence supporting it. *Id.* This Court will dismiss a complaint only if the plaintiff has not proffered '**enough facts to state a claim to relief that is plausible on its face,**' thus Plaintiff must '**nudge their claims across the line from conceivable to plausible**' in order to avoid dismissal. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). (emphasis in original).

• *Skender v. Ameron International Corp*., 2009 WL 129891 (W.D. Ark. 2009) - The Federal Rules of Civil Procedure do not require the Plaintiff to set out in detail the facts upon which she bases her claims. To the contrary, all the Rules require is 'a short and plaint statement of the claim' that will give Ameron fair notice of the Plaintiff's claims and the grounds upon which they rest. Fed.R.Civ.P. 8(a)(2). In reviewing the Complaint, the Court does not believe that it is so unintelligible as to Ameron that it cannot reasonably frame a responsive pleading.  Therefore, upon consideration, the Court finds that Ameron's Motion for More Definite Statement should be denied.... Dismissal should be granted only when the plaintiff has not proffered 'enough facts to state a claim to relief

that is plausible on its face.' *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d (2007)(overruling the 'no set of facts' standard of *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957). Consequently, a motion to dismiss under Rule 12(b) should be granted where a plaintiff has failed to nudge his claims across the line from conceivable to plausible. *Id*. In evaluating a complaint, only its legal sufficiency may be considered, not the weight of the evidence supporting it. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The complaint must be liberally construed in the light most favorable to the plaintiff. *Bell Atlantic*, 127 S.Ct. at 1964-65. Furthermore, a court must accept as true all factual allegations in the complaint, even if doubtful. *Id*. at 1965.

### 2.   The Motion for Leave is Filed In Good Faith And Will Not Prejudice Apple

Luxpro has not acted with undue delay, bad faith or dilatory motive in filing the Motion for Leave.  Furthermore, Apple will not be prejudiced by the Second Amended Complaint as discovery has not yet started and it will have a full and fair opportunity to defend against Luxpro's claims.

### 3.   The Second Amended Complaint Cures Any Alleged Deficiency In Luxpro's Tortious Interference Claims

Luxpro's First Amended Complaint stated a claim for tortious interference under Arkansas law, but any pleading deficiency is cured by the Second Amended Complaint. Given the liberal amendment standards of Rule 15, the Court should grant leave to allow the Second Amended Complaint to be filed in order that justice is done.

Under Arkansas law, the elements for tortious interference are (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.  *K.C.*

*Properties of N.W. Arkansas, Inc. v. Lowell Inv. Partners, LLC,* 373 Ark. 14, 26, 280 S.W.3d 1, 11 (Ark. 2008). Thus, a complaint that alleged that (1) the plaintiff, Mid-South Beverages, Inc. ("Mid-South") had an exclusive agreement with Pepsico to bottle and distribute its beverages in a certain geographic territory; (2) that defendant Forrest City Grocery ("FCG") had sold and distributed Pepsi within Mid-South's territory; (3) Mid-South's customers were being induced to sever their business relationships with Mid-South and instead make purchases from FCG, causing loss of business to Mid-South; and (4) FCG acted willfully, knowing its acts interfered with Mid-South's contractual relationships and with its customers, should be sustained. *See Mid-South Beverages, Inc. v. Forrest City Grocery Co., Inc.*, 300 Ark. 204, 205, 778 S.W.2d 218, 219 (1989).

The elements for tortious interference claims in California are essentially the same as Arkansas. Under California law, a claim for intentional interference with contract requires: (1) a valid contract between plaintiff and a third party, (2) defendant's knowledge of the contract, (3) defendant's intentional acts designed to induce breach or disruption of the contract, (4) actual breach or disruption and (5) resulting damage. *Family Home and Finance Center, Inc. v. Federal Home Loan Mortg. Cor*p., 525 F.3d 822 (9th Cir. 2008); *Bank of New York v. Fremont General Corp*., 514 F.3d 1008 (9th Cir. 2008). In California, the elements of the tort of intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional, wrongful acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the

relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Sybersound Records, Inc. v. UAV Corp*., 517 F.3d 1137 (9th Cir. 2008).

