# IN THE UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF ARKANSAS

### TEXARKANA DIVISION


LUXPRO CORPORATION, a Taiwanese )
corporation,                    )
                                )
            Plaintiff,          )
                                )        Civil Action No. 4:08-CV-04092-HFB
v.                              )
                                )
APPLE INC. f/k/a Apple Computer, )
Inc.,                           )
                                )
                                )
            Defendant.          )


### DEFENDANT APPLE INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................iv

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 3

I.      PARTIES.......................................................................................................... 3

II.     ALLEGATIONS ............................................................................................. 3

     A.     Litigation in Germany ......................................................................... 4

     B.     Litigation in Taiwan ............................................................................ 5

     C.     Alleged Interference with Business Relationships.................................. 6

III.    CAUSES OF ACTION ................................................................................... 9

LEGAL STANDARD .......................................................................................................... 10

ARGUMENT ...................................................................................................................... 11

I.      LUXPRO'S CLAIMS ARE ALL BARRED BY THE *NOERR-PENNINGTON* DOCTRINE.................................................................... 11

     A.     The *Noerr-Pennington* Doctrine Immunizes Apple Against Any Claim Based on Non-Sham Litigation .................................................. 12

     B.     The Court Should Dismiss the SAC in Its Entirety Because the Allegations Establish that All of Luxpro's Claims Are Based on Apple's Litigation Against Luxpro ...................................................... 13

     C.     Luxpro Cannot Save Any Portion of Its Claims from *Noerr-Pennington* Based on Apple's Alleged "Post-Litigation" Communications with Luxpro's Alleged Customers ........................... 16

II.     LUXPRO FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT OR PROSPECTIVE ECONOMIC ADVANTAGE.................................................................................................. 20

     A.     Luxpro's Tort Claims Are Governed by California Law, Although the Claims Should Be Dismissed Even If Arkansas Law Applies ........................ 20

     B.     Luxpro's General Allegations of "Interference" Are Insufficient to State a Claim ...................................................................................... 21

     C.     Luxpro's Allegations Regarding Specific Entities Also Fail to State a Tortious Interference Claim .............................................................. 22

i

1.  With Respect to the Vast Majority of Entities Mentioned in the Complaint, Luxpro Fails to Allege Any Acts of Interference by Apple ................................................................. 23

2.  With Respect to Many Entities, Luxpro Fails to Allege an Actual Disruption of a Contract or Economic Advantage ...................... 24

3.  Luxpro Fails to Allege a Contract or Business Relationship with Multiple Entities Alleged in the Complaint ..................................... 25

4.  Luxpro Fails to Allege Apple's Knowledge of Luxpro's Alleged Business Relationships and Contracts. ........................................ 25

5.  Luxpro Fails to Allege Independently Actionable Conduct by Apple ................................................................................................... 26

III.  LUXPRO'S LANHAM ACT CLAIM FAILS ................................................... 27

A.  The Alleged Misrepresentations Are Not Actionable Under the Lanham Act ..................................................................................... 27

B.  Luxpro Fails to Allege Any Representations to Several Entities ......................... 30

C.  Luxpro Fails to Plead Its Lanham Act Claim with the Requisite Specificity Under Rule 9(b) ................................................................. 30

1.  Rule 9(b) Applies to Luxpro's Lanham Act Claim, Because the Claim Sounds in Fraud ........................................................ 30

2.  Luxpro Has Not Pled Its Lanham Act Claim With the Specificity Required by Rule 9(b) ............................................... 31

IV.  LUXPRO FAILS TO STATE A UCL CLAIM ................................................. 33

A.  Luxpro Fails to Allege Unlawful, Unfair, or Deceptive Conduct by Apple Within the Meaning of the UCL ..................................................... 33

1.  Luxpro Fails to Allege "Unlawful" Conduct ............................................. 33

2.  Luxpro Fails to Allege "Unfair" Conduct .................................................. 33

3.  Luxpro Fails to Sufficiently Allege "Fraudulent" Conduct ...................... 34

B.  If Luxpro's UCL Claim Is Not Dismissed, Its Prayer for Restitution  Should Be Stricken ................................................................... 35

V.  LUXPRO FAILS TO PLEAD A "COMMERCIAL DISPARAGEMENT" CLAIM ............................................................................................................ 35

A.  Luxpro Has Not Pled a "Commercial Disparagement" Claim with Sufficient Detail .................................................................................. 36

B.  Luxpro Fails to Plead that Apple Made Any Disparaging Statements to Several Entities ........................................................................ 37

C.    Because Luxpro Fails to Allege a Writing, It Cannot Plead a Libel
or Trade Libel Claim ............................................................................................. 38

CONCLUSION .......................................................................................................................... 39

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Italian Pasta Co. v. New World Pasta Co.*,
    371 F.3d 387 (8th Cir. 2004) ................................................. 30

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ...................................................... 10

*Auto-Chlor Sys. of Minn., Inc. v. JohnsonDiversey*,
    328 F. Supp. 2d 980 (D. Minn. 2004) .................................... 28, 29

*Avery Dennison Corp. v. ACCO Brands, Inc.*,
    No. CV 99-1877 DT (MEX), 2000 U.S. Dist. LEXIS 3938 (C.D. Cal. Feb. 22, 2000) ... 18, 29

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007) .................................... 10

*Benton v. Merrill Lynch & Co., Inc.*,
    524 F.3d 866 (8th Cir. 2008) .............................................. 10

*BJC Health Sys. v. Columbia Cas. Co.*,
    478 F.3d 908 (8th Cir. 2007) ............................................ 31, 35

*Boone v. Redevelopment Agency of San Jose*,
    841 F.2d 886 (9th Cir. Cal. 1988) ........................................ 14

*Brosnan v. Tradeline Solutions, Inc.*,
    No. C-08-0694 JCS, 2009 U.S. Dist. LEXIS 48262 (N.D. Cal. June 5, 2009) ...................... 30

*Carpet Group Int'l v. Oriental Rug Importers Ass'n*,
    256 F. Supp. 2d 249 (D.N.J. 2003) ....................................... 12

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163, 183 Cal. Rptr. 2d 548 (1999) ........................... 33, 34

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363, 113 Cal. Rptr. 2d 175 (2001) ...................... 34

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) ............................................. 29

*Coastal States Mktg., Inc. v. Hunt*,
    694 F.2d 1358,1367-68 (5th Cir. 1983) ................................. 12, 18

*Coca-Cola Co. v. Omni Pac. Co.*,
   No. C 98-0784 S1, 1998 U.S. Dist. LEXIS 23277 (N.D. Cal. Dec. 9, 1998) .................. 15, 18

*ComputerXpress, Inc. v. Jackson*,
   93 Cal. App. 4th 993, 113 Cal. Rptr. 2d 625 (2001) ................................................ 38

*Daly v. Viacom*,
   238 F. Supp. 2d 1118 (N.D. Cal. 2002) .................................................................. 33

*Eldorado Stone, LLC v. Renaissance Stone, Inc.*,
   No. 04cv2562 JM (LSP), 2005 U.S. Dist. LEXIS 45237 (S.D. Cal. Aug. 9, 2005) .............. 36

*Farm Credit Servs. of Am. v. Am. State Bank*,
   339 F.3d 764 (8th Cir. 2003) ................................................................................ 10

*Faulkner v. Ark. Children's Hosp.*,
   347 Ark. 941, 69 S.W. 3d 393 (2002) .................................................................... 36

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.*,
   569 F. Supp. 2d 929 (N.D. Cal. 2008) .................................................................... 39

*Franchise Realty Interstate Corp. v. S.F. Local Joint Executive Bd. of Culinary Workers*,
   542 F.2d 1076 (9th Cir. 1976) .............................................................................. 10

*Freeman v. Bechtel Constr. Co.*,
   87 F.3d 1029 (8th Cir. 1996) ................................................................................ 36

*Futuristic Fences, Inc. v Illusion Fence Corp.*,
   558 F. Supp. 2d 1270 (S.D. Fla. 2008) .............................................................. 28, 29

*G. Fruge Junk Co. v. Oakland*,
   637 F. Supp. 422 (N.D. Cal. 1986) ........................................................................ 34

*Gibson v. Regions Fin. Corp.*,
   No. 4:05CV01922 JLH, 2008 U.S. Dist. LEXIS 1570 (E.D. Ark. Jan. 9, 2008) .................. 38

*Graham v. Bryce Corp.*,
   348 F. Supp. 2d 1038 (E.D. Ark. 2004) .................................................................. 36

*Hi-Top Steel Corp. v. Lehrer*,
   24 Cal. App. 4th 570, 29 Cal. Rptr. 2d 646 (1994) .................................................. 12

*ISI Intern., Inc. v. Broden Ladner Gervais LLP*,
   316 F.3d 731 (7th Cir. 2003) ................................................................................ 28

*Jackson v. Roe*,
   273 F.3d 1192 (9th Cir. 2001) .............................................................................. 33

*Jones v. Thyssenkrup Elevator Corp.*,
    No. C-05-3539 EMC, 2006 U.S. Dist. LEXIS 13978 (N.D. Cal. Mar. 14, 2006) .................. 36

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...................................................................................... 31, 34

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29 (2003) ................................................................ 26, 35

*Lane v. Celadon Trucking, Inc.*,
    543 F.3d 1005 (8th Cir. 2008)............................................................................................... 20

*Lovesy v. Armed Forces Benefit Ass'n*,
    No. C 07-2745 SBA, 2008 U.S. Dist. LEXIS 93479 (N.D. Cal. Mar. 13, 2008) .................. 35

*Luxpro Corp. v. Apple, Inc.*,
    658 F. Supp. 2d 921 (W.D. Ark. Sept. 28, 2009)..........................................................*passim*

*M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*,
    No. 97-1568-(JAG), 2007 U.S. Dist. LEXIS 23636 (D.N.J. March 30, 2007)..................... 28

*Matsushita Elecs. Corp. v. Loral Corp.*,
    974 F. Supp. 345 (S.D.N.Y. 1997) ...................................................................................... 18

*McGuire Oil Co. v. Mapco, Inc.*,
    958 F.2d 1552 (11th Cir. 1992) ........................................................................................... 14

*Melea Ltd. v. Quality Models, Ltd.*,
    345 F. Supp. 2d 743 (E.D. Mich. 2004) ......................................................................... 12, 18

*Moua v. Jani-King of Minnesota, Inc.*,
    No. 08-4942 ADM IJSM, 2009 U.S. Dist. LEXIS 6238 (D. Minn. Jan. 27, 2009) ............... 31

*Omni Resource Dev. Corp. v. Conoco, Inc.*,
    739 F.2d 1412 (9th Cir. 1984) ............................................................................................. 15

*Oregon Natural Resources Council v. Mohla*,
    944 F.2d 531 (9th Cir. 1991)................................................................................... 10, 11, 16

