# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3689
_____

| | |
|---|---|
| In re: Apple, Inc., formerly known as Apple Computer, Inc., | * * On Petition for Writ |
| | * of Mandamus. |
| Petitioner. | * |
| | * [PUBLISHED] |
| | * |
| | * |

_____

Submitted: February 19, 2010
Filed: April 19, 2010
_____

Before BYE, MELLOY, and COLLOTON, Circuit Judges.
_____

PER CURIAM.

Apple, Inc., filed a petition for writ of mandamus seeking an order directing the United States District Court for the Western District of Arkansas to transfer this case to the United States District Court for the Northern District of California. We grant the petition.

I.

Luxpro Corporation, a manufacturer and distributor of digital music players, brought suit against Apple in the United States District Court for the Western District of Arkansas ("Western Arkansas"). Luxpro is a Taiwanese corporation with its principal place of business in Taiwan. Apple is a California corporation with its

principal place of business in Cupertino, California, which is in the Northern District of California ("Northern California").

Apple manufactures and distributes digital music players under the well-known iPod brand name. According to Luxpro's complaint, Apple allegedly engaged Luxpro in abusive litigation in Germany and Taiwan. In addition, through threats of litigation and other pressure, Apple allegedly harmed Luxpro's dealings with companies located in the United States, Singapore, Japan, and elsewhere. Apple did so, Luxpro claims, to "prevent an increased market share among the smaller-ranged manufacturers" of digital music players. Luxpro asserts causes of action for interference with contractual/prospective advantage, tortious interference with contracts, attempted common-law monopolization, commercial disparagement, and a violation of California Business and Professions Code Section 17200.

Apple moved, pursuant to 28 U.S.C. § 1404(a), to transfer venue to Northern California. Apple argued that its witnesses were located in California, that witnesses from nonparty companies and from Luxpro would be inconvenienced less by travel to California than to Arkansas, that litigious tactics of which Luxpro complained originated from Apple's California headquarters, that relevant documents were located in California, and that Arkansas had no connection to the dispute. For its part, Luxpro asserted that its choice of forum was entitled to deference, and that docket statistics showed that it would secure a trial more quickly in Western Arkansas. The district court denied Apple's transfer motion.

II.

A writ of mandamus serves as a "useful safety valve for promptly correcting serious errors," *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 608 (2009) (internal quotation and alteration omitted), but it is an "extraordinary remedy" that is available only to correct a "clear abuse of discretion." *Cheney v. U.S. Dist. Court for D.C.*, 542

U.S. 367, 380 (2004) (internal quotations omitted); *see Wilkins v. Erickson*, 484 F.2d 969, 971 (8th Cir. 1973) (applying "clear abuse of discretion" standard to an order entered under 28 U.S.C. § 1404(a)). Our precedent recognizes "manifest judicial arbitrariness" as a basis for granting a writ, *McGraw-Edison Co. v. Van Pelt*, 350 F.2d 361, 363 (8th Cir. 1965) (en banc), but this language does not establish a standard that is narrower than the "clear abuse of discretion" standard recognized in *Cheney* and *Wilkins*. As *McGraw-Edison* itself indicates, a clear error of law or clear error of judgment leading to a patently erroneous result may constitute a clear abuse of discretion. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 & n.7 (5th Cir. 2008) (en banc) (citing *McGraw-Edison*, 350 F.2d at 363), *cert. denied*, 129 S. Ct. 1336 (2009); *In re BellSouth Corp.*, 334 F.3d 941, 954 (11th Cir. 2003); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1295 (7th Cir. 1995). Because mandamus is not to replace the usual appellate process, we will issue a writ only where the aggrieved party has no other adequate means to attain the desired relief. *Cheney*, 542 U.S. at 380-81.

The usual post-judgment appeal process is not an adequate remedy for an improper failure to transfer. If Apple were to appeal from an adverse final judgment rendered in Western Arkansas, it could not show that it would have prevailed in a hypothetical trial in Northern California. *See In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663 (7th Cir. 2003). Therefore, we have recognized that the writ of mandamus is proper, albeit extraordinary, relief for an erroneous ruling on a motion to transfer under § 1404(a). *See McGraw-Edison*, 350 F.2d at 363. We will not, however, disturb a district court's transfer order where "the facts and circumstances are rationally capable of providing reasons for what the district court has done." *Id.*; *see In re Volkswagen*, 545 F.3d at 312 n.7.

Luxpro contends that mandamus relief is not warranted, because Apple did not seek reconsideration of the § 1404(a) order or ask the district court to certify the case for interlocutory appeal under 28 U.S.C. § 1292(b). We disagree. Our cases establish that a writ of mandamus is available with respect to a decision under § 1404(a),

*Wilkins*, 484 F.2d at 971; *McGraw-Edison*, 350 F.2d at 363, and where mandamus is clearly an appropriate remedy, we are not bound to require that the petitioner first seek interlocutory review. *Caleshu v. Wangelin*, 549 F.2d 93, 96 n.5 (8th Cir. 1977). Thus, even if we assume that interlocutory review would be available, *cf. In re Horseshoe Entm't*, 337 F.3d 429, 432 (5th Cir. 2003) ("§1292(b) review is inappropriate for challenges to a judge's discretion in granting or denying transfer under § 1404(a)"); *Technitrol, Inc. v. McManus*, 405 F.2d 84, 86 n.2 (8th Cir. 1968) (declining to resolve the issue), we may proceed to consider the petition for writ of mandamus.