Luxpro believes that its First Amended Complaint more than met the federal pleading standards of FED. R. CIV. P. 8(a)(2) because the complaint stated that Orchard Company, Web Worker, Carrefour, EUPA, 3C, ET Mall, Kaga Electronics, and Compu Import Co. were all threatened by Apple or an Apple supplier.  *See* First Amended Complaint, ¶ 34.  Nonetheless, Luxpro's Second Amended Complaint more specifically describes Apple's interference with these business partners of Luxpro, along with other entities as well.  Specifically, the Second Amended Complaint includes (as it relates to Luxpro's tortious interference claims--contracts and business expectancies) a number of additional untrue and threatening statements Apple made to Luxpro's suppliers about Luxpro's products and Apple's sham litigation.  *See* SAC ¶¶ 7, 40, 45-50, 55, 58, 63. 65, 73.  It also clarifies how Apple's actions were being used in an attempt to buy it time to negotiate iTunes' deals with the record companies.  Since any pleading deficiency as to Luxpro's tortious interference claims has been rectified by the Second Amended Complaint, and since those claims were dismissed without prejudice, justice will be done with the filing of a Second Amended Complaint.  Thus, the Court should grant Luxpro's Motion for Leave.

While the Court's order did not specifically grant it leave to file a Second Amended Complaint addressing its tortious interference claims, those claims were dismissed without prejudice because Luxpro's allegations as to certain business partners, contracts and expectancies were found "vague" and did not state "facts to indicate the business relationship between these companies and Luxpro."  *See* Memorandum Opinion

14

& Order, p. 15. The Second Amended Complaint clarifies any possible confusion.  As such, it is likely that that Luxpro's causes of action for tortious interference will be sustained.  The Court only dismissed these causes of action because because of how the claims were pled, not because any substantive law barred Luxpro's claims or causes of action for tortious interference.  Therefore, the granting of the Motion for Leave will provide justice in that Luxpro's causes of action will be heard on the merits, and Apple is free to file its dispositive motion, if it still feels that there is substantive law which bars the cause of action.

    **4.**     **The Second Amended Complaint Cures Any Alleged Deficiency In Luxpro's § 17200 Claims**

Additionally, the Memorandum Opinion & Order did not state whether Luxpro's claims under § 17200 were either dismissed, sustained, or should be re-pled.  Since violations of other laws make Luxpro's claims independently actionable under § 17200, the Second Amended Complaint makes clear that Luxpro has adequately pled a claim and cause of action under § 17200 as it adds a claim and cause of action for violation of the Lanham Act..  *See, e.g., Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal..4th 163, 180, 973 P.2d 527, 539 (1999).  Luxpro's Second Amended Complaint sets forth additional facts that, when taken as true, as they must be, show the plausibility of Apple's liability under the statute, and establish that Apple's liability under the statute is crystal clear.  *See* SAC ¶¶ 81-85.

15

### 5. The Second Amended Complaint Cures Any Alleged Deficiency In Luxpro's Commercial Disparagement Claims

Luxpro's Second Amended Complaint includes additional defamatory words spoken by Apple or its agents and also provides specific knowledge and substance of the language used.  *See* SAC ¶¶ 7, 39, 40, 44, 47, 48, 52, 62, 65, 67, 77.  Taken as true, these attacks are sufficient to plead a commercial disparagement claim.  Although these allegations are sufficient to state a cause of action, discovery is necessary to establish all of the specific defamatory words, as Plaintiff was not privy to the conversations. Nonetheless, this is a clear example that a great injustice would occur without allowing Luxpro to conduct basic discovery.