*Pickering v. Walker*,
    No. 4:07-cv-4120, 2008 U.S. Dist. LEXIS 76545 (W.D. Ark. Sept. 16, 2008)..................... 10

*Porous Media Corp. v. Pall Corp.*,
    201 F.3d 1058 (8th Cir. 2000)............................................................................................. 29

*Premier Med. Mgmt. Sys., Inc. v. Calif. Ins. Guar. Ass'n*,
    136 Cal. App. 4th 464, 39 Cal. Rptr. 3d 43 (2006) ............................................................. 12

*Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ................................................................................ 14, 15

*Seven-Up Co. v. Coca-Cola Co.*,
   86 F.3d 1379 (5th Cir. 1996) ........................................................................ 29

*Silicon Knights v. Crystal Dynamics*,
   983 F. Supp. 1303 (N.D. Cal. 1997) ............................................................. 36

*Spanish Int'l Communications Corp. v. Leibowitz*,
   608 F. Supp. 178 (S.D. Fla. 1985), *aff'd mem.*, 778 F.2d 791 (11th Cir. 1985) .............. 11, 16

*Stalley v. Catholic Health Initiatives*,
   509 F.3d 517 (8th Cir. 2007) ........................................................................ 10

*Storage Tech. Corp. v. Custom Hardware Engineering & Consulting, Ltd.*,
   No. 02-12102-RWZ, 2006 U.S. Dist. LEXIS 43690 (D. Mass. June 28, 2006) ............... 18

*Sugar Busters, LLC v. Brennan*,
   No. 98-1562 S3, 1999 U.S. Dist. LEXIS 2289 (E.D. La. Feb. 19, 1999) .................. 15

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) .................................................................. 29, 33

*Tempur-Pedic Int'l, Inc. v. Waste to Charity, Inc.*,
   No. 07-2015, 2007 U.S. Dist. LEXIS 55150 (W.D. Ark. July 27, 2007) .................. 27

*Theme Promotions, Inc. v. News Amer. Marketing FSI*,
   546 F.3d 991 (9th Cir. 2008) .................................................................. 16, 17

*U.S. Philips Corp. v. Princo Corp.*,
   No. 02 Civ. 246 (CLB), 2005 U.S. Dist. LEXIS 6820 (S.D.N.Y. Jan. 24, 2005) .......... 18

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................................... 31

*Webb v. Olive Garden Italian Rests.*,
   No. C 08-04913 PVT, 2009 U.S. Dist. LEXIS 107774 (N.D. Cal. Oct. 29, 2009) .......... 38

*White Mule Co. v. ATC Leasing Co. LLC*,
   540 F. Supp. 2d 869 (N.D. Ohio 2008) ........................................................... 29

**STATUTES**

15 U.S.C.
   § 1125(a)(1)(B) ...................................................................................... 27

Ark. Code Ann.
    § 16-56-104 ................................................................................................. 38

Cal. Bus. & Prof. Code
    § 17200 .............................................................................................. *passim*

Cal. Civ. Code
    § 45 .......................................................................................................... 38
    § 46 .......................................................................................................... 38
    § 47(b) ...................................................................................................... 39

Cal. Code Civ. Proc.
    § 340 ........................................................................................................ 38

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure
    Rule 9(b).............................................................................................. *passim*
    Rule 12(b)(6) ........................................................................................... 1, 9
    Rule 12(f) ................................................................................................... 35

Defendant Apple Inc. ("Apple") submits this memorandum of law in support of its motion to dismiss the Second Amended Complaint ("SAC") for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

The plaintiff in this action, Luxpro Corporation, is a Taiwanese company that manufactured and sold unauthorized copies of Apple's uniquely designed iPod shuffle products. Apple first became aware of Luxpro's unlawful activities in 2005. Apple subsequently sought and obtained injunctive relief against Luxpro in courts in Germany and Taiwan that prohibited Luxpro from selling its unauthorized copies. Apple allegedly also contacted companies selling or attempting to sell Luxpro's iPod copies, informing them that they were infringing Apple's intellectual property.

Luxpro's claims in its First Amended Complaint ("FAC") and in the SAC are premised entirely on these legitimate attempts to stop Luxpro and others from infringing Apple's intellectual property rights. The Court previously dismissed Luxpro's common law monopolization claims and claims based on Apple's litigation and pre-suit demand letters to Luxpro with prejudice, and dismissed the remainder of the FAC without prejudice on several other grounds. As to those areas where the Court granted leave to amend, Luxpro's amendments do nothing to cure those defects. To the contrary, the SAC, even more clearly than the FAC, conclusively establishes that the foundation of Luxpro's claims is Apple's enforcement of its intellectual property rights. Indeed, the SAC expressly alleges that Luxpro's purported damages flow from the injunctions Apple obtained against it, which this Court has already held were protected by the *Noerr-Pennington* doctrine.

1

Apple's alleged communications with Luxpro's purported customers are also protected by the doctrine, because, as a matter of law, *Noerr-Pennington* bars any claims based on communications to third parties that are related to the litigation that serves as the basis for *Noerr-Pennington* immunity.  It is irrelevant whether the communications with the third party occurred before, during, or after the litigation with the plaintiff.  Thus, all of Luxpro's claims fall within the *Noerr-Pennington* doctrine and the SAC should be dismissed in its entirety.

Luxpro's claims fail for several additional reasons.  Luxpro's tortious interference claims are defective because, with respect to each entity Luxpro identifies in the SAC, Luxpro fails to allege facts establishing one or more elements of tortious interference.  Luxpro fails to allege a contractual or other business relationship with numerous entities, any acts of interference by Apple, or that Luxpro's alleged contracts or economic relationships were actually disrupted. Where Luxpro does allege acts by Apple, Luxpro fails to allege that these acts were independently wrongful.

The SAC, unlike the FAC, includes a Lanham Act claim.  But it fails because the alleged communications upon which Luxpro bases its claim are not "commercial advertising or promotion," which is required for a Lanham Act violation.  With respect to some of the nonparties mentioned in the SAC, Luxpro does not allege that Apple made any representations at all.  In addition, Luxpro does not allege the Lanham Act claim with the specificity required by Federal Rule of Civil Procedure 9(b).

Luxpro also fails to establish a violation of California's Unfair Competition Law, California Business and Professions Code section 17200 ("the UCL"), because, as in the FAC, Luxpro has not sufficiently alleged in the SAC that Apple's acts were unlawful, unfair, or fraudulent.

Finally, the SAC does not contain the details required to state a defamation or trade libel claim that the Court found lacking in the FAC.  Thus, Luxpro has again insufficiently pled a commercial disparagement claim.

For all of these reasons, the Court should dismiss the SAC in its entirety with prejudice.

## BACKGROUND

### I.      PARTIES

Luxpro is a Taiwanese corporation with its principal place of business in Taiwan.  (SAC ¶ 1.)  Luxpro develops and sells digital music devices.  (*Id*.)  Luxpro began selling digital music devices under various brand names in 2004, and launched the product designs for its Tangent line of devices in April 2005.  (*Id*. ¶ 28.)

Apple is a California corporation with its principal place of business in Cupertino, California.  (*Id*. ¶ 2.)  Apple distributes and sells, among a wide range of other products, digital music devices throughout the world under the brand name iPod, including the iPod shuffle.  (*Id*.)  Apple introduced the first generation of the iPod shuffle in January 2005.

### II.     ALLEGATIONS

The central allegations of the SAC remain unchanged from the FAC.  As it did in the FAC, Luxpro alleges that Apple engaged in conduct intended to damage Luxpro's digital music device business and interfere with its business relations.  (*Id*. ¶ 6.)  This alleged conduct involved Apple initiating purported "sham litigation" against Luxpro in Germany and Taiwan regarding the similarity of its digital music devices to Apple's iPod products, as well as Apple's attempts to protect its intellectual property rights with respect to nonparties doing business with Luxpro. (*Id*. ¶¶ 37-60.)

### A.      Litigation in Germany

In February 2005, Luxpro conducted a trial run of one of its digital music devices at the CeBIT Tradeshow in Hanover, Germany.  (*Id.* ¶ 37.)  Luxpro called this digital music device the "Super Shuffle."  (*Id.*)  Photos of a first generation Apple iPod shuffle and the "Super Shuffle" are below:



(Declaration of Thomas R. La Perle in Support of Defendant Apple Inc.'s Motion to Dismiss the Second Amended Complaint ("La Perle Decl.") Ex. 1.)

In light of the obvious similarities between the two products, Apple applied for injunctive relief from a German court.  (*Id.*)  The German court granted Apple's request and issued an

injunction.  (*Id*.)  The injunction prevented Luxpro from offering its clone of the iPod shuffle digital music device.  (La Perle Decl. Exs. 2-3.)[1]

### B.   Litigation in Taiwan

Following the CeBIT Tradeshow, Apple sent letters to Luxpro in April 2005 demanding that Luxpro stop marketing or selling certain of its digital music devices — those marketed under the names Super Tangent, Top Tangent, and EZ Tangent.  (SAC ¶ 38.)[2]  (The Super Tangent product was the product formerly called the Super Shuffle, which Luxpro renamed in response to the German injunction.  (SAC ¶ 37.))  When Luxpro failed to comply, Apple commenced litigation against Luxpro in Taiwan, "alleging that the appearance" of Luxpro's Super Tangent, Top Tangent, and EZ Tangent products "closely resembled the iPod shuffle."  (*Id*. ¶ 39.)  Apple succeeded in obtaining a preliminary injunction from the Taiwanese court, prohibiting Luxpro from manufacturing, distributing, or marketing all of the digital music devices at issue.  (*Id.*; La Perle Decl. Exs. 4-5.)  Luxpro appealed the injunction, which was partially lifted in November 2005 with respect to certain of Luxpro's products.  (SAC, ¶ 41.)  The litigation did not conclude until July 7, 2009, when the Taiwan Supreme Court affirmed the injunctive relief Apple sought and won with respect to Luxpro's "Super Tangent" product, and affirmed the lifting of injunctive relief with respect to other products.  (La Perle Decl. Ex. 6.)  Thus, two injunctions are still in place against Luxpro: the German injunction and the Taiwanese injunction with regard to the Super Tangent.

The SAC clarifies that Luxpro's alleged damages resulted from the injunctions Apple obtained in the litigation:  Luxpro alleges that the injunctions resulted in the loss of agreements

---

[1] The exhibits to the La Perle declaration may be judicially noticed for the reasons stated in Apple's concurrently filed Request for Judicial Notice.

[2] Luxpro repeats its allegations regarding the 2005 demand letters, even though the Court dismissed with prejudice all claims based on those letters.  *Luxpro Corp. v. Apple, Inc.*, 658 F. Supp. 2d 921, 929 (W.D. Ark. Sept. 28, 2009).

with distributors and resellers, damage to its relationships with its part suppliers, the inability to produce its products, and the general loss of "trust and acceptance" of its purported customers. (*Id.* ¶¶ 41, 43-44.)