Section 1404(a), the transfer-of-venue provision, provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The statute "was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper." *Van Dusen v. Barrack*, 376 U.S. 612, 634 n.30 (1964) (quoting Revisor's Note, H.R. Rep. No. 80-308, at A132 (1947), and H.R. Rep. No. 79-2646, at A127 (1946)). "Congress, in passing § 1404(a), was primarily concerned with the problems arising where, despite the propriety of the plaintiff's venue selection, the chosen forum was an inconvenient one." *Id.* at 634.

This action "might have been brought" in Northern California, *see* 28 U.S.C. § 1391(a)(1), and Apple contends that the district court clearly abused its discretion in refusing to transfer the case. We have declined to offer an "exhaustive list of specific factors to consider" in making the transfer decision, *see Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997), but district courts should weigh any "case-specific factors" relevant to convenience and fairness to determine whether transfer is warranted. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Terra Int'l*, 119 F.3d at 691.

-4-

An important issue in this case is the deference owed to Luxpro's choice of forum. In denying Apple's motion, the district court stated that "[i]n general, federal courts give considerable deference to the plaintiff's choice of forum," and ruled that it would "not disregard the deference provided Luxpro because it brought its claim in a forum that was not its residence nor the place where the conduct occurred when a U.S. forum with those two connections does not exist."

This court has said that "[i]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l*, 119 F.3d at 695. This "general" practice of according deference, however, is based on an assumption that the plaintiff's choice will be a convenient one. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). When the plaintiff, like Luxpro, hails from a foreign nation, that assumption is "much less reasonable," *id.* at 256, and the risk that the plaintiff chose the forum to take advantage of favorable law or to harass the defendant increases. *De Melo v. Lederle Labs.*, 801 F.2d 1058, 1062 n.4 (8th Cir. 1986). Accordingly, a foreign plaintiff's choice of forum "is entitled to substantially less deference." *Id.* We have never said that "a choice of forum supported only by the fact that it was chosen," *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 955 (9th Cir. 1968), in and of itself, does anything more than shift the burden of proof to a movant seeking transfer under § 1404(a).

Because no relevant connection exists between Luxpro, Apple, potential witnesses, or the dispute and Western Arkansas, Luxpro's choice of forum was entitled to minimal weight in the § 1404(a) determination. *See In re Horseshoe Entm't*, 337 F.3d at 434-35. Neither party maintains its headquarters in Western Arkansas. Neither party identified any witness who resides in Arkansas. And although Apple sells the iPod and its other products there, none of Apple's alleged abusive litigation relates to Western Arkansas. The only connection between this

dispute and Western Arkansas is that Luxpro chose to file there and retained local counsel.

Despite no relevant connection between the Apple-Luxpro dispute and Western Arkansas, the district court ruled that transfer to Northern California was not warranted. The district court determined that the "only connection" between the dispute and Northern California is that Apple is "headquartered there." The court also found that "judicial economy" weighed in favor of retaining the matter, because docket statistics showed that, on average, civil cases proceeded faster from filing to trial and from filing to disposition in Western Arkansas than in Northern California.

We first consider the convenience to the parties and witnesses. The district court found that the "only convenience factor" that definitively favored transfer was the relative ease of travel to Northern California for both parties and some potential nonparty witnesses, but did not weigh this factor heavily because of modern "travel conveniences." Apple asserted that many of its potential witnesses are attorneys who work in the Cupertino, California, headquarters or abroad. Apple also identified several witnesses who are not attorneys, all of whom reside in Northern California. If Apple's California witnesses were required to travel to Arkansas, Apple would likely incur expenses for airfare, meals and lodging, and losses in productivity from time spent away from work. *See In re Volkswagen*, 545 F.3d at 317. In addition, Apple's witnesses will suffer the "personal costs associated with being away from work, family, and community." *Id.* These costs would be significantly minimized or avoided by transfer to Northern California.

Luxpro identified a number of companies as nonparties with relevant information regarding the allegations. Apple contends that those nonparties would be inconvenienced by litigation in Western Arkansas. Unfortunately, the district court did not determine which of those nonparties likely possessed material information, *see In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009), but we know that at least

one of these companies – Synnex Technology International Corporation – has its principal place of business in Fremont, California.[1] Luxpro alleges that Synnex, an Apple supplier, "threatened a number of Taiwanese Luxpro distributors." Synnex would be inconvenienced by sending witnesses to testify in Arkansas rather than in California. With respect to the remaining nonparty witnesses located in foreign countries, and Luxpro's witnesses in Taiwan, the two venues are roughly equivalent, for we recognize that persons coming from abroad "will be required to travel a significant distance no matter where they testify." *Id.* at 1344.