### 6. The California Business and Ethics Code §17200 and the Lanham Act

The Second Amended Complaint more specifically pleads Luxpro's claims for commercial disparagement, as discussed above.  It also includes an additional cause of action under the Lanham Act, 15 U.S.C. § 1125.  *See* Second Amended Complaint, ¶¶ 76-80.  Since violations of other laws makes Luxpro's claims independently actionable under § 17200, the Second Amended Complaint makes clear that Luxpro has adequately pled a claim and cause of action under § 17200.  *See, e.g., Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal..4th 163, 180, 973 P.2d 527, 539 (1999).  Including a cause of action under the Lanham Act will not prejudice Apple, as Luxpro has moved to include this violation as a cause of action prior to the start of discovery.  Luxpro's cause of action under the Lanham Act is based on the same conduct as of as its other causes of action.  Luxpro's Lanham Act claims relate back to the filing

of the original complaint.  *See* FED. R. CIV. P. 15(c).  Apple will have a full and adequate

opportunity to defend against this claim as well.

>    **7.**    **Damages**

The Second Amended Complaint sets forth all of Luxpro's damages claims related

to Apple's unlawful actions.  *See* SAC ¶¶ 63, 70, 75, 80, 85, 90-93.  For example,

Apple's disparagement of Luxpro and its products caused Luxpro lost profits (profits

Luxpro would have realized but for Apple's actions) under existing contracts.  *See e.g.*

*Cashman v. Allied Products Corp.,* 761 F.2d 1250, 1252-53 (8th Cir. 1985).  Apple's

conduct also caused Luxpro to lose future profits (net profits Luxpro would have earned

but for Apple's conduct).  *See e.g. Mid-America Tablewares, Inc. v. Mogi Trading Co.,*

100 F.3d 1353, 1356 (10th Cir. 1998).

Crucial to Luxpro's damages is the loss of its goodwill.  *See* SAC ¶ 7, 63, 70, 80,

90-93.  When Apple made disparaging comments about Luxpro's business and its

products, Luxpro's goodwill in the world wide MP3 player market was damaged.  *Id.*

Goodwill is an intangible business value which reflects a basic human tendency to do

business with a merchant who offers products of a type and quality the customer expects

and is recoverable as an element of damage in commercial litigation.  *See Georgetown*

*Manor, Inc v. Ethan Allen, Inc.,* 991 F.3d 1533, 1543 n.5 (11th Cir. 1993).  Recovery of

Luxpro's loss of goodwill is particularly appropriate here, as Apple's statements and

actions were directed at Luxpro's reputation in the MP3 player world wide market and at

all of Luxpro's products, even those never marked with the name "Shuffle."

Finally, Luxpro suffered consequential damages because of Luxpro's conduct, as

its initial public offering on the Gre-Tai Stock Exchange in Taiwan could not proceed as

planned. *See* Second Amended Complaint, ¶¶ 35-36, 91-93.  The initial public offering would have provided Luxpro with capital funding need to further expand its business and would have increased its reputation throughout the world wide MP3 player market as a publicly traded company.  *Id.*  The Second Amended Complaint alleges that consequential damages related to the initial public offering were proximately caused by Apple's conduct.  *Id.*

The Second Amended Complaint specifically sets out defamatory words used by Apple, provides general knowledge of the defamatory words used by Apple, and specifically pleads the damages to which Luxpro is entitled for all of its claims and causes of action, including commercial disparagement and/or trade libel.  *See* SAC ¶¶ 7, 39, 40, 44, 47, 48, 52, 62, 65, 67, 77.   Therefore, the granting of the Motion for Leave will provide justice, and should be granted so that Luxpro's claims may be heard on the merits.

Furthermore, the Second Amended Complaint clarifies the manner in which Apple's unlawful actions caused damages to Luxpro, including damages relating to Luxpro's initial public offering on a Taiwanese stock exchange and loss of Luxpro's goodwill.  *See* SAC, ¶¶ 7, 35-36, 63, 70, 90-93.  Another issue where it appears Apple caused confusion as to the appropriate pleading standard is damages.  The Second Amended Complaint clarifies how the damages suffered by Luxpro were directly caused by Apple, or loss causation.  *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005).   In particular, the Second Amended Complaint identifies the connection between Apple's unlawful actions and the damages suffered by

Luxpro.  *See, e.g.,* SAC ¶¶ 91-93.  This is sufficient to state a claim for all of the damages pled in the Second Amended Complaint.

Specifically, the Second Amended Complaint  spells out in great detail (more than would ever be required under a Rule 8 standard) how Apple's unlawful actions were a direct cause of Luxpro losing its initial public offering, an offering which cost Luxpro the ability to raise tens of millions of dollars to grow its business at a time when it would have likely enabled Luxpro to grow its MP3 business in a meaningful way and, specifically, in a way that it would have enabled Luxpro to compete with Apple and/or fill a need with respect to which Apple was not willing or able to compete.  SAC, ¶¶ 7, 35-36, 63, 70, 90-93.  It also clarifies how Apple's actions cost Luxpro the opportunity to compete against Apple in North America in a meaningful way and damaged Luxpro's goodwill and reputation by, among other things, lying to competitors that Luxpro's products were, among, other things, "knock-offs" or "copies,"  and threatening suit on the basis of non-existent intellectual property rights.  *See* SAC ¶¶ 7, 39, 40, 44, 47, 48, 52, 62, 63, 65, 67, 70, 77. 80.   .

## CONCLUSION

Luxpro believes that it adequately pled all of its causes of action and claims for damages in the First Amended Complaint under a Rule 8 pleading standard.  However, that is irrelevant at this stage.  The granting of the Motion for Leave would result in substantial justice in that the filing of the Second Amended Complaint cures the concerns the Court expressed in its Memorandum Opinion and Order.

Additionally, Apple's response clearly indicates that it has notice of Luxpro's claims which is all that is required under the FED. R. CIV. P.  This is particularly true in

light of Apple's filing of the Petition for Mandamus.  As such, Luxpro respectfully requests the Court allow no further motions under FED. R. CIV. P. 12(b), as any further Rule 12 motions by Apple would be a waste of the litigants' time and the Court's judicial resources.  Such orders are well within the Court's discretion to manage its docket under FED. R. CIV. P. 16(a).  All parties and the Court are well aware of the issues to be faced in this litigation and discovery should be allowed to start in order to quickly address Luxpro's claims and Apple's defenses.

Respectfully Submitted,

/s/ Richard A. Adams
Richard A. Adams
Ark. Bar No.  97036
Phillip N. Cockrell
Ark. Bar No.  79154
Leisa B. Pearlman
Ark. Bar No. 92070
Corey D. McGaha
Ark. Bar No.  2003047
Reid D. Miller
Ark. Bar No. 2008264

**PATTON ROBERTS PLLC**
2900 St. Michael Drive, Suite 400
Texarkana, Texas 75505-6128
Phone:  (903) 334-7000
Fax:  (903) 334-7007

Jeremy Y. Hutchinson
Ark. Bar No.  2006145
**PATTON ROBERTS PLLC**
111 Center St., Suite 1315
Little Rock, AR 72201
Telephone: (501) 372-3480
Facsimile: (501) 372-3488

Patrick J. Conroy
*Pro Hac Vice*

Glenn E. Janik
*Pro Hac Vice*
**SHORE CHAN BRAGALONE LLP**
Bank of America Plaza
901 Main Street, Suite 3300
Dallas, Texas 75202
Telephone:  (214) 593-9110
Facsimile:  (214) 593-9111

**ATTORNEYS FOR PLAINTIFF
LUXPR0 CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule, this 7th day of December, 2009

 /s/   Richard A. Adams_____
Richard A. Adams