### C.   Alleged Interference with Business Relationships

The SAC also alleges that Apple sought to enforce its intellectual property rights by sending communications to companies selling Luxpro's products, warning that Apple would file the same types of suit against those companies as it did against Luxpro.  (*See, e.g.*, *id.* ¶ 40.)  The SAC identifies some of the same nonparties identified in the FAC — many of which were discussed in the Court's order dismissing the FAC — and mentions several nonparties not previously identified.  The following is a summary of the SAC's allegations regarding nonparties and any applicable prior rulings of the Court.

**Distributors.**  Luxpro alleges it had distributorship agreements with eleven companies: Tounsen Corporation, Beijing Huaqi Informational Digital Technology Co. Ltd., Beijing Qian Kun Time Digital Technology Co. Ltd., TCL Digital Electronics, Victor Japan Ltd., Laos Co. Ltd., N.A.K.S. Asia Ltd., Funai Europe UK Representative, Keller Trading AB, Broadman Inc., and Twister Sound Pty. Ltd.  (*Id.* ¶ 30.)  Luxpro does not allege that Apple communicated with any of these distributors.  Instead, Luxpro contends — without further detail — that its agreements with these distributors "were terminated during the latter part of 2005 and early 2006" (*id.* ¶ 49) as a result of the "time that it took [for Luxpro to [partially] reverse" the injunction that Apple had obtained (*id.* ¶ 41).

**Companies Allegedly Placing "Direct Orders."**  Luxpro alleges that in 2005 and 2006 it received "direct orders" for MP3 devices from eleven companies.  (*Id.* ¶ 33.)  The SAC includes no additional allegations regarding nine of these companies:  Laos, Seitec Corporation, Beijing Big Boss, Beijing Qian Kun, Longda Tech., AboCom Systems, Golden View Co. Ltd.,

Gajah International, and DataPool Systems.[3]  With respect to the remaining two companies,
Kaga Electronics and Orchard Co., the SAC alleges that Apple "threatened" to initiate litigation
against them if they continued to sell Luxpro's infringing products, and that both companies
ended their business relationships with Luxpro as a result.  (*Id.* ¶ 52.)  The Court previously
dismissed all claims relating to Orchard and Kaga without prejudice.  *Luxpro*, 658 F. Supp. 2d at
932-33.  The SAC does not add any meaningful allegations regarding Orchard or Kaga.

      **Companies Allegedly Requesting Samples.**  Luxpro alleges that it "received requests
for samples from over 1,000 other companies in Asia, Europe and in the United States (such as
Best Buy, RadioShack, and Wal-Mart) . . ."  (SAC ¶ 54.)  The SAC does not allege that Apple
communicated with any of these companies, nor does it allege that Luxpro had a business
relationship with any of these entities or that there was any probability of future economic
benefit arising from a relationship with these entities.

      **Other Retailers and Distributors.**  Luxpro contends that Apple "threatened" a "number
of retailers and distributors (*e.g.*, Fatech Co., Carrefour, Dai-Ichi Denki, TKEC 3C, ET-Mall TV
Shopping)" because Luxpro had illegally copied Apple's products.  (*Id.* ¶¶ 56, 57.)  With respect
to Fatech, Dai-Ichi Denki, TKEC 3C, and ET-Mall TV Shopping, the SAC provides no further
detail and does not allege any communication by Apple or any cessation of business with
Luxpro.  With respect to Carrefour, the SAC alleges that Apple's "threats and intimidation"
caused Carrefour "not to sell any of Luxpro's future products."  (*Id.* ¶ 57.)  The Court previously
dismissed all claims relating to Carrefour, 3C, and ET-Mall without prejudice, *Luxpro*, 658 F.
Supp. 2d at 932, and the SAC's allegations regarding these entities still fail to satisfy the
elements of tortious interference.

---

[3] Two of these companies, Laos and Beijing Qian Kun, are in the list of alleged distributors.  The SAC also alleges
that it received orders from "over 23" retailers in Europe and "over a dozen retailers" in North America, but none is
identified by name.  (SAC ¶ 33.)

**InterTAN.**  Luxpro alleges that InterTAN, a Canadian retailer, "became interested" in Luxpro products at a trade show in 2005 and that in August 2005 Luxpro shipped 7,000 MP3 devices to InterTAN for a "two-week trial" in retail stores.  (SAC ¶ 31.)  Luxpro alleges that at some later date Apple "placed significant pressure" on InterTAN to drop Luxpro's products and that InterTAN destroyed 4,500 of Luxpro's devices.  (*Id.* ¶ 48.)  The SAC is clear that the "pressure" Apple allegedly placed on InterTAN consisted of Apple attempting to enforce its intellectual property rights.  The same allegations regarding InterTAN appeared in the FAC, but the Court did not specifically address InterTAN in the dismissal order.

**WebWorker.**  As it did in the FAC, Luxpro alleges that WebWorker, a German company, "ended" its business relationship with Luxpro based on Apple's litigation threats.  (*Id.* ¶ 52.)  The Court previously dismissed all claims relating to WebWorker without prejudice. *Luxpro*, 658 F. Supp. 2d at 932.  The SAC's allegations still fail to satisfy the elements of tortious interference.

**Elecom, Co. Ltd.**  Luxpro alleges that Elecom "express[ed] interest" in its products, but because of the lawsuit with Apple, it "could not do business with Luxpro."  (SAC ¶ 53.)  The SAC does not allege that Apple had any contact with Elecom, or that there was any probability that Elecom would do business with Luxpro.

**Starbucks Japan.**  Luxpro alleges that Starbucks Japan "had agreed to a trial marketing campaign" involving Luxpro products and that Luxpro "was on the verge of implementation of this joint venture prior to the interference and unfair trade practices of Apple."  (*Id.* ¶ 54.)  The Court previously sustained Luxpro's allegations regarding Starbucks Japan, *Luxpro*, 658 F. Supp. 2d at 931-32, but the SAC now omits any allegation that Apple communicated with Starbucks Japan.  (*See* SAC ¶ 54.)

**Japan Airlines.**  Luxpro alleges that "[i]nterest was expressed by Japan Airlines" in Luxpro's products, and that "the deal was cancelled due to Apple's illegal conduct and pattern of sham litigation."  (*Id.* ¶ 55.)  The SAC provides no further detail, and Luxpro does not allege that Apple had any contact with Japan Airlines or that it was probable that Japan Airlines would do business with Luxpro.

**Bruder Products, Ltd.**  Luxpro alleges that Bruder was "intimidated and threatened by Apple because it was doing business with Luxpro."  (*Id.* ¶ 57.)  The SAC provides no further detail regarding Bruder, and does not allege any cessation of business with Luxpro.

**Nikko VC.**  Luxpro claims it was "receiving interest from venture capital firms," including Nikko VC.  (*Id.* ¶ 58.)  Luxpro claims that "due to Apple's pattern of sham litigation and other illegal tactics, Nikko VC decided later to not invest with Luxpro."  (*Id.*)  The SAC does not allege the Apple had any direct contact with Nikko VC.

**Gre-Tai Securities Market.**  Luxpro alleges that it attempted to list its stock on the Gre-Tai Securities Market, and that Apple's litigation forced Luxpro to abandon these efforts.  (*Id.* ¶¶ 35, 44.)

## III.    CAUSES OF ACTION

The SAC asserts five causes of action.  As does the FAC, the SAC asserts causes of action for tortious interference with prospective economic advantage, tortious interference with contract, violation of the UCL, and "commercial disparagement."  (*Id.* ¶¶ 64-75, 81-90.)  The SAC also asserts a new claim for violation of Section 1125(a) of the Lanham Act on the ground that Apple allegedly "disparaged both the commercial business and operations of Luxpro and its products."  (*Id.* ¶¶ 76-80.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)); *accord Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008); *Pickering v. Walker*, No. 4:07-cv-4120, 2008 U.S. Dist. LEXIS 76545, at *3 (W.D. Ark. Sept. 16, 2008). To overcome a motion to dismiss, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . ." *Twombly*, 127 S. Ct. at 1964-65 (citations omitted). The complaint must allege facts which, when taken as true, raise more than a speculative right to relief. *Id.* at 1965; *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007) ("The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . . , rather than facts that are merely consistent with such a right."). The Court need not accept "legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Servs. of Am. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003).

A plaintiff alleging claims that implicate *Noerr-Pennington* is subject to a heightened pleading standard. Claims that involve *Noerr-Pennington* must include "allegations of the specific activities which bring the defendant's conduct" into an exception to the doctrine. *Oregon Natural Resources Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991) (citations omitted); *Franchise Realty Interstate Corp. v. S.F. Local Joint Executive Bd. of Culinary Workers*, 542 F.2d 1076, 1082-83 (9th Cir. 1976) ("the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than

would otherwise be required").  "Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr-Pennington* protection."  *Mohla*, 944 F.2d at 533; *Spanish Int'l Communications Corp. v. Leibowitz*, 608 F. Supp. 178, 181 (S.D. Fla. 1985) (same), *aff'd mem.*, 778 F.2d 791 (11th Cir. 1985).

## ARGUMENT

### I.   LUXPRO'S CLAIMS ARE ALL BARRED BY THE *NOERR-PENNINGTON* DOCTRINE

The Court previously held that all of Luxpro's claims related to the litigation in Germany and Taiwan were barred by *Noerr-Pennington*, but it held that Luxpro could conceivably base tort claims on Apple's "post-litigation" contacts with Luxpro's alleged customers.  *Luxpro*, 658 F. Supp. 2d at 927-29.  The Court should now dismiss the SAC in its entirety, based on *Noerr-Pennington*.  The SAC establishes conclusively that Luxpro's claims — including its claims regarding Apple's alleged interference with its business relationships — are all based on Apple's litigation against Luxpro.  The complaint includes multiple, express allegations establishing Apple's litigation as the basis of Luxpro's alleged harm.

Furthermore, as explained below, the law is clear that the *Noerr-Pennington* doctrine applies to demand letters sent to third parties, regardless of when those communications were sent.  Thus, Luxpro's attempt to save its claims by alleging "post-litigation" contact with nonparties fails as a matter of law.  Luxpro fails to allege "post-litigation" conduct in any event, because the Taiwanese litigation did not conclude until July 2009.  And even if the letters were "post-litigation" as to Luxpro, they were *pre-litigation* as to the recipients of the letters.  *Noerr-Pennington* applies as a matter of law to all such letters.

### A. The *Noerr-Pennington* Doctrine Immunizes Apple Against Any Claim Based on Non-Sham Litigation

As this Court recognized in its dismissal order, the *Noerr-Pennington* doctrine provides immunity against a claim based on that party's attempt to petition a court to enforce rights, even if that party is motivated by anticompetitive intent (which was not the case here).  *Luxpro*, 658 F. Supp. 2d at 927 (citing *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965); *Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972).)  There is no question that the *Noerr-Pennington* doctrine applies to all of Luxpro's causes of action.  *Id.* at 928 (holding that Luxpro's claims based on Apple's litigation in Germany and Taiwan were barred because the litigation was protected under *Noerr-Pennington* immunity); *see also Melea Ltd. v. Quality Models, Ltd.*, 345 F. Supp. 2d 743, 760 (E.D. Mich. 2004) (Lanham Act claim was barred by *Noerr-Pennington*); *Premier Med. Mgmt. Sys., Inc. v. Calif. Ins. Guar. Ass'n*, 136 Cal. App. 4th 464, 470-71 & 478, 39 Cal. Rptr. 3d 43, 47-48 & 53-54 (2006) (*Noerr-Pennington* bars state antitrust claim, Section 17200 claim, and tort claim for negligent interference); *Hi-Top Steel Corp. v. Lehrer*, 24 Cal. App. 4th 570, 577-78, 29 Cal. Rptr. 2d 646, 650 (1994) (*Noerr-Pennington* doctrine applies "regardless of the underlying cause of action," because to hold otherwise "would effectively chill the defendants' First Amendment rights") (citations omitted).

Nor is there any question that *Noerr-Pennington* applies even though Apple's enforcement actions took place in foreign countries.  In *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358,1367-68 (5th Cir. 1983), the Court held that petitioning activity in a foreign country is entitled to *Noerr-Pennington* protection:  "We see no reasons why acts that are legal and protected if done in the United States should in a United States court become evidence of illegal conduct because performed abroad."  *Id.* at 1366; *accord Carpet Group Int'l v. Oriental*

*Rug Importers Ass'n*, 256 F. Supp. 2d 249, 266 (D.N.J. 2003), ("lobbying of foreign governments, whether performed at home or abroad, is protected from antitrust liability under *Noerr-Pennington*").

As the Court has already held, Luxpro cannot assert any claims based on the litigation in Taiwan or Germany. *Luxpro*, 658 F. Supp. 2d at 927-28. Although Luxpro repeats in the SAC all of its prior allegations regarding the litigation, there is nothing in the SAC that should alter the Court's prior holding.

**B.     The Court Should Dismiss the SAC in Its Entirety Because the Allegations Establish that All of Luxpro's Claims Are Based on Apple's Litigation Against Luxpro**

The SAC — even more clearly than the FAC — establishes that Luxpro alleges nothing more than Apple's legitimate attempts to prevent Luxpro from infringing Apple's intellectual property rights. The SAC explicitly alleges that the supposed harm to Luxpro is the direct result of Apple's commencement of litigation against Luxpro and the interruption caused when Apple obtained injunctive relief in that litigation. For example, Luxpro makes the following allegations:

- "*[T]he time that it took to reverse [the Taiwanese injunction ruling] was time lost for Luxpro* in its efforts to save its hard-earned position and reputation in the fast-paced and rapidly changing MP3 markets. *During this interim*, Luxpro had been forced to stop all production, manufacturing, advertising and marketing of its popular Tangent MP3 players and, ultimately, lost its distribution agreements previously listed." (SAC ¶ 41 (emphasis added).)

- "*During the time it took to overturn the injunction, and while Apple continued its appeals*, Luxpro tried to preserve its agreements with the distributors and resellers of its products, and attempted to negotiate with material suppliers to terminate, postpone or hold orders of raw materials. Unfortunately, many of those raw material orders could not be cancelled. *As a result, Luxpro's relationships with its raw material suppliers were significantly damaged and its ability to produce its products was lost*." (*Id.* ¶ 43 (emphasis added).)

- "Even though Luxpro fought hard and ultimately won its legal battles with Apple, particularly with regard to its Top Tangent and EZ Tangent MP3 players, *it was*

13

> *too late to regain the trust and acceptance of its customers and distributors.*"  (*Id.* ¶ 44 (emphasis added).)

- "*By the time Luxpro had successfully defeated Apple's abusive litigation strategy* in the Taiwanese District Court and before the Taiwan Trade Commission, *it was too late* to get back into the global MP3 market, and *too late* to penetrate Apple's vise grip on the United States MP3 market.*"  (*Id.* ¶ 62 (emphasis added).)

These admissions (though misleading in that Apple was successful in the Taiwanese litigation) conclusively establish that Luxpro's claims are based on the litigation.  The Court should not permit Luxpro to avoid the implications of these clear allegations by piling on, as Luxpro attempts to do, pages and pages of allegations regarding Apple's supposed scheme to drive Luxpro from the market.  The Court has already ruled that Apple's suits against Luxpro are protected by *Noerr-Pennington*.  *Luxpro*, 658 F. Supp. 2d at 927-28.  Accordingly, the Court should hold that the SAC is barred as a matter of law.

Luxpro could only avoid dismissal under *Noerr-Pennington* by meeting its burden of establishing that the sham litigation exception applies.  *See McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1558 n.9 (11th Cir. 1992); *Boone v. Redevelopment Agency of San Jose*, 841 F.2d 886, 894 (9th Cir. Cal. 1988) (complaint must contain specific allegations demonstrating that *Noerr-Pennington* does not apply).  The Court, however, has already held that Luxpro fails to demonstrate that Apple's litigation was a sham.  *Luxpro*, 658 F. Supp. 2d at 927-28 (noting that Luxpro "does not challenge" Apple's showing that litigation was not sham).

Nothing in the SAC can or should alter the Court's prior holding regarding the inapplicability of the sham litigation exception.  A party's success in litigation conclusively establishes that the suit was not a sham.  *Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61 n.5 (1993) ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a 'sham.'").  As it did in the FAC, Luxpro concedes in the SAC that the Taiwanese District Court granted Apple's request for an injunction as to all of

Luxpro's products.  (SAC ¶ 39.)  Luxpro also concedes that the Taiwanese appellate courts upheld the grant of the injunction as to Luxpro's Super Tangent (formerly known as the "Super Shuffle").  (SAC ¶ 41; *see also* La Perle Decl. Ex. 6.)  The case thus falls squarely within *Prof'l Real Estate*.  Accordingly, Luxpro cannot demonstrate that the Taiwanese litigation was a sham.

Numerous courts have held that the grant of a preliminary injunction – without respect to later proceedings in the case – establishes that the litigation is not objectively baseless.  *See Omni Resource Dev. Corp. v. Conoco, Inc.*, 739 F.2d 1412, 1414 (9th Cir. 1984) ("Indeed, the suit can not be characterized as baseless at all; for although we do not know the outcome, at least to the point of a preliminary injunction the state court plaintiffs were successful."); *Coca-Cola Co. v. Omni Pac. Co.*, No. C 98-0784 S1, 1998 U.S. Dist. LEXIS 23277, at *26 n.2 (N.D. Cal. Dec. 9, 1998) (the fact that preliminary injunction entered by New Jersey court was eventually dissolved does not establish that suit was "objectively baseless"); *Sugar Busters, LLC v. Brennan*, No. 98-1562 S3, 1999 U.S. Dist. LEXIS 2289, *13 (E.D. La. Feb. 19, 1999) (grant of preliminary injunction in trademark infringement action established that action was not objectively baseless).  Thus, the allegations regarding Apple's success in obtaining injunctive relief in both Taiwan and Germany — copied from the FAC (*see* SAC ¶¶ 37, 39) — preclude any finding that the litigation was sham.

Because Apple's success conclusively demonstrates that Luxpro cannot establish Apple's litigation was objectively baseless, the SAC's voluminous allegations regarding Apple's supposed intent to drive Luxpro from the market (SAC ¶¶ 37-62) are irrelevant as a matter of law.  As the United States Supreme Court has held, if a suit is not objectively baseless, subjective intent is immaterial.  *Prof'l Real Estate*, 508 U.S. at 57-60.

Furthermore, Luxpro does not properly plead that the sham exception applies.  Instead, the SAC simply repeats the mantra of "sham litigation" without pleading any *facts* demonstrating that the litigation was a sham.  Such conclusory allegations are insufficient to establish an exception to *Noerr-Pennington* immunity, even apart from the heightened pleading standard applicable here.  *Mohla*, 944 F.2d at 533 ("Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr-Pennington* protection."); *Spanish Int'l*, 608 F. Supp. at 181.

Accordingly, *Noerr-Pennington* bars the SAC in its entirety, and nothing in the SAC should cause the Court to revisit its holding regarding the inapplicability of the sham litigation exception.

### C.     Luxpro Cannot Save Any Portion of Its Claims from *Noerr-Pennington* Based on Apple's Alleged "Post-Litigation" Communications with Luxpro's Alleged Customers

In the dismissal order, the Court stated that there is "another layer to the applicability of the *Noerr-Pennington* doctrine" in this case — namely, the fact that Luxpro alleges "post-litigation" contact between Apple and Luxpro's purported customers.  *Luxpro*, 658 F. Supp. 2d at 928-29.  Indeed, in the SAC, Luxpro appears to base its claims, at least in part, on alleged contacts with Luxpro's purported customers that occurred after Apple initiated the Taiwan litigation.  As a matter of law, however, these claims are also barred by *Noerr-Pennington*.  *See, e.g.*, *Theme Promotions, Inc. v. News Amer. Marketing FSI*, 546 F.3d 991 (9th Cir. 2008) (under *Noerr-Pennington*, plaintiff cannot assert claims based on letters sent to its customers, regardless of whether defendant threatens to bring the customer into ongoing litigation with plaintiff or threatens to bring a new litigation against the customers).

The SAC makes clear that Apple's alleged communications with Luxpro's purported customers were pre-litigation demand letters.  (*See, e.g.*, SAC ¶ 7 ("Apple then used the litigation against Luxpro to threaten Luxpro's commercial partners . . . with similar suits"); ¶ 47 ("Apple

used the pendency of the lawsuit in the Taiwan District Court and the challenge before the Taiwanese Fair Trade Commission as the bases for its threatening letters to Luxpro's business partners."); ¶ 52 (alleging that Apple threatened Luxpro's customers with "the same type of lawsuits Apple had filed against Luxpro").) *Noerr-Pennington* immunity applies equally to demand letters sent to third parties as it does to demand letters sent to plaintiff (Luxpro). Courts cannot "erode the right to petition by indirect restraints." *Luxpro*, 658 F. Supp. 2d at 928. Failing to extend *Noerr-Pennington* protection to communications threatening litigation against a plaintiff's alleged customers or other contributory infringers would do just that, because a party's ability to assert its legitimate rights would be severely curtailed if it could be held liable for its assertion of those rights by a third party. To avoid such a restraint on the right to petition, *Noerr-Pennington* immunity bars claims based on threats of litigation made to *any* party, not just the party against whom the initial litigation was commenced — here, Luxpro.

Courts squarely hold that communications threatening litigation sent to third parties — regardless of when the communications were sent — cannot be the basis for a claim by the plaintiff. For example, the Ninth Circuit recently upheld the district court's dismissal of tortious interference claims based on letters the defendant sent to the plaintiff's customers after the litigation between the plaintiff and defendant had begun. *See Theme Promotions*, 546 F.3d at 1007. The letters at issue, like the letters alleged in Luxpro's complaint, threatened suit against the plaintiff's customers. *Id.* at 1007-08. The Ninth Circuit found that the letters could be interpreted in two ways: the letters could be seen as threats to include the customers in the litigation between the plaintiff and defendant, or as threats of "some contemplated future lawsuit" against the customers. *Id.* at 1008. Under either interpretation, the court agreed with the district court that *Noerr-Pennington* barred the plaintiff's tortious interference claims. *Id.*

Numerous other cases are in agreement.  *See, e.g.*, *U.S. Philips Corp. v. Princo Corp.*, No. 02 Civ. 246 (CLB), 2005 U.S. Dist. LEXIS 6820, *14-15 (S.D.N.Y. Jan. 24, 2005) (defendant's letters to customers informing them of lawsuit filed against plaintiff and stating that they may be infringing defendant's patents was lawful pre-litigation communication protected by *Noerr-Pennington*); *Avery Dennison Corp. v. ACCO Brands, Inc.*, No. CV 99-1877 DT (MEX), 2000 U.S. Dist. LEXIS 3938, *67 (C.D. Cal. Feb. 22, 2000) (counterdefendant was immune from liability based on letters sent to counterclaimant's customers discussing the claims in the parties' litigation); *Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997) (defendant was immune from tort liability stemming from letters sent to nonparties threatening suit; the fact that defendant did not ultimately bring suit against those nonparties was irrelevant); *Melea*, 345 F. Supp. 2d at 749, 758-59 (letters to defendant's customers threatening patent infringement suits both before and after plaintiff had filed suit against defendant were immunized by *Noerr-Pennington*); *Storage Tech. Corp. v. Custom Hardware Engineering & Consulting, Ltd.*, No. 02-12102-RWZ, 2006 U.S. Dist. LEXIS 43690, *112-13 (D. Mass. June 28, 2006) (email to counterclaimant's customers informing them of injunction against counterclaimant and encouraging them to avoid participating in infringement to avoid liability was covered by *Noerr-Pennington*); *Coca-Cola*, 1998 U.S. Dist. LEXIS 23277 at *5, 28-29 (threats of litigation directed at counterclaimant's customers were protected).[4]

These cases make clear that *Noerr-Pennington* immunity extends to Apple's communications with Luxpro's alleged customers.  The cases also demonstrate that the timing of Apple's alleged communications with those entities is irrelevant to the application of *Noerr-Pennington*.  The doctrine applies to communications with third parties made at any time.  While

---

[4] Similarly, courts have held that publication of a lawsuit in the press is protected by *Noerr-Pennington*.  *See, e.g.*, *Coastal States Marketing*, 694 F.2d at 1367 (publication of lawsuit is protected by *Noerr-Pennington*).

the SAC alleges communications made after Apple initiated litigation against Luxpro, the litigation was ongoing.  (SAC ¶ 47 (alleging that Apple used the "pendency" of the suits to threaten customers); La Perle Decl. Ex. 6 (Taiwan litigation ongoing until July 2009).)  And the letters were pre-, not post-, litigation demand letters as to the recipients of the letters.

Luxpro, moreover, cannot establish that the sham exception applies to any communications with Luxpro's alleged customers.  The SAC makes clear that the letters about which Luxpro complains threatened the same type of litigation that this Court has already found to be covered by *Noerr-Pennington* immunity.  (*See* SAC ¶ 7 ("Apple then used the litigation against Luxpro to threaten Luxpro's commercial partners . . . with similar suits"), ¶ 40 ("Apple wrote letters to Luxpro's retailers and distributors and threatened them with the same type of litigation that had been filed against Luxpro"); *see also* SAC ¶¶ 47, 52, 60.)  As demonstrated above, Luxpro cannot establish that the litigation was a sham because Apple successfully obtained injunctions against it, two of which are still in place.  These injunctions established that Luxpro's products infringed Apple's intellectual property rights.  Thus, anyone selling Luxpro's products was a contributory infringer, if not a direct infringer.  Accordingly, Apple's threatened suits against those selling what Apple rightfully believed to be infringing products, and which the German and Taiwanese courts found to be infringing products, cannot be objectively baseless.  The SAC is devoid of facts establishing otherwise.  Thus, Luxpro cannot meet the requirements for pleading the sham exception with respect to any communications with purported customers.

In sum, all of Apple's alleged actions, including communications with third parties, are protected by *Noerr-Pennington*.  The SAC should be dismissed in its entirety, with prejudice.

## II.   LUXPRO FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT OR PROSPECTIVE ECONOMIC ADVANTAGE

In addition to being barred by *Noerr-Pennington*, Luxpro's tortious interference claims fail for several additional, independent reasons.  The Court previously dismissed Luxpro's interference claims because Luxpro had not pled facts establishing business relationships with several entities identified in the FAC, and because Luxpro failed to plead that other entities had discontinued their business relationships or breached any contracts with Luxpro.  *Luxpro*, 658 F. Supp. 2d at 932-33.  Luxpro fails to remedy these defects in the SAC.  Luxpro also fails to allege acts of interference by Apple with numerous entities, and fails to allege that Apple committed any independently wrongful conduct.  Accordingly, Luxpro's tortious interference claims are fatally defective and should be dismissed on multiple grounds.

### A.   Luxpro's Tort Claims Are Governed by California Law, Although the Claims Should Be Dismissed Even If Arkansas Law Applies

Luxpro's claims fail regardless of whether California or Arkansas law applies.  The Court should nonetheless find that California law governs the tort claims.  As Apple previously established, under Arkansas choice-of-law principles, the only law that could possibly apply here is that of California.  (*See* Apple's Brief in Support of its Motion to Dismiss ("MTD FAC") at 7-8.)  The SAC's allegations do not alter this conclusion.  The fundamental inquiry in Arkansas's choice-of-law analysis is what state has the most significant relationship to the parties and issues.  *Lane v. Celadon Trucking, Inc.*, 543 F.3d 1005, 1010 (8th Cir. 2008).  In this case, that state is California.

The SAC does not allege that any party is a resident of Arkansas or that any relevant events occurred in Arkansas.  The only new allegation with any relevance to Arkansas is a passing reference to Wal-Mart.  (*See* SAC ¶ 54.)  But there is no allegation that Luxpro did

business with Wal-Mart or had the opportunity to do business with Wal-Mart, or that Apple had any communication with Wal-Mart.  The reference to Wal-Mart utterly fails to establish any meaningful connection between this case and Arkansas.  Even if it established some slight connection (which it does not), that connection is far outweighed by the substantial connection between this case and California.  Apple and its principal witnesses are located in California.  Apple's United States-based conduct with respect to this case occurred in California.  Luxpro also asserts a claim under California law.  California clearly has the most significant relationship to the parties and to the case.

As established in Apple's previous briefing, the other relevant choice-of-law factors support the application of California law as well.  (*See* MTD FAC at 7-8; Apple's Reply in Support of its Motion to Dismiss at 5-7.)

### B.    Luxpro's General Allegations of "Interference" Are Insufficient to State a Claim

The SAC is littered with vague and generalized allegations regarding Apple's purported interference with Luxpro's contracts and business relationships.  None of these allegations provides sufficient facts to meet the pleading requirement of *Twombly* and *Iqbal*.

A plaintiff cannot assert a tortious interference claim by pleading interference with unnamed and unknown entities, under any pleading standard.  But Luxpro attempts to do just that.  It alleges that it made sales to "over 23 different retailers, distributors, and companies purchasing the products for resale" in Europe; that it sold products to "a dozen" different companies in North America; and that it "received interest" from venture capital firms and outside investors worldwide.  (SAC ¶¶ 33-34.)  The SAC, however, fails to identify any of these companies or investors.  Luxpro also alleges that Apple "spread the word throughout the industry" that Luxpro was selling illegal copies of Apple's products, and that Apple used a

"pattern of sham litigation and misrepresentations" to ruin Luxpro's reputation "with the public, prospective customers and business partners, and with its current customers, business contacts, and partners."  (SAC ¶¶ 40, 44; *see also* SAC ¶¶ 47-51.)  These allegations are fatally vague and conclusory, and cannot support a tortious interference claim.  Moreover, for the reasons specified above, Apple's litigation against Luxpro was not a sham.

Similarly vague are Luxpro's allegations that Apple suppliers ASUS and Synnex "spread disparaging comments" and made "threats of similar litigation and boycott" against "anyone who cooperated with Luxpro" (SAC ¶ 60).  The SAC does not identify any of the recipients of the statements, does not allege the content of those statements, and does not allege that those statements actually resulted in a disruption of a business relationship or contract.  Luxpro had previously included allegations regarding these suppliers' supposed threats to Luxpro's purported customers (*see* FAC ¶ 34), but abandoned them in the SAC.  Clearly Luxpro cannot plead facts establishing any actual interference by Apple's suppliers.

Because Luxpro's general allegations of interference are conclusory and do not plead sufficient facts establishing actual interference by Apple with a Luxpro contract or economic relationship, the Court should disregard them in favor of evaluating the tort claims on an entity-by-entity basis, as it did in the dismissal order.  *Luxpro*, 658 F. Supp. 2d at 931-33.

## C.    Luxpro's Allegations Regarding Specific Entities Also Fail to State a Tortious Interference Claim

Luxpro includes the names of numerous nonparties in the SAC in the apparent hope that something will stick.  But Luxpro's allegations cannot withstand scrutiny.  With respect to each entity named, the SAC fails to plead facts establishing one or more elements of tortious interference, as set forth in the following sections.

1.    **With Respect to the Vast Majority of Entities Mentioned in the Complaint, Luxpro Fails to Allege Any Acts of Interference by Apple**

It is axiomatic that a plaintiff cannot state a claim for tortious interference without alleging that the defendant actually committed an act of interference.  *See Luxpro*, 658 F. Supp. 2d at 930-31 (under both California and Arkansas law, acts of interference by defendant are an element of tortious interference with contract and tortious interference with economic advantage).  As to numerous entities named in the SAC, Luxpro fails to allege facts sufficient to plead this element.

As to thirteen of the thirty-six nonparty entities mentioned in the SAC, Luxpro simply fails to allege *any* acts by Apple, much less any act of interference.  These thirteen entities are: Seitec; Beijing Big Boss; Longda Tech.; AboCom Systems; Golden View; Gajah; Datapool Systems; Best Buy; RadioShack; Wal-Mart; Elecom; Gre-Tai; and Starbucks Japan.[5]  Thus, Luxpro has not pled an interference claim as to these thirteen entities.

As to fourteen other entities, Luxpro merely alleges that its distribution agreements and economic relationships were terminated and that those terminations "are directly attributable to Apple's illegal conduct."  (SAC ¶ 49; *see also id.* at ¶ 55 (alleging that the deal with Japan Airlines was cancelled "due to Apple's illegal conduct and pattern of sham litigation"); ¶ 58 (alleging that Nikko VC decided not to invest with Luxpro "due to Apple's pattern of sham litigation and other illegal tactics").)  Notably, this conduct consisted of Apple's obtaining injunctions against Luxpro, which is protected by *Noerr-Pennington*.  (*See* SAC ¶ 41 (alleging that Luxpro lost its distribution agreements because the Taiwanese injunction forced it to stop

---

[5] Indeed, with respect to Starbucks Japan, Luxpro abandoned any claim of interference by Apple.  In the FAC, Luxpro alleged that Apple "pressured Starbucks to quash its deal with Luxpro."  (FAC ¶ 32.)  Luxpro does not make this allegation in the SAC, however, or any other allegation regarding Apple's supposed interference with Starbucks. (*See* SAC ¶ 54.)

production of its products).)  Luxpro does *not* allege any contact by Apple with these entities, or

any specific acts by Apple that were directed at these entities.  Luxpro's conclusory allegations

with respect to these fourteen entities are insufficient to plead acts of interference under the

*Iqbal/Twombly* standard.  The fourteen entities are:  Tounsen; Beijing Huaqi; Beijing Qian Kun;

TCL Digital Electronics; Victor Japan; Laos; N.A.K.S. Asia; Funai; Keller Trading; Broadman;

Twister Sound; Japan Airlines; Bruder; and Nikko VC.

Because Luxpro has not pled an act of interference as to these twenty-seven entities,

Luxpro's interference claims fail as to them.

### 2. With Respect to Many Entities, Luxpro Fails to Allege an Actual Disruption of a Contract or Economic Advantage

Luxpro's allegations also fail to establish actual disruption of any economic relationship

or contract as to sixteen entities.  These sixteen include twelve that also suffer from Luxpro's

failure to allege acts of interference by Apple (as noted above):  Seitec; Beijing Big Boss;

Longda; AboCom; Golden View; Gajah; Datapool; Best Buy; RadioShack; Wal-Mart; Starbucks

Japan; and Bruder.  The four additional entities for which Luxpro makes inadequate allegations

are:  Fatech; Dai-ichi Denki; TKEC 3C; and ET-Mall TV Shopping.  With respect to each of

these sixteen entities, Luxpro fails to allege that any of them actually cut off their business

relationships, contractual or otherwise, with Luxpro.  Luxpro thus fails to plead the required

element of causation for either of its tortious interference claims.  The claims regarding these

sixteen entities necessarily fail.  *See Luxpro*, 658 F. Supp. 2d at 932-33 (dismissing claims

regarding certain purported customers because Luxpro failed to allege that they discontinued

business relations with Luxpro or breached any contract with Luxpro).

### 3.   Luxpro Fails to Allege a Contract or Business Relationship with Multiple Entities Alleged in the Complaint

Luxpro fails to sufficiently plead a business relationship or contract with several companies identified in the SAC.  Luxpro does not plead sufficient facts establishing any economic relationship, or prospect of a relationship, with ten of the entities described above (Best Buy, RadioShack, Wal-Mart, Elecom, Fatech, Dai-Ichi Denki, TKEC 3C, ET-Mall TV Shopping, and Bruder), as well as one additional entity — WebWorker.  (*See* SAC ¶ 52.)  Thus, Luxpro cannot state an interference with prospective economic advantage claim based on a relationship with any of these entities.  *See Luxpro*, 658 F. Supp. 2d at 932 (allegation that companies were clients or distributors of Luxpro was insufficient to plead facts establishing a business relationship with Luxpro under the *Twombly* standard).

Luxpro also fails to allege a contract for twenty-five entities mentioned in the complaint (including entities for which Luxpro's allegations fail for the additional reasons stated above).  The twenty-five are:  InterTAN; Gre-Tai; Kaga Electronics; Seitec; Beijing Big Boss; Longda; AboCom; Golden View; Orchard; Gajah; DataPool; WebWorker; Elecom; Best Buy; RadioShack; Wal-Mart; Starbucks Japan; Japan Airlines; Fatech; Carrefour; Dai-ichi Denki; TKEC 3C; ET Mall TV Shopping; Bruder; and Nikko VC.  Accordingly, any interference with contract claim based on these entities fails.  *Luxpro*, 658 F. Supp. 2d at 930-31 (a claim for interference with contract requires a contract).

### 4.   Luxpro Fails to Allege Apple's Knowledge of Luxpro's Alleged Business Relationships and Contracts.

Luxpro also fails to sufficiently allege Apple's knowledge of the economic relationship or contract as to a subset of the entities described above.  These entities are the companies listed in paragraphs 30 and 33 of the SAC (with three exceptions, Tounsen, Kaga, and Orchard); Best Buy; RadioShack; Wal-Mart; Elecom; Gre-Tai; Starbucks Japan, Japan Airlines; Bruder; and

Nikko VC.  Thus, the claim fails as to these entities.  *Luxpro*, 658 F. Supp. 2d at 930-31

(knowledge of relationship or contract is an element of a tortious interference claim under both

California and Arkansas law).

### 5. Luxpro Fails to Allege Independently Actionable Conduct by Apple

In addition, for all of the thirty-six entities discussed in the SAC, Luxpro fails to plead the

required element of independently actionable conduct by Apple.  A claim for interference with

prospective economic advantage requires "independently wrongful acts" — i.e., acts that are

"unlawful, that is, . . . proscribed by some constitutional, statutory, regulatory, common law, or

other determinable legal standard."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th

1134, 1154, 1159, 131 Cal. Rptr. 2d 29, 45, 46, 50 (2003).  The conduct alleged in the SAC

consists solely of Apple's lawful attempts to protect its intellectual property rights; the SAC fails

to establish that these attempts were unlawful by any legal standard.  As set forth above, Apple's

alleged actions are protected by *Noerr-Pennington*, and thus cannot be actionable as a matter of

law.

Finally, Luxpro's allegations regarding InterTAN, Orchard, Kaga, and Carrefour are also

insufficient to state a claim.  The allegations for each are inadequate to establish unlawful

conduct by Apple, and none of the allegations is sufficiently specific to satisfy the

*Iqbal/Twombly* standard.  Moreover, the allegations demonstrate that Apple's purported actions

are protected by *Noerr-Pennington*.  For InterTAN, the SAC vaguely alleges that Apple placed

"significant pressure" on InterTAN to stop selling Luxpro's products, but it is clear that Luxpro

alleges only that Apple "pressure[d]" InterTAN based on the assertion of intellectual property

rights.  (*See* SAC ¶ 48.)  With respect to Orchard and Kaga, the SAC *expressly* alleges that

Apple's "interference" was based on the protection of intellectual property rights.  (*See* SAC ¶ 52

(alleging that Apple threatened Orchard and Kaga with the "same type of lawsuits Apple had filed against Luxpro").  The same is true for Carrefour:  the SAC expressly alleges that Apple's "interference" was based on the assertion that Carrefour was selling a Luxpro product that infringed Apple's intellectual property.  (SAC ¶ 56 (alleging that Apple communicated to Carrefour that "Luxpro had illegally copied Apple's products").)  Thus, Luxpro fails to establish independently actionable conduct with respect to any third-party entity.

*     *     *

In sum, Luxpro fails to state an interference claim with respect to any of the 36 nonparty entities mentioned in the SAC.  Most of the claims fail for multiple reasons, and all of them fail for at least one reason.[6]

### III.    LUXPRO'S LANHAM ACT CLAIM FAILS

Luxpro's Lanham Act claim fails for three independent reasons (in addition to being barred by *Noerr-Pennington*):  (1) Apple's alleged statements are not actionable under the Lanham Act, (2) Luxpro fails to allege Apple made any representations to several of the entities mentioned in the SAC, and (3) Luxpro has not pled the claim with the required specificity.

#### A.    The Alleged Misrepresentations Are Not Actionable Under the Lanham Act

Luxpro does not specify which prong of the Lanham Act it contends Apple violated.  However, the SAC alleges that Apple misrepresented the "nature or characteristics of [Luxpro], its business practices and products," which demonstrates that the claim is brought under the "false advertising" prong of the Act.  (*Compare* SAC ¶ 77 *with* 15 U.S.C. § 1125(a)(1)(B)

---

[6] Luxpro's interference claims would also fail under Arkansas law, which requires "improper conduct."  *See Luxpro*, 658 F. Supp. 2d at 930.  Instituting suit with probable cause is not "improper conduct" under Arkansas law.  *See, e.g., Tempur-Pedic Int'l, Inc. v. Waste to Charity, Inc.*, No. 07-2015, 2007 U.S. Dist. LEXIS 55150, *8-9 (W.D. Ark. July 27, 2007) (contention that counterdefendant filed claims in bad faith and for an improper motive was insufficient to establish that its conduct was improper).  As established above, Apple had probable cause to file suit against Luxpro and to threaten suit against Luxpro's customers, and thus its conduct was not improper.

(prohibiting commercial advertising or promotion that misrepresents the nature, characteristics, qualities, or geographic origin of the advertiser's or another person's goods, services, or commercial activities).)

Apple's alleged communications are not actionable as false advertising under the Lanham Act.  "In a false advertising claim, a plaintiff must show, *inter alia*, false 'commercial advertising or promotion.'"  *Auto-Chlor Sys. of Minn., Inc. v. JohnsonDiversey*, 328 F. Supp. 2d 980, 1018 (D. Minn. 2004) (citing 15 U.S.C. § 1125(a)(1)(B)).  "'Most courts have adopted [a] four-part test' to determine whether contested representations qualify.  Under the test, the representations must be: (1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public."  *Id.* (citing *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56 (2d Cir. 2002); *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1121 (8th Cir. 1999); *Medical Graphics Corp. v. Sensormedics Corp.*, 872 F. Supp. 643, 650 (D. Minn. 1994)).

Luxpro cannot meet this test.  Communications sent to customers regarding litigation do not constitute "commercial advertising or promotion" under the Lanham Act.  *See ISI Intern., Inc. v. Broden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003) (letters sent to customers asserting that plaintiff lacked license rights to subject invention and asserting that defendant's client himself had patent were not commercial advertising); *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, No. 97-1568-(JAG), 2007 U.S. Dist. LEXIS 23636, *50-51 (D.N.J. March 30, 2007) (notices of infringement sent to plaintiff's customers were not commercial advertising); *Futuristic Fences, Inc. v Illusion Fence Corp.*, 558 F. Supp. 2d 1270, 1281 (S.D. Fla. 2008) (cease and desist letters sent to plaintiff's customers were not commercial

advertising); *cf Porous Media Corp. v. Pall Corp.*, 201 F.3d 1058, 1059 (8th Cir. 2000) (press releases discussing litigation were not commercial advertising); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (statements to customers regarding licensing status of products at issue were not actionable).  It is apparent from the SAC that the alleged representations by Apple were the same type of cease-and-desist statements that these cases held are not actionable.  Luxpro's Lanham Act claim thus fails.

Luxpro's claim fails for an additional reason:  the SAC's allegations demonstrate that Apple's purported communications were not designed to influence Luxpro's alleged customers to buy anything from Apple.  It is well established that, to support a Lanham Act claim, the statements at issue must have been made for the purpose of influencing consumers to buy the defendant's products.  *See Auto-Chlor*, 328 F. Supp. 2d at 1018; *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734-35 (9th Cir. 1999) (citing *Gordon & Breach Science Pubs., Ltd. v. Amer. Inst. of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994)); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379 (5th Cir. 1996)).

Communications with a plaintiff's customers stating the defendant's intent to enforce its intellectual property rights (through litigation or otherwise) do not meet this requirement.  *See, e.g., Avery Dennison*, 2000 U.S. Dist. LEXIS 3938 at *25 ("Avery would not urge its attorney to send letters threatening lawsuits against its own customers as a way to promote Avery's own business"); *White Mule Co. v. ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 898 (N.D. Ohio 2008) (letters sent to plaintiff's prospective customers regarding lawsuit were not designed to persuade customers to buy defendant's goods); *Futuristic Fences*, 558 F. Supp. 2d at 1281 (cease and desist letters sent to plaintiff's customers were not designed to influence customers into buying defendant's products, but rather to protect defendant's legal rights).  As in these cases,

the SAC's allegations demonstrate that the purpose of Apple's communications to Luxpro's

purported customers was to protect Apple's intellectual property rights, not to sell Apple

products.  The SAC includes no allegations to the contrary.

Accordingly, the communications at issue do not constitute "commercial advertising or

promotion," and Luxpro's Lanham Act claim should be dismissed with prejudice.

### B.    Luxpro Fails to Allege Any Representations to Several Entities

As to twenty-six of the entities identified in the SAC, the Lanham Act claim fails for an

additional reason:  Luxpro does not allege a representation to those entities by Apple.  An

essential element of a false advertising claim under the Lanham Act is a representation by the

defendant.  *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390 (8th Cir. 2004)

(listing elements of a Lanham Act false advertising claim).  As stated above, Luxpro fails to

allege that Apple made *any* representations to all but three[7] of the entities listed in paragraphs 30

and 33 of the SAC, or to Elecom; Best Buy; RadioShack; Wal-Mart; Starbucks Japan; Japan

Airlines; Bruder; Nikko VC; and Gre-Tai.  Thus, Luxpro cannot establish a Lanham Act

violation as to those entities.

### C.    Luxpro Fails to Plead Its Lanham Act Claim with the Requisite
###        Specificity Under Rule 9(b)

Luxpro's Lanham Act claim also fails because Luxpro has not pled the claim with the

specificity required by Federal Rule of Civil Procedure (b).

### 1.    Rule 9(b) Applies to Luxpro's Lanham Act Claim, Because the
###        Claim Sounds in Fraud

Rule 9(b)'s heightened pleading standard applies to false advertising claims under the

Lanham Act that involve alleged misrepresentations.  *See Brosnan v. Tradeline Solutions, Inc.*,

No. C-08-0694 JCS, 2009 U.S. Dist. LEXIS 48262, *11-12 (N.D. Cal. June 5, 2009) (citing

---

[7] Tounsen, Kaga, and Orchard.

*Collegenet, Inc. v. XAP Corp.*, No. CV-03-1229-HU, 2004 U.S. Dist. LEXIS 21059, *4 (D. Or. Oct. 12, 2004); *Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549, 1556 (E.D. Pa. 1985); *Pestube Sys., Inc. v. HomeTeam Pest Def., LLC*, No. CIV-05-2832-PHX-MHM, 2006 U.S. Dist. LEXIS 34337, *14-15 (D. Ariz. May 24, 2006)); *cf BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (where defendant based his punitive damages claim on fraudulent misrepresentations, plaintiff was required to comply with Rule 9(b)); *Moua v. Jani-King of Minnesota, Inc.*, No. 08-4942 ADM IJSM, 2009 U.S. Dist. LEXIS 6238, *23 (D. Minn. Jan. 27, 2009) (holding that claims under Minnesota's False Statements in Advertising Act, which requires a misleading statement, were subject to Rule 9(b)).

Here, Luxpro bases its Lanham Act claim on alleged "material misrepresentations and false disparaging statements." (SAC ¶ 77.) Thus, the claim sounds in fraud and must be pled with specificity.

### 2. Luxpro Has Not Pled Its Lanham Act Claim With the Specificity Required by Rule 9(b)

Luxpro's allegations do not meet Rule 9(b)'s requirements. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Rule 9(b), conclusory allegations of fraud are insufficient. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *BJC Health Sys.*, 478 F.3d at 917; *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'"). To meet this standard, a plaintiff must plead the time, place, and content of the alleged fraudulent representation or omission — the "who, what, when, where, and how" — as well as the circumstances indicating fraudulent conduct. *See Vess*, 317 F.3d at 1106; *BJC Health*, 478 F.3d at 917.

Luxpro has not done so.  As described above, the SAC contains numerous general allegations regarding Apple's "threats" and contentions that Luxpro's products were illegal copies of Apple's products.  (*See, e.g.*, SAC ¶¶ 40, 44, 47.)  Yet these conclusory allegations lack any information regarding the details of the statements, the speaker, the recipient, or how, when, or where they were made.  They come nowhere near meeting Rule 9(b)'s requirements.

Luxpro's allegations regarding specific entities are similarly insufficient.  With regard to the entities with which it allegedly had contracts (*see* SAC ¶ 30), Luxpro fails to allege the content of any statements by Apple, who made them, or how, where, and when those statements were made.  Indeed, it does not even allege that these entities received any statements from Apple.  Instead, Luxpro simply alleges that the purported termination of the contracts is "directly attributable to Apple's illegal conduct."  (SAC ¶ 49.)  Similarly, Luxpro does not allege that Apple made any statements to Elecom, Best Buy, RadioShack, Wal-Mart, Starbucks, Japan Airlines, Bruder, Nikko VC, Gre-Tai, or nine of the entities listed in paragraph 33 of the SAC. This falls far short of the specificity required by Rule 9(b).

Luxpro also fails to allege how, where, when, and who from Apple made any alleged statements to Tounsen, InterTAN, Orchard Company, Kaga Electronics, WebWorker, Fatech Co., Dai-ichi Denki, TKEC 3C, ET-Mall TV Shopping, and Bruder Products.  (*See* SAC ¶¶ 48, 52, 56-57, 74.)  Luxpro fails to allege any of the required detail regarding Apple suppliers Asus and Synnex's alleged representations.[8]  (SAC ¶ 60.)  Finally, with regard to Carrefour, Luxpro fails to identify the Apple representative that made alleged statements and fails to plead how or where the statements were made.

---

[8] Again, Luxpro has abandoned any allegations that these suppliers threatened specific entities, demonstrating that they cannot plead misrepresentations by those suppliers with particularity.

In sum, Luxpro has failed to plead its Lanham Act claim with specificity, as required by Rule 9(b), and the Court should therefore dismiss the claim. *See, e.g., Brosnan*, 2009 U.S. Dist. LEXIS 48262 at *15 (dismissing Lanham Act claim because plaintiff failed to specify who made the misleading statements, when they were made, or how they were misleading).

## IV.   LUXPRO FAILS TO STATE A UCL CLAIM

Luxpro fails to state a claim under any of the three prongs of the UCL.  The Court did not previously address the sufficiency of Luxpro's UCL claim in the dismissal order.  *Luxpro*, 658 F. Supp. 2d at 936.

### A.   Luxpro Fails to Allege Unlawful, Unfair, or Deceptive Conduct by Apple Within the Meaning of the UCL

#### 1.   Luxpro Fails to Allege "Unlawful" Conduct

Luxpro's claim under the "unlawful" prong of the UCL is predicated on Luxpro's other claims.  (SAC ¶ 82.)  Because Luxpro's other claims are meritless, the UCL claim under the "unlawful" prong fails.  *Jackson v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (UCL "does not give a plaintiff license to 'plead around' the absolute bars to relief contained in other possible causes of action by recasting those causes of action as ones for unfair competition"); *Daly v. Viacom*, 238 F. Supp. 2d 1118, 1126 (N.D. Cal. 2002) (where plaintiff's other claims failed, UCL claim based on the same conduct failed as well).

#### 2.   Luxpro Fails to Allege "Unfair" Conduct

Luxpro's claim under the "unfair" prong fails as well.  The SAC does not allege conduct by Apple that is "unfair" within the meaning of the UCL.  Where a competitor brings a UCL claim under the "unfair" prong, it must establish that the defendant's conduct was an antitrust violation or an incipient antitrust violation.  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187, 183 Cal. Rptr. 2d 548, 565 (1999); *Sybersound Records*,

517 F.3d at 1151-52, 1153 (where a plaintiff that is a competitor fails to plead at least an incipient violation of the antitrust laws, its claim under the "unfair" prong of the UCL must be dismissed).  Luxpro did not meet this standard in the FAC, and it again fails to do so in the SAC. The SAC does not allege any *facts* that even suggest that Apple's conduct seeking to enforce its intellectual property rights against Luxpro harmed competition, rather than just Luxpro.  *Cel-Tech*, 20 Cal. 4th at 186 (antitrust laws "were enacted for the 'protection of *competition*, not *competitors*'") (emphasis in original) (citations omitted).

Moreover, because all of Apple's conduct is protected by *Noerr-Pennington*, that conduct cannot be "unfair" under the UCL.  *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375, 113 Cal. Rptr. 2d 175, 184 (2001); *G. Fruge Junk Co. v. Oakland*, 637 F. Supp. 422, 425 (N.D. Cal. 1986) (communications protected by the *Noerr-Pennington* doctrine cannot be the basis for liability under California unfair competition laws).  Thus, Luxpro's UCL claim under the "unfair" prong is meritless and should be dismissed.

### 3. Luxpro Fails to Sufficiently Allege "Fraudulent" Conduct

Luxpro's claim under the "fraudulent" prong of the UCL should also be dismissed, because Luxpro fails to identify any facts supporting the claim.  Where a plaintiff bases his UCL claim on alleged misrepresentations or a fraudulent course of conduct, he must meet the requirements of Rule 9(b).  *Kearns*, 567 F.3d at 1126-27.  Thus, Luxpro must identify with particularity the statements or omissions that were made.  *Id*.  The SAC does not meet this standard for the same reasons it does not meet the standard for pleading violations of the Lanham Act, as discussed above.  Luxpro's claim under the "fraudulent" prong of the UCL fails.

Because Luxpro has not pled a violation of the UCL under any of UCL's three prongs, the claim should be dismissed.

**B.  If Luxpro's UCL Claim Is Not Dismissed, Its Prayer for Restitution Should Be Stricken**

If the Court does not dismiss Luxpro's UCL claim, it should strike its prayer for restitution under that statute.  Federal Rule of Civil Procedure 12(f) allows a court to strike an improper prayer for relief.  *See BJC Health Sys.*, 478 F.3d at 917 (upholding district court's striking of prayer for punitive damages because complaint did not allege fraud with particularity); *see also Lovesy v. Armed Forces Benefit Ass'n*, No. C 07-2745 SBA, 2008 U.S. Dist. LEXIS 93479, *6-7 (N.D. Cal. Mar. 13, 2008) ("A motion to strike may be used to strike any part of the prayer for relief when the relief sought is not recoverable as a matter of law.").

Luxpro seeks restitution in the form of disgorgement of Apple's profits.  (SAC ¶ 85.) The California Supreme Court has conclusively held that such disgorgement is not available under the UCL, however.  *Korea Supply Co.*, 29 Cal. 4th at 1141 (a plaintiff who alleges a lost business opportunity due to the unfair practices of a competitor generally cannot seek disgorgement of profits obtained by those unfair practices).  A party may recover unfairly obtained profits only where those profits represent "monies given to the defendant or benefits in which the plaintiff has an ownership interest."  *Id.* at 1148.  Luxpro does not and cannot allege facts showing that Apple ever received *any* money from Luxpro or that Luxpro has or ever had an ownership interest in any of Apple's profits.  Luxpro alleges that it had a "vested interest" in Apple's profits (SAC ¶ 85), but it does not even allege that Apple made any profits that would have otherwise been made by Luxpro.  Thus, the Court should strike Luxpro's request for "restitution" as it pertains to the UCL claim.

**V.  LUXPRO FAILS TO PLEAD A "COMMERCIAL DISPARAGEMENT" CLAIM**

Luxpro's "commercial disparagement" claim fails for several reasons.  In its order dismissing the FAC, the Court dismissed this claim because Luxpro failed to allege sufficient

details regarding Apple's allegedly disparaging statements, and because Luxpro failed to specifically plead special damages. *Luxpro*, 658 F. Supp. 2d at 935-36.  Luxpro does not remedy these defects in the SAC.

> **A.   Luxpro Has Not Pled a "Commercial Disparagement" Claim with Sufficient Detail**

As in the FAC, Luxpro asserts a "commercial disparagement" claim, but it is unclear from the SAC's allegations whether this is a claim for defamation or trade libel.  Either way, Luxpro has failed to add any of the required details that the Court held were lacking in the FAC.

When a plaintiff asserts a defamation or trade libel claim, not only must that claim specifically identify the allegedly defamatory statement, but it also must identify the speaker of the statement, the recipients, the timing, and the context in which the statement was made. *Silicon Knights v. Crystal Dynamics*, 983 F. Supp. 1303, 1314 (N.D. Cal. 1997); *Jones v. Thyssenkrup Elevator Corp.*, No. C-05-3539 EMC, 2006 U.S. Dist. LEXIS 13978, *16-17 (N.D. Cal. Mar. 14, 2006); *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, No. 04cv2562 JM (LSP), 2005 U.S. Dist. LEXIS 45237, *10-11 (S.D. Cal. Aug. 9, 2005).[9]  In addition, when a plaintiff asserts a trade libel claim, it must specifically allege special damages.  *Eldorado Stone*, 2005 U.S. Dist. LEXIS 45237 at *10-11 (special damages are an element of trade libel).  To do so, the plaintiff must plead established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, and facts showing that such losses in sales were the natural and probable result of such publication.  *Luxpro*, 658 F. Supp. 2d at 935.

---

[9] *See also Freeman v. Bechtel Constr. Co.*, 87 F.3d 1029, 1031 (8th Cir. 1996) (to properly plead libel or slander, complaint must set forth alleged defamatory statements, and manner of their publication, and identify persons to whom they were published); *Graham v. Bryce Corp.*, 348 F. Supp. 2d 1038, 1043 (E.D. Ark. 2004) (pleading standards for slander or libel); *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 957, 69 S.W. 3d 393, 403 (2002) (pleading standards for defamation).

Luxpro meets not one of these requirements.  As demonstrated above, Luxpro fails to plead the required details regarding Apple's alleged statements to Luxpro's purported customers. In the case of twenty-six companies, Luxpro fails to allege that Apple made any statements at all.[10]  Luxpro's commercial disparagement claim fails for this reason alone.

The claim also fails because Luxpro does not plead special damages.  With regard to InterTAN, Luxpro simply repeats the allegations the Court found insufficient to plead special damages in the FAC.  *Luxpro*, 658 F. Supp. 2d at 935-36.  Luxpro fails to allege any of the required details at all with regard to Gre-Tai, WebWorker, Elecom, Best Buy, Radio Shack, Wal-Mart, Starbucks Japan, Japan Airlines, Carrefour, Fatech, Dai-Ichi Denki, TKEC 3C, ET-Mall TV Shopping, Bruder, and Nikko VC.  Luxpro's allegations regarding Orchard and Kaga Electronics (as well as all of the other companies identified in paragraph 33 of the SAC) are similarly unspecific.  Luxpro alleges the total number of sales for all of its direct orders, but never provides individual sales numbers for any of those companies.  (*See* SAC ¶ 33.)  Finally, with regard to the eleven entities with which it allegedly had contracts (*see* SAC ¶ 30), Luxpro fails to allege that it actually made any sales to those entities at all, much less for a substantial period preceding any acts by Apple.  Thus, Luxpro has insufficiently pled special damages.

Because Luxpro has failed to meet the applicable pleading requirements, the disparagement claim should be dismissed.

### B.   Luxpro Fails to Plead that Apple Made Any Disparaging Statements to Several Entities

Although the claim fails in entirety because it is not pled with specificity, as to the majority of the companies, the claim fails for the additional reason that Luxpro has not pled that

---

[10] In the case of Starbucks Japan, Luxpro provides even *less* detail in the SAC than in the FAC.  (*Compare* FAC ¶ 32 (stating that Apple pressured Starbucks) *with* SAC ¶ 54 (omitting any allegation of Apple contact with Starbucks).)

Apple made any statements to those companies.  (*See* Section III, *infra*.)  Under both California

and Arkansas law, a statement is required to plead either a defamation or trade libel claim.  *See*

*Luxpro*, 658 F. Supp. 2d at 934-35; *see also Webb v. Olive Garden Italian Rests.*, No. C 08-

04913 PVT, 2009 U.S. Dist. LEXIS 107774, *15 (N.D. Cal. Oct. 29, 2009) (a claim for

defamation under California law requires a communication); *ComputerXpress, Inc. v. Jackson*,

93 Cal. App. 4th 993, 1010, 113 Cal. Rptr. 2d 625, 640 (2001) (a claim for trade libel under

California law requires a statement).  Thus, Luxpro cannot state a claim for defamation as to all

but three[11] of the entities listed in paragraphs 30 and 33 of the SAC, as well as Gre-Tai, Elecom,

Best Buy, RadioShack, Wal-Mart, Starbucks Japan, Japan Airlines, Bruder, and Nikko VC.

> ### C.  Because Luxpro Fails to Allege a Writing, It Cannot Plead a Libel or Trade Libel Claim

In addition to the pleading deficiencies described above, Luxpro fails to plead whether

Apple's alleged statements to Luxpro's purported customers were in writing.  Thus, Luxpro has

not pled a libel or trade libel claim.  Cal. Civ. Code § 45 (libel is a false and unprivileged

publication in writing); *Gibson v. Regions Fin. Corp.*, No. 4:05CV01922 JLH, 2008 U.S. Dist.

LEXIS 1570 (E.D. Ark. Jan. 9, 2008) ("libel is 'the publication of defamatory matter by written

or printed words'").

Because it has not pled a writing, Luxpro can only assert a claim for slander.  Cal. Civ.

Code § 46.  The statute of limitations for slander in Arkansas is one year, however.  Ark. Code

Ann. § 16-56-104; *see also* Cal. Code Civ. Proc. § 340.[12]  Luxpro's claim is either time-barred or

has been pled with insufficient detail to demonstrate that it is *not* time-barred.  (*See, e.g.,* SAC

---

[11] Tounsen, Orchard, and Kaga Electronics.

[12] Because statutes of limitations are generally considered procedural under Arkansas choice-of-law rules (unless the claim did not exist at common law and was created by statute), the law of the forum (Arkansas) applies.

¶ 48, 57 (alleging that Apple made its statements to Carrefour in 2005, and made its statements to InterTAN in 2006, more than a year before Luxpro filed suit).)[13]

### CONCLUSION

For the foregoing reasons, Luxpro's Second Amended Complaint should be dismissed in its entirety, with prejudice.

Respectfully submitted,

*/s/Kevin A. Crass*
KEVIN A. CRASS
Arkansas Bar No.: 84029
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue
Suite 2000
Little Rock, Arkansas 72201-3522
Telephone: (501) 376-2011
Email: crass@fec.net

and

JAMES M. PRATT, JR.
Arkansas Bar No.: 74124
144 Washington Street, Northwest
P.O. Box 938
Camden, Arkansas 71701-0938
Telephone: (870) 836-7328
Email: jamiepratt@cablelynx.com

and Co-Counsel

PENELOPE A. PREOVOLOS (*pro hac vice*)
California Bar No.: 87607
STUART C. PLUNKETT(*pro hac vice*)
California Bar No.:187971
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: (415) 268-7000
E-mail:  PPreovolos@mofo.com
E-mail:  SPlunkett@mofo.com

*Attorneys for Defendant Apple Inc.*

---

[13] All of the alleged statements may also be protected by the litigation privilege, Cal. Civ. Code § 47(b), but because Luxpro fails to allege the required details regarding those statements, neither Apple nor this Court can make this determination.  *See First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 938 (N.D. Cal. 2008) (dismissing trade libel claim where plaintiff failed to allege sufficient detail regarding statements to allow the Court to rule on whether the statement was actionable).

## <u>ECF ATTESTATION</u>

I, Stuart C. Plunkett, am the ECF User whose ID and Password are being used to file this:

**DEFENDANT APPLE INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

I hereby attest that Kevin A. Crass has concurred in this filing.


Dated:  February 26, 2010                    MORRISON & FOERSTER LLP



                                   By:  _/s/ Stuart C. Plunkett_
                                        Stuart C. Plunkett

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system, this 26th day of February, 2010.


<u>*/s/ Stuart C. Plunkett*</u>
Stuart C. Plunkett