The district court found that the location of documents did not favor transfer in "this age of electronic document transmissions." Apple contends, and Luxpro does not seriously dispute, that much of Apple's relevant documentary evidence is located in its Cupertino headquarters. While electronic filing may lessen the inconvenience of document handling, if the need arises to refer to original documents or evidence in the litigation, Northern California would prove more convenient. *See In re Volkswagen*, 545 F.3d at 316. We accord no weight to Luxpro's contention that the vast majority of its relevant documents are located with its attorneys in Western Arkansas. A plaintiff may not defeat a motion to transfer by shipping relevant documents to local counsel in its chosen venue. *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed Cir. 2009).

The district court "agree[d] with Luxpro that no venue is more convenient for the place where the alleged wrongs occurred." Although Apple's alleged misconduct

---

[1]Witnesses from Synnex apparently would be the only nonparties subject to either district's subpoena power. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii) (providing that "the issuing court must quash or modify a subpoena that requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person"). The district court concluded that neither district "will be in a better position" to subpoena nonparty witnesses. The ability of Northern California to subpoena Synnex witnesses favors transfer, but only slightly.

occurred in various countries, according to Luxpro's complaint, one such country is the United States. Luxpro does not dispute Apple's contention that alleged misconduct originated from the Cupertino headquarters, where many of Apple's attorneys with a role in enforcing intellectual property rights are located. Thus, if Apple did carry out a plan to harm Luxpro's business interests, "alleged wrongs" occurred in Northern California, while none of the alleged misconduct occurred in Western Arkansas. This weighs in favor of transfer. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) ("There is a local interest in having localized controversies decided at home."); *In re Volkswagen*, 545 F.3d at 317-18.

In sum, the inconvenience to Apple would be significantly minimized if this case were litigated in Northern California. Luxpro would not face any material inconvenience by litigating in California rather than Arkansas. The district court's conclusion that the "only connection" between Northern California and the dispute is that Apple is "headquartered there" understates the significance of the point. Many potential witnesses reside in California; much of Apple's relevant documentation is located in California; and Northern California was the site of alleged misconduct. Accordingly, the case-specific factors that the district court considered relative to the convenience of the parties and witnesses weigh strongly in favor of transfer.

We next address factors that the district court considered with regard to the "interest of justice." We do not quarrel with the district court's view that the overall comparative cost of litigation and Luxpro's ability to enforce a judgment in either district do not definitively favor Northern California. Beyond that, the district court ruled that it would not weigh the applicability of each prospective venue's state substantive law, because Apple and Luxpro failed to brief the issue adequately. Whatever the ultimate resolution of the choice-of-law issue, however, there is no dispute that Luxpro pleaded a cause of action predicated on a violation of the California Business and Professions Code. In that respect, at a minimum, the district court must apply California law to evaluate the claim. "There is an appropriateness"

in holding trial in a diversity case in the venue that is "at home with the state law that must govern the case." *Gilbert*, 330 U.S. at 509. The only state law weighing on the scales at this stage of the litigation is the California law that must apply to one of Luxpro's causes of action. This factor favors transfer.

The district court also relied on caseload statistics in determining that "judicial economy" weighed against transfer. The court erroneously believed that statistics showed a shorter time from filing *to disposition* in Western Arkansas; the 2008 caseload data in the record actually show the opposite, with Northern California over two months faster on average. App. Ex. H. Luxpro contends, however, that moving quickly *to trial* in Arkansas is "critical given the significant damage wrought by Apple through illegal conduct," and that the statistics do support a finding that the median time to trial is shorter in Western Arkansas. The data show that the median time from filing of a civil case to the start of trial in Northern California is thirty months (sixty-first among all districts). By contrast, in Western Arkansas, it is sixteen months (eighth among districts). But as the Federal Circuit recently stated, whether one court would move any given case to trial faster is "speculative," because "case-disposition statistics may not always tell the whole story." *In re Genentech*, 566 F.3d at 1347 (compelling transfer from Eastern Texas to Northern California).

Even assuming that the data support a finding that Western Arkansas would move Luxpro's case to trial faster, relative docket congestion cannot override the several factors of convenience and justice that favor transfer. *See id.* ("[W]hen, as here, several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors."). Docket congestion is a permissible factor to consider in deciding a § 1404(a) motion, *see Terra Int'l*, 119 F.3d at 696, but it is not "by itself, a dispositive factor." *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 808 (11th Cir. 2003). The interests of justice are not served when a district with a relatively swift docket becomes a "willing repository" for cases that have no connection to it.

*Original Creatine Patent Co. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 572 (E.D. Va. 2005).

The convenience of the parties and witnesses, and the relevant interests of justice, favor transfer of this case from the Western District of Arkansas to the Northern District of California. The district court, however, essentially treated as dispositive Luxpro's choice of a forum with no connection to the lawsuit, bolstered only by statistics concerning median time from filing to trial in Western Arkansas. In our view, this was a clear abuse of discretion.

For the foregoing reasons, we grant Apple's petition for writ of mandamus and direct that the district court transfer this action to the Northern District of California.

Judge Bye would deny the petition for writ of mandamus.

